UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

----------------------------------------------------------X
                                :

TIMOTHY W. HILL, Individually and On Behalf of:    No. 09-cv-12146-NG
All Others Similarly Situated,                  :

                                :

            Plaintiff,                :

                                :

      vs.                         :

                                :

STATE STREET CORPORATION, RONALD E.  :
LOGUE, EDWARD J. RESCH, PAMELA D.    :
GORMLEY, AND JAMES J. MALERBA,     :

                                :

          Defendants.            :
----------------------------------------------------------X
[Additional caption on the following page]

**MEMORANDUM OF LAW IN SUPPORT OF THE MOTION BY OKLAHOMA
FIREFIGHTERS PENSION AND RETIREMENT SYSTEM, PUERTO RICO
TEACHERS RETIREMENT SYSTEM, PUERTO RICO GOVERNMENT AND
JUDICIARY EMPLOYEES' RETIREMENT SYSTEM, AND WEST PALM BEACH
POLICE PENSION FUND FOR CONSOLIDATION, APPOINTMENT AS LEAD
PLAINTIFF AND SELECTION OF LEAD AND LIAISON COUNSEL**

```
-----------------------------------------------------------X
                                            :
MARILYN DEMORY, On Behalf of Herself and    :    No. 10-cv-10064-NG
All Similarly Situated Persons,             :
                                            :
            Plaintiff,                      :
                                            :
      vs.                                   :
                                            :
STATE STREET CORPORATION, RONALD E.         :
LOGUE, EDWARD J. RESCH, PAMELA D.           :
GROMLEY, JAMES J. MALERBA, GOLDMAN,         :
SACHS & CO., MORGAN STANLEY & CO.           :
INCORPORATED, CREDIT SUISSE                 :
SECURITIES (USA) LLC, LEHMAN BROTHERS :
INC., UBS SECURUITIES LLC, TENLEY E.        :
ALBRIGHT, KENNETT F. BURNES, TRUMAN         :
S. CASNER, PETER COYM, NADER F.             :
DAREHSHORI, AMELIA C. FAWCETT,              :
ARTHUR L. GOLDSTEIN, DAVID P. GRUBER,       :
LINDA A. HILL, CHARLES R. LAMANTIA,         :
MAUREEN J. MISKOVIC, RICHARD P.             :
SERGEL, RONALD L. SKATES, GREGORY L.        :
SUMME, DIANA CHAPMAN WALSH, ROBERT :
E. WEISSMAN, and ERNST & YOUNG LLP,         :
                                            :
            Defendants.                     :
-----------------------------------------------------------X
```

## TABLE OF CONTENTS

PAGE(S)

I.    PRELIMINARY STATEMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

II.   FACTUAL BACKGROUND . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

III.  ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

      A.   The Related Actions Should Be Consolidated Pursuant to Rule 42(a) . . . . . . . . 7

      B.   The Exchange Act Provides That a Lead Plaintiff be Appointed for Claims
           Brought as a Class Action . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

      C.   The Pension Fund Group Should be Appointed the Lead Plaintiff
           for the Class . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

           1.   The Pension Fund Group Has Filed a Lead Plaintiff Motion . . . . . . . . 10

           2.   The Pension Fund Group Has the Requisite Financial Interest in the
                Relief Sought by the Class . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

           3.   The Pension Fund Group Otherwise Satisfies Rule 23 . . . . . . . . . . . . . 11

      D.   The Court Should Approve the Pension Fund Group's Choice of Counsel . . . . 14

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

# TABLE OF AUTHORITIES

**CASES**      **PAGE(S)**

*Andrews v. Bechtel Power Corp.*,
    780 F.2d 124 (1st Cir. 1985) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*Blackmoss Investments, Inc. v. ACA Capital Holdings, Inc.*,
    No. 07-10528 (RWS) (S.D.N.Y. Aug. 11, 2008) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*De La Fuente v. Stokely-Van Camp, Inc.*,
    713 F.2d 225 (7th Cir. 1983) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*Greebel v. FTP Software, Inc.*,
    939 F. Supp. 57 (D. Mass. 1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*Hargett v. Alley Fed. Sav. Bank*,
    60 F.3d 754 (11th Cir. 1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .7

*In re Chipcom Corp. Sec. Litig.*,
    C.A. No. 95-11114-DPW, 1997 U.S. Dist. LEXIS 23937 (D. Mass. June 26, 1997) . . . 11

*In re Credit Suisse-AOL Secs. Litig.*,
    253 F.R.D. 17 (D. Mass. 2008) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*In re Drexel Burnham Lambert Group, Inc.*,
    960 F.2d 285 (2d Cir. 1992) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*In re Lernout & Hauspie Sec. Litig.*,
    138 F. Supp. 2d 39 (D. Mass. 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9, 10, 13

*In re Sonus Networks, Inc. Sec. Ltig.*,
    247 F.R.D. 244 (D. Mass. 2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*Internet Law Library, Inc. v. Southridge Capital Mgmt., LLC*,
    208 F.R.D. 59 (S.D.N.Y. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*Miller v. United States Postal Serv.*,
    729 F.2d 1033 (5th Cir. 1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*Primavera Familienstiftgung v. Askin*,
    173 F.R.D. 115 (S.D.N.Y. 1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*State Univ. Ret. Sys. v. Sonus Networks, Inc.*,
    C.A. No. 06-10040-MLW, 2006 U.S. Dist. LEXIS 93328 (D. Mass. 2006) . . . . . . . 13, 14

*Weinberg v. Atlas Air Worldwide Holdings, Inc.*,
    216 F.R.D. 248 (S.D.N.Y. 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*Weltz v. Lee*,
    199 F.R.D. 129 (S.D.N.Y. 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

**STATUTES AND RULES**

15 U.S.C. § 78u-4(a)(3) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

15 U.S.C. § 78u-4(a)(3)(B) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

15 U.S.C. § 78u-4(a)(3)(B)(iii)(I) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)(aa) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)(bb) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)(cc) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

15 U.S.C. § 78u-4(a)(3)(B)(iii)(II) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

15 U.S.C. § 78u-4(a)(3)(B)(v) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

Fed. R. Civ. P. 23 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11, 12

**OTHER AUTHORITIES**

H.R. Conf. Rep. No. 104-369 (1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9, 10

The Oklahoma Firefighters Pension and Retirement System, Puerto Rico Teachers Retirement System, Puerto Rico Government and Judiciary Employees' Retirement System, and West Palm Beach Police Pension Fund (collectively, the "Pension Fund Group") respectfully submit this memorandum of law in support of their motion to: (i) consolidate the Related Actions for all purposes pursuant to Fed. R. Civ. P. 42(a); (ii) appoint the Pension Fund Group as Lead Plaintiff; (iii) approve the Pension Fund Group's selection of the law firm of Abraham, Fruchter & Twersky, LLP to serve as Lead Counsel; and (iv) approve the Pension Fund Group's selection of the law firm of Pyle Rome Ehrenberg PC as Liaison Counsel.

## I.     PRELIMINARY STATEMENT

Presently pending before this Court are the above-captioned securities class action lawsuits (the "Related Actions") brought on behalf of all those who purchased shares of State Street Corporation ("State Street" or "Company") securities during the period between October 17, 2006 and October 19, 2009 (the "Class Period") against State Street, Ronald E. Logue, the Chairman and Chief Executive Officer of State Street at all relevant times and President and Chief Operating Officer until April 30, 2008, Edward J. Resch, an Executive Vice President and the Chief Financial Officer of State Street at all relevant times, Pamela D. Gormley, an Executive Vice President and Corporate Controller until December 21, 2006 and thereafter, Executive Vice President and the head of corporate systems and operations, and James D. Malerba, who was employed by State Street since 2004 and was Senior Vice President and Corporate Controller since December 21, 2006 (collectively, the "Executive Defendants").

The above-captioned *Demory* action also asserts claims against Tenley E. Albright, Kennett F. Burnes, Truman S. Casner, Peter Coym, Nader F. Darehshori, Amelia C. Fawcett,

Arthur L. Goldstein, David P. Gruber, Linda A. Hill, Charles R. LaMantia, Maureen J. Miskovic, Richard P. Sergel, Ronald L. Skates, Gregory L. Summe, Diana Chapman Walsh, and Robert E. Weissman, each of whom were directors of State Street during the relevant time period, as well as Goldman, Sachs & Co., Morgan Stanley & Co. Incorporated, Credit Suisse Securities (USA) LLC, Lehman Brothers, Inc., and UBS Securities LLC (collectively with the Executive Defendants and State Street, the "Defendants"), each of whom were underwriters for the public offering conducted by State Street on or about June 3, 2008, and Ernst & Young, State Street's auditor for the years ended December 31, 2006 and December 31, 2007.

The Related Actions allege that Defendants damaged the purchasers of State Street stock by making materially false and misleading statements during the Class Period, which artificially inflated the price of State Street stock in violation of Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act") as amended by the Private Securities Litigation Reform Act of 1995 ("PSLRA") (15 U.S.C. §§78j(b) and 78t(a)), and Rule 10b-5 promulgated thereunder (17 C.F.R. §240.10b-5). The *Demory* action also asserts claims for material misstatements and omissions contained in the offering documents pursuant to Sections 11, 12(a)(2) and 15 of the Securities Act of 1933 (15 U.S.C. §§77k, 77l, and 77o), on behalf of persons who purchased or otherwise acquired State Street's common stock pursuant and/or traceable to the registered public offering conducted on or about June 3, 2008.

This Motion is made on the grounds that the Pension Fund Group is the most adequate Plaintiff, as defined by the PSLRA, because, to the best of its knowledge, it has the largest financial interest of any moving class member or plaintiff who also satisfies the requirements of

2

Rule 23 of the Federal Rules of Civil Procedure. *See* Skovron Decl. at Ex. C.[1]  The Pension

Fund Group has collectively suffered losses of $3,976,895.19 in connection with its purchases of

State Street shares during the Class Period. *See* Skovron Decl., Ex. B, C.  Furthermore, the

Pension Fund Group adequately satisfies the requirements of Fed. R. Civ. P. Rule 23 in that its

claims are typical of the claims of the putative class and that it also will fairly and adequately

represent the interests of the class.

## II.    FACTUAL BACKGROUND

State Street is a provider of financial services to institutional investors including

investment servicing, investment management, and investment research and trading.  As of

September 30, 2009, the Company had $17.9 trillion in assets under custody and administration

and $1.7 trillion in assets under management.

The *Hill* Complaint[2] alleges that during the Class Period, State Street and the Executive

Defendants engaged in a fraudulent scheme and course of business whereby they fraudulently

priced foreign currency trades that State Street executed for its institutional investor clients.  The

Company's fraudulent scheme violated state law regulations, inflated revenues and earnings, and

subjected the Company to potentially significant penalties, fines and loss of customer confidence.

The scheme created a facade of extensive earnings and revenue for the Company.  The Company

---

[1] References to the "Skovron Decl., Ex. __" are to the exhibits attached to the Declaration of Ximena R. Skovron in Support of the Motion of Oklahoma Firefighters Pension and Retirement System, Puerto Rico Teachers Retirement System, Puerto Rico Government and Judiciary Employees' Retirement System, and West Palm Beach Police Pension Fund for Consolidation, Appointment as Lead Plaintiff, and Selection of Lead and Liaison Counsel, dated February 17, 2010 and filed concurrently herewith.

[2] These facts are drawn from the allegations in the complaint filed in *Hill v. State Street Corporation, et al.*, No. 09-cv-12146-NG (D. Mass.)

failed to disclose that these earnings and revenues were unsustainable due to the nature of their fraudulent source and that, as a result, the Company's earnings and revenues would eventually fall.

During the Class Period, the Company and the Executive Defendants disseminated false and misleading statements and made material omissions of fact concerning the Company's revenue growth, earnings, and financial performance. As a result of these material omissions regarding State Street's unsustainable business practice, the investing public could not and did not understand or assess the extent to which State Street's ongoing operations, reported revenue, earnings and net income were dependent upon the defendants' scheme. The Complaint alleges that the Company's fraudulent business scheme and course of business: (i) deceived the investing public regarding State Street's business, operations, management, prospects, and the intrinsic value of State Street securities; and (ii) caused the plaintiff and members of the Class to purchase State Street securities at artificially inflated prices.

On October 20, 2009, California Attorney General Edmund G. Brown, Jr., issued a press release entitled, "Brown Sues State Street Bank for Massive Fraud Against CalPERS and CalSTRS." The press release described the original case filed under seal by whistleblowers, who alleged that State Street added a secret and substantial mark-up to the price of interbank foreign currency trades. Despite being contractually obligated to charge the interbank rate at the precise time of the trade, State Street consistently charged at or near the highest rate of the day, even if the interbank rate was lower at the time of trade. The press release also stated that Brown had launched an independent investigation into the allegations, which revealed that State Street had overcharged two pension funds by more than $56.6 million over eight years, and concealed

the fraud by deliberately failing to include time stamp data in its reports, so that the pension funds could not determine the true execution costs by verifying when State Street actually executed the trades. The press release quoted Brown as stating that "State Street bankers committed unconscionable fraud by misappropriating millions of dollars that righfully belonged to California's pension funds."

On this news, shares of State Street declined $4.41 per share, or 8.44%, to close on October 20, 2009, at $47.84 per share, on heavy volume.

The *Demory* complaint[3] alleges that State Street took on significant undisclosed risks and failed to disclose losses when those risks materialized, misleading investors regarding the Company's exposure to billions of dollars in losses on investments in off-balance sheet conduits, in the Company's securities lending program and in its own investment portfolio. Instead of disclosing these mounting problems, State Street sought to shore up its capital position by issuing materially false and misleading offering materials that enabled the Company to raise approximately $2.8 billion from the investing public in a registered public offering conducted in June 2008.

When the Company's losses were eventually disclosed in January 2009, the value of State Street securities plummeted, wiping out over $9 billion in market capitalization in a single day. Specifically, on Friday, January 16, 2009, after the close of the markets before the Martin Luther King, Jr. holiday weekend, State Street issued a Form 8-K providing new risk warnings that revealed, among other things, that the Company was exposed to substantial and previously

---

[3] These facts are drawn from the allegations in the complaint filed in *Demory v. State Street Corporation, et al.*, No. 10-cv-10064-NG (D. Mass.)

undisclosed risks, including (i) losses, customer claims and reputational risk arising from the investment of cash collateral in State Street's securities lending program; (ii) unrealized losses in the Company's portfolio of investment securities; and (iii) losses and liquidity risk associated with State Street's off-balance sheet "conduits." State Street's conduits are off-balance sheet entities sponsored and managed by the Company, which purchase long-term investments, primarily asset-backed securities, and fund those purchases by selling short-duration commercial paper.

The losses and risks identified in the January 16, 2009 filing were detailed in an SEC filing released prior to the opening of the markets on January 20, 2009 (the following business day) in which the Company pre-announced its 2008 fourth quarter and year-end financial results, revealing to investors that many of the risks it warned about in its January 16, 2009 filing had already been realized. Specifically, on January 20, 2009, the Company reported fourth quarter earnings of $65 million, or $0.15 per share, a decline of 71% from the prior year period and a significant variance from analysts' expectations of a profit of $1.14 per share. The Company also disclosed that it had incurred unrealized losses in the very areas where, just days earlier, it had first warned investors about potential risks. The Company further disclosed that unrealized mark-to-market losses in State Street's investment portfolio had risen to $6.3 billion at the end of the fourth quarter, up $3 billion from the end of the third quarter.

The market's reaction to these shocking disclosures was swift and severe, with State Street stock plummeting almost 60% in a single day, from a close of $36.35 per share on January 16, 2009 to $14.89 per share on January 20, 2009. This stock decline alone wiped out over $9 billion in shareholder value. The *Demory* action further alleges that even after these disclosures

were made, State Street continued to mislead investors regarding its fraudulent scheme to siphon

off millions of dollars from its institutional clients by fraudulently overcharging for foreign

currency trades and the trading revenues the Company derived from that scheme.

## III.    ARGUMENT

### A.    THE RELATED ACTIONS SHOULD BE CONSOLIDATED PURSUANT TO RULE 42(A)\

Class action shareholder suits are ideally suited for consolidation pursuant to Rule 42(a).

*See Weltz v. Lee*, 199 F.R.D. 129, 131 (S.D.N.Y. 2001).  Indeed, "in securities actions where the

complaints are based on the same public statements and reports, consolidation is appropriate if

there are common questions of law and fact and the parties will not be prejudiced."  *Id.*

The Related Actions present virtually identical factual and legal issues.  They involve

virtually identical parties and arise from the same underlying facts and circumstances.  "The

proper solution to problems caused by the existence of two or more cases involving the same

parties and issues simultaneously pending in the same court would be to consolidate them under

Rule 42(a)."  *Hargett v. Alley Fed. Sav. Bank*, 60 F.3d 754, 765 (11th Cir. 1995) (quoting *Miller

v. United States Postal Serv.*, 729 F.2d 1033, 1036 (5th Cir. 1995)); *see also Internet Law

Library, Inc. v. Southridge Capital Mgmt., LLC*, 208 F.R.D. 59, 61 (S.D.N.Y. 2002); *Primavera

Familienstiftgung v. Askin*, 173 F.R.D. 115, 129 (S.D.N.Y. 1997).  Because these actions are

based on the same facts and involve the same subject matter, discovery obtained in one lawsuit

will undoubtedly be relevant to all others.  Consolidation of the Related Actions is thus

appropriate as common questions of law and fact predominate in these actions. Fed. R. Civ. P.

42(a).  Accordingly, the motion to consolidate the Related Actions should be granted.

**B.    THE EXCHANGE ACT PROVIDES THAT A LEAD PLAINTIFF BE APPOINTED FOR CLAIMS BROUGHT AS A CLASS ACTION**

On December 22, 1995, Congress amended the Exchange Act by enacting the PSLRA. Specifically, Section 21D(a)(3) of the Exchange Act provides that, within 20 days after the date on which a class action is filed,

> the plaintiff or plaintiffs shall cause to be published, in a widely circulated national business-oriented publication or wire service, a notice advising members of the purported plaintiff class -- (I) of the pendency of action, the claims asserted therein, and the purported class period; and (II) that, not later than 60 days after the date on which the notice is published, any member of the purported class may move the court to serve as lead plaintiff of the purported class.

15 U.S.C. § 78u-4(a)(3).

On December 19, 2009, a notice was published by Glancy Binkow & Goldberg LLP on *Business Wire* concerning the filing of *Hill v. State Street Corporation, et al.*, No. 09-cv-12146-NG (D. Mass.). *See* Skovron Decl., Ex. A. The notice advised members of the purported class of the pendency of the action, the claims asserted, the purported class period and that anyone who wished to serve as lead plaintiff needed to make a motion to the Court no later than 60 days from the date of the notice. As a result, the notice satisfied all the requirements of the PSLRA. *See generally Greebel v. FTP Software, Inc.*, 939 F. Supp. 57 (D. Mass. 1996).

Section 21D(a)(3)(B) of the Exchange Act directs the Court to consider any motions by purported class members to serve as lead plaintiffs in response to any such notice by the later of (i) 90 days after the date of publication, or (ii) as soon as practicable after the court decides any pending motion to consolidate any actions asserting substantially the same claim or claims, and to presume that the "most adequate plaintiff" to serve as Lead Plaintiff is the person or group of persons who:

(aa)    has either filed the complaint or made a motion in the response to a notice . . .;

(bb)    in the determination of the court, has the largest financial interest in the relief sought by the class; and

(cc)    otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure.

15 U.S.C. § 78u-4(a)(3)(B)(iii)(I).

That presumption may be rebutted where the otherwise presumptively most adequate plaintiff:

(aa)    will not fairly and adequately protect the interests of the class; and

(bb)    is subject to unique defenses that render such plaintiff incapable of adequately representing the class.

15 U.S.C. § 78u-4(a)(3)(B)(iii)(II).

The PSLRA also provides that the "most adequate plaintiff shall, subject to the approval of the court, select and retain counsel to represent the class." 15 U.S.C. § 78u-4(a)(3)(B)(v).

This Court has observed that the PSLRA "respond[ed] to congressional concern that 'the selection of the lead plaintiff and lead counsel should rest on considerations other than how quickly a plaintiff has filed its complaint,' as well as its desire 'to increase the likelihood that institutional investors will serve as lead plaintiffs by requiring courts to presume that the member of the purported class with the largest financial stake in the relief sought is the most adequate plaintiff.'" *In re Lernout & Hauspie Sec. Litig.*, 138 F. Supp. 2d 39, 43 (D. Mass. 2001) (quoting H.R. Conf. Rep. No. 104-369, at 33-34 (1995) (reprinted in 1995 U.S.C.C.A.N. 730, 731)). "This is predicated upon the conclusion that 'institutional investors and other class members with

9

large amounts at stake will represent the interests of the plaintiff class more effectively than class members with small amounts at stake.'" *Id.* (quoting H.R. Conf. Rep. No. 104-369, at 34).

### C. THE PENSION FUND GROUP SHOULD BE APPOINTED THE LEAD PLAINTIFF FOR THE CLASS

The Pension Fund Group satisfies the prerequisites for appointment as lead plaintiff. The Pension Fund Group has the largest recoverable loss of any member or group of members who have filed a complaint or expressed a desire to serve as lead plaintiff. In addition, there are no deficiencies in the Pension Fund Group's adequacy which would cause it to be an inappropriate choice to serve as Lead Plaintiff. Therefore, the Pension Fund Group brings this motion for the purpose of securing its appointment as Lead Plaintiff in the Related Actions and to obtain approval of its choice of Lead Counsel.

#### 1. The Pension Fund Group Has Filed A Lead Plaintiff Motion

The first requirement to being appointed a lead plaintiff is to have "either filed the complaint or made a motion in response to a notice . . . ." 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)(aa). Here, the Pension Fund Group is making such a motion, and by this motion the Pension Fund Group satisfies the first prong of the most adequate plaintiff test.

#### 2. The Pension Fund Group Has The Requisite Financial Interest In The Relief Sought By The Class

The second prerequisite to being appointed a lead plaintiff is that "in the determination of the Court, [the plaintiff] has the largest financial interest in the relief sought by the Class" of those persons moving to be appointed lead plaintiff. *See* 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)(bb). The Pension Fund Group purchased a total of 160,409 shares of State Street stock during the

Class Period and incurred total losses of $3,976,895.19 (*see* Skovron Decl., Exs. B, C).[4]  The

Pension Fund Group believes this amount to be the largest financial interest in the recovery

sought in this action and, accordingly, it is presumed to be the most adequate lead plaintiff and

should be appointed as Lead Plaintiff.  *See* 15 U.S.C. § 78u-4(a)(3)(B).

### 3.    The Pension Fund Group Otherwise Satisfies Rule 23

The lead plaintiff must also "otherwise satisf[y] the requirements of Rule 23 of the

Federal Rules of Civil Procedure." 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)(cc).  Rule 23(a) provides

that a party may serve as a class representative only if the following four requirements are

satisfied:

> (1)  the class is so numerous the joinder of all members is
> impracticable, (2) there are questions of law or fact common to the
> class, (3) the claims or defenses of the representative parties are
> typical of the claims or defenses of the class, and (4) the
> representative parties will fairly and adequately protect the interests
> of the class.

Fed. R. Civ. P. 23(a).

Of the four prerequisites to class certification, only two -- typicality and adequacy --

directly address the personal characteristics of the class representative.  Consequently, in

---

[4]  Losses were calculated using the first-in-first-out ("FIFO") method.  *See In re Chipcom Corp. Sec. Litig.*, 1997 U.S. Dist. LEXIS 23937 at *24 (D. Mass. June 26, 1997) (approving settlement using FIFO) (cited in *In re Credit Suisse-AOL Secs. Litig.*, 253 F.R.D. 17, 24 (D. Mass. 2008) (Gertner, J.)).  This Court has noted that "[c]ourts have recognized two potential accounting methods when assessing gains/losses that result from the purchase and sale of securities. Under the First-in-First-Out ("FIFO") method, a party matches its first share sold with its first share purchased to determine the gain/loss. Each subsequent sale proceeds accordingly. Under the Last-in-First-Out ("LIFO") method, a party matches its first share sold with its most recent share purchased to determine the gain/loss." *In re Credit Suisse-AOL Secs. Litig.*, 253 F.R.D. at 24 n.5.  Using the LIFO method of calculation, the Pension Fund Group has losses of $2,797,712.65. *See* Skovron Decl., Ex. C.

deciding a motion to serve as lead plaintiff, the Court should limit its inquiry to the typicality and adequacy prongs of Rule 23(a), and defer examination of the remaining requirements until the lead plaintiff moves for class certification. *See, e.g.*, *Weinberg v. Atlas Air Worldwide Holdings, Inc.*, 216 F.R.D. 248, 252 (S.D.N.Y. 2003) (citation omitted). As detailed below, the Pension Fund Group satisfies both the typicality and adequacy requirements of Rule 23, thereby justifying its appointment as Lead Plaintiff.

Under Rule 23(a)(3), the claims or defenses of the representative party must be typical of those of the class. Typicality exists if claims "arise[] from the same course of events" and are based on the same legal theories as to all class members. *See, e.g.*, *In re Drexel Burnham Lambert Group, Inc.*, 960 F.2d 285, 291 (2d Cir. 1992), *cert. dismissed sub nom.*, 506 U.S. 1088 (1993). However, the claims of the class representative need not be identical to the claims of the class to satisfy typicality. *De La Fuente v. Stokely-Van Camp, Inc.*, 713 F.2d 225, 232 (7th Cir. 1983) (typicality satisfied despite factual distinctions between claims of named plaintiffs and class members).

The Pension Fund Group satisfies this requirement because, just like all other members of the Class, it purchased shares of the Company's stock during the Class Period, in reliance on the allegedly material false and misleading statements and suffered losses when the truth was revealed. Thus, the Pension Fund Group's claims are typical of those of other Class members because its claims and the claims of other Class members arise out of the same course of events.

Rule 23(a)(4) provides that the representative party must "fairly and adequately protect the interests of the class." The PSLRA directs this Court to limit its inquiry regarding the adequacy of plaintiff to represent the class to the existence of any conflicts between the interests

of the proposed lead plaintiff and the members of the Class. In this Circuit, adequacy depends

on: (1) whether the named Plaintiff and his counsel have any conflicts of interest with other class

members; and (2) whether the lead plaintiff's counsel is qualified, experienced and able to

prosecute the action vigorously on behalf of the class. *In re Sonus Networks, Inc. Sec. Litig.*, 247

F.R.D. 244, 249 (D. Mass. 2007) (citing *Andrews v. Bechtel Power Corp.*, 780 F.2d 124, 130 (1st

Cir. 1985)).

Here, the Pension Fund Group has no conflicts with the interests of the Class. It wants to

obtain the maximum recovery for the Class so as to maximize its pro rata share of that recovery.

Moreover, as a group of public pension funds, the Pension Fund Group has the ability, the

incentive, and the resources to vigorously represent the interests of the class. *See State Univ. Ret.*

*Sys. v. Sonus Networks, Inc.*, C.A. No. 06-10040-MLW, 2006 U.S. Dist. LEXIS 93328, at *8 (D.

Mass. 2006) (appointing Mississippi Public Employees' Retirement System as lead plaintiff, and

noting that "as an institutional investor which has sustained large losses, MPERS has both the

ability and incentive to represent the class vigorously."). Appointing the Pension Fund Group as

lead plaintiff in this action would also fulfill the Congressional purpose underlying the PSLRA,

which seeks to encourage the participation of institutional investors as lead plaintiffs in securities

fraud class actions, as noted above. *See In re Lernout & Hauspie Sec. Litig.*, 138 F. Supp. 2d at

43. The Pension Fund Group and its counsel have already demonstrated that they will prosecute

the claims of the Class vigorously by having executed certifications, acted to file this motion and

seeking to assert claims on behalf of the Class.

In addition, as shown below, the Pension Fund Group's proposed counsel are highly

qualified, experienced and able to conduct this complex litigation vigorously and in a

professional manner. Thus, the Pension Fund Group satisfies the adequacy requirements of Rule 23.

Accordingly, the Pension Fund Group satisfies the requirements of Section 21D(a)(3)(B) and is presumptively the most adequate plaintiff. Unless this presumption is rebutted, it must be appointed lead plaintiff. *See State Univ. Ret. Sys.*, 2006 U.S. Dist. LEXIS 93328, at *8.

### D.    THE COURT SHOULD APPROVE THE PENSION FUND GROUP'S CHOICE OF COUNSEL

The Exchange Act provides that the lead plaintiff shall, subject to Court approval, select and retain counsel to represent the class. *See* 15 U.S.C. § 78u-4(a)(3)(B)(v). In that regard, the Pension Fund Group has selected and retained Abraham, Fruchter & Twersky, LLP to serve as Lead Counsel. Abraham, Fruchter & Twersky, LLP has the commitment and ability to accomplish the required tasks since it has extensive experience and is highly competent in prosecuting similar actions. *Accord, e.g.*, *Blackmoss Investments, Inc. v. ACA Capital Holdings, Inc.*, No. 07-10528 (RWS), Dkt. No. 15 at 8 (S.D.N.Y. Aug. 11, 2008) (appointing Abraham, Fruchter & Twersky, LLP as co-lead counsel) (Skovron Decl., Ex. D). Firm biographies for proposed lead and liaison counsel are submitted for the Court's convenience. *See* Skovron Decl., Ex. E, F.

### CONCLUSION

In light of the foregoing, the Pension Fund Group respectfully requests that the Court: (i) consolidate the above-captioned actions for all purposes pursuant to Fed. R. Civ. P. 42(a); (ii) appoint the Pension Fund Group as Lead Plaintiff; (iii) approve the Pension Fund Group's selection of the law firm of Abraham, Fruchter & Twersky, LLP to serve as Lead Counsel; (iv) approve the Pension Fund Group's selection of the law firm of Pyle Rome Ehrenberg PC as

Liaison Counsel; and (v) grant such other and further relief as the Court may deem just and proper.

Dated: February 17, 2010

PYLE ROME EHRENBERG PC

By ____ /s/ Betsy Ehrenberg _____
        Betsy Ehrenberg, BBO #554628
18 Tremont Street, Suite 500
Boston, MA 02108
617-367-7200
617-367-4820 (fax)
behrenberg@pylerome.com

**Proposed Liaison Counsel for Plaintiffs**

**ABRAHAM, FRUCHTER & TWERSKY, LLP**
Mitchell M.Z. Twersky
Ximena R. Skovron
One Penn Plaza, Suite 2805
New York, New York 10119
(212) 279-5050
(212) 279-3655 (fax)

**Proposed Lead Counsel for Plaintiffs**

15

## <u>Certificate of Service</u>

I hereby certify that this document(s) filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants on February 17, 2010.

/s/ Betsy Ehrenberg
Betsy Ehrenberg
