UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| TIMOTHY W. HILL, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>STATE STREET CORPORATION, RONALD E. LOGUE, EDWARD J. RESCH, PAMELA D. GORMLEY, AND JAMES J. MALERBA,<br><br>Defendants. | No. 09-cv-12146-NG |
| MARILYN DEMORY, on behalf of herself and all similarly situated persons,<br><br>Plaintiff,<br><br>v.<br><br>STATE STREET CORPORATION, et al,<br><br>Defendants. | No. 10-cv-10064-NG |

**CONSOLIDATED OBJECTION OF NATIONAL AUTOMATIC SPRINKLER INDUSTRY PENSION FUND TO MOTIONS FOR APPOINTMENT AS LEAD PLAINTIFF, APPROVAL OF SELECTION OF LEAD COUNSEL, AND <u>CONSOLIDATION OF ALL RELATED ACTIONS</u>**

None of the motions for appointment as Lead Plaintiff and approval of selection of Lead Counsel filed on February 17, 2010 propose a mechanism for controlling costs of counsel. In fact, the briefs filed by the Oklahoma Firefighters Pension and Retirement System, Puerto Rico Teachers Retirement System, Puerto Rico Government and Judiciary Employees' Retirement System, and West Palm Beach Police Pension Fund (collectively, the "Pension Fund Group") and by the Miami Beach Employees Retirement Plan ("Miami Beach") fail entirely to address an issue that may cost the class in excess of 20 percent of any recovery obtained against the defendants:

how to ensure that lead class counsel receive "a fair day's pay for a fair day's work".  In re Thirteen Appeals Arising Out of the San Juan Dupont Plaza Hotel Fire Litig., 56 F.3d 295, 310 (1st Cir. 1995) (citing Matthew 20:1-16 for the parable of the laborers in the vineyard); (Docket Nos. 8, 10).[1]  A third motion, filed jointly by the Public Employees' Retirement System of Mississippi and Union Asset Management Holding AG (together, "MPERS"), purports to "ensure that action would be litigated efficiently and in cost-effective manner" through a "Joint Prosecution Agreement", but still omits a specific fee schedule or any concrete basis upon which the Court and class are assured that class counsel's fees would be fair and reasonable, offering instead only broad, meaningless statements of intent.  (Docket No. 4 ("MPERS Memo") at 11).

Once class actions of this nature settle and defense counsel are bound by a "clear sailing agreement," only the overworked judiciary is left to protect the class from overly-aggressive fee applications, imposing an incredibly burdensome task of reviewing and approving fees and costs, sometimes aggregating the work of numerous syndicated law firms spread out over many months, if not years, and supported by little or no lodestar information.  But this Court should not wait until the end of the action to try to retrospectively determine the reasonableness of the fees.  Instead, the Court should act preemptively to consider a method by which class counsel's fees will be determined – while appointing class counsel.  Accordingly, putative class member National Automatic Sprinkler Industry Pension Fund ("NASI") hereby objects to the three motions for appointment only to the extent that NASI requests that the Court appoint a special master or some other guardian of the class to oversee class counsel's

---

[1]  As these actions have yet to be consolidated, unless otherwise noted, all citations herein are made to the docket in Hill v. State Street Corp., 09-cv-12146 (D. Mass.) ("Hill").

deployment and billing practices, beginning with the outset of this case, and should there be a common settlement fund at the conclusion of the case, to recommend fair and reasonable fees and costs to be awarded by the Court.

## **BACKGROUND**

NASI purchased 70,833 shares in State Street Corporation ("State Street") securities during the proposed class period. <u>Hill</u> and <u>Demory v. State Street Corp., et al.</u>, No. 10-cv-10064 (D. Mass.), filed on December 18, 2009 and January 15, 2010, respectively, allege generally that financial services provider State Street "violated the federal securities laws by misrepresenting [its] financial condition, including by concealing its exposure to billions of dollars in investment losses in areas including its conduits and securities lending business, and fraudulently inflating [its] trading revenues through a decade-long scheme involving foreign currency trades." MPERS Memo at 3. On February 17, 2010, three potential lead plaintiff syndicates – MPERS, the Pension Fund Group, and Miami Beach – filed motions to consolidate the related cases in this matter, for appointment as lead plaintiff and for approval of selection of lead counsel. (Docket Nos. 3-12).

But, not one of the briefs filed in support of these motions directly addresses the issue of how to assure that class counsel's fees will be fair and reasonable. (Docket Nos. 4, 8, 10). The brief filed by MPERS references "views concerning . . . procedures for directing and monitoring counsel to ensure that action would be litigated efficiently and in cost-effective manner", but sets forth no specific proposed percentage of fund to be accepted on contingency, no proposal to avoid duplicative effort, nor even a fee schedule supported by evidence that the rates are fair and reasonable for this district.

MPERS Memo at 11.  Similarly, the briefs filed by the Pension Fund Group and Miami Beach are silent on these issues.

## ARGUMENT

Federal Rules of Civil Procedure 23(h) and 54(d)(2) set out the standard by which attorneys' fees may be awarded in class actions.  Under Fed. R. Civ. P. 23(h), class counsel must move for an award of fees and costs with notice to the class and meet the standards of Fed. R. Civ. P. 54(d)(2)(B), which require the motion to state the grounds for the award of such fees as well as a fair estimate of the amount sought.  As noted by this Court, "[t]he First Circuit has not endorsed a specified set of factors to be used in determining whether a fee request is reasonable".  In re Relafen Antitrust Litig., 231 F.R.D. 52, 79 (D. Mass. 2005) (using Second and Third Circuit law to determine reasonable attorneys' fees in the absence of First Circuit authority).  Given the modest amount of guidance from the First Circuit, other district courts in this Circuit have gone to great lengths to determine the best methodology to evaluate the fairness of class counsel's fee requests, generally rejecting the prevalent "multi-factor approach" after undertaking lengthy analyses of the standards used in other Circuits.  Nilsen v. York County, 400 F. Supp. 2d 266, 271 (D. Me. 2005); In re Cabletron Sys., Inc. Sec. Litig., 239 F.R.D. 30, 45 (D.N.H. 2006)).

As noted twenty-five years ago by the Third Circuit Blue Ribbon Panel, which examined how to best assure that class counsel only receive fair and reasonable fees from any common settlement fund, "district judges find it difficult, indeed, in most instances, impossible, to police these matters by looking over the shoulders of lawyers to monitor the way they handle their cases."  Report of the Third Circuit Task Force on

Court Awarded Attorney Fees, 108 F.R.D. 237, 262 (1985).  This still holds true.  Nilson, 400 F. Supp. 2d at 270 ("Making a fair fee award . . . is a difficult determination for a judge").  "To impose that obligation on the Bench is unrealistic, unduly time-consuming, and typically will amount to little more than an exercise in hindsight."  Third Circuit Task Force, 108 F.R.D. at 262.  However, Courts typically must do just this, evaluating requests on a "percentage of funds" basis after complex, often years-long litigation is complete.  Thirteen Appeals, 56 F.3d at 307 (finding that the percentage of funds method is less burdensome and more efficient than applying a lodestar).

As set forth below, NASI asks this Court to follow the ultimate recommendation of the Third Circuit Task Force and deal with the issue proactively, at the appointment of lead class counsel, rather than retroactively.  NASI respectfully suggests that the class and the Court will be best served by the Court's appointment of a guardian for the class to oversee class counsel's fees and expenses on an ongoing basis, which appointment is well within the Court's discretion under the Federal Rules of Civil Procedure.  Fed. R. Civ. P. 54(d)(2)(D).

I.  THE COURT SHOULD APPOINT A SPECIAL MASTER TO OVERSEE FEES AND COSTS ASSOCIATED WITH PROSECUTION OF THIS CASE

As contemplated by the Third Circuit Task Force, "a significant improvement in the current situation (regarding the awarding of attorneys' fees in class action litigation) can be achieved if counsel and the court discuss various fee matters" at the outset of a case.  108 F.R.D. at 262.  "Early, frank discussion of fee matters, such as the applicability of the court's standardized rates, projections as to the number of hours counsel anticipate devoting to the case, and the potential applicability or inapplicability of various adjustment factors, should have the salutary effects of identifying problems at

the outset and improving the process' predictability should plaintiffs prevail." Third Circuit Task Force, 108 F.R.D. at 262. It is certainly within the Court's discretion to deal with the question of attorneys' fees at outset of a case in the First Circuit. Cabletron, 239 F.R.D. at 45 (stating intent in future complex class action cases to "set the attorneys' fee at the outset of the litigation"); Nilsen, 400 F. Supp. 2d at 283 (considering "ordering lawyers to propose fee arrangements at the outset" in future class actions).

Under Federal Rule of Civil Procedure 54(d)(2)(D), this Court may refer issues related to attorneys' fees to a special master. Indeed, Rule 54(d)(2)(D) is intended to help the Court "resolve fee-related issues without extensive evidentiary hearings" by referring "issues concerning the value of services to a special master under Rule 53 without regard to the limitations of rule 53(a)(1)". Fed. R. Civ. P. 54(d)(2)(D). "Our legal system does not ordinarily expect judges to behave as inquisitors, gathering testimony and collecting information on their own", but the typical lack of adversarial proceedings in consideration of fee applications requires just that. Nilsen, 400 F. Supp. 2d at 270. Given this, appointing a special master to serve as a class guardian is reasonable and appropriate, as it protects this Court from the unique burden, in the context of "clear sailing agreements", of undertaking its own investigation into potential fee matters.

In the instant case, the applications for approval of lead counsel are lacking in any proposed fee structure, so there is no attempt to use a market approach to determine fees. Accordingly, rather than engage in a market-based analysis contemplated by the Cabletron and Nilsen courts, this Court should exercise its power under Fed. R. Civ. P. 53 to appoint a master, ideally an expert on the reasonableness of fees and costs in complex class action litigation, to oversee all of the variables that

make up fee award determinations in this Circuit, including all the proper elements of lodestar determination.  <u>Nilsen</u>, 400 F. Supp. 2d at 279 (considering appointing a Fed. R. Civ. P. 53 special master should lawyers wish to re-open the question of fees).  Such an appointment could be made in both the best interests of the class and of this Court, dealing proactively with the issue of attorneys' fees without the Court having to entertain the post-settlement charade by which class counsel engage retired appellate judges and law professors as "experts" to justify their fee requests on a comparative basis. <u>See</u> <u>Nilsen</u>, 400 F. Supp. 2d at 277-8 (rejecting the multi-factor analysis prevalent in most Circuits as unpredictable, inconsistent with the reasoning behind using a percentage of funds, and burdensome).  Moreover, such an appointment would be following precisely the recommendation of the Third Circuit Task Force in protecting those interests.  108 F.R.D. at 263 ("[T]he court should manifest sufficient control . . . so that the attorneys understand that excessive discovery or any other lawyer hyperactivity will not be tolerated or compensated").

## **ORAL ARGUMENT REQUESTED**

NASI respectfully requests that the Court permit it oral argument on this unusual issue.

## **CONCLUSION**

For the foregoing reasons, NASI respectfully asks the Court to enter an order setting a schedule for the selection of a special master or other class guardian to oversee matters related to fees and costs associated with prosecution of this action, including, but not limited to:

    A.    Approving rates for the attorneys in the class counsel syndicate;

B.  Determining what time keepers are properly included in lodestar and what ones are properly charged to overhead;

C.  Reviewing and enforcing class counsel's proposals to efficiently prosecute the case and avoid duplicative effort;

D.  Receiving monthly statements from all class counsel, reflecting services performed;

E.  Overseeing all costs to be requested by class counsel;

F.  Preparing periodic reports to the Court and class on the costs and fees thus far incurred in the case;

G.  Recommending to the Court a fair and reasonable fee award at the conclusion of the case to the extent there is a common fund achieved by this litigation; and

H.  All other matters this Court deems fit.

Dated: March 3, 2010                    Respectfully submitted,

/s/ Irwin B. Schwartz
Irwin B. Schwartz
Business Litigation Associates, P.C.
225 Franklin Street, 26th Floor
Boston, Massachusetts 02110
Phone:  617-421-1800
Fax:  617-421-1810

Attorney for Objector National Automatic Sprinkler Industry Pension Fund

## Certificate of Service

    I, Irwin B. Schwartz, attorney for National Automatic Sprinkler Industry Pension Fund, hereby certify that on this 3rd day of March, 2010, I filed the foregoing document with the Clerk of the Court by CM/ECF, which will send notification of such filing to all counsel of record.

                                                /s/ Irwin B. Schwartz