UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| ———————————————— ) | |
| HILL v. STATE STREET CORPORATION  ) | |
|  ) | |
| ———————————————— ) | |
|  ) | Master Docket No. 09-cv-12146-NG |
| THIS DOCUMENT RELATES TO THE  ) | |
| SECURITIES ACTIONS  ) | |
|  ) | |
| Docket No. 09-cv-12146-NG  ) | |
| ———————————————— ) | |

**MEMORANDUM IN SUPPORT OF DEFENDANT
ERNST & YOUNG LLP'S MOTION TO DISMISS**

Dated:  September 24, 2010

Thomas J. Dougherty
Kara E. Fay
SKADDEN, ARPS, SLATE,
    MEAGHER & FLOM LLP
One Beacon Street
Boston, Massachusetts  02108
(617) 573-4800

Counsel for Defendant
Ernst & Young LLP

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ......................................................................... iii

PRELIMINARY STATEMENT ......................................................................1

    1.  No Material Misstatement Or Omission ...........................................1

    2.  Failure To Plead Subjective Falsity .................................................3

    3.  Statute Of Limitations .....................................................................3

BACKGROUND ...........................................................................................4

    1.  The June 2008 Offering ...................................................................4

    2.  E&Y's 2007 Audit Opinions.............................................................4

    3.  The Claim Against E&Y ...................................................................5

ARGUMENT .................................................................................................6

I.    PLAINTIFFS FAIL TO ALLEGE AN ACTIONABLE
    UNTRUE STATEMENT OR OMISSION OF MATERIAL FACT BY E&Y ..................7

    A.    The Complaint Does Not Identify An
        Untrue Statement Or Omission By E&Y Concerning FX
        (This Alone Is An Independent Ground For Dismissal) .......................8

    B.    Plaintiffs' Internal Control Allegations Also Fail To State A Claim
        (This, With Part A, Is An Independent Ground For Dismissal) ...........11

    C.    There Is No Plausible Factual Basis For The Claim
        That State Street's Allegedly Fraudulent FX Pricing
        Was Material To State Street's 2007 Financial Statements
        (This Alone Is An Independent Ground For Dismissal) .....................13

II.    PLAINTIFFS FAIL TO STATE A CLAIM BASED ON E&Y'S OPINIONS
    BECAUSE THEY DO NOT ALLEGE ANY VIOLATIONS OF GAAP OR
    APPLICABLE AUDITING STANDARDS WITH RESPECT TO FX REVENUE.........15

III.    PLAINTIFFS' CLAIMS ARE BARRED BY THE
    APPLICABLE ONE-YEAR STATUTE OF LIMITATIONS IN ANY EVENT..............16

    A.    Plaintiffs Had Actual Notice Of Their
        Section 11 Claim On January 16, 2009...............................................17

B.      The Statute Of Limitations Was Not Tolled By
        The Filing Of The Earlier Complaints In This Action........................................18

CONCLUSION.........................................................................................................................20

### TABLE OF AUTHORITIES

#### Cases

Airframe Sys., Inc. v. Raytheon Co.,
   520 F. Supp. 2d 258 (D. Mass. 2007) ...................................................................9

Am. Pipe & Constr. Co. v. Utah,
   414 U.S. 538 (1974)...........................................................................................18

Ashcroft v. Iqbal,
   129 S. Ct. 1937 (2009) .........................................................................................6

Belmont Holdings Corp. v. Sun Trust Banks, Inc.,
   No. 1:09-cv-1185-WSD, 2010 WL 3545389 (N.D. Ga. Sept. 10, 2010)........................13, 15

Bell Atl. Corp. v. Twombly,
   550 U.S. 544 (2007)...........................................................................................6, 7

Bily v. Arthur Young & Co.,
   834 P.2d 745 (Cal. 1992) .................................................................................10, 16

Cooperman v. Individual, Inc.,
   No. 96-12272-D, 1998 WL 953726 (D. Mass. May 27, 1998)............................................18

Coronel v. Quanta Capital Holdings Ltd.,
   No. 07 Civ. 1405 (RPP), 2009 WL 174656 (S.D.N.Y. Jan. 26, 2009)...................................8

DeMaria v. Andersen,
   318 F.3d 170 (2d Cir. 2003) ...............................................................................18

Deephaven v. Grant Thornton,
   454 F.3d 1168 (10th Cir. 2006) ..........................................................................11

Dent v. U.S. Tennis Ass'n, Inc.,
   No. CV-08-1533, 2008 WL 2483288 (E.D.N.Y. 2008) .......................................................14

Dixon v. Shamrock Fin. Corp.,
   522 F.3d 76 (1st Cir. 2008) ..................................................................................6

Dutton v. Harris Stratex Networks, Inc.,
   -- F.R.D.--, 2010 WL 2990017 (D. Del. July 22, 2010) .....................................................16

Fait v. Regions Financial Corp.,
   No. 09 Civ. 3161 (LAK), 2010 WL 1883487 (S.D.N.Y. May 10, 2010)........................13, 15

Fehribach v. Ernst & Young LLP,
    493 F.3d 905 (7th Cir. 2007) ............................................................................................. 10

Fleming v. Bank of Boston Corp.,
    127 F.R.D. 30 (D. Mass. 1989) ........................................................................................... 19

Glassman v. Computervision Corp.,
    90 F.3d 617 (1st Cir. 1996) ................................................................................................ 14

Harris v. Ivax Corp.,
    182 F.3d 799 (11th Cir. 1999) ............................................................................................ 11

Herman & MacLean v. Huddleston,
    459 U.S. 375 (1983) .............................................................................................................. 7

In re AOL Time Warner, Inc. Sec. & "Erisa" Litig.,
    381 F. Supp. 2d 192 (S.D.N.Y. 2004) ................................................................................ 15

In re AOL Time Warner, Inc. Sec. Litig.,
    503 F. Supp. 2d 666 (S.D.N.Y. 2007) .................................................................................. 7

In re Citigroup, Inc. Capital Accumulation Plan Litig.,
    535 F.3d 45 (1st Cir. 2008) .................................................................................................. 4

In re Connetics Corp. Sec. Litig.,
    542 F. Supp. 2d 996 (N.D. Cal. 2008) ............................................................................... 14

In re Crazy Eddie Sec. Litig.,
    747 F. Supp. 850 (E.D.N.Y. 1990) ..................................................................................... 19

In re Elscint, Ltd. Sec. Litig.,
    674 F. Supp. 374 (D. Mass. 1987) ................................................................................ 18, 19

In re Lehman Bros. Sec. & Erisa Litig.,
    684 F. Supp. 2d 485 (S.D.N.Y. 2010) ................................................................................ 15

In re Mirant Corp. Sec. Litig.,
    No. 1:02-CV-1462-RWS, 2009 WL 48188 (N.D. Ga. Jan. 7, 2009) ...................................... 8

In re Number Nine Visual Tech. Corp. Sec. Litig.,
    51 F. Supp. 2d 1 (D. Mass. 1999) ........................................................................................ 9

In re Segue Software, Inc. Sec. Litig.,
    106 F. Supp. 2d 161 (D. Mass. 2000) ................................................................................. 14

In re The First Marblehead Corp. Sec. Litig.,
    639 F. Supp. 2d 145 (D. Mass. 2009) ...............................................................13

In re Transkaryotic Therapies, Inc. Sec. Litig.,
    319 F. Supp. 2d 152 (D. Mass. 2004) ...............................................................18

In re USEC Sec. Litig.,
    190 F. Supp. 2d 808 (D. Md. 2002.) .................................................................17

Int'l Star Class Yacht Racing Ass'n v. Tommy Hilfiger U.S.A., Inc.,
    146 F.3d 66 (2d Cir. 1998) ...............................................................................14

London-Sire Records, Inc. v. Doe 1,
    542 F. Supp. 2d 153 (D. Mass 2008) ..................................................................9

Nolte v. Capital One Fin. Corp.,
    390 F.3d 311 (4th Cir. 2004) ............................................................................14

One Commc'ns Corp. v. JP Morgan SBIC LLC,
    Nos. 09-1815-cv, 09-2324-cv, 2010 WL 2512306 (2d Cir. June 18, 2010) ...........10

Parnes v. Gateway 2000, Inc.,
    122 F.3d 539 (8th Cir. 1997) ............................................................................14

Public Employees' Retirement Sys. Of Miss. v. Merrill Lynch & Co.,
    -F. Supp. 2d-, 2010 WL 2175875 (S.D.N.Y. June 1, 2010) ...................................19

Rederford v. U.S. Airways, Inc.,
    589 F.3d 30 (1st Cir. 2009) .................................................................................4

SEC v. Tambone,
    597 F.3d 436 (1st Cir. 2010) ...............................................................................6

Virginia Bankshares, Inc. v. Sandberg,
    501 U.S. 1083 (1991).............................................................................. 3, 14, 15

Warden v. Crown Am. Realty Trust,
    No. Civ. A. 96-25J, 1998 WL 725946 (W.D. Pa. Oct. 15, 1998) ..........................19

## Statutes

15 U.S.C. § 77k.............................................................................................7, 15

15 U.S.C. § 77m...............................................................................................17

**<u>Accounting Standards</u>**

AU § 110.01 ................................................................................................................ 10, 16

AU § 110.03 ..................................................................................................................... 16

AU § 230.13 ................................................................................................................ 11, 16

AU § 319.12 ..................................................................................................................... 12

Auditing Standard No. 5............................................................................................... 12

## PRELIMINARY STATEMENT

Plaintiffs are current and former shareholders of defendant State Street Corporation ("State Street"). Their Consolidated Amended Class Action Complaint (the "Complaint"), filed July 29, 2010, asserts various claims under the securities laws based on a litany of purported misrepresentations and omissions in various State Street public filings and press releases.

However, plaintiffs' single claim against Ernst & Young LLP ("E&Y") -- under § 11 of the Securities Act of 1933 (the "Securities Act") -- is based solely on E&Y's audit reports on State Street's consolidated financial statements and internal controls for the fiscal year ended December 31, 2007. Those audit reports were incorporated by reference in a prospectus and prospectus supplement relating to a June 2008 registered public offering of State Street common stock (the "June 2008 Offering"). The audit reports contained E&Y's opinions, based on its audits, (1) that State Street's consolidated financial statements "present[ed] fairly, in all material respects, the consolidated financial position of [State Street] at December 31, 2007... in conformity with U.S. generally accepted accounting principles ['GAAP']" and (2) that "State Street Corporation maintained, in all material respects, effective internal control over financial reporting as of December 31, 2007."

Significantly, the Complaint, as amended, drops any claim against E&Y relating to State Street's asset backed commercial paper conduits, and also drops the prior allegation that the conduits should have been consolidated on State Street's financial statements in 2007. Plaintiffs' sole claim against E&Y is now based on E&Y's 2007 audit reports only "as they relate to the inflation of foreign exchange ['FX'] revenue."

The claim against E&Y is flawed for several independent reasons.

### 1.    No Material Misstatement or Omission

First, although the Complaint added some 49 pages and 139 paragraphs, it remains utterly devoid of factual allegations supporting any claim that E&Y's 2007 audit reports contained any material misstatement or omission. The 157-page, 485-paragraph Complaint mentions E&Y in only three

1

paragraphs.  There are no allegations suggesting that E&Y failed to conduct its audits in accordance with the standards of the Public Company Accounting Oversight Board ("PCAOB Standards") (which include generally accepted auditing standards, or GAAS).  There are no allegations concerning audit procedures E&Y failed to perform or audit evidence E&Y ignored or missed.  State Street has not restated its 2007 financial statements, and plaintiffs' conclusory allegations concerning FX and internal controls are insufficient to state a claim that is plausible on its face.  Specifically:

(a)     Plaintiffs' allegations concerning FX are based on a lawsuit filed by the California attorney general (the "California AG") in October 2009 -- more than a year and half after E&Y issued its 2007 audit reports -- which alleged that State Street overcharged two California public pension funds for FX trades in violation of State Street's contracts with those funds.  Neither the California AG, nor plaintiffs in this case, contend that the actual amounts charged by State Street for FX trades in 2007 were inaccurately reflected in State Street's 2007 financial statements.  Thus, E&Y's opinion that State Street's consolidated financial statements fairly presented the company's financial position as of December 31, 2007 was not false.

(b)     With respect to the Complaint's generalized allegations concerning "internal controls" and "risk management practices," plaintiffs overstate E&Y's role.  E&Y audited and expressed an opinion on State Street's consolidated financial statements and "internal control over financial reporting."  E&Y did not (and was not required to) render an opinion on State Street's controls relating to FX pricing or controls relating to compliance with FX customer contracts.  The Complaint does not (and could not) allege otherwise.

(c)     Plaintiffs' allegation that the alleged FX "overcharging" was material to State Street's 2007 financial statements is entirely speculative, if not demonstrably false.  Plaintiffs provide no factual basis for their materiality assertions.  In fact, the amount that the two California funds were allegedly overcharged in 2007 was utterly immaterial to State Street's 2007 financial statements.

## 2.     <u>Failure to Plead Subjective Falsity of E&Y's Opinions</u>

<u>Second</u>, E&Y's opinions in its 2007 audit reports were, on their face, statements of E&Y's
<u>opinions</u> concerning State Street's consolidated financial statements and internal controls over financial
reporting.  Those opinions expressly stated that they were based on E&Y's audits which were conducted
in accordance with PCAOB Standards.  The Complaint contains no allegations to the contrary; <u>e.g.</u>, it
does not allege that E&Y's audits did not comply with PCAOB Standards.  Therefore, plaintiffs cannot
satisfy the subjective falsity requirement set forth in <u>Virginia Bankshares, Inc. v. Sandberg</u>, 501 U.S. 1083
(1991), and subsequent decisions.

## 3.     <u>Statute of Limitations</u>

<u>Third</u>, plaintiffs' entire § 11 claim against E&Y is barred by the applicable one-year statute
of limitations.  Plaintiffs concede that they had actual notice of alleged untrue statements and omissions in
the June 2008 Offering materials as of January 16, 2009.  Therefore, any § 11 claim based on the June
2008 Offering materials had to be brought no later than January 15, 2010.  The statute of limitations was
not tolled by the complaint filed on that day by plaintiff Marilyn Demory because she obviously lacked
standing to bring a § 11 claim.  Any conclusion to the contrary would allow litigants, in every § 11 case,
to toll the statute or limitations simply by naming a nominal plaintiff until a legitimate plaintiff could be
identified.  Plaintiffs' § 11 claim -- first asserted in the Consolidated Class Action Complaint filed June
25, 2010 -- is time-barred.

In short, the Complaint -- even if the § 11 claim was not time-barred -- provides no
plausible basis to conclude that E&Y is liable under § 11 for failing to foresee and account for a contract
dispute between State Street and two of its customers that arose more than a year and half after E&Y
released its 2007 audit opinion.  Plaintiffs' claim against E&Y should be dismissed.

3

# BACKGROUND

### 1.       The June 2008 Offering

According to the Complaint, one of the lead plaintiffs, the Public Employees' Retirement System of Mississippi ("MPERS"), purchased State Street stock "pursuant and/or traceable to" a June 2008 registered public offering (the "June 2008 Offering"). (Compl. ¶ 400.)[1] The June 2008 Offering was conducted pursuant to a shelf registration statement filed with the SEC on Form S-3 on March 21, 2006 (the "Shelf Registration Statement"), and a prospectus and prospectus supplement filed on June 2, 2008 and June 3, 2008, respectively. (Id. ¶¶ 426-427.) The Shelf Registration Statement, prospectus and prospectus supplement are referred to collectively in the Complaint as the "Offering Materials." (Id.)

### 2.       E&Y's 2007 Audit Opinions

The Offering Materials incorporated by reference other State Street public filings, including its Annual Report on Form 10-K for the fiscal year ended December 31, 2007. (Id. ¶ 428.) As State Street's outside auditor, E&Y issued a report, dated February 14, 2008, on State Street's 2007 consolidated financial statements. (Id. ¶¶ 425, 429.) In addition, E&Y issued a report on State Street's internal control over financial reporting, also dated February 14, 2008. (Id. ¶ 429.) Both reports were included in State Street's 2007 Form 10-K and, in turn, were incorporated by reference (with E&Y's consent) in the Offering Materials. (Id.) Excerpts of State Street's 2007 Form 10-K, including E&Y's audit reports and consent, are attached hereto as Ex. A.[2]

E&Y's audit report on State Street's 2007 consolidated financial statements states:

> We have audited the accompanying consolidated statement of condition of State Street Corporation as of December 31, 2007 and 2006, and the related consolidated statements of income, changes in shareholders' equity, and cash flows . . . . In our opinion, the financial

---

[1]        References to allegations in the Complaint are noted as "Compl. ¶__."

[2]        It is well established that on a 12(b)(6) motion, the Court "may . . . review documents outside of the pleadings where they are undisputed, central to the plaintiffs' claims, and sufficiently referred to in the complaint." In re Citigroup, Inc. Capital Accumulation Plan Litig., 535 F.3d 45, 52 (1st Cir. 2008). See also Rederford v. U.S. Airways, Inc., 589 F.3d 30, 35 (1st Cir. 2009) (In reviewing an order granting a motion to dismiss under Fed. R. Civ. P. 12(b)(6), "[w]e may consider not only the complaint but also facts extractable from the documentation annexed to or incorporated by reference in the complaint and matters susceptible to judicial notice.").

statements referred to above present fairly, in all material respects, the consolidated
financial position of State Street Corporation at December 31, 2007 and 2006, and the
consolidated results of its operations and its cash flows . . . in conformity with U.S.
generally accepted accounting principles.

(2007 Form 10-K, Ex. A, at 76.)  The audit report also states that "[t]hese financial statements are the

responsibility of [State Street]'s management.  [E&Y's] responsibility is to express an opinion on these

financial statements based on our audits." (Id.)  In addition, the audit report states that E&Y conducted its

audits in accordance with the PCAOB Standards, which require that it plan and perform the audit to

obtain "reasonable assurance" about whether the financial statements are free of material misstatement.

(Id.)

E&Y's 2007 report on State Street's internal control over financial reporting states:  "In our

opinion, State Street Corporation maintained, in all material respects, effective internal control over

financial reporting as of December 31, 2007, based on the COSO criteria."[3]  (2007 Form 10-K, Ex. A, at

134.)  The report also states that "[State Street]'s management is responsible for maintaining effective

internal control over financial reporting . . . [E&Y's] responsibility is to express an opinion on the

company's internal control over financial reporting based on our audit." (Id.)  In addition, the report states

that E&Y's audit was conducted in accordance with PCAOB Standards, which require that E&Y plan and

perform the audit to obtain "reasonable assurance" about whether effective internal control over financial

reporting was maintained.  (Id.)  However, "[b]ecause of its inherent limitations, internal control over

financial reporting may not prevent or detect misstatements." (Id.)

### 3.    The Claim Against E&Y

Plaintiffs assert one claim against E&Y:  an alleged violation of § 11 of the Securities Act.

(Compl. ¶¶ 466-474 (Count III).)  Plaintiffs allege that E&Y "is sued herein for its inaccurate

certifications of State Street's internal controls over financial reporting and State Street's year end 2007

financial statements as they relate to the inflation of [FX] revenue as described herein." (Id. ¶ 425.)  As

---

[3]    The "COSO criteria" are the criteria established in Internal Control—Integrated Framework issued by the Committee
of Sponsoring Organizations of the Treadway Commission.

noted above, plaintiffs have dropped any claim against E&Y relating to the conduits, as well as their allegation that the conduits should have been consolidated in 2007.

The purported factual basis for plaintiffs' claim against E&Y appears in only a handful of the Complaint's 485 paragraphs.  (See Compl. ¶¶ 433-438.)  Specifically, plaintiffs allege that State Street "inflated the revenue it received from [FX] trading revenue by improperly overcharging its clients in violation of State Street's contractual arrangements" with those clients.  (Compl. ¶ 433.)  State Street allegedly did this by adding "substantial mark-ups to the exchange rate that it used when making [FX] trades for its clients," and such mark-ups "were not permitted" under the applicable contracts.  (Id.)  Plaintiffs further allege that State Street's alleged "improper overcharging" of its FX clients "occurred in part because State Street had lax internal controls and nonexistent risk management policies."  (Id. ¶ 434.)

## ARGUMENT

Rule 8 requires a complaint to "plead facts that raise a right to relief above the speculative level."  Dixon v. Shamrock Fin. Corp., 522 F.3d 76, 79 (1st Cir. 2008), citing Bell Atl. Corp. v. Twombly, 550 U.S. 544 (2007).  Specifically, it "must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face," SEC v. Tambone, 597 F.3d 436, 442 (1st Cir. 2010), quoting Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009).  "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully"; mere consistency with liability is insufficient.  Iqbal, 129 S.Ct. at 1949.

In evaluating the sufficiency of a complaint, a court must accept well-pleaded factual allegations as true, but it may reject "unsupported conclusions or interpretations of law."  Dixon, 522 F.3d at 79.  See also Iqbal, 129 S. Ct. at 1949 ("[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions.  Threadbare recitals of the elements of a

cause of action, supported by mere conclusory statements, do not suffice."); <u>Twombly</u>, 550 U.S. at 555-56

(same).[4]

      As discussed below, the Complaint's allegations concerning E&Y are insufficient to state a

plausible claim against E&Y.

## I.    PLAINTIFFS FAIL TO ALLEGE AN ACTIONABLE UNTRUE<br>STATEMENT OR OMISSION OF MATERIAL FACT BY E&Y

      To assert a claim under § 11, a plaintiff must allege that a registration statement "contained

an untrue statement of a material fact or omitted to state a material fact required to be stated therein or

necessary to make the statements therein not misleading." 15 U.S.C. § 77k(a)(4).  In addition, an

accountant may only be liable under § 11 "with respect to the statement in such registration statement . . .

which purports to have been prepared or certified by him." <u>Id.</u>  <u>See also</u> <u>Herman & MacLean v.</u>

<u>Huddleston</u>, 459 U.S. 375, 386 n.22 (1983).

      Here, the only statements in the Offering Materials that were "prepared or certified" by

E&Y are its statements contained it its 2007 audit reports, which were included with State Street's 2007

Form 10-K and incorporated in the Offering Materials by reference.  (<u>See</u> Compl. ¶¶ 425, 429.)[5]  As

discussed below, plaintiffs' bare bones allegations against E&Y are insufficient to state a claim that its

2007 audit reports contained untrue statements or omissions of material fact.

---

[4]      The arguments for dismissal set forth in this memorandum are made under Fed. R. Civ. P. 8.  E&Y also incorporates by reference and joins in the arguments made by the State Street and underwriter defendants that plaintiffs' Securities Act claims sound in fraud and are therefore subject to the heightened pleading standards of Rule 9(b).  (<u>See</u> Memorandum In Support of Motion To Dismiss, filed September 24, 2010 ("State Street Defendants' Memorandum").  <u>See also, e.g.</u>, Compl. ¶ 7 (alleging that approximately thirty percent of State Street's FX revenue "was generated not through legitimate business practices, but through intentional fraud"); ¶ 433 (alleging that State Street "improperly" overcharged its clients "contrary to [its] public statements regarding its supposed 'highest standards of ethics'"); ¶ 436 (chart purporting to show "Actual FX Revenue Without Fraud").)  To the extent that the Court agrees and applies Rule 9(b) to plaintiffs' Securities Act claims, the Complaint also does not come close to satisfying the heightened pleading requirements as to alleged misstatements by E&Y.

[5]      The Complaint also lists numerous allegedly false statements in State Street press releases and unaudited quarterly filings with the SEC (<u>e.g.</u>, Compl. ¶¶ 443-461).  Those statements are not relevant to the claim against E&Y because they were not "prepared or certified " by E&Y.  <u>See</u> <u>Huddleston</u>, 459 U.S. at 386 n.22; <u>In re AOL Time Warner, Inc. Sec. Litig.</u>, 503 F. Supp. 2d 666, 675 (S.D.N.Y. 2007) (dismissing § 11 claim because "liability only attaches to an auditor for its certified audit opinions," not "unaudited quarterly results" that were incorporated in a registration statement).

A.    **The Complaint Does Not Identify An Untrue
Statement Or Omission By E&Y Concerning FX
(This Alone Is An Independent Ground For Dismissal)**

Plaintiffs' claim against E&Y is based on E&Y's alleged "inaccurate certifications" of State

Street's 2007 financial statements and internal controls over financial reporting "as they relate to the

inflation of [FX] revenue as described herein."[6] (Compl. ¶ 425.)

As an initial matter, plaintiffs have not alleged any facts supporting their conclusory

allegation that E&Y's audit reports were "inaccurate" at the time they were issued.[7]   Plaintiffs do not

allege any specific violations of GAAP relating to FX revenue.  They do not allege that E&Y's audits

were deficient in any way.  Nor do they allege that E&Y failed to comply with any particular PCAOB

Standard.  Plaintiffs' claim against E&Y should be dismissed for that reason alone.

Plaintiffs' other equally conclusory allegations concerning alleged "inflation" of FX

revenue also do not provide factual support for any purported "inaccuracy" in E&Y's 2007 audit reports.

Specifically, plaintiffs allege that State Street "inflated" FX revenue "by improperly overcharging its

clients in violation of [its] contractual arrangements." (Compl. ¶ 433.)  That claim is based on a complaint

filed by the California AG in October 2009, and on State Street's 2009 Form 10-K which disclosed that "a

similar action has been commenced in the District of Columbia."  (Compl. ¶ 435.)[8]  However, after State

Street's 2009 10-K was filed, the attorney general for the District of Columbia elected <u>not</u> to intervene to

---

[6]    Plaintiffs refer to "certifications" and also allege that State Street's financial statements were "approved" by E&Y.
(Compl. ¶ 425.)  The Court should not credit such inaccurate characterizations, but instead may consider E&Y's audit reports
themselves, which are referenced in the Complaint and are properly before the Court on this motion.  <u>See</u> footnote 2, <u>supra</u>.
Those reports make clear that E&Y did not "certify" or "approve" State Street's financial statements; rather, E&Y expressed an
opinion, based on its audit, on consolidated financial statements that were prepared by management.  (<u>See</u> Ex. A at 76.)

[7]    <u>See</u> <u>Coronel v. Quanta Capital Holdings Ltd.</u>, No. 07 Civ. 1405 (RPP), 2009 WL 174656, at *13 (S.D.N.Y. Jan. 26,
2009) ("The relevant inquiry under the Securities Act is . . . whether the facts alleged in the Complaint evince that the
[defendant] knew or had reason to believe, <u>at the time the Prospectus and Registration Statement were filed</u>, that the statement
was untrue.") (emphasis added); <u>In re Mirant Corp. Sec. Litig.</u>, No. 1:02-CV-1467-RWS, 2009 WL 48188, at *20 (N.D. Ga.
Jan. 7, 2009) ("In order to sustain a claim under the Securities Act, Plaintiffs must plead facts establishing that the [offering
materials] contained a material misrepresentation or omission <u>on the date it was issued</u>.) (emphasis added) (citation omitted).

[8]    Plaintiffs also allege that State Street's 2009 Form 10-K disclosed that other state attorneys general and the United
States Attorney had "requested information" relating to FX pricing (Compl. ¶ 435), but there are no further allegations
concerning such "request[s]."

pursue claims against State Street, and that action was dismissed.  See D.C. ex rel. Assocs. Against FX

Insider Trading v. State Street Corp., 2009 CA 000176 A (D.C. Super. Ct. Jun. 21, 2010) (order

voluntarily dismissing claims) (attached hereto as Ex. B).[9]

In the California action, the California AG alleged that State Street overcharged two

California public pension funds, CalPERS and CalSTRS, for FX trades in violation of State Street's

contractual arrangements with those funds.  State Street has denied overcharging those funds and has

maintained that its FX pricing was consistent with its contractual obligations.[10]  The California action

essentially amounts to a contractual dispute between California and State Street.  At most -- if it is to be

credited by this Court at all (see footnote 15, infra) -- the California AG's complaint could only support an

inference that State Street allegedly overcharged two of its clients, CalPERS and CalSTRS.

An unresolved contractual dispute that arises between a company and it customer some 18

months after an auditor issues its opinion on that company's financial statements does not render that audit

opinion (or, for that matter, the subject financial statements) "inaccurate" at the time it was made.

First, neither the California AG nor the plaintiffs in this case contend that the prices

charged by State Street were not actually paid by the California funds, or that those amounts were not

accurately recorded in State Street's 2007 consolidated financial statements.  (Indeed, the California AG's

---

[9]      In "The Exchange Act Claims" section of the Complaint, plaintiffs allege that State Street engaged in a fraudulent scheme to inflate FX trading revenues.  (See, e.g., Compl. ¶¶ 39-70.)  However, in an attempt to avoid having to meet the pleading requirements of Rule 9(b), plaintiffs expressly declined to incorporate those allegations in support of its Securities Act claims.  (See Compl. ¶ 466, incorporating only the allegations "relating to the Securities Act claims" and "specifically exclud[ing]" any allegations of fraud or fraudulent conduct.)  Accordingly, the Court must disregard those allegations in determining whether plaintiffs have stated a claim against E&Y.  See In re Number Nine Visual Tech. Corp. Sec. Litig., 51 F. Supp. 2d 1, 12-13 (D. Mass. 1999) (holding that where plaintiffs specifically disclaimed fraud allegations with respect Securities Act claims, they "can in no way rely" on those allegations in pursuing those claims).  In any event, those allegations appear to lack merit for the same reasons stated above and in the State Street Defendants' Memorandum.

[10]      See California ex rel. Brown v. State Street Corp., No. 34-2008-00008457-CU-MC-GDS, Complaint In Intervention, filed October 20, 2009, and State Street Defendants' Verified Answer To Plaintiff's Complaint In Intervention, filed April 12, 2010  (attached hereto as Ex. C and Ex. D, respectively).  These documents are properly before this Court as documents incorporated by reference in the Complaint and/or as public records.  See Airframe Sys., Inc. v. Raytheon Co., 520 F. Supp. 2d 258, 263 (D. Mass. 2007) (permitting review of complaint from related case because it "[is a] public document[] whose authenticity is not disputed by the parties"); London-Sire Records, Inc. v. Doe 1, 542 F. Supp. 2d 153, 179, n.36 (D. Mass 2008) (Gertner, J.) ("The Court may take judicial notice of related proceedings.").

and plaintiffs' complaint is that those amounts were paid and recorded in the financial statements.)[11]  Nor has State Street restated its 2007 financial statements with respect to FX revenue (or anything else).

Second, E&Y was not required, as part of a financial statement audit performed in accordance with PCAOB Standards, to review State Street's contracts with each of its custody clients (of which there are hundreds).  Nor was E&Y required to determine, for each such State Street client, the contractually appropriate rate for FX trades or whether and how much State Street was contractually entitled to mark up that rate.  See Fehribach v. Ernst & Young LLP, 493 F.3d 905, 910 (7th Cir. 2007) ("[A]n auditor's duty is not to give business advice; it is merely to paint an accurate picture of the audited firm's financial condition, insofar as that condition is revealed by the company's books and inventory and other sources of an auditor's opinion.").

Third, E&Y did not make any statement at all relating to FX revenue.  An auditor does not express an opinion on each individual number contained within the financial statements.  Rather, the auditor expresses an opinion on the fairness of the company's financial statements "taken as a whole." Bily v. Arthur Young Co., 834 P.2d 745, 750 (Cal. 1992).  See also AU § 110.01 ("The objective of the ordinary audit of financial statements…is the expression of an opinion on the fairness with which they present, in all material respects, financial position, results of operations, and its cash flows in conformity with [GAAP]").  Accordingly, E&Y's 2007 audit report stated:  "In our opinion, the financial statements … present fairly, in all material respects, the consolidated financial position of State Street Corporation at December 31, 2007 and 2006, and the consolidated results of its operations and its cash flows . . . in conformity with [GAAP]."  (2007 Form 10-K, Ex. A at 76.)  E&Y did not express an opinion on State Street's figure for FX revenue, but rather an opinion on the consolidated financial statements as a whole.

---

[11]     C.f., One Commc'ns Corp. v. JP Morgan SBIC LLC, Nos. 09-1815-cv, 09-2324-cv, 2010 WL 2512306, at * 3 (2d Cir. June 18, 2010) (dismissing securities fraud claims and holding that plaintiffs failed to allege an actionable misstatement relating to alleged over-billing where the company "was actually collecting the revenue for which it was allegedly over-billing and was recording it appropriately").

Finally, auditors cannot be expected to anticipate future contractual disputes between a company and its customers.  In light of the vast number of contracts State Street is involved with in its business, such an undertaking would be utterly impossible, not to mention far beyond the scope of a financial statement audit.  Plaintiffs' argument must be that any purported error by a company should subject its auditor to § 11 liability, whether or not the error was or should have been subject to an audit.  An audit, however, is not a "guarantee" as to the accuracy of the company's financial statements.  See AU § 230.13 ("Since the auditor's opinion on the financial statements is based on the concept of obtaining reasonable assurance, the auditor is not an insurer and his or her report does not constitute a guarantee.")  See also Deephaven v. Grant Thornton, 454 F.3d 1168, 1175 (10th Cir. 2006) (an audit report "is stated as an opinion . . . rather than a statement of absolute fact or a guarantee").  Such a limitless extension of auditor liability, unbound by the scope of professional standards and the express terms of E&Y's audit opinions, must be rejected.[12]

### B.   Plaintiffs' Internal Control Allegations Also Fail To State A Claim (This, With Part A, Is An Independent Ground For Dismissal)

Plaintiffs' related allegations concerning E&Y's audit opinion on State Street's internal controls over financial reporting (Compl. ¶ 434) are also deficient.

The claim that State Street overcharged clients for FX trades in violation of its contracts is not itself indicative of a lack of controls over financial reporting.  Rather, State Street management reviewed its contracts and deliberately set FX prices based thereon.  State Street's dispute with California, and plaintiffs' claim that State Street overcharged customers for FX trades, are not based on internal control errors, but on State Street's and its customers' differing views of the operative contracts. (See

---

[12]      In addition, the possibility that State Street could have contractual disputes with customers, and that those disputes could negatively impact the company, was disclosed in State Street's 2007 Form 10-K:  "From time to time, our customers may make claims and take legal action relating to our performance of fiduciary or contractual responsibilities.  If such claims and legal actions are not resolved in a manner favorable to us, such claims may result in financial liability to State Street and/or adversely affect the market perception of us and our products and services, and could impact customer demand for our products and services."  (2007 Form 10-K, Ex. A at 16.)  See Harris v. Ivax Corp., 182 F.3d 799, 807 (11th Cir. 1999) (When investors are "warned of risks of a significance similar to that actually realized, [they are] sufficiently on notice of the danger of the investment to make an intelligent decision about it according to [their] own preferences for risk and reward.")

Compl. ¶ 433.)  Accordingly, there is no basis for plaintiffs' claim that FX trading reflects or resulted from the lack of adequate internal controls over financial reporting.

Moreover, E&Y's 2007 audit report and opinion concerned State Street's "internal controls over financial reporting," not its "risk management practices" (Compl. ¶ 434) or its compliance with customer contracts.  As explained therein, "[a] company's internal control over financial reporting is a process designed to provide reasonable assurance regarding the reliability of financial reporting and the preparation of financial statements for external purposes in accordance with generally accepted accounting principles."  (2007 Form 10-K, Ex. A at 134.)

As recognized by PCAOB Standards, not all "internal controls" are relevant to financial reporting.  See AU § 319.12 ("An entity generally has controls relating to objectives that are not relevant to an audit and therefore need not be considered.  For example, controls concerning compliance with health and safety regulations or concerning the effectiveness and efficiency of certain management decision-making processes (such as the appropriate price to charge for its products . . . ), although important to an entity, ordinarily do not relate to a financial statement audit." ) (emphasis added).  In addition, E&Y explained that "[b]ecause of its inherent limitations, internal control over financial reporting may not prevent or detect misstatements."  (Id.)  See also Auditing Standard No. 5.  As noted above, there is no allegation that the actual amounts charged (and paid) for FX trades were not accurately reflected in State Street's 2007 consolidated financial statements.  Accordingly, plaintiffs cannot plausibly claim that E&Y's opinion that State Street "maintained effective internal control over financial reporting" was untrue.

The Complaint's references to vague and conclusory statements of two "confidential witnesses" (Compl. ¶ 434) are also insufficient to support the claim that E&Y's audit opinion concerning State Street's internal control over financial reporting was inaccurate.  According to the Complaint, "CW 6" was not even employed at State Street in 2007 -- the only time period relevant to the claim against E&Y.  (See Compl. ¶ 77, stating that CW6 "joined State Street in March 2008," well after December 31,

12

2007 and even after E&Y issued its 2007 audit reports.)  "CW 3" did not work in a financial position at the company, and there is no basis for the assumption that he or she would know what E&Y could or should have discovered in an audit of internal control over financial reporting.  (See Compl. ¶ 78, alleging "CW3" was an "administrative associate in the FX sales and trading division.")

Finally, the subsequent discovery of an error in a company's financial statements (if there even was one here) does not support the "speculative conclusion" that "internal controls must initially have been inadequate."  Belmont Holdings Corp. v. Sun Trust Banks, Inc., No. 1:09-cv-1185-WSD, 2010 WL 3545389, at *7 (N.D. Ga. Sept. 10, 2010) (dismissing § 11 claims against the company and its auditor).[13]  Plaintiffs' generalized allegations about the adequacy of "internal controls" do not "raise a right to relief above the speculative level" (Twombly, 550 U.S. at 555), and should be dismissed.

### C.   There Is No Plausible Factual Basis For The Claim That State Street's Allegedly Fraudulent FX Pricing Was Material To State Street's 2007 Financial Statements (This Alone Is An Independent Ground For Dismissal)

Plaintiffs allege -- without any factual basis whatsoever -- that "State Street's practice of overcharging its clients for [FX] trading services artificially inflated the Company's reported Class Period [FX] revenue prior to the June 2008 Offering by at least $383 million, or 30 percent."  (Compl. ¶ 436.) The Complaint then contains a chart purporting to show State Street's "Reported FX Revenue" and "Actual FX Revenue Without Fraud" during the last two quarters of 2006, 2007 and the first quarter of 2008.  (Id.)  With respect to 2007 (the only time period relevant to plaintiffs' claim against E&Y), the chart purports to show that State Street's "Actual FX Revenue Without Fraud" was $241 million less than its "Reported FX Revenue."  (Id.)

To the extent that plaintiffs appear to allege that the "artificial inflat[ion]" of FX revenue was due to fraud -- despite their disclaimer to the contrary (see Compl. ¶ 398) -- such allegations are

---

[13]      See also Fait v. Regions Fin. Corp., No. 09 Civ. 3161 (LAK), 2010 WL 1883487, at *6 (S.D.N.Y. May 10, 2010) (holding that allegation that the company "lacked internal controls" was "unsupported by appropriate facts [and] therefore are insufficient to state a claim" under § 11); c.f., In re The First Marblehead Corp. Sec. Litig., 639 F. Supp. 2d 145, 161 (D. Mass. 2009) (generalized statements regarding integrity, risk management, and fiscal discipline are not actionable).

required to satisfy Rule 9(b).  They clearly fail to do so.[14]  However, even under Rule 8, plaintiffs'

allegations concerning materiality are wholly speculative.

Indeed, the only plausible inference that could possibly be drawn from plaintiffs'

allegations is that the alleged 2007 inflation of revenue was not material to State Street's consolidated

financial statements taken as a whole.  As discussed above, plaintiffs' claim concerning FX pricing is

based entirely on the California AG's October 2009 complaint.  In that complaint, the California AG

alleged that State Street overcharged CalPERS and CalSTRS for FX trades by a total of $56 million over

eight years, or an average of $7 million per year (see Ex. C, ¶ 28) -- an amount that is utterly immaterial

to State Street's consolidated 2007 financial statements which reported annual revenue of $8.336 billion.[15]

(See 2007 Form 10-K, Ex. A at 77.)  Moreover, even if the Court were to credit plaintiffs' unsubstantiated

allegation that revenue was overstated by $241 million in 2007 (Compl. ¶ 436) -- which it should not --

that still amounts to less than three percent of State Street's 2007 revenue.[16]

In addition to the grounds for dismissal stated in part I above, parts II and III, below, set

out other, alternative grounds for dismissal.

---

[14]     Plaintiffs also allege that FX revenue was fraudulently inflated by 30% in "The Exchange Act Claims" section of the
Complaint.  As discussed in footnote 9, supra, plaintiffs expressly disclaimed reliance on such allegations with respect to their
Securities Act claims and they must be disregarded.  However, for the reasons stated in the State Street Defendants
Memorandum, those allegations lack merit in any event.

[15]     In fact, plaintiffs have no valid factual basis for their claims that State Street improperly overcharged CalSTRS and
CalPERS at all, or that FX revenue was inflated by $7 million per year as a result.  Plaintiffs cannot satisfy their pleading (or
Rule 11) obligations merely by parroting the allegations of a complaint in another action -- even a complaint filed by a
regulator.  See In re Connetics Corp. Sec. Litig., 542 F. Supp. 2d 996, 1005 (N.D. Cal. 2008) (dismissing complaint that relied
on complaint filed by SEC as the basis for its allegations); Dent v. U.S. Tennis Ass'n, Inc., No. CV-08-1533, 2008 WL
2483288, *3 (E.D.N.Y. 2008) ("[C]ourts have stricken allegations in complaints referring to investigations of allegations of
wrongdoing, even when conducted by governmental agencies."); Int'l Star Class Yacht Racing Ass'n v. Tommy Hilfiger
U.S.A., Inc., 146 F.3d 66, 70 (2d Cir. 1998) (court may take judicial notice of a document filed in another court only to
establish "the fact of such litigation," and "not for the truth of the matters asserted in the other litigation"); Nolte v. Capital One
Fin. Corp., 390 F.3d 311, 318 (4th Cir. 2004) (holding that a court cannot take judicial notice of, and so assume the truth of,
allegations in an SEC complaint; "[a]lthough the filing of an SEC complaint against [defendant] is indisputable, the facts
alleged therein are not.")

[16]     See Glassman v. Computervision Corp., 90 F.3d 617, 633 (1st Cir. 1996), (a "minor drop of a few percent" of actual
revenue is not adequate to support a claim that the omitted information was material); In re Segue Software, Inc. Sec. Litig.,
106 F. Supp. 2d 161, 170 (D. Mass. 2000) ("Minor adjustments in a company's gross revenues are not, as a rule, deemed
material by either accountants or the securities law."); Parnes v. Gateway 2000, Inc., 122 F.3d 539, 546 (8th Cir. 1997)
(overstatement of assets by two percent immaterial as a matter of law).

## II.    PLAINTIFFS FAIL TO STATE A CLAIM BASED ON E&Y'S OPINIONS BECAUSE THEY DO NOT ALLEGE ANY VIOLATIONS OF GAAP OR APPLICABLE AUDITING STANDARDS WITH RESPECT TO FX REVENUE

As noted above, plaintiffs have not alleged any violations of GAAP with respect to FX revenue.  Nor have they alleged that E&Y's 2007 audit failed to comply with any particular PCAOB Standards.  Therefore, plaintiffs are precluded from alleging -- as they must to state a claim -- that E&Y's opinions in its 2007 audit reports were subjectively false, i.e., that E&Y did not believe those opinions at the time they were issued.[17]

Plaintiffs' claim against E&Y is based on E&Y's 2007 audit reports.  Those reports each contain a clear factual basis for the opinions stated therein.  Specifically, E&Y's report on State Street's consolidated financial statements states that E&Y "audited the accompanying consolidated statement of condition of State Street Corporation as of December 31, 2007 and 2006" and "conducted [its] audit in accordance with [PCAOB Standards]."  (2007 Form 10-K, Ex. A, at 76.)  Similarly, E&Y's report on internal control over financial reporting stated that E&Y "audited State Street Corporation's internal control over financial reporting as of December 31, 2007, based on [the COSO criteria]," and "conducted [its] audit in accordance with [PCAOB Standards]."  (Id. at 134.)  The audit reports then go on to state E&Y's opinions, "based on [its] audits," that State Street's financial statements "present fairly, in all material respects, the consolidated financial position of State Street Corporation at December 31, 2007

---

[17]    Section 11 creates a cause of action based on untrue statements or omissions of a "material fact." 15 U.S.C. §77k(a)(4) (emphasis added).  In Virginia Bankshares, Inc. v. Sandberg, 501 U.S. 1083, 1092 (1991), the Supreme Court held that "statements of reasons or belief" (such as E&Y's opinions) may be factual in two senses:  "as statements that [the speakers] do act for the reasons given or hold the belief stated and as statements about the subject matter of the reason or belief expressed."  The Supreme Court therefore concluded that in order to state a claim based on an opinion, a complaint must allege both that the opinion "misstate[d] the psychological fact of the speaker's belief in what he says" and that it "asserted something false or misleading about its subject matter.  Id. at 1095-96.  Virginia Bankshares involved a claim under § 14(a) of the Exchange Act, but courts have consistently applied its holding to dismiss §11 claims based on opinions.  See, e.g., Fait v. Regions Fin., 2010 WL 883487, at *5 (dismissing § 11 claims against a company, its directors and its auditor because the complaint was "devoid of any allegation that defendants did not truly hold [the allegedly false] opinions at the time they were made public"); Belmont Holdings, 2010 WL 3545389, at *6 (dismissing § 11 claims against company and auditor where plaintiff failed to allege that defendants "did not actually hold the opinions" expressed); In re Lehman Bros. Sec. & Erisa Litig., 684 F. Supp. 2d 485, 495-96 (S.D.N.Y. 2010) (holding that for statements of opinion to be actionable under § 11, "the complaint must allege that the [defendants] did not truly hold those opinions at the time they were made public"); In re AOL Time Warner, Inc. Sec. & Erisa Litig., 381 F. Supp. 2d 192, 243 (S.D.N.Y. 2004) ("[T]he plaintiff must show both that the [defendant] did not actually hold the belief or opinion stated, and that the opinion stated was in fact incorrect.") (citation omitted).

15

and 2006… in conformity with [GAAP]" (<u>Id.</u> at  76), and that "State Street maintained, in all material respects, effective internal control over financial reporting as of December 31, 2007." (<u>Id.</u> at  134.)

E&Y's opinions stated in its 2007 audit reports cannot be read as isolated statements of absolute fact, separate from their stated bases.  In order to allege the falsity of those opinions, plaintiffs necessarily must address the factual basis for those opinions, <u>e.g.</u>, they must allege either that E&Y did not actually form its stated opinions based on its audits, or that E&Y did not conduct its audits in accordance with PCAOB Standards.  There are no such allegations in the Complaint.[18]  Instead, plaintiffs simply ask the Court to assume that, because two State Street customers later claimed that State Street overcharged them for FX trades, E&Y's audit opinions must have been false when E&Y issued them.  Such hindsight pleading -- which ignores the stated factual bases of E&Y's opinions, the express language of E&Y's audit reports, and the applicable professional standards -- is insufficient to state a plausible claim under § 11.[19]

## III.  PLAINTIFFS' CLAIMS ARE BARRED BY THE APPLICABLE ONE-YEAR STATUTE OF LIMITATIONS IN ANY EVENT

Plaintiffs' § 11 claim against E&Y should be dismissed for the reasons stated above. Independently, this Court should also dismiss that claim because MPERS -- the only plaintiff with standing to bring such a claim -- failed to assert it within the applicable one-year limitations period.

---

[18]      In other words, if E&Y's 2007 audit opinions were based on its audits, and those audits were conducted in accordance with PCAOB Standards -- and plaintiffs do not allege otherwise -- then E&Y's opinions could not be "false."  Any other conclusion misstates the nature of an audit and the role of an auditor as established by the applicable professional standards and set forth in the audit reports themselves.  <u>See</u> AU § 110.03 ("The financial statements are management's responsibility.  The auditor's responsibility is to <u>express an opinion</u> on the financial statements.")(emphasis added); 2007 Form 10-K, Ex. A, at 76 (same); AU §110.02 ("The auditor has a responsibility to plan and perform the audit to obtain <u>reasonable assurance</u> about whether the financial statements are free of material misstatement, whether caused by error or fraud.")(emphasis added); 2007 Form 10-K, Ex. A, at 76 (same); AU § 230.13 ("Since the auditor's opinion on the financial statements is based on the concept of obtaining reasonable assurance, <u>the auditor is not an insurer and his or her report does not constitute a guarantee</u>.") (emphasis added).  <u>See also</u> <u>Bily</u>, 834 P.2d at 763 ("[A]n audit report is a <u>professional opinion</u> based on numerous and complex factors" which "involve[e] discretion and judgment on the part of the auditor at every stage.") (emphasis added).

[19]      <u>See</u> <u>Dutton v. Harris Stratex Networks, Inc.</u>, --F.R.D.--, 2010 WL 2990017, at *5 (D. Del. July 22, 2010).  In <u>Harris Stratex</u>, the court held that the mere fact the company's financial statements were subsequently restated was insufficient to state a §11 claim against the company's auditor.  The court dismissed that claim because the plaintiffs failed to allege "which standards [the auditor] violated, how the statements made in the audit opinion were false or misleading at the time they were made, what deficiencies existed in the performance of the audit negating a reasonable basis for the audit opinion, and what aspects of the audit were negligently performed."  <u>Id.</u>

A. **Plaintiffs Had Actual Notice Of Their Section 11 Claim On January 16, 2009**

Section 13 of the Securities Act provides that "[n]o action shall be maintained to enforce any liability created under [§ 11] of this title unless brought within <u>one year</u> after the discovery of the untrue statement or the omission, or after such discovery should have been made by the exercise of reasonable diligence...."  15 U.S.C. § 77m (emphasis added).

Plaintiffs admittedly learned that the June 2008 Offering Materials contained untrue statements and omissions on January 16, 2009 when State Street filed a Form 8-K with the SEC.  (<u>See</u> Compl. ¶ 143, alleging that the "truth began to emerge.")[20]  Plaintiffs at that time had actual notice of alleged untrue statements and omissions concerning conduits in the June 2008 Offering Materials, therefore "they were on notice at the same time that the other statements in the [Offering Materials] relied upon were also false or misleading."  <u>In re USEC Sec. Litig.</u>, 190 F. Supp. 2d 808, 818 (D. Md. 2002.)

In <u>In re USEC</u>, plaintiffs alleged that a July 1998 prospectus contained numerous different misrepresentations, including, among others, misrepresentations concerning the new "AVLIS" technology being developed by the company.  On June 9, 1999, USEC announced that it was abandoning "AVLIS," which had been touted as the "cornerstone" of its business model.  Plaintiffs filed suit in October 2000. <u>Id.</u> at 813.  USEC argued that its June 1999 announcement constituted actual or constructive notice that the prospectus contained misrepresentations or omissions that were actionable under the Securities Act. <u>Id.</u> at 816.  The court agreed, and held that as a result of the June 1999 announcement concerning "AVLIS," all of plaintiffs § 11 claims were time-barred  because "plaintiffs were aware or should have been aware of sufficient facts to learn that a cause of action existed against defendants under the Securities Act" more than one year before they filed their complaint. <u>Id.</u> at 817.

---

[20]     Similarly, in their memorandum in support of their motion for appointment as lead plaintiffs, Lead Plaintiffs admitted that State Street's January 16, 2009 press release "revealed, among other things, that the Company was exposed to substantial and previously undisclosed risks and potential liabilities arising from State Street's off-balance sheet conduits, investment portfolios and securities lending operations."  (Memorandum Of Law In Support Of The Public Employees' Retirement System Of Mississippi's And Union Asset Management Holding AG's Motion For Appointment As Lead Plaintiff, Approval Of Their Selection Of Lead Counsel, and Consolidation Of All Related Actions, filed February 17, 2010, Docket 4, at 4 (hereinafter referred to as "Lead Plaintiff Memorandum").)

Here, as a result of State Street's January 16, 2009 disclosures, MPERS was aware or should have been aware of sufficient facts to learn that the 2008 Offering Materials contained alleged untrue statements or omissions, and MPERS therefore had notice of its purported claims under the Securities Act more than a year before it filed the Consolidated Class Action Complaint on June 25, 2010.

**B.    The Statute Of Limitations Was Not Tolled By
        The Filing Of The Earlier Complaints In This Action**

The statute of limitations applicable to plaintiffs' § 11 claim was not tolled by the filing of the earlier complaints in this action.

The first of those complaints, captioned <u>Hill v. State Street Corp. et al.</u>, No. 09-cv-12146 (the "Hill Complaint"), was filed on December 18, 2009, but it did not assert any claims under § 11 of the Securities Act.  Nor did it name E&Y as a defendant.

The second complaint, captioned <u>Demory v. State Street Corp. et al</u>, No. 10-cv-10064 (the "Demory Complaint"), was filed by plaintiff Marilyn Demory on January 15, 2010 -- the last possible day within the one-year statute of limitations period.  The Demory Complaint purported to assert a §11 claim against E&Y "on behalf of all members of the Class who purchased or otherwise acquired the securities sold pursuant and/or traceable to the [June 2008] Offering."  (Demory Complaint ¶125.)  However, Demory herself patently lacked standing to bring a §11 claim because she did not purchase State Street stock pursuant and/or traceable to the June 2008 Offering.[21]  Therefore, plaintiffs here may not claim the benefit of tolling under <u>American Pipe & Construction Co. v. Utah</u>, 414 U.S. 538 (1974).

In <u>In re Elscint, Ltd. Sec. Litig.</u>, 674 F. Supp. 374 (D. Mass. 1987), the court denied class certification and dismissed §11 claims because the named plaintiff lacked standing.  Thereafter, new

---

[21]    Although Demory alleged that she "purchased State Street common stock during the Class Period and on the Offering" (Demory Complaint ¶ 13), the PSLRA certification to her complaint shows that her only purchase of State Street stock occurred on July 3, <u>2007</u>, eleven months before the June 2008 Offering.  "In order to state a claim [under §11], aftermarket purchasers must be able to trace their shares to an allegedly misleading registration statement."  <u>In re Transkaryotic Therapies, Inc. Sec. Litig.</u>, 319 F. Supp. 2d 152, 158-59 (D. Mass. 2004) (dismissing §11 claims of plaintiffs whose shares were not traceable to a public offering), <u>citing</u> <u>DeMaria v. Andersen</u>, 318 F.3d 170, 178 (2d Cir. 2003) and <u>Cooperman v. Individual, Inc.</u>, No. 96-12272-DPW, 1998 WL 953726, at *6 (D. Mass. May 27, 1998).

putative class representatives -- who, unlike the original plaintiff, purchased shares of Elscint common stock traceable to Elscint's public offering -- filed a motion for leave to intervene. Id. at 376. Defendants argued that the intervenors' class claims were time-barred. Id. The court denied the motion to intervene and held that American Pipe tolling did not apply where the original plaintiff lacked standing:

> I am troubled by the potential abuse of a rule extending class action tolling to all cases in which certification is denied for lack of standing… [I]n certain circumstances the allowance of intervention after certification has been denied for lack of standing may condone or encourage attempts to circumvent the statute of limitation by filing a lawsuit without an appropriate plaintiff and then searching for one who can later intervene with the benefit of the tolling rule. I conclude that this practice is an impermissible use of intervention, akin to the improper use of intervention to manufacture jurisdiction… [I]t would be improper to allow the filing of a class action by nominal plaintiffs who are wholly inadequate to represent the asserted class to have the effect of tolling limitation to permit the otherwise untimely intervention of proper class representatives.

Id. at 378. See also Fleming v. Bank of Boston Corp., 127 F.R.D. 30 (D. Mass. 1989) (denying motions to intervene and holding that American Pipe did not apply to toll the statute of limitations where the original named plaintiff lacked standing to bring the claims asserted).[22]

Under Elscint and Fleming, the Demory Complaint did not toll the statute of limitations applicable to MPERS §11 claim. Analytically, MPERS's motion for appointment as lead plaintiff is equivalent to the motions to intervene in Elscint and Fleming. Litigants should not be permitted to circumvent the statute of limitations by the filing of a complaint (at the absolute last hour) by a wholly improper plaintiff (Demory) followed weeks or months later by a substitute lead plaintiff with standing (MPERS). This is precisely the approach that troubled the court in Elscint, and allowing it would misuse

---

[22] This rule has been applied in other jurisdictions. See, e.g., Warden v. Crown Am. Realty Trust, No. Civ. A. 96-25J, 1998 WL 725946, at *7 (W.D. Pa. Oct. 15, 1998) (granting motion to dismiss §11 claims for lack of standing and declining to permit intervention to substitute another plaintiff "into an otherwise defunct claim"); In re Crazy Eddie Sec. Litig., 747 F. Supp. 850, 856 (E.D.N.Y. 1990) (holding that American Pipe tolling did not apply to §11 claims asserted in amended complaint that added a new plaintiff who had standing). Most recently, in Public Employees' Retirement Sys. Of Mississippi v. Merrill Lynch & Co., --F. Supp. 2d --, 2010 WL 2175875 (S.D.N.Y. June 1, 2010), the court dismissed for lack of standing §11 claims asserted by MPERS -- one of the lead plaintiffs in this action -- based on 65 offerings in which MPERS had not itself purchased securities. The court denied MPERS leave to add additional plaintiffs who had purchased securities in those 65 offerings because "this addition would at this point be futile, since . . . the claims of any such new plaintiffs would be time-barred." Id. at *3 (citation omitted).

the PSLRA's lead plaintiff procedures to extend the statute of limitations in every §11 case while a nominal plaintiff is used to reserve a place for a legitimate plaintiff with standing.

MPERS cannot credibly claim that it detrimentally relied on the Demory Complaint in refraining from bringing its own timely §11 claim against E&Y. The Demory Complaint was filed on the last possible day under the statute of limitations period, so by the time any other prospective plaintiff (such as MPERS) received or reviewed it, it was already too late to file an independent timely §11 claim. Moreover, even a cursory review of the Demory Complaint and attached certification by a prospective plaintiff would have revealed that Demory did not purchase State Street stock in the June 2008 Offering and therefore lacked standing to assert a §11 claim, making any reliance thereon unreasonable. This is especially true for a plaintiff like MPERS, who has admitted to being a "sophisticated institutional investor[]" with "substantial experience serving as . . . [a plaintiff] in securities class action litigation." (See Lead Plaintiff Memorandum, at 3.)

## CONCLUSION

For the foregoing reasons, the § 11 claim against Ernst & Young LLP should be dismissed.

Dated: September 24, 2010
      Boston, Massachusetts

Respectfully submitted,

/s/ Thomas J. Dougherty
Thomas J. Dougherty (BBO #132300)
Kara E. Fay  (BBO #638260)
SKADDEN, ARPS, SLATE,
   MEAGHER & FLOM LLP
One Beacon Street
Boston, Massachusetts  02108
(617) 573-4800
dougherty@skadden.com

Counsel for Defendant
Ernst & Young LLP

### Certificate Of Service

I, Thomas J. Dougherty, hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing and paper copies will be sent to those indicated as non-registered participants on September 24, 2010.

Dated:  September 24, 2010

/s/ Thomas J. Dougherty
Thomas J. Dougherty