# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS

_____
                                        )
HILL v. STATE STREET CORPORATION        )
                                        )
_____)          Master Docket No. 1:09-cv-12146
                                        )
THIS DOCUMENT RELATES TO THE            )
SECURITIES ACTIONS                      )
                                        )
Docket No. 09-cv-12146                  )
                                        )
_____)


## STATE STREET AND UNDERWRITER DEFENDANTS'
## REPLY MEMORANDUM IN SUPPORT OF THEIR MOTIONS TO DISMISS

### (LEAVE TO FILE EXCESS PAGES GRANTED DECEMBER 8, 2010)


### ORAL ARGUMENT REQUESTED


Jeffrey B. Rudman (BBO No. 433380)      Stephen D. Poss (BBO No. 551760)
William H. Paine (BBO No. 550506)       Daniel P. Roeser (BBO No. 675223)
John J. Butts (BBO No. 643201)          GOODWIN PROCTER LLP
Timothy Perla (BBO No. 660447)          53 State Street
WILMER CUTLER PICKERING                 Boston, Massachusetts  02109
HALE AND DORR LLP
60 State Street
Boston, Massachusetts  02109

# TABLE OF CONTENTS

Page

I.     **INTRODUCTION**..............................................................................................1

II.    **THE OPPOSITION CONFIRMS THE DEFICIENCY OF PLAINTIFFS' EXCHANGE ACT ALLEGATIONS**..................................................................2

    A.     Plaintiffs' FX Allegations Fail To State A Claim.....................................2

        1.     Plaintiffs Fail To Establish Any Adequately Alleged False Or Misleading FX Statement Or Omission........................................2

            a)     FX Claims Based On Superseded Relator's Allegations Lack An Adequate Factual Basis.......................................3

            b)     Plaintiffs Cannot Rely On The AGO's Allegations.........................4

            c)     Plaintiffs' Purported "Investigation" Adds Nothing.......................6

        2.     The Challenged FX-related Statements Are Immaterial As A Matter Of Law.................................................................................9

            a)     Materiality May Be Decided On This Motion To Dismiss..............9

            b)     There Is No Factual Basis For Plaintiffs' Computations Or Allegations Of Widespread Fraud...................................9

            c)     The Alleged Drop In State Street's Stock Price Does Not Establish Materiality.....................................................11

            d)     Plaintiffs' Other Materiality Theories Also Fail...........................12

    B.     Plaintiffs' Internal Control Allegations Do Not Salvage Their Complaint...........13

    C.     Plaintiffs' Conduit And Investment Portfolio Allegations Fail To State A Claim.........................................................................................15

        1.     The Record Before This Court Shows That The Challenged Statements Concerned Credit Quality And Were Not Misleading...............................16

        2.     Defendants' Statements About "High Quality" Are Inactionable Opinions.................................................................................19

    D.     Plaintiffs Concede No GAAP Violation Occurred.................................21

    E.     Plaintiffs' Scienter Allegations Are Also Fatally Deficient....................21

        1.     Plaintiffs Fail To Allege Scienter As To The Individual Defendants........23

        2.     Plaintiffs Fail To Plead State Street's Scienter..........................25

        3.     Plaintiffs' Other Scienter Theories Are Without Merit.....................27

**III.    THE SECURITIES ACT CLAIMS SHOULD BE DISMISSED** ...............................**30**

    A.     Plaintiffs' Claims Are Time-barred ........................................................31

           1.      Plaintiffs' Claims Were Not Tolled By The Demory Complaint ..............31

           2.      Plaintiffs' Claims Regarding The Conduits And Investment Portfolio Do Not Relate Back To The Demory Complaint ......................34

           3.      Plaintiffs' Claims Regarding FX Practices And Internal Controls Are Time-barred.......................................................................................38

    B.     Plaintiffs Did Not Timely Serve The Underwriters.............................................39

    C.     Plaintiffs Do Not Allege An Actionable Misstatement Or Omission...................41

           1.      The FX Transaction Allegations Do Not State A Claim ...........................41

           2.      The Internal Control Allegations Do Not State A Claim...........................42

           3.      The Conduit And Investment Portfolio Allegations Do Not State A Claim...................................................................................................43

    D.     The Complaint Does Not Allege Scienter, As Required Because Plaintiffs' Claims Sound In Fraud ........................................................................................45

    E.     Plaintiffs Lack Standing To Bring A Section 12(a)(2) Claim Against State Street Or The Underwriters..................................................................................47

**IV.    CONCLUSION** ...........................................................................................................**48**

# TABLE OF AUTHORITIES

<u>Federal Cases</u>

*Acito v. Imcera Grp., Inc.*,
  47 F.3d 47 (2d Cir. 1995) ................................................................................................... 25

*Advanced Portfolio Techs., Inc. v. Advanced Portfolio Techs., Ltd.*,
  94-cv-5620, 1999 WL 64283 (S.D.N.Y. Feb. 8, 1999) .......................................................... 40

*Alaska Elec. Pension Fund v. Pharmacia Corp.*,
  554 F.3d 342 (3d Cir. 2009)................................................................................................. 12

*Aldridge v. A.T. Cross Corp.*,
  284 F.3d 72 (1st Cir. 2002).................................................................................................. 25

*American Pipe & Construction Co. v. Utah*,
  414 U.S. 538 (1974)............................................................................................................. 32

*American Pipe and Crown, Cork & Seal Co. v. Parker*,
  462 U.S. 345 (1983)............................................................................................................. 35

*Ark. Pub. Employees Ret. Sys. v. GT Solar Int'l, Inc.*,
  No. 08-CV-312, 2009 WL 3255225 (D.N.H. Oct. 7, 2009) ................................................... 47

*Atlas v. Accredited Home Lenders Holding Co.*,
  556 F. Supp. 2d 1142 (S.D. Cal. 2008)................................................................................. 21

*Barna v. Morgan*,
  341 F. Supp. 2d 164 (N.D.N.Y. 2004).................................................................................. 37

*Boilermakers Nat'l Annuity Trust Fund v. WAMU Mortg. Pass Through Certificates*,
  No. 09-cv-00037-MJP, 2010 WL 3815796 (W.D. Wash. Sept. 28, 2010)........................ 33, 34

*Cal. Pub. Employees' Ret. Sys. v. Chubb Corp.*,
  2002 U.S. Dist. LEXIS 27189 (D.N.J. June 26, 2002) .......................................................... 35

*City of Monroe Employees Ret. Sys. v. Bridgestone Corp.*,
  399 F.3d 651 (6th Cir. 2005) ............................................................................................... 21

*City of Roseville Emps. Ret. Sys. v. Horizon Lines, Inc.*,
  686 F. Supp. 2d 404 (D. Del. 2009)...................................................................................... 22

*Connelly v. General Medical Corp.*,
  880 F. Supp. 1100 (E.D. Va. 1995) ...................................................................................... 21

*Cook v. Avien, Inc.*,
  573 F.2d 685 (1st Cir. 1978)................................................................................................ 39

*Coons v. Industrial Knife Co.*,
  620 F.3d 38 (1st Cir. 2010) ........................................................................ 37, 38

*Cromwell v. Ionics, Inc.*,
  343 F. Supp. 2d 1 (D. Mass. 2004) .................................................................. 15

*Del Raine v. Carlson*,
  826 F.2d 698 (7th Cir. 1987) .......................................................................... 40

*Demarco v. DepoTech Corp.*,
  149 F. Supp. 2d 1212 (S.D. Cal. 2001) .......................................................... 7, 14

*Denny v. Barber*,
  576 F.2d 465 (2d Cir. 1978)............................................................................ 17

*EAC & Local 134 IBEW Joint Pension Trust of Chi. v. JP Morgan Chase Co.*,
  553 F.3d 187 (2d Cir. 2009)............................................................................ 25

*Eckstein v. Balcor Film Investors*,
  58 F.3d 1162 (7th Cir. 1995) .......................................................................... 39

*Edwards v. Ocwen Federal Bank, FSB*,
  No. 08-317, 2010 WL 398902 (D.N.J. Jan. 25, 2010)...................................... 37

*Ernst & Ernst v. Hochfelder*,
  425 U.S. 185 (1976)........................................................................................ 17

*Evanowski v. BankWorcester*,
  788 F. Supp. 611 (D. Mass 1991) ................................................................... 13

*Ezra Charitable Trust v. Tyco Int'l, Ltd.*,
  466 F.3d 1 (1st Cir. 2006)............................................................................... 28

*Fin. Acquisition Partners LP v. Blackwell*,
  440 F.3d 278 (5th Cir. 2006) ............................................................................ 7

*Fleming v. Bank of Bos. Corp.*,
  127 F.R.D. 30 (D. Mass. 1989)....................................................................... 33

*Fox v. First BanCorp, Civil No.*
  05-2148 (GAG), 2006 WL 4128534 (D.P.R. Nov. 6, 2006) ................................ 12

*Friedman v. Estate of Presser*,
  929 F.2d 1151(6th Cir. 1991) ......................................................................... 40

*Fuente v. DCI Telecomms., Inc.*,
  259 F. Supp. 2d 250 (S.D.N.Y. 2003)................................................................ 8

*Geinko v. Padda,*
   No. 00-c-5070, 2002 WL 276236 (N.D. Ill. Feb. 27, 2002) ...................................................... 4

*Glickman v. Alexander & Alexander Servs., Inc.,*
   No. 93 Civ. 7594 (LAP), 1996 WL 88570 (S.D.N.Y. Feb. 29, 1996)...................................... 24

*Greebel v. FTP Software, Inc.,*
   194 F. 3d 185 (1st Cir. 1999) ................................................................................................... 5

*Hunt v. Department of Air Force,*
   149 F.R.D. 657(M.D. Fl. 1993) ............................................................................................... 37

*In re Advanta Corp. Sec. Litig.,*
   180 F.3d 525 (3d Cir. 1999)..................................................................................................... 20

*In re Allied Capital Corp. Sec. Litig.,*
   No. 02-3812 (GEL), 2003 WL 1964184 (S.D.N.Y. Apr. 25, 2003)................................... 11, 19

*In re Atlas Air Worldwide Holdings, Inc. Sec. Litig.,*
   324 F. Supp. 2d 474 (S.D.N.Y. 2004)...................................................................................... 47

*In re Bally Total Fitness Sec. Litig.,*
   Nos. 04 C 3530, 04 C 3634, 04 C 3713, 04 C 3783, 04 C 3844, 06 C 3936, 04 C 4697, 04 C
   1437, 2006 WL 3714708 (N.D. Ill. July 12, 2006).................................................................. 30

*In re Biogen Sec. Litig.,*
   179 F.R.D. 25 (D. Mass. 1997)................................................................................................ 17

*In re Biopure Corp. Derivative Litig.,*
   424 F. Supp. 2d 305 (D. Mass. 2006) ........................................................................................ 8

*In re Brooks Automation, Inc. Sec. Litig.,*
   No. 06-11068-RWZ, 2007 WL 4754051 (D. Mass. Nov. 6, 2007)......................................... 22

*In re Cabletron Sys., Inc.,*
   311 F.3d 11 (1st Cir. 2002)...................................................................................................... 26

*In re Capstead Mortgage Corp. Sec. Litig.,*
   258 F. Supp. 2d. 553 (N.D. Tex. 2003) ................................................................................... 27

*In re Celestica Inc. Sec. Litig.,*
   No. 07 CV 312(GBD), 2010 WL 4159587 (S.D.N.Y. Oct. 14, 2010) ..................................... 22

*In re Ceridian Corp. Sec. Litig.,*
   542 F.3d 240 (8th Cir. 2008) ................................................................................................... 29

*In re Chaus Sec. Litig.,*
   801 F. Supp. 1257 (S.D.N.Y. 1992).................................................................................... 37, 38

*In re Colonial Ltd. P'ship Litig.*,
854 F. Supp. 64 (D. Conn. 1994) ................................................................. 34

*In re Comshare Inc. Sec. Litig.*,
183 F.3d 542 (6th Cir. 1999) ...................................................................... 24

*In re Connectics Corp. Sec. Litig.*,
542 F. Supp. 2d 996 (N.D. Cal. 2008) ........................................................... 9

*In re Countrywide Fin. Corp. Derivative Litig.*,
554 F. Supp. 2d 1044 (C.D. Cal. 2008) ......................................................... 21

*In re Crazy Eddie Sec. Litig.*,
747 F. Supp. 850 (E.D.N.Y. 1990) ................................................................ 34

*In re Credit Suisse First Bos. Corp.*,
No. 02-12056, 2005 WL 852455 (D. Mass. Mar. 31, 2005) ................................... 20

*In re Dell Inc., Sec. Litig.*,
591 F. Supp. 2d 877 (W.D. Tex. 2008) ........................................................... 24

*In re Elscint, Ltd. Sec. Litig.*,
674 F. Supp. 374 (D. Mass. 1987) ................................................................ 33

*In re Enron Corp. Sec., Derivative & "ERISA" Litig.*,
529 F. Supp. 2d 644 (S.D. Tex. 2006) ........................................................... 35

*In re Evergreen Ultra Short Opportunities Fund Sec. Litig.*,
No. 08-11064, 2010 WL 1253114 (D. Mass. Mar. 31, 2010) ................................. 45

*In re Express Scripts*,
No. 4:04-cv-1009 HEA, 2010 WL 2671456 (E.D. Mo. June 30, 2010)........................ 4

*In re Ferro Corp.*,
Nos. 1:04CV1440, 1:04CV1589, 2007 WL 1691358 (N.D. Ohio June 11, 2007)............. 24, 30

*In re Flag Telecom Holdings, Ltd. Sec. Litig.*,
352 F. Supp. 2d 429 (S.D.N.Y. 2005).............................................................. 35

*In re H&R Block Sec. Litig.*,
527 F. Supp. 2d 922 (W.D. Mo. 2007) ........................................................... 29

*In re Healthco Int'l, Inc. Sec. Litig.*,
777 F. Supp. 109 (D. Mass. 1991) ................................................................ 17

*In re Initial Public Offering Sec. Litig.*,
241 F. Supp. 2d 281 (S.D.N.Y. 2003)............................................................... 2

*In re Juniper Networks, Inc. Sec. Litig.*,
  542 F. Supp. 2d 1037 (N.D. Cal. 2008) ........................................................... 36, 38

*In re Majesco Sec. Litig.*,
  No. 05-3557, 2006 WL 2846281 (D.N.J. Sep. 29, 2006) ....................................... 47

*In re McKesson HBOC Sec. Litig.*,
  126 F. Supp. 2d 1248 (N.D. Cal. 2000) ................................................................. 6

*In re Mexico Money Transfer Litig.*,
  267 F.3d 743 (7th Cir. 2001) ......................................................................... 11, 28

*In re New Century*,
  588 F. Supp. 2d 1206 (C.D. Cal. 2008) ................................................................ 21

*In re Number Nine Visual Tech. Corp. Sec. Litig.*,
  51 F. Supp. 2d 1 (D. Mass. 1999) ........................................................................ 47

*In re PMA Capital Corp. Sec. Litig.*,
  No. 03-6121, 2005 WL 1806508 (E.D. Pa. Jul. 27, 2005) ...................................... 15

*In re PolyMedica Corp. Sec. Litig.*,
  432 F.3d 1 (1st Cir. 2005) .................................................................................... 12

*In re Seagate Tech. II Sec. Litig.*,
  802 F. Supp. 271 (N.D. Cal. 1992) ................................................................. 12, 19

*In re Sonus Networks, Inc. v. Securities Litigation*,
  No. Civ.A.04-10294-DPW, 2006 WL 1308165 (D. Mass. May 10, 2006) ....... 26, 47

*In re Sterling Foster & Co. Sec. Litig.*,
  222 F. Supp. 2d 216 (E.D.N.Y. 2002) .................................................................. 48

*In re Stone & Webster Inc., Sec. Litig.*,
  424 F.3d 24 (1st Cir. 2005) .................................................................................. 26

*In re Suprema Specialties, Inc. Sec. Litig.*,
  438 F.3d 256 (3d Cir. 2006) ................................................................................. 47

*In re Syntex Corp. Sec. Litig.*,
  95 F.3d 922 (9th Cir. 1996) ................................................................................. 35

*In re The First Marblehead Corp. Sec. Litig.*,
  639 F. Supp. 2d 145 (D. Mass. 2010) .................................................................. 17

*In re TJX Cos. Retail Sec. Breach Litig.*,
  564 F.3d 489 (1st Cir. 2009) ................................................................................. 8

*In re Transkaryotic Therapies, Inc. Sec. Litig.*,
   319 F. Supp. 2d 152 (D. Mass. 2004) ................................................................. 33

*In re USEC Sec. Litig.*,
   190 F. Supp. 2d 808 (D. Md. 2002) ..................................................................... 39

*In re Vivendi Universal, S.A. Sec. Litig.*,
   381 F. Supp. 2d 158 (S.D.N.Y. 2003)................................................................... 21

*In re Washington Mutual, Inc. Sec. Deriv. & ERISA Litig.*,
   259 F.R.D. 490  (W.D. Wash. 2009) ..................................................................... 15

*In re Wells Fargo Mortgage-Backed Certificates Litig.*,
   No. 09-cv-01376-LHK, 2010 WL 4117477 (N.D. Cal. Oct. 19, 2010)............................ passim

*In re WRT Energy Sec. Litig.*,
   No. 96-3610, 1997 WL 576023 (S.D.N.Y. Sept. 15, 1997) ................................................... 48

*Ingenito v. Bermec Corp.*,
   441 F. Supp. 525 (S.D.N.Y. 1977)........................................................................ 39

*Isham v. Perini Corp.*,
   665 F. Supp. 2d 28 (D. Mass. Oct. 7, 2009) .......................................................... 26

*Joffee v. Lehman  Bros, Inc.*,
   410 F. Supp. 2d 187 (S.D.N.Y. 2006)................................................................... 20

*Johns v. Bayer Corp.*,
   No. 09-cv-1935 DMS (JMA) 2010 WL 2573493 (S.D. Cal. June 24, 2010) ............................ 8

*Kauthar SDN BHD v. Sternberg*,
   149 F.3d 659 (7th Cir. 1998) ................................................................................ 39

*Kenney v. State Street Corp.*,
   694 F. Supp. 2d 67 (D. Mass. 2010) ................................................... 16, 17, 28, 45

*Konkol v. Diebold, Inc.*,
   590 F.3d 390 (6th Cir. 2006) ................................................................................ 22

*Kroungold v. Triester*,
   407 F. Supp. 414 (E.D. Pa. 1975) ......................................................................... 39

*Krupski v. Costa Crociere S.p.A.*,
   130 S. Ct. 2485 (2010).................................................................................... 36, 38

*Kruse v. Wells Fargo Home Mortgage, Inc.*,
   No. 02-CV-3089 (ILG), 2006 WL 1212512 (E.D.N.Y. May 3, 2006).................................... 34

*Lerner v. FNB Rochester Corp.*,
  841 F. Supp. 97 (W.D.N.Y. 1993) ................................................................................. 19, 20

*Martin v. Wilks*,
  490 U.S. 755 (1989) .................................................................................................... 40

*McDonald v. Sec. of Health and Human Servs.*,
  834 F.2d 1085 (1st Cir. 1987) .................................................................................... 33

*Me. State Ret. Sys. v. Countrywide Fin. Corp.*,
  2:10-cv-00302, 2010 WL 4452571 (C.D. Cal. Nov. 4, 2010) ..................................... 39

*New Hampshire v. Maine*,
  532 U.S. 742 (2001) .................................................................................................... 36

*Osher v. JNI Corporation*,
  256 F. Supp. 2d 1144 (S.D. Cal. 2003) ................................................................. 2, 30

*Palmer v. Stassinos*,
  236 F.R.D. 460 (N.D. Cal. 2006) ........................................................................... 33, 36

*Peralta v. Heights Medical Center, Inc.*,
  485 U.S. 80 (1988) ...................................................................................................... 40

*Pub. Emps. Ret. Sys. of Miss. v. Merrill Lynch & Co. Inc.*,
  714 F. Supp. 2d 475 (S.D.N.Y. 2010) .................................................................... 33, 34

*Rombach v. Chang*,
  355 F.3d 164 (2d Cir. 2004) ....................................................................................... 47

*Rosenberg v. Gould*,
  554 F.3d 962 (11th Cir. 2009) .................................................................................... 25

*Rosenzweig v. Azurix Corp.*,
  332 F.3d 854 (5th Cir. 2003) ...................................................................................... 30

*Roth v. OfficeMax, Inc.*,
  527 F. Supp. 2d 791 (N.D. Ill. 2007) ........................................................................... 7

*Schwartz v. Celestial Seasonings*,
  178 F.R.D. 545 (D. Colo. 1998) .................................................................................. 19

*Scott v. Guarantee Reserve Life Ins. Co.*,
  No. 95-C-6622, 1998 WL 177954 (N.D. Ill. April 7, 1998) ........................................ 37

*SEC v. Lee*,
  Nos. 08-cv-9961, 08-cv-9962, 09-cv-3677, 09-cv-7557, 2010 WL 2594280 (S.D.N.Y. June 18,
  2010) ............................................................................................................................ 8

*SEC v. Patel*,
No. 07-0039-SM, 2008 WL 782483 (D.N.H. Mar. 24, 2008) .................................................. 46

*Serabian v. Amoskeag Bank Shares, Inc.*,
24 F.3d 357 (1st Cir. 1994) ........................................................................................ 21

*Shapiro v. UJB Fin. Corp.*,
964 F.2d 272 (3d Cir. 1992) ........................................................................................ 21

*Shaw v. Digital Equip. Corp.*,
82 F.3d 1194 (1st Cir. 1996) .................................................................................. 21, 47

*South Ferry LP No. 2 v. Killinger*,
542 F.3d 776 (9th Cir. 2008) ....................................................................................... 30

*Southland Sec. Corp. v. INSpire Ins. Solutions, Inc.*,
365 F.3d 353 (5th Cir. 2004) .................................................................................. 26, 27

*Stein v. Reynolds Securities, Inc.*,
667 F.2d 33 (11th Cir. 1982) ....................................................................................... 37

*Stein v. Smith*,
270 F. Supp. 2d 157 (D. Mass. 2003) ........................................................................... 17

*Stumpf v. Garvey*,
No. 03-1352-PB, 02-MDL-1335-PB, 2005 WL 2127674 (D.N.H. Sept. 2, 2005) .................. 46

*Teamsters Local 445 Freight Div. Pension Fund v. Dynex Capital, Inc.*,
531 F.3d 190 (2d Cir. 2008) ........................................................................................ 26

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
551 U.S. 308 (2007) .......................................................................................... passim

*United Electrical, Radio and Machine Workers of Am. v. 163 Pleasant St. Corp.*,
960 F.2d 1080 (1st Cir. 1992) ...................................................................................... 40

*United States v. Rodrigue*,
645 F. Supp. 2d 1310 (Ct. Int'l Trade 2009) .................................................................. 40

*Virginia Bankshares, Inc. v. Sandberg*,
501 U.S. 1083 (1991) ............................................................................................ 20, 21

*Walters v. Edgar*,
163 F.3d 430 (7th Cir. 1998) ....................................................................................... 33

*Wilson v. Grumman Ohio Corp.*,
815 F.2d 26 (6th Cir. 1987) ........................................................................................ 37

*Young v. Lepone*,
   305 F.3d 1 (1st Cir. 2002) ......................................................................... 36

*Yu v. State Street Corp.*,
   08 MDL No. 1945, 08-CV-8235, 2010 WL 2816259 (S.D.N.Y. July 14, 2010) ................... 45

*Yu v. State Street Corp.*,
   686 F. Supp. 2d 369 (S.D.N.Y. 2010) ............................................................ 45

*Zenith Radio Corp. v. Hazeltine Research, Inc.*,
   395 U.S. 100(1969) ................................................................................ 40

*Zucco Partners, LLC v. Digimarc Corp.*,
   552 F.3d 981 (9th Cir. 2009) ...................................................................... 25

<u>State Cases</u>

*Brehm v. Eisner*,
   746 A.2d 244, 249 (Del. 2000) .................................................................. 6, 7

## I.     INTRODUCTION

In order to state a claim under the Exchange Act or the Securities Act, Plaintiffs must plead, respectively, a particular or at least plausible factual basis for their conclusion that State Street's disclosures, or the June 2008 offering materials, included a material misrepresentation.  The opening brief ("Mem.") of State Street, the individual defendants, and the underwriter defendants (collectively "Defendants") included a detailed summary of the factual context for the statements that Plaintiffs challenge as misrepresentations, showing why--in context--they were not misleading.  Plaintiffs for the most part do not attempt to address this showing.  Instead, they repeat the Complaint's deficient conclusions (at great length) without rehabilitating them, and assert incorrectly that Defendants' arguments are foreclosed by rulings in other cases.[1]

Along the way, without squarely admitting as much, Plaintiffs retreat from core theories of the Complaint.  For example, the Complaint alleged that the financial statements for the conduits were required under the accounting rules to be consolidated earlier than they were.  (Compl. ¶¶ 214-15).  Plaintiffs' brief ("Opp."), however, offers no response to Defendants' showing that their accounting theory is utterly incorrect.  (Mem. at 42-45).  Similarly, Plaintiffs have retreated from the Complaint's FX "scheme" allegations by declining to rebut State Street's showing that Plaintiffs may not rely on recycled allegations from the Relator's superseded complaint, and by seeking instead to breathe life only into insufficient allegations of the California Attorney General's Office

---

[1]     This brief is submitted jointly by State Street, the individual defendants, and the underwriters, although they are not all subject to the same claims.  Plaintiffs do not sue the individual defendants under Section 12 of the Securities Act, and do not sue the underwriters under the Exchange Act.  Because certain claims and arguments do pertain to all defendants, in the interest of avoiding duplicative briefing and undue burden on the Court, Defendants have submitted a joint brief.  Each joins in the submission to the extent that the arguments and discussions apply to the claims against such defendants.

("AGO"). Plaintiffs' Exchange Act claims also fail for other reasons, including the Complaint's lack of a factual basis for a strong inference of scienter.

Moreover, Plaintiffs' Securities Act claims must be dismissed because Plaintiffs' claims are time-barred, Plaintiffs did not timely serve the underwriters of the June 2008 offering from which their claims arise, Plaintiffs' generic supposed disclosure deficiencies are not even alleged to apply to the June 2008 offering materials, Plaintiffs have not adequately alleged scienter as required because their claims sound in fraud, and Plaintiffs lack standing under Section 12(a)(2).

## II.     THE OPPOSITION CONFIRMS THE DEFICIENCY OF PLAINTIFFS' EXCHANGE ACT ALLEGATIONS

### A.     Plaintiffs' FX Allegations Fail To State A Claim

#### 1.     Plaintiffs Fail To Establish Any Adequately Alleged False Or Misleading FX Statement Or Omission

Plaintiffs' remarkable assertion that Defendants "recognize that the Complaint alleges in detail numerous false and misleading statements and omissions" relating to FX, (Opp. at 31 n.15), utterly ignores Defendants' showing that, in context, none of the challenged FX-related statements were materially false or misleading. (Mem. at 1-6, 21-29). Accordingly, Plaintiffs' FX-related claims must be dismissed.[2]

---

[2]     Plaintiffs assert, incorrectly and in the alternative, that if they adequately plead a material "scheme" to defraud then they need not allege a false or misleading statement or omission. (Opp. at 31 n.15). In fact, including "scheme" allegations does not obviate the requirement that Plaintiffs must plead "misleading statements themselves" to advance an Exchange Act claim. *See In re Initial Public Offering Sec. Litig.*, 241 F. Supp. 2d 281, 297 (S.D.N.Y. 2003)*; In re Ferro Corp.*, Nos. 1:04CV1440, 1:04CV1589, 2007 WL 1691358, at *10 (N.D. Ohio June 11, 2007). Plaintiffs' alleged "scheme" cannot "compensate for the gaping holes in [an] implausible securities fraud theory." *See In re Ferro Corp.*, 2007 WL 1691358, at *12, 20 (dismissing complaint despite alleged fraudulent "scheme" for failure adequately to allege any misstatement with scienter); *Osher v. JNI Corp.*, 256 F. Supp. 2d 1144, 1153-54 (S.D. Cal. 2003) (dismissing complaint despite alleged scheme because of inadequate allegations of false or misleading statements). Moreover, to state a claim, Plaintiffs must allege particular facts plausibly supporting the conclusion that State Street schemed to defraud *them* (and other shareholders), not State Street customers. *See In re Initial Public Offering Sec. Litig.*, 241 F. Supp. 2d at 297 ("Plaintiffs must plead . . . intent to defraud investors"). They have done neither. Finally, Plaintiffs fail adequately to allege materiality or scienter. *See infra* at 21.

### a)     FX Claims Based On Superseded Relator's Allegations Lack An Adequate Factual Basis

Defendants' brief showed that Plaintiffs' FX claims depend exclusively on (1) abandoned allegations in a state court complaint filed by an anonymous "Relator"; (2) different inadequate allegations in the superseding complaint filed by the AGO; and (3) inconsequential information supplied by anonymous "others" in connection with Plaintiffs' counsel's so-called "investigation."  (Mem. at 1, 23-26).  In response, the Opposition tellingly *pretends* to disavow reliance on the Relator's allegations (Opp. at 32); avoids rather than responds to Defendants' showing that the AGO's allegations are no basis for Plaintiffs' claims; and identifies no important fact derived from Plaintiffs' inadequate "sources."  (Opp. at 36 n.23).[3]

Plaintiffs, in essence, concede that they are not permitted to rely on the Relator's allegations.[4]  (Mem. at 24).  They seek only to rehabilitate allegations of the AGO complaint, (Opp. at 32-34), which does not advance the Relator's theory of fraud upon which Plaintiffs rely.[5]  That is, Plaintiffs (like the Relator) claim that State Street executed FX transactions in the morning and fraudulently changed the rates to more favorable ones in the afternoon.  *Compare* Opp. at 11, 32 n.16 *with* Rel. Compl. ¶¶ 18, 34 *and* Compl. ¶¶ 51-52, 56.  For good reason, after investigation, the AGO did not make these allegations (and indeed made contrary allegations).

---

[3]     Plaintiffs are confused in suggesting that "[t]here is no basis whatsoever for Defendants' characterization of the California AG's complaint as having been 'superseded.'" (Opp. at 32 n.16).  This ignores what Defendants actually said.  Defendants explained that the Relator's complaints--on which Plaintiffs' Complaint is premised--were superseded by an AGO complaint that is in critical ways fundamentally inconsistent with the Relator's complaints. (Mem. at 24).

[4]     None of the authorities Plaintiffs cite condone reliance on the Relator's allegations, *see, e.g.*, Opp. at 31 n.15, which are unreliable because they do not afford the Court any means of identifying the Relator's sources or assessing their adequacy. (Mem. at 24).  Plaintiffs separately acknowledge that they cannot rely on these allegations to the extent that they are not corroborated by their own investigation.  (Opp. at 37 n.24).  They are not so corroborated.  For example, Plaintiffs have no basis to allege that anyone affiliated with or known to the Relator worked at State Street during the Class Period, or otherwise has a basis to know how State Street priced FX during the Class Period.

[5]     More specifically, the Opposition's summary of the Complaint allegations continues to emphasize the superseded allegations from which Plaintiffs have retreated. *Compare* Opp. at 10-11 & 32-34.  The Opposition makes no attempt to explain why the Relator's allegations left by the AGO on the cutting room floor (or rejected by the AGO's contradictory allegations) may be considered well-pleaded for purposes of this motion.

*Compare* AGO Compl. ¶¶ 2, 28 *with* Mem. at 6 (AGO alleged only that State Street marked rates up or down at the time of execution, allegedly in breach of contract with two California pension funds). Because the Complaint advances the Relator's factually baseless theory, it does not state an FX-related fraud claim. *See* Compl. ¶¶ 51-52.

### b) Plaintiffs Cannot Rely On The AGO's Allegations

The allegations of the AGO's complaint are an equally insufficient basis to advance a fraud claim here. Indeed, if Plaintiffs thought that the AGO's theory was a basis to plead securities fraud, they would not have recited the Relator's factually baseless one. In any event, recycling allegations from another case does not satisfy Plaintiffs' pleading burden under the PSLRA. *See In re Express Scripts*, No. 4:04-cv-1009 HEA, 2010 WL 2671456, at *17 (E.D. Mo. June 30, 2010) (Attorney General's lawsuit did not establish defendants' statements false when made); *Geinko v. Padda*, No. 00-c-5070, 2002 WL 276236, at *6 (N.D. Ill. Feb. 27, 2002) (dismissing complaint where "[p]laintiffs merely have recited facts from other actions" and "asserted that red flags emerge from those facts").

Plaintiffs now concede that they cannot "blindly rely" on another complaint and can only rely on the AGO's complaint if their additional investigation suffices to "corroborate and strengthen[] the allegations made by the California AG" and "confirms that there is a strong factual basis for the allegations" in that complaint. (Opp. at 33-34). As set forth below, the Complaint does not do so, because Plaintiffs' so-called "investigation" adds nothing consequential to the Complaint. *See infra* at 6; *see also* Mem. at 23, 26.

The AGO's complaint--despite advancing the conclusion of "false" or "fictional" rates--is predicated on a plainly incorrect interpretation of the contracts at issue in that

- 4 -

case.  (Mem. at 24-25) (AGO incorrect that contract term "based on" means "equal to").
The AGO's complaint makes clear that its theory in this regard is based not on facts but
on specious logic.  (Mem. at 25).  Those allegations do not state a claim here because
they are not plausible and are not pleaded with particularity.  *See Greebel v. FTP
Software, Inc.*, 194 F. 3d 185, 203-04 (1st Cir. 1999); *Tellabs, Inc. v. Makor Issues &
Rights, Ltd.*, 551 U.S. 308, 309 (2007).

Plaintiffs decline to grapple seriously with this reality.  Instead, incredibly, they assert
that a decision of the California Superior Court means that neither they nor this Court need
evaluate the factual basis of the AGO's complaint, or this Complaint.  (Opp. at 35-36).  In fact,
the Superior Court's decision--which was less than two pages long--makes clear that it did not
consider the viability of any claim pleaded here; and that even with respect to the California state
law claims, it never evaluated the adequacy of the AGO's conclusory allegations.  *See* Order,
*State of Cal. ex rel. Assocs. Against FX Insider Trading v. State Street Corp.*, 34-2008-
00008457-CU-MC-GD5 (Mar. 30, 2010), at 1-2 (Browne Decl., Ex. 3).  In rejecting cursorily
State Street's demurrer, that court assumed the truth of the AGO's conclusions that State Street's
rates were false or fictional, and expressly did not reach the question of whether the AGO had an
adequate logical or factual basis for making those claims.  *Id*.  That court also did not resolve
State Street's contention that the AGO's claim boiled down to a flawed contract interpretation.
*Id*.  Thus, that court did not decide anything relevant to the question of whether the AGO's claim

met the pleading standards of Rules 8 or 9 of the Federal Rules of Civil Procedure or the PSLRA.[6]

Plaintiffs' new emphasis on media statements of the California AG himself--made in the heat of a primary election campaign--speaks volumes about the weakness of Plaintiffs' claims.  At the end of the day, the AGO did an investigation, rejected the theory of fraud advanced by the Relator (and now Plaintiffs), and filed a civil complaint under California law that asserted that State Street's rates were false or fictional because of a strained contract interpretation.  The AG's heated characterization of the AGO's own complaint--charged conclusions in press-digestible formats--adds nothing factual to the record before the Court.  Therefore, these remarks do not advance Plaintiffs' claims one whit.  *Compare Brehm v. Eisner*, 746 A.2d 244, 249 (Del. 2000) (quotations from media echoing conclusory allegations serve no purpose); *In re McKesson HBOC Sec. Litig.*, 126 F. Supp. 2d 1248, 1272 (N.D. Cal. 2000) ("Conclusory allegations of wrongdoing are no more sufficient if they come from a newspaper article than from plaintiff's counsel.").

### c)  Plaintiffs' Purported "Investigation" Adds Nothing

Given the lack of any other plausible basis, the viability of Plaintiffs' FX claims ultimately rests on the adequacy of their counsel's so-called "investigation."  Defendants explained in some detail why Plaintiffs' unnamed sources did not save this baseless Complaint.  (Mem. at 26 & nn.29-30).  In response, Plaintiffs merely repeat the Complaint's allegations, highlighting nothing more than vague speculation (Opp. at 36), self-serving statements from an unidentified employee in the AGO (Opp. at 33 n.19), and

---

[6]      It is irrelevant whether scienter is a required element of both Section 10(b) and the AGO's claims pursuant to the California False Claims Act, (Opp. at 32 n.17), because the California court has never determined whether State Street acted with scienter or whether the AGO pleaded a factual basis for a strong inference of scienter.  *See* Order, *State of Cal. ex rel. Assocs. Against FX Insider Trading v. State Street Corp.*, 34-2008-00008457-CU-MC-GD5 (Mar. 30, 2010), at 1-2 (Browne Decl., Ex. 3).  It merely assumed the truth of the AGO's conclusions in the context of a motion for demurrer.  *Id.*  Accordingly, Plaintiffs cannot rely on any decision of that court to plead scienter adequately.

snippets from two internal State Street documents taken from the AGO's complaint (Opp. at 35).[7] This lengthy repetition is no substitute for analysis or explanation as to why any of these conclusions is well-pleaded, and does nothing to explain why Plaintiffs' so-called investigation is of any consequence at all.[8] (Opp. at 33-34).

More specifically, Plaintiffs' "confidential witnesses" offer nothing. The Opposition abandons reliance on CW4 and CW6 with respect to the FX claims. Plaintiffs cannot avoid the fact that CW2 and CW5 did not work at State Street during the purported Class Period, (Mem. at 26), or that the information Plaintiffs attribute to CW2 and CW3 is no better than rumor. *Compare* Opp. at 12 n.5 & 36 n.23 *with* Mem. at 26 & 38 n.45. Plaintiffs' reliance on CW1 is absurd: he did no more than allegedly corroborate that there were meetings of executives (not what was said in them). *Compare* Opp. at 36 n.23 *with* Mem. at 26 & n.29.

Further, the statement of an anonymous AGO employee that its complaint was "well grounded," (Opp. at 33 n.19), lends no additional support to the Complaint's allegations. Conclusions of third parties (even regulators) are not well-pleaded facts. *See Brehm*, 746 A.2d at 259. Whether someone at the AGO thinks its assertions are "well grounded" has no more probative force than the bare allegations of the AGO's complaint itself. No doubt all litigants would assert that their allegations are well-grounded, otherwise the allegations would be sanctionable. Consistent with this conclusion, the

---

[7]       Information from Plaintiffs' hired expert, (Opp. at 31, 33), offers nothing in the way of independent substantiation of the AGO's complaint. *See Fin. Acquisition Partners LP v. Blackwell*, 440 F.3d 278, 286 (5th Cir. 2006) (affirming district court's refusal to consider opinions and conclusions contained in expert's affidavit because "opinions cannot substitute for facts under the PSLRA"); *Demarco v. DepoTech Corp.*, 149 F. Supp. 2d 1212, 1221 (S.D. Cal. 2001) (inappropriate at pleading stage to allow plaintiffs to rely on expert opinion to state securities claim); *Roth v. OfficeMax, Inc.*, 527 F. Supp. 2d 791, 801 (N.D. Ill. 2007) (refusing to allow expert declaration). Nor do Plaintiffs cite any authority for their proposition that the length of the AGO's own investigation somehow renders its notice pleading allegations self-corroborating. (Opp. at 31).

[8]       Plaintiffs' suggestion that Defendants did not address all of the anonymous witnesses in this section of their brief ignores that Defendants did address all those who had anything to do with FX allegations. (Mem. at 26, 38 n.45). Specifically, information attributed to CW7 and CW8 does not pertain to the FX allegations. (Compl. ¶¶ 162-63, 167).

cases even Plaintiffs cited all reject reliance on other complaints absent corroboration by the plaintiff's *own* investigation.[9]  Thus, the "AGO source" cannot excuse Plaintiffs from developing factual support for their claims themselves.

Finally, the excerpts from the two internal State Street documents to which Plaintiffs refer are the same excerpts set forth in the AGO's complaint.  *Compare* Compl. ¶ 60 to AGO Compl. ¶ 4.  State Street explained why the statements were innocuous. (Mem. at 25 n.28).  Merely repeating the same snippets does nothing to explain why they are significant, and identifies nothing factual in the Complaint.  As Defendants noted in their opening Memorandum, the statements reflect speculation by employees of one part of State Street that employees of another part would not want to disclose confidential business information.  (Mem. at 25 n.28).  This would not admit that State Street "violated the agreements" (Opp. at 12), even if the AGO or Plaintiffs had identified a plausible interpretation of the agreements that is inconsistent with State Street's conduct.[10]  Reliance upon those documents is in no way independent corroboration of the AGO's allegations.[11]  *See In re Connectics Corp. Sec. Litig.*, 542 F. Supp. 2d 996, 1006 (N.D. Cal. 2008) (striking allegations "taken directly from [regulator's] complaint with no additional investigation") (cited in Mem. at 23).

---

[9]     Plaintiffs' cases, (Opp. at 33-34), make this point clear.  *Johns v. Bayer Corp.*, No. 09CV1935 DMS (JMA), 2010 WL 2573493, at *2 (S.D. Cal. June 24, 2010) (reliance on regulator's complaint requires independent investigation); *de la Fuente v. DCI Telecomms., Inc.*, 259 F. Supp. 2d 250, 260 (S.D.N.Y. 2003) (reliance on regulator's complaint allowed where "*every* allegation in the complaint was verified by plaintiff's counsel through independent investigation") (emphasis added); *SEC v. Lee*, Nos. 08-CV-9961, 08-CV-9962, 09-CV-3677, 09-CV-7557, 2010 WL 2594280, at *23 (S.D.N.Y. June 18, 2010) (same).

[10]     Plaintiffs' insistence that the claims against State Street in the AGO's complaint are fraud-based, (Opp. at 34-35), ignores the actual substance of the claims, which are contractual in nature.  (Mem. at 25).  That the AGO's media campaign classifies the claims differently is of no import.

[11]     Plaintiffs cite no case that condones merely adopting uncorroborated allegations in a regulatory complaint to satisfy the PSLRA.  (Opp. at 33-34); *see, e.g., In re TJX Cos. Retail Sec. Breach Litig.*, 564 F.3d 489, 497 (1st Cir. 2009) (plaintiff did not adopt or rely on regulator's investigation as a source in its complaint); *In re Biopure Corp. Derivative Litig.*, 424 F. Supp. 2d 305, 307 (D. Mass. 2006) (plaintiffs supplemented allegations in original complaint derived from their own investigation with allegations from subsequently filed SEC complaint); *Johns,* 2010 WL 2573493, at *2 (citing another complaint as source for publicly available information, not merely adopting allegations).

### 2.     The Challenged FX-related Statements Are Immaterial As A Matter Of Law

As Defendants explained, Plaintiffs' assertion that the FX revenue numbers were materially false or misleading based on their estimate of the impact of the supposed fraudulent FX pricing practice relies on logic that is beyond implausible and is worse than mere speculation.  (Mem. at 27-29).  In response, Plaintiffs again repeat their theory without rehabilitating it.  They also advance three new alternative theories that are no more plausible: (1) that a drop in stock price upon the disclosure of the AGO's complaint shows that the statements made were materially false; (2) coincidence--that State Street's CEO retired from his position as CEO (while remaining on State Street's board of directors) shortly after the AGO's announcement of its claims; and (3) that unspecified potential damage to Defendants' reputation makes State Street's FX statements materially misleading.

#### a)     Materiality May Be Decided On This Motion To Dismiss

Plaintiffs' contention that materiality is always an issue for the trier of fact simply is incorrect.  (Opp. at 5, 37).  *See, e.g.*, *In re Open Market, Inc. Sec. Litig.*, No. 00-11162-NG, Slip Op. at 14 (D. Mass. May 31, 2002) (fraud claims immaterial as a matter of law because "no reasonable investor would rely upon them in deciding whether or not to purchase the stock").  Plaintiffs must plead facts showing plausibly, and with particularity, that State Street made a materially false or misleading statement.  *Tellabs*, 551 U.S. at 320.  Because they have not done so, the FX claims should be dismissed.

#### b)     There Is No Factual Basis For Plaintiffs' Computations Or Allegations Of Widespread Fraud

Plaintiffs do not contend that the amount the AGO alleged in overcharges ($56 million over 8 years) had any material impact on State Street's financial results.  Instead,

they concoct a much larger number by relying on an attenuated string of unsupported

conclusions.  (Mem. at 27-29).  Plaintiffs allege without factual support that State Street's

agreements with the two California pension funds were "typical." (Opp. at 9).  All of

their complex arithmetic depends on this conclusion, because pension funds who asked

different RFP questions or obtained different responses cannot make the same claims as

the AGO.  Because Plaintiffs lack any factual basis, the conclusion-based numbers they

generate are unreliable.  Obviously, Plaintiffs' repetition of the Relator's speculation

about the impact of the challenged FX pricing practices on State Street's revenue--that

"approximately" 30% of State Street's FX revenue (Opp. at 41), $866 million in all (Opp.

at 15), and 10% of net income (Opp. at 3) were overstated due to FX overcharges--must

be disregarded.[12]  (Opp. at 41).

    Arithmetic aside, Plaintiffs engage in a logical fallacy in positing a causal

relationship between a decrease in FX revenue and the filing of the AGO's complaint.

This form of reasoning (*post hoc ergo propter hoc*--"a thing which follows another is

therefore caused by it") has been recognized as illogical for centuries, and is "among the

most common, specious and shallow of all."  *Oxford English Dictionary* (post hoc ergo

propter hoc) (online version Nov. 2010) (quoting 1880 Princeton Review 442).

Plaintiffs' mulish insistence that they may rely on speculation of this sort is belied not

only by their specious form of logic, but also by the fact that State Street's FX revenue

had declined significantly *before* the AGO complaint was filed, and Plaintiffs' own

admission that "it is not possible to determine any amount" by which State Street's

---

[12]    Plaintiffs otherwise disclaim reliance on the Relator.  (Opp. at 3, 15).  Even if Plaintiffs are correct that a
"quantitatively minor amount" of misstated revenue can be material in some circumstances, (Opp. at 42 n.28),
Plaintiffs offer no plausible factual basis to conclude that the tiny percentage of revenue at issue here would have
made a difference to investors.

revenues were overstated without access to State Street records that they do not have.[13]
*Compare* Compl. ¶ 74 *with* Mem. at 27-29.

Last, Plaintiffs' effort to substitute conclusory arguments for facts supporting
materiality also must fail.  Plaintiffs argue that "[n]o client would enter into a service
contract that allowed State Street to charge its clients the highest possible daily rate for a
foreign exchange trade while pocketing the entire difference."  (Opp. at 41 n.27).  This
conclusion is not a fact.  Moreover, Plaintiffs have no factual basis to allege that what
State Street charged was "the highest possible daily rate."  *Id*.  Nothing in the Complaint
suggests any limitation other than the contract on the rates State Street could charge.  *See
In re Mexico Money Transfer Litig.*, 267 F.3d 743, 749 (7th Cir. 2001) (mark-ups to
interbank rates both routine and legally permitted).  Finally, Plaintiffs have no basis to
allege that all, many, or any other contracts were sufficiently similar to those of CalPERS
and CalSTRS to prohibit mark-ups, much less any material amount of mark-ups, even if
the AGO's mistaken contract interpretation was adequate.[14]  (Opp. at 10 n.4).

    **c)**    **The Alleged Drop In State Street's Stock Price Does Not
Establish Materiality**

Plaintiffs' attempt to change field with an alternative argument--that "the market's
reaction" to the AGO's lawsuit against State Street "alone establishes the materiality of

---

[13]    The fact that after the AGO filed its lawsuit, State Street changed its FX trading practices to "address customer interests for increased transparency," which State Street disclosed might adversely impact revenue or profitability as a result of the leverage it provided customers to bargain harder, or because they might simply go elsewhere, adds nothing.  (Opp. at 14-15, 42); (Compl. ¶ 73).  Providing customers "transparency" does not equate to State Street changing its method of FX rate calculation, or any admission that its FX pricing practices were not in compliance with contract terms.  Thus, it in no way substantiates Plaintiffs' FX allegations, or warrants any inference in Plaintiffs' favor.

[14]    Plaintiffs' claim that "Defendants admitted that it [sic] did not engage in isolated foreign exchange services to government pension plans in other jurisdictions," (Opp. at 41 n.27), simply states the obvious: that CalPERS and CalSTRS were not State Street's only two custody FX clients.  Plaintiffs' suggestion that "it is simply implausible that State Street perpetrated the alleged systemic fraudulent scheme against only CalPERS and CalSTRS," (Opp. at 41 n.27), is plainly speculative.  Indeed, Plaintiffs contend that they adopt the AGO's contract-based theory, but concede that they have no idea whether contracts between State Street and other custody FX clients contain the same terms.  (Opp. at 10 n.4) ("State Street does not publicly disclose the terms of its current contracts.").

State Street's false and misleading statements and omissions" (Opp. at 38)--fails for at least two reasons. First, Plaintiffs are wrong as a matter of law that a drop in stock price alone establishes materiality. *See, e.g.*, *In re Allied Capital Corp. Sec. Litig.*, No. 02-3812 (GEL), 2003 WL 1964184, at *6 (S.D.N.Y. Apr. 25, 2003) ("[P]laintiffs would be hard-pressed to establish materiality based on the stock price's movement alone, since any number of factors unrelated to the alleged overstatements could have contributed to the decline in price . . ."); *In re Seagate Tech. II Sec. Litig.*, 802 F. Supp. 271, 277 (N.D. Cal. 1992) ("a change in market price is not sufficient by itself to establish materiality").

Second, the drop in stock price upon which Plaintiffs rely is the "drop in State Street's stock price upon disclosure of the California AG's complaint." (Opp. at 38). That disclosure did not limit itself to the Complaint allegations. It is not supported by the factual allegations of either the AGO's complaint or this Complaint, and the AGO's media statements are entitled to no more weight than would be a press release from Plaintiffs here. Therefore, to the extent that State Street's stock price moved on account of the AGO's media activities, it was not caused by correction of State Street's disclosure deficiencies, but by an adversary's overstatement.[15]

### d) Plaintiffs' Other Materiality Theories Also Fail

Plaintiffs also argue the materiality of their FX allegations based on the timing of Mr. Logue's retirement and the unspecified "impact" of the FX allegations on State Street's reputation. (Opp. at 39-40). Both arguments fail.

---

[15] Plaintiffs' cases, (Opp. at 38 n.26), are inapposite because they involve correction of earlier misstatements, not disclosures by third parties, which a plaintiff fails to corroborate with well-pleaded facts. *See, e.g.*, *Alaska Elec. Pension Fund v. Pharmacia Corp.*, 554 F.3d 342, 351-52 (3d Cir. 2009) (defendants distorted results of clinical study to trick investment community); *Fox v. First BanCorp*, Civil No. 05-2148 (GAG), 2006 WL 4128534, at *4 (D.P.R. Nov. 6, 2006) ("[T]he negative reaction of the stock market *to the eventual disclosure of the accounting error in the mortgage transactions* is itself an indicia of materiality.") (emphasis added); *In re PolyMedica Corp. Sec. Litig.*, 432 F.3d 1, 3 (1st Cir. 2005) (defendants misrepresented sales, revenues, and accounts receivable and issued false press releases). Plaintiffs do not--and cannot--allege that State Street failed to disclose the AGO's complaint in a timely manner.

Plaintiffs' supposition regarding Mr. Logue's retirement rests entirely on Plaintiffs' pass-through of *post hoc* speculation of an analyst.  (Opp. at 39) ("Analys*ts* covering State Street *posited* that Logue was "pushed out" because there "was no indication [that] the CEO was planning to retire") (*citing* only one analyst) (emphasis added).  Reliance on analyst speculation is no more permissible than reliance on Plaintiffs' own speculation.  *See Evanowski v. BankWorcester*, 788 F. Supp. 611, 615-16 (D. Mass 1991) ("speculation of industry analysts provides no support for allegations of fraud" and "does nothing to show that fraud was actually committed.") (*quoting Wayne Inv. v. Gulf Oil Corp.*, 739 F.2d 11, 14 (1st Cir. 1984)).  Neither is a fact; and neither provides a factual basis for Plaintiffs' conclusion of materiality.

Plaintiffs' contention that they allege materiality by virtue of potential "impact" on State Street's reputation appears to rest on two conclusions without any factual basis in the Complaint: (1) that there was an actual "impact"; and (2) that the dollar amount of this unknown impact was material.  (Opp. at 40).  Plaintiffs offer no explanation as to whether any impact ever materialized or how it would even be possible to quantify any impact.  Given the complete absence of such allegations, this in no way establishes materiality.

### B.    Plaintiffs' Internal Control Allegations Do Not Salvage Their Complaint

Plaintiffs' internal control allegations fail because they depend entirely on the flawed theory of FX fraud from which Plaintiffs have now retreated.[16]  *Compare* Opp. at 43-45 (alleging that generalized statements about "risk" controls were misleading given

---

[16]    Plaintiffs' purported expert is irrelevant for the same reason: he incorrectly assumes and bases his opinion on the existence of the FX fraud.  (Opp. at 45); (Compl. ¶¶ 79-82).  In any event, as State Street has already established, (Mem. at 30), opinions carry no probative weight under a pleading standard that requires pleading of *particular facts.  Compare DeMarco v. DepoTech Corp.*, 149 F. Supp. 2d 1212, 1222 (S.D. Cal. 2001) (case cited by Plaintiffs holding that it would consider expert statements only to extent they add "factual specificity").

existence of FX fraud) *with* Mem. at 22-29 (explaining why Complaint fails plausibly to

plead FX fraud).  The Complaint's theory is that there should have been controls in place

preventing the Relator's theory of fraud, which Plaintiffs now disavow.  That is, that

State Street should have had controls preventing late-in-the-day changes to rates

previously set for "dumb" clients.[17]  Plaintiffs no longer are riding that horse, and instead

press the AGO's conclusion--that charging a mark-up at the time of execution breached

two customer contracts.  (Opp. at 10-11).  The idea that State Street could have such

controls--preventing a pricing decision (charging a mark-up) made a decade before the

AGO adopted its flawed contract interpretation--is absurd.  As State Street's risk

disclosures made plain, business decisions yield contract disputes.  *See, e.g.*, Aff. Ex. 21

at S-18, S-20.  But the AGO's illogical contract interpretation is not something that

controls could address.

Plaintiffs' controls theory is otherwise logically flawed.  They challenge

statements about internal controls concerning financial reporting and "risk," based on an

alleged underlying fraud that has nothing to do with those controls (*i.e.,* allegedly

improper FX transactions).[18]  *See* Mem. at 29-30 (generalized challenges to statements

about internal controls fail).  Plaintiffs' own authorities demonstrate that this is

inappropriate.  *Cromwell v. Ionics, Inc.*, 343 F. Supp. 2d 1, 7 (D. Mass. 2004) (sustaining

challenge to statements about adequate accounting controls in case of fraudulent

accounting for long term revenues); *In re PMA Capital Corp. Sec. Litig.*, No. 03-6121,

2005 WL 1806508, at *10 (E.D. Pa. Jul. 27, 2005) (sustaining challenge to statements

---

[17]      Plaintiffs' "expert" plainly assumes the truth of these allegations, all of which are pleaded without factual
support.  *Compare* Compl. ¶¶ 79-82 *with* Mem. at 29.  Although the "expert" opinion is not a fact of relevance for
this motion, (Mem. at 29), Plaintiffs' representation that they adopted the allegations of the AGO's complaint, which
are inconsistent with this theory, renders that opinion irrelevant.
[18]      Plaintiffs' inability to show any material impact of the so-called FX fraud on State Street's financial
reporting demonstrates the inadequacy of Plaintiffs' financial reporting controls theory.  *See supra* at 9.

about controls governing underwriting and reserves in case challenging underwriting and

reserving practices); *In re Washington Mutual, Inc. Sec. Deriv. & ERISA Litig.*, 259

F.R.D. 490, 506 (W.D. Wash. 2009) (sustaining challenge to statement that management

had updated internal controls when it had not in fact done so).

Indeed, general controls allegations like these usually are dismissed.  *See*

*Cromwell*, 343 F. Supp. 2d at 19-20.  In most cases, like this one, a plaintiff's controls

theory amounts to nothing more than a legal conclusion predicated on an assumption of

fraud.  Such allegations are not calculated to revive an otherwise deficient complaint.

## C.     Plaintiffs' Conduit And Investment Portfolio Allegations Fail To State A Claim

Defendants have provided three separate reasons why Plaintiffs' conduit and

investment portfolio allegations must be dismissed: (1) Defendants never actually made

some of the alleged statements; (2) opinions concerning the "high quality" of the conduit

and portfolio assets were, in context, not misleading; and (3) these opinions are not

actionable as a matter of law because Plaintiffs have not pleaded facts plausibly showing

(let alone with particularity) that they were not honestly held and reasonably based.

(Mem. at 30-41).

In response, Plaintiffs abandon their claim that Defendants said that the conduits

and the portfolio "posed little risk."  (*Compare* Mem. at 30).  Then, rather than address

Defendants' clear showing that State Street's many statements over time concerning the

high credit quality of the conduit and portfolio assets were not misleading in context,

Plaintiffs pretend that a narrow decision by Judge Saris in an ERISA case relating to one

of those statements somehow controls here.  Finally, Plaintiffs are incorrect that State

Street's statements that the conduit and portfolio assets were of "high quality" were not

opinions protected under the rule announced by the Supreme Court in *Virginia Bankshares.*

### 1. The Record Before This Court Shows That The Challenged Statements Concerned Credit Quality And Were Not Misleading

The record before this Court demonstrates that State Street's disclosures concerning asset quality were not misleading because they referred to credit quality (*i.e.,* the risk that the obligors on these debt security assets would not pay what was due on them), and did not imply that the market value of the assets would not decline as the global credit crisis continued.  (Mem. at 32-35).  The Opposition does not quarrel with this logic, because no quarrel is possible.  Instead, Plaintiffs wrongly assert that this question already was decided by Judge Saris in the *Kenney* case.  (Opp. at 52) (*citing Kenney v. State Street Corp.,* 694 F. Supp. 2d 67, 79 (D. Mass. 2010)).

In fact, the Court in *Kenney* addressed only the last of the many similar statements State Street made about asset quality.  In that case (unlike this one), plaintiffs challenged only the one such disclosure made in October 2008.  In analyzing that statement alone--without the context of State Street's history of prior statements--Judge Saris reached a conclusion that the opinion could reasonably have been read as a "pat-on-the-back assurance that, despite the unrealized losses in the third quarter, no further significant losses were foreseeable. . . ."[19]  *Kenney,* 694 F. Supp. 2d at 79.  As Defendants have shown here, however, a similar statement was made in many prior quarters, each time in

---

[19]      The *Kenney* court also applied a legal standard that must be rejected in this context.  After characterizing it as the "closest question," (in the context of dismissing *every other claim*), Judge Saris concluded that plaintiffs had stated a claim for liability because "the sanguine statement that the asset quality 'remained high' *turned out to be misleading.*"  *Kenney,* 694 F. Supp. 2d at 79 (emphasis added).  Courts have repeatedly rejected such hindsight arguments in the context of securities cases because under the Exchange Act and the Securities Act, a statement does not subject its speaker to liability for the sole fact that future events render it wrong.  *See, e.g., Ezra Charitable Trust v. Tyco Int'l, Ltd.,* 466 F.3d 1, 6 (1st Cir. 2006); *Denny v. Barber,* 576 F.2d 465, 470 (2d Cir. 1978).  Moreover, even in hindsight, State Street's statements were not misleading because the credit quality of the assets remained high.

connection with announcing significant increases in unrealized losses.  (Mem. at 34-35,
35 n.40).  Because context is critical, Judge Saris's decision does not apply here.[20]  *See In
re Healthco Int'l, Inc. Sec. Litig.*, 777 F. Supp. 109, 115-16 (D. Mass. 1991) (considering
challenged statements in context of entire record).  That is, in the context properly before
this Court, the *Kenney* interpretation is untenable.

Plaintiffs' tired resort to the assertion that Defendants' argument in this regard
amounts to a "truth on the market" defense is both predictable and incorrect.  (Opp. at
48).  That so-called "defense" is sometimes said to arise when defendants show that an
admittedly false statement was known by market participants to be false.  *See In re
Biogen Sec. Litig.*, 179 F.R.D. 25, 36-37 (D. Mass. 1997).  Here, Defendants make no
such concession, and assert instead that, in context, the statements challenged were not
misleading "in the first place."  *See In re The First Marblehead Corp. Sec. Litig.*, 639 F.
Supp. 2d 145, 155 n.75 (D. Mass. 2010).  This is not a truth on the market defense.  *Id.*

Plaintiffs mistakenly argue that State Street's repeated warnings that asset values
might decline (or conduits might be consolidated) were not specific enough to be viable
because State Street's stock price declined coincident with disclosure of such declines
(and alleged appreciation by the market that consolidation would in the future occur).
(Opp. at 50-51, 71 n.52).  This makes no sense.  Quite obviously, there is a difference
between a well-appreciated risk that something might happen and a disclosure that it has,
in fact, happened (or is now expected to occur).  The latter circumstance would be
expected to move the stock price, despite a clear understanding of the former.

---

[20]      *Kenney* plainly does not decide whether these allegations make out a claim for fraud.  *Kenney* is an ERISA
case, which unlike the *Richard* case does not sound in fraud.  Its pleading requirements were, therefore, subject to
Rule 8, not Rule 9(b) or the PSLRA.  *See Stein v. Smith*, 270 F. Supp. 2d 157, 166-67 (D. Mass. 2003).  The *Kenney*
decision turned on negligence, not fraud.  *Compare Kenney*, 694 F. Supp. 2d at 79 *with Ernst & Ernst v. Hochfelder*,
425 U.S. 185, 214 (1976) (declining to extend liability under Rule 10b-5 to encompass negligent conduct, and
requiring scienter).

Accordingly, State Street's clear warnings about just what occurred insulate Defendants from liability for fraud.[21]  (Mem. at 35).

Plaintiffs' contention that a drop in stock price rendered earlier statements materially false amounts to an improper attempt to plead fraud by hindsight.  (Opp. at 2, 4, 7, 24, 47, 49); (Mem. at 51-52).  *See Decker v. GlenFed, Inc. (In re GlenFed, Inc. Sec. Litig.)*, 42 F.3d 1541, 1548-49 (9th Cir. 1994) (superseded by statute on other grounds) (insufficient for plaintiffs to say that drop in stock price made earlier statements false). Here, Plaintiffs fail entirely to allege "an explanation as to why the disputed statement was untrue or misleading *when made*."[22]  *Decker*, 42 F.3d at 1548-49 (emphasis added). Quite obviously, *no one on the planet knew how much, if any, the market value of these assets might drop as the credit crisis unfolded.*  Thus, declines in the market price of State Street stock coincident with disclosure of declines in asset value simply do not show that something that should have been disclosed earlier moved the stock price later. *See, e.g.*, *In re Allied Capital Corp.*, 2003 WL 1964184, at *6 ("[P]laintiffs would be hard-pressed to establish materiality based on the stock price's movement alone, since any number of factors unrelated to the alleged overstatements could have contributed to the decline in price . . . ."); *In re Seagate Tech.*, 802 F. Supp. at 277 ("a change in market price is not sufficient by itself to establish materiality").

---

[21]     Plaintiffs assert incorrectly that State Street's warnings "did not even address the risk of losses to the Conduit or investment portfolio assets."  (Opp. at 50).  In fact, State Street's filings with the SEC *directly* addressed these risks.  *See, e.g.*, Aff. Ex. 20 at 4-5 ("A significant market downturn . . . could reduce the value of securities we hold in our investment portfolio.  The assets held by our asset-backed commercial paper conduits can be similarly affected."); *id.* at 8 ("[W]e may need to dispose of a portion of our investment portfolio, which . . . could result in our realizing a loss . . . ."); Aff. Ex 25 at 29 ("Given the continued disruption in the financial markets and the resulting illiquidity . . . the investment securities portfolio may incur additional other-than-temporary impairment in future periods.").

[22]     Plaintiffs continue to advance their guilt-by-association premise that State Street has done something nefarious because other banks' SIVs collapsed and certain lenders--alleged to have underwritten the instruments that were bundled into asset-backed securities held by State Street--filed for bankruptcy.  (Opp. at 19, 27-28, 53, 69-70). These arguments were squarely addressed in Defendants' memorandum, and Plaintiffs have not advanced any plausible rebuttal.  (Mem. at 39-41).

### 2.      Defendants' Statements About "High Quality" Are Inactionable Opinions

Defendants' statements about asset quality are opinions, and, thus, are inactionable as a matter of law. Plaintiffs do not even contend that they have adequately alleged that State Street's opinions were not honestly held and reasonably based.  Thus, *Virginia Bankshares* is fatal to Plaintiffs' claims.  (Mem. at 36).  Plaintiffs' response to this argument, incredibly, is that the statements challenged in this regard were not opinions, but rather assertions of "present" fact.  (Opp. at 53).  This argument is refuted by law and logic.  *See Lerner v. FNB Rochester Corp.*, 841 F. Supp. 97, 101 (W.D.N.Y. 1993) (dismissing claims based on alleged misstatements involving "superior" asset quality and "the highest level of asset quality" where no facts alleged that asset quality was not superior or that management did not actually believe it to be).  *See also In re Advanta Corp. Sec. Litig.*, 180 F.3d 525, 537-542 (3d Cir. 1999) (statements that "credit quality continues to be among the best in the industry" and "our credit quality remained excellent" not materially misleading); *Schwartz v. Celestial Seasonings*, 178 F.R.D. 545, 560 (D. Colo. 1998) (statement about commitment to "high-quality products" only actionable if "known by the speaker at the time it is expressed to be untrue or to have no reasonable basis in fact").[23]

Under *Virginia Bankshares*, opinions are insulated from liability unless the plaintiff pleads a factual basis to conclude that that the opinion was not actually believed and lacks a reasonable basis.  *Virginia Bankshares*, *Inc. v. Sandberg*, 501 U.S. 1083, 1088 (1991) (protecting statements of "reasons, opinion or belief."); *Joffee v. Lehman*

---

[23]      Plaintiffs' reliance on *Shapiro,* (Opp. at 55), is unavailing for the same reason.  *Shapiro* confirms that an opinion on "high quality" is actionable only if not honestly held and reasonably based.  *See Shapiro v. UJB Fin. Corp.*, 964 F.2d 272, 283 (3d Cir. 1992).  That is precisely what Plaintiffs fail to allege here.

*Bros, Inc.,* 410 F. Supp. 2d 187, 193 (S.D.N.Y. 2006); *In re Credit Suisse First Bos. Corp.*, No. 02-12056, 2005 WL 852455, at *5 (D. Mass. Mar. 31, 2005).  Nothing limits this protection to forward-looking statements.  Thus, that State Street's challenged opinions are not expressly forward-looking, and instead address current expectations about the likelihood of future defaults, does not make the rule in *Virginia Bankshares* inapplicable.  *Lerner*, 841 F. Supp. at 101.  As Defendants showed, State Street's statements about asset quality addressed credit quality, *i.e.,* the likelihood that State Street would collect all principal and interest due on these debt securities.  (Mem. at 12) (*citing, e.g.,* Aff. Ex. 19 at 10 ("We firmly believe these are high quality assets and, like the other securities in our investment portfolio, we expect them to mature at par.")).  The notion that these statements were not opinions is, in context, indefensible.

Plaintiffs cite no authority in support of their position that in order to fall within the ambit of *Virginia Bankshares*, opinions must be "<u>described as</u> 'opinions.'" (Opp. at 57) ("Because Defendants' statements were not described as 'opinions,' . . . there is no requirement to plead that anyone failed to 'genuinely believe' those statements.").  That is not surprising since it is contrary to the law.  *See City of Monroe Emps. Ret. Sys. v. Bridgestone Corp.*, 399 F.3d 651, 674 (6th Cir. 2005) (whether statement actionable based on nature of statement, not whether characterized as opinion).  Nor does Plaintiffs' contention that only analyst opinions are insulated, (Opp. at 57 n.39), find any support in the law.  *See Virginia Bankshares*, 501 U.S. at 1093-94 (opinion statement made by a member of the defendant's board of directors); *Connelly v. Gen. Med. Corp.*, 880 F.

Supp. 1100, 1118 (E.D. Va. 1995) (statement of CEO inactionable under *Virginia Bankshares*).[24]

Because State Street's asset quality statements are opinions, because the record manifestly shows an abundant factual basis for these opinions, (Mem. at 8-13, 16-21), and because the Complaint does not even assert that the opinions were not actually held, these statements are inactionable. *See Shapiro v. UJB Fin. Corp.*, 964 F.2d 272 (3d Cir. 1992) (must plead opinions were subjectively false ("knowingly false") and objectively unreasonable ("misleadingly incomplete")); *In re Vivendi Universal, S.A. Sec. Litig.,* 381 F. Supp. 2d 158, 182 (S.D.N.Y. 2003) (complaint must plead objective falsity and subjective unreasonableness).

### D.    Plaintiffs Concede No GAAP Violation Occurred

Plaintiffs do not even respond to Defendants' showing that State Street's accounting as to conduit consolidation was correct.  (Mem. at 42-45).  Unable to identify how the applicable accounting rules required consolidation of the conduits at any earlier time, or how State Street's disclosure regarding the consolidation of the conduits was incorrect, Plaintiffs simply walk away from their allegations that any GAAP violation occurred.  Given this concession, Plaintiffs fail to state a claim on these grounds.[25]

### E.    Plaintiffs' Scienter Allegations Are Also Fatally Deficient

The Complaint falls far short of Plaintiffs' obligation "to plead *specific factual allegations* regarding each defendant's knowledge of or participation in the [alleged fraud]."  *In*

---

[24]    Remarkably, the cases Plaintiffs cite as authority for the proposition that *Virginia Bankshares* does not apply *never even considered* that case.  *See Kenney*, 684 F. Supp. at 79 (no reference to *Virginia Bankshares*) (cited Opp. at 54); *Shaw v. Digital Equip. Corp.*, 82 F.3d 1194, 1212-14, 1225 (1st Cir. 1996) (same) (cited Opp. at 54); *Serabian v. Amoskeag Bank Shares, Inc.*, 24 F.3d 357, 365 (1st Cir. 1994) (same) (cited Opp. at 54); *In re New Century*, 588 F. Supp. 2d 1206, 1255 (C.D. Cal. 2008) (same) (cited Opp. at 55 n.38); *Atlas v. Accredited Home Lenders Holding Co.*, 556 F. Supp. 2d 1142, 1149 (S.D. Cal. 2008) (same) (cited Opp. at 55 n.38); *In re Countrywide Fin. Corp. Derivative Litig.*, 554 F. Supp. 2d 1044, 1053 (C.D. Cal. 2008) (same) (cited Opp. at 55 n.38).

[25]    Given the correct accounting treatment, loss causation is a moot issue.  *Compare* Opp. at 71 n.52.

*re Brooks Automation, Inc. Sec. Litig.*, No. 06-11068-RWZ, 2007 WL 4754051, at *9 (D. Mass. Nov. 6, 2007) (emphasis supplied).  Far from supporting an "overwhelming inference of scienter," (Opp. at 59), the Complaint fails to plead any facts to support any inference of scienter against either the individual defendants or State Street.  (Mem. at 45-52).

Moreover, Plaintiffs are incorrect that it is the defendant's burden to demonstrate that the allegations in the complaint give rise to "an inference of nonculpable conduct that is stronger than the inference of scienter."  (Opp. at 58).  Defendants do not bear any pleading burden as to scienter.  Plaintiffs must allege *facts* giving rise to a *strong inference* of scienter before any competing inferences can be compared.  *See Konkol v. Diebold, Inc.*, 590 F.3d 390, 403 (6th Cir. 2006) ("The PSLRA and the Supreme Court's opinion in *Tellabs* make clear that the burden of proof [on a motion to dismiss] rests with the [plaintiff].");  *In re Celestica Inc. Sec. Litig.*, No. 07 CV 312(GBD), 2010 WL 4159587, at *4 (S.D.N.Y. Oct. 14, 2010) ("Plaintiffs may meet *their burden of showing* a strong inference of scienter . . . .") (emphasis supplied); *City of Roseville Emps. Ret. Sys. v. Horizon Lines, Inc.*, 686 F. Supp. 2d 404, 425 (D. Del. 2009) ("*Plaintiffs bear the burden* of pleading with particularity facts giving rise to a strong inference of scienter.") (quotations omitted) (emphasis supplied).  If they establish a strong inference, the Court then must consider whether this inference is nevertheless weaker than competing inferences that may be drawn from the record.  *Tellabs*, 551 U.S. at 324 (a complaint must be dismissed unless "the inference of scienter [is] cogent and at least as compelling as any opposing inference one could draw from the facts alleged").  If Plaintiffs' proposed inference is not strong or is weaker than competing inferences, the claim must be dismissed.  *Id.*  Here, Plaintiffs do not even plead a factual basis for a strong inference of scienter.

### 1.    Plaintiffs Fail To Allege Scienter As To The Individual Defendants

In light of Plaintiffs' Opposition, which retreats from the claim that State Street perpetrated a fraud by systematically altering price records, Plaintiffs' difficult burden to plead scienter with respect to FX has gotten only harder.  Defendants have already shown that the Complaint contains no fact suggesting that any individual defendant knew about any fraudulent alteration of pricing records.  (Mem. at 45-50).  In light of Plaintiffs' retreat from that theory, however, they are left with the impossible task of showing that the individual defendants during the alleged Class Period (2007-2009) knew of an incongruity between State Street's FX pricing practices and two RFP responses submitted to two clients in 2001.  This they cannot do, and have not done.

Plaintiffs' position on scienter as to asset quality could hardly get any worse.  The record shows that in referring to asset quality State Street clearly was addressing credit quality; that it was not predicting that unrealized losses on debt security assets would not further climb; and that State Street disclosed quarterly a wealth of information showing an abundant good faith basis for its belief that the credit quality of these assets was both very good and better than that of competitors.  (Mem. at 8-13, Appendix A ("App. A")) *see, e.g.*, Affidavit of John J. Butts ("Aff."), Exhibit 19 at 10 (Apr. 15, 2008 Earnings Conf. Call) ("We firmly believe these are high-quality assets and, like the other securities in our investment portfolio, we expect them to mature at par.").  Even hindsight supports the conclusion that there was no scienter: during the alleged Class Period there were no material payment defaults on these assets.  (Mem. at 21).  Thus, just as with the FX claims, Plaintiffs do not plead a factual basis for a strong inference of scienter, and the record strongly supports an inference that there was no intentional wrongdoing of any kind.

What Plaintiffs offer as a substitute is plainly inadequate: conclusions to the effect that it is "inconceivable" that senior executives did not know that fraud was afoot or were reckless by virtue of their positions. (Opp. at 59). According to Plaintiffs, supposedly "unfettered access" to unspecified "information" obtained from unidentified sources at unstated times supports a strong inference of scienter. (Opp. at 69).[26] This just is not so. *See In re Dell Inc., Sec. Litig.*, 591 F. Supp. 2d 877, 894 (W.D. Tex. 2008) (scienter not properly alleged where plaintiffs "state generally that the Individual Defendants . . . had *unfettered access* to information . . . but allege *nothing specific* about what the Individuals Defendants knew or intended, or even what 'fraudulent' decisions they approved") (emphasis supplied); *Glickman v. Alexander & Alexander Servs., Inc.*, No. 93 Civ. 7594 (LAP), 1996 WL 88570, at *14 (S.D.N.Y. Feb. 29, 1996) (a defendant's access, "even his '*unfettered access*,' . . . is an inadequate basis for scienter, one which would expose virtually any CEO, by virtue of his or her position alone, to liability") (emphasis supplied); *In re Ferro Corp.*, 2007 WL 1691358, at *12 (conclusory "he-must-have-known" allegations "routinely rejected" by courts as insufficient to allege scienter).

Plaintiffs' vague allegations that the individual defendants "closely monitored" State Street assets, (Opp. at 26), are equally deficient. *In re Comshare Inc. Sec. Litig.*, 183 F.3d 542, 553 (6th Cir. 1999) (allegations that defendants did not adequately monitor relevant information fail because plaintiffs "allege no facts to show that the Defendants knew or could have known of [the alleged errors,] or that their regular procedures should have alerted them to the errors sooner than they actually did"). Nor does Mr. Logue's retirement after the Class Period establish any logical inference of scienter. Plaintiffs' proposed inference is not "cogent," *see Tellabs*, 551 U.S. at 314, because it rests on the same *post hoc* logical fallacy that Plaintiffs otherwise employ.

---

[26] Further, even the conclusion of "unfettered access to information" lacks a citation to the Complaint. (Opp. at 69).

(*Compare* Opp. at 62 *with Rosenberg v. Gould*, 554 F.3d 962, 966 (11th Cir. 2009) (allegation of

CEO's resignation after alleged fraud came to light merely "insufficient" circumstantial evidence

of scienter) *and Zucco Partners, LLC v. Digimarc Corp.*, 552 F.3d 981, 1002 (9th Cir. 2009)

(resignation of several department members does not support strong inference of scienter

because "[m]ere conclusory allegations that a financial manager resigns or retires during the

class period or shortly before the corporation issues [a financial] restatement, without more" do

not suffice) *and supra* at 13).[27]   The other theories that Plaintiffs generally contend apply to all

"Defendants" to establish scienter are equally insufficient.  *See infra* at 28.

### 2.      Plaintiffs Fail To Plead State Street's Scienter

Plaintiffs' scienter allegations against State Street fare no better.  Plaintiffs incorrectly

contend that they can plead corporate scienter "even if the Complaint does not identify a

particular individual with scienter."[28]  (Opp. at 64).  This makes no sense and is inconsistent with

the law.  Corporations do not form intentions or behave recklessly.  People do.  Sometimes,

corporations are responsible for intentional or reckless acts of people, such as their officers.

Thus, in order to plead a fraud claim against a corporation, a plaintiff must plead particular facts

---

[27]      To the extent Plaintiffs attempt to resuscitate, for purposes of alleging a strong inference of scienter, a motive-and-opportunity foundation, (Opp. at 64 n.44), this also fails.  Allegations of this type are insufficient because "[i]ncentive compensation can hardly be the basis on which an allegation of fraud is predicated."  *Acito v. Imcera Grp., Inc.*, 47 F.3d 47, 54 (2d Cir. 1995) (quotation omitted).  Plaintiffs must allege financial incentives that "go far beyond the usual arrangements of compensation based on the company's earnings," *Aldridge v. A.T. Cross Corp.*, 284 F.3d 72, 83 (1st Cir. 2002), otherwise "virtually every company in the Untied States that experiences a downturn in stock price could be forced to defend securities fraud actions," *EAC & Local 134 IBEW Joint Pension Trust of Chi. v. JP Morgan Chase Co.*, 553 F.3d 187, 201 (2d Cir. 2009) (quotation omitted).  Plaintiffs have not done so here.

[28]      In apparent recognition of their inability to satisfy the requisite standard for alleging corporate scienter, Plaintiffs wildly misinterpret this Court's decisions, which affirm only that in the right circumstances "a corporation may be liable for the fraud of an individual officer *who is not a defendant*."  *In re Sonus Networks, Inc. v. Sec. Litig.*, No. Civ.A.04-10294-DPW, 2006 WL 1308165, at *23 (D. Mass. May 10, 2006) (emphasis supplied); *Isham v. Perini Corp.*, 665 F. Supp. 2d 28, 36 (D. Mass. Oct. 7, 2009) ("The scienter of corporate entities is ascertained through the mental state of their management.") (quotation omitted); *see also In re Cabletron Sys., Inc.,* 311 F.3d 11, 40 (1st Cir. 2002) (allegations against identifiable "company agents" necessary to show Company's scienter).  None of the cases Plaintiffs cite stand for the proposition that a complaint need not identify any particular individual who acted with scienter in order to establish the scienter of the company.  *See In re Stone & Webster Inc., Sec. Litig.*, 424 F.3d 24, 27 (1st Cir. 2005) (addressing secondary liability of control persons, not corporate scienter requirements) (cited Opp. at 64).  Plaintiffs do not provide a factual basis to assert that anyone who spoke for State Street had scienter.

showing that "*someone whose intent could be imputed to the corporation* acted with the requisite scienter." *See Southland Sec. Corp. v. INSpire Ins. Solutions, Inc.*, 365 F.3d 353, 365 (5th Cir. 2004) (emphasis supplied). Plaintiffs' only attempt to identify any individual is to fall back on their deficient allegations concerning the individual defendants. (Opp. at 64 n.45). As a result, the deficiencies in Plaintiffs' allegations as to the individual defendants also mandate dismissal of the claims against State Street.[29] *See supra* at 23-25; *see also Teamsters Local 445 Freight Div. Pension Fund v. Dynex Capital Inc.*, 531 F.3d 190, 196-97 (2d Cir. 2008).

Rather than even attempt to identify any individual with scienter (and explain why), Plaintiffs continue to assert that "everyone" at State Street and "State Street senior management" was aware of unspecified "information." (Opp. at 36 n.23, 69) (relying on Complaint allegations such as "[t]hey did this" and "State Street was shooting from the hip") (citing Compl. ¶¶ 162-63). Plaintiffs' vague and conclusory allegations that unidentified individuals possessed unspecified information are insufficient to raise a strong inference of scienter with respect to State Street.[30] *See Southland Sec. Corp. v. INSpire Ins. Solutions, Inc.*, 365 F.3d 353, 366 (5th Cir. 2004) (to plead fraud claim against a corporation, plaintiffs must support scienter inference as to "the individual corporate official or officials who make or issue the statement . . . rather than generally to the collective knowledge of all the corporation's officers and employees acquired in the course of their employment"); *Dynex Capital*, 531 F.3d at 195. So, too, are

---

[29]     Plaintiffs' contention that the dismissal of claims against the individual defendants does not compel the dismissal of claims against the corporation, (Opp. at 65 n.47), presumes the existence of another individual whose scienter could be imputed to the company. *See Southland Sec. Corp. v. INSpire Ins. Solutions, Inc.*, 365 F.3d 353, 366 (5th Cir. 2004); *Teamsters Local 445 Freight Div. Pension Fund v. Dynex Capital, Inc.*, 531 F.3d 190, 195 (2d Cir. 2008). The absence of any such individual here mandates dismissal of the Exchange Act claims as to all Defendants.

[30]     Plaintiffs' repetition of vague statements from confidential witnesses does not cure the pleading defects. *See* Opp. at 62 n.43, 63 (*citing* Compl. ¶¶ 63-65, 76-82) ("'everyone' at State Street knew of this practice"; "executives of the Company 'had to have been aware'"; "everyone knew"; "Risk Management was a joke").

Plaintiffs' categorical assertions that unidentified "Defendants" and "senior management" knew of "red flags."[31]  (Opp. at 69) (*citing* Compl. ¶¶ 161-65).

Plaintiffs' reliance on "internal State Street documents" referencing "high-level State Street executives," (Opp. at 62) (*citing* Compl. ¶¶ 60, 61), is equally misplaced.  Plaintiffs do not identify when, from whom, and to whom these "documents" were sent.  *In re Capstead Mortgage Corp. Sec. Litig.*, 258 F. Supp. 2d 553, 565 (N.D. Tex. 2003) (dismissing complaint where, "[w]ith respect to the documentary evidence, Plaintiffs do not specifically identify any one particular internal document containing the alleged 'adverse information'; the contents of such adverse or negative information; when the internal document containing the negative or adverse information was prepared; by whom it was prepared; or to whom was it directed").  To the extent that Plaintiffs refer to the snippets from two e-mails cited by the AGO, the snippets are speculation about whether others (not the authors) would be likely to disclose their trade secrets.[32]  (Mem. at 25 n.28).  This is not a plausible basis to infer scienter as to anyone, let alone anyone with responsibility for speaking for State Street.

### 3.       Plaintiffs' Other Scienter Theories Are Without Merit

Plaintiffs assert a host of other theories, which they claim demonstrate scienter as to unspecified "Defendants."  (Opp. at 25-29, 66-70).  None hold water.  That Plaintiffs are overreaching is demonstrated by their contention that the *Kenney* decision has *any* bearing on the sufficiency of the scienter allegations here.  (Opp. at 66).  The *Kenney* court never addressed scienter, which is not an element of the ERISA claims at issue in that case.  *See Kenney*, 694 F. Supp. 2d at 67.  The rest of Plaintiffs' grab bag is no more persuasive.

---

[31]       Although Plaintiffs advocate that scienter by "management-level employees" would suffice, (Opp. at 65), the Complaint is devoid of any factual basis to infer scienter of a management-level employee.

[32]       These internal documents also fail to establish scienter as to the individual defendants.  Plaintiffs acknowledge that these documents were not written by either individual defendant, (Opp. at 62), and allege no facts to establish that the individual defendants ever received the documents or otherwise learned of their content.

First, no strong inference of scienter can be based on State Street's post-Class Period change in FX practices. *Ezra Charitable Trust v. Tyco Int'l, Ltd.*, 466 F.3d 1, 13 (1st Cir. 2006) (change in company practice "does not raise a significant inference of scienter" because "[t]hat a speaker changes his or her mind and decides after the fact that an earlier opinion was ill-advised is insufficient to support an averment of subjective falsity") (quotation omitted). The AGO loudly criticized State Street for not disclosing mark-ups charged in connection with one method of FX execution. In response, State Street stopped treating its pricing methodology as a trade secret and disclosed it to clients. It warned that, as a result, some clients might go elsewhere. This does not admit, or tend to prove, that not disclosing the mark-ups was illegal or known to be illegal. In fact, it was not. *See In re Mexico Money*, 267 F.3d at 749 ("Neiman Marcus does not tell customers what it paid for the clothes they buy, nor need an auto dealer reveal rebates and incentives it receives to sell cars. This is true in financial markets no less than markets for physical goods.").[33]

Second, Plaintiffs' assertion that scienter derives from all three primary rating agencies' propounding "highly suspect and artificially inflated" ratings, (Opp. at 28 n.11), focuses on the state of mind of the wrong people. State Street is not in the rating business. Even if the rating agencies were not doing a good job (a conclusion that is inconsistent with State Street's experience in buying assets that did not default in material amounts), State Street did not do anything more than report accurately what the ratings were. Plaintiffs would have to do much

---

[33]    Nor do Plaintiffs' generalized allegations regarding a lack of "adequate internal controls" contribute to any inference of scienter. Instead, they amount to an impermissible attempt at pleading fraud-by-hindsight. *Compare* Opp. at 63 ("scienter can also be inferred from the detailed allegations showing that the Company failed to maintain adequate internal controls--despite Logue and Resch's repeatedly certifying that controls were in place") *with In re H&R Block Sec. Litig.*, 527 F. Supp. 2d 922, 930 (W.D. Mo. 2007) (where employees "told investors that [the company] regularly reviewed the [allegedly fraudulent] program to ensure its legality", plaintiff's allegations of "the Company's post-Class Period remedial measures relating to [the] program" did not evince scienter and were an attempt at pleading fraud-by-hindsight) *and In re Ceridian Corp. Sec. Litig.*, 542 F.3d 240, 248 (8th Cir. 2008) (no strong inference of scienter where plaintiffs "fail to *allege specific* facts giving rise to a strong inference that [defendants] knew . . . that . . . internal accounting controls were deficient" when allegedly false statements made) (emphasis in original).

more to show that anything State Street said was made materially false by virtue of rating

quality, let alone that anyone at State Street knew that the ratings of State Street's assets left a

misleading impression about the credit quality of those assets.

Third, Plaintiffs' comparison of the movement of the conduit and the portfolio asset

values (not credit quality) with the movement of values in an MBS index, (Opp. at 68),

demonstrates nothing at all.  The referenced index did not (and did not purport to) track the same

type of assets as were held by the conduits or in the portfolio.  (Mem. at 38-39).  This is just

another instance where Plaintiffs have avoided addressing an analytical problem squarely

presented in Defendants' brief, while continuing blithely to advance the criticized conclusion.[34]

Finally, Plaintiffs' attempt to substitute the "core business" doctrine for the particular

allegations required by the PSLRA must also fail.  (Opp. at 60-61).  The First Circuit has not

adopted this doctrine, and, in any event, Plaintiffs have alleged no facts showing management's

general exposure to the particular information at issue nor the crucial importance of those facts,

which are necessary to make this one of the "exceedingly rare" situations in which the "core

business" doctrine should apply.  *South Ferry LP, No. 2 v. Killinger*, 542 F.3d 776, 785 n.3 (9th

Cir. 2008); *Rosenzweig v. Azurix Corp.*, 332 F.3d 854, 867 (5th Cir. 2003) (rejecting allegation

that failure of company's core business evidences defendant's knowledge that they were

misrepresenting company's prospects for success); *In re Bally Total Fitness Sec. Litig.*, Nos. 04

C 3530, 04 C 3634, 04 C 3713, 04 C 3783, 04 C 3844, 06 C 3936, 04 C 4697, 04 C 1437, 2006

---

[34]    Similarly, Plaintiffs' three "red flag" allegations (offered as evidence of recklessness) are in fact red herrings.  Each of them is premised on the notion that State Street should have known that unrealized losses in the conduits and the portfolio might grow.  (Opp. at 69-70).  This is of no moment because Plaintiffs have not identified any statement made false or misleading by virtue of such a conclusion.  In fact, State Street never said or implied that the assets would not decline, and expressly warned that they might.  (Mem. at 18-20, App. A).  Moreover, the "red flags" are premised on deficient rumors about unspecified "issues" and "problems", (Compl. ¶¶ 162, 164), with no further details alleged.  *See In re Ferro Corp.*, 2007 WL 1691358, at *12 (dismissing complaint because vague information and "water-cooler gossip" provided by confidential witnesses insufficient to evidence scienter); *Osher*, 256 F. Supp. 2d at 1158 (vague allegations regarding "meeting" without details as to when the meeting took place or what was said insufficient to establish scienter).  Nor does the experience of *other banks*, (Opp. at 69-70), say anything about Defendants' scienter.  (Mem. at 40-41).

WL 3714708, at *9 (N.D. Ill. July 12, 2006) (rejecting plaintiffs' theory as an "attempt [] at an

end-run around the requirement that plaintiffs set forth particularized facts to suggest that

defendants acted knowingly or recklessly").

## III.   THE SECURITIES ACT CLAIMS SHOULD BE DISMISSED

Plaintiffs assert claims under the Securities Act with respect to a single offering of State

Street common stock in June 2008.  The statements challenged as false or misleading in the

prospectus for this offering are inactionable for the reasons set forth above.  Moreover, Plaintiffs'

Securities Act claims--the *only* claims asserted against the Underwriters of the offering[35] and

Ernst & Young LLP--must be dismissed for the following additional reasons:

- Plaintiffs do not dispute that the only named Plaintiff that could possibly have standing to assert Securities Act claims with respect to the June 2008 offering (*i.e.*, MPERS) brought its claims *after the one-year limitations period had run*.

- Plaintiffs do not dispute that (1) *they did not timely serve the Underwriters* with the *Demory* complaint;[36] (2) there was no good cause for their failure to do so; and (3) they never sought an extension of time.

- Plaintiffs do not allege a material misrepresentation because they nowhere connect their *general* Exchange Act allegations to the *specific* June 2008 offering materials from which their Securities Act claims arise.

- Plaintiffs do not dispute that *the Securities Act claims are based on the same core allegations as the Exchange Act claims*; and boilerplate disclaimers of such fraud allegations do not allow Plaintiffs to avoid pleading scienter as required by Rule 9(b).

- Plaintiffs do not dispute that the Complaint fails to allege expressly that they purchased State Street stock either (1) *directly* in the June 2008 offering or (2) from *any* of the Underwriters.

Although Plaintiffs attempt to distract the Court from these basic facts, their makeweight

arguments cannot save their claims.

---

[35]     The Underwriters are Credit Suisse Securities (USA) LLC ("Credit Suisse"), Goldman, Sachs & Co. ("Goldman Sachs"), Morgan Stanley & Co. Incorporated ("Morgan Stanley"), and UBS Securities LLC ("UBS").
[36]     Plaintiffs assert that "[t]he four Underwriter Defendants do not dispute that they were timely served with the operative Complaint here."  (Opp. at 90).  To the contrary, as Defendants have explained, Goldman Sachs has *never* been properly served with any complaint.  (Mem. at 57-88 & n.73).

### A.      Plaintiffs' Claims Are Time-barred

Plaintiffs do not dispute that the only named Plaintiff that could possibly have standing to assert Securities Act claims brought them after the one-year limitations period had run.  Plaintiffs attempt to avoid the consequences of the statute of limitations by arguing that (1) the *Demory* complaint tolled the statute of limitations, (2) the claims regarding the conduits and investment portfolio relate back to the *Demory* complaint, and (3) the claims regarding FX practices and internal controls were timely in any event.  (Opp. at 84-90).  Those arguments cannot save Plaintiffs' claims.  As discussed below, the *Demory* complaint was a "placeholder" complaint filed on behalf of a plaintiff who had no standing.  The overwhelming weight of authority demonstrates that claims by plaintiffs without standing cannot toll the statute of limitations under *American Pipe & Construction Co. v. Utah*, 414 U.S. 538, 554-55 (1974).  Were Plaintiffs' arguments to prevail, the resulting abuse of legal process would effectively render the statute of limitations meaningless.

### 1.      Plaintiffs' Claims Were Not Tolled By The *Demory* Complaint

In some circumstances, when a plaintiff files a class action complaint within the limitations period, the filing of the complaint tolls the statute of limitations.  *See American Pipe*, 414 U.S. at 554.  Plaintiffs, however, cannot rely on *American Pipe* tolling to save their claims because the *Demory* plaintiff lacked standing as a matter of law.

Plaintiffs argue that, because the *Demory* complaint supposedly alleged standing under the Securities Act, "Defendants' statute of limitations challenge fails regardless of whether Demory's standing ultimately would have been found lacking."  (Opp. at 85).[37]  In fact, the *Demory* complaint alleged facts conclusively refuting any standing to assert the Securities Act claims advanced here, which prevents tolling as a matter of law.  *See In re Wells Fargo*

---

[37] Plaintiffs do not dispute that the *Hill* complaint provides no basis for *American Pipe* tolling.  (Mem. at 55).

*Mortgage-Backed Certificates Litig.*, No. 09-cv-01376-LHK, 2010 WL 4117477, at *6 (N.D.

Cal. Oct. 19, 2010) ("*American Pipe* and the cases interpreting it support the declination to

extend tolling to claims over which the original named Plaintiffs asserted no facts supporting

standing.").

The certification *attached to the Demory complaint*--which was sworn under oath--

showed that the *Demory* plaintiff purchased her State Street stock *eleven months before* the

challenged offering (in June 2008).  Thus, she could not have purchased stock in the offering;

and she therefore had no statutory standing *as a matter of law*.  (Mem. at 56).[38]  As a

consequence, her claims were insufficient to toll the statute of limitations.  Under *American*

*Pipe*, only a putative class action brought by a plaintiff *with standing* tolls the statute of

limitations.  *See Fleming v. Bank of Bos. Corp.*, 127 F.R.D. 30, 36-37 (D. Mass. 1989); *In re*

*Elscint, Ltd. Sec. Litig.*, 674 F. Supp. 374, 378 (D. Mass. 1987).  Both cases hold that "it would

be improper to allow the filing of a class action by nominal plaintiffs who are wholly inadequate

to represent the asserted class to have the effect of tolling limitation to permit the otherwise

untimely intervention of proper class representatives."  *Fleming*, 127 F.R.D. at 36; *Elscint*, 674

F. Supp. at 378.  These cases--directly on point--cannot be distinguished.  (*Compare* Opp. at

87 & n.61).

This is not, as Plaintiffs assert, "a misapplication of *American Pipe*" (Opp. at 86), and it

is not applicable only in this District.  In addition to the *Fleming* and *Elscint* decisions from this

District, other courts have also recognized that "the statute is tolled only as to claims where the

---

[38]     Plaintiffs cite two cases for the point that a plaintiff without standing on the face of the complaint may
nevertheless toll the statute of limitations with a placeholder complaint.  *See* Opp. at 85-86.  Both cases are wholly
inapposite because in neither case, unlike here, was the original complaint *lacking any plaintiff* with standing.  *See*
*McDonald v. Sec. of Health and Human Servs.*, 834 F.2d 1085, 1087 & 1092 n.4 (1st Cir. 1987) (involving the
administrative remedies for absent class members, not standing); *In re Transkaryotic Therapies, Inc. Sec. Litig.*, 319
F. Supp. 2d 152, 159 (D. Mass. 2004) (finding that one named plaintiff had standing to pursue Securities Act
claims).

named plaintiffs had standing." *Me. State Ret. Sys. v. Countrywide Fin. Corp.*, 2:10-cv-00302, 2010 WL 4452571 (C.D. Cal. Nov. 4, 2010); *accord Walters v. Edgar*, 163 F.3d 430, 432 (7th Cir. 1998); *Wells Fargo*, 2010 WL 4117477, at *7-8; *Boilermakers Nat'l Annuity Trust Fund v. WAMU Mortg. Pass Through Certificates*, No. 09-cv-00037MJP, 2010 WL 3815796, at *10 (W.D. Wash. Sept. 28, 2010); *Pub. Emps. Ret. Sys. of Miss. v. Merrill Lynch & Co. Inc.*, 714 F. Supp. 2d 475, 480-81 (S.D.N.Y. 2010); *Palmer v. Stassinos*, 236 F.R.D. 460, 465 (N.D. Cal. 2006); *Kruse v. Wells Fargo Home Mortgage, Inc.*, No. 02-CV-3089 (ILG), 2006 WL 1212512, at *5-6 (E.D.N.Y. May 3, 2006); *In re Colonial Ltd. P'ship Litig.*, 854 F. Supp. 64, 82 (D. Conn. 1994); *In re Crazy Eddie Sec. Litig.*, 747 F. Supp. 850, 855-56 (E.D.N.Y. 1990).

Plaintiffs contend that not tolling the statute of limitations on their Securities Act claims would be inconsistent with the Supreme Court's reasoning in *American Pipe* and undermine the policies underlying Rule 23 because it would punish putative class members for failing to anticipate that the *Demory* plaintiff lacked standing.  (Opp. at 86).  This is incorrect.  Courts have rejected the very same argument.  *See Me. State Ret. Sys. v. Countrywide Fin. Corp.*, 2:10-cv-00302, 2010 WL 4452571, at *6 (C.D. Cal. Nov. 4, 2010) (refusing to toll Securities Act claims where the original plaintiff lacked standing despite objections that "such a rule would place an onerous and impossible burden on a putative class member to determine whether the named plaintiffs upon which they are relying to protect their rights have standing to do so"); *see also In re Wells Fargo*, 2010 WL 4117477, at *6; *Boilermakers Nat'l Annuity*, 2010 WL 3815796, at *10; *Palmer*, 714 F. Supp. 2d at 480-81; *In re Colonial*, 854 F. Supp. at 82.

Any other rule would reward gamesmanship.  *Me. State Ret. Sys.*, 2010 WL 4452571, at *6 ("extending *American Pipe* tolling to class action claims the original named plaintiffs had no standing to bring will encourage filings made merely to extend the period in which to find a class

representative"; *accord Wells Fargo*, 2010 WL 4117477, at *8.  This case is a perfect example.

The *Demory* complaint was filed on *the very last day* of the one-year limitations period.  As a

result, no putative class member could possibly have relied on the *Demory* plaintiff to protect its

rights.  The *Demory* complaint and attached certification demonstrated to a certainty that the

named plaintiff lacked standing.  Plaintiffs' counsel thus *knew* that the *Demory* plaintiff had not

purchased stock in the June 2008 offering and, therefore, had no standing to assert Securities Act

claims.  Permitting tolling of the statute of limitations in these circumstances would do nothing

other than reward an improper attempt to extend the period in which to find a class

representative.  Preventing tolling would not frustrate the actual expectations of any class

member.[39]  Thus, the Court should not permit tolling to apply in this case.

>            **2.      Plaintiffs' Claims Regarding The Conduits And Investment Portfolio
>                    Do Not Relate Back To The *Demory* Complaint**

Plaintiffs argue that, even if the *Demory* complaint did not toll the statute of limitations,

MPERS' Securities Act claims regarding the conduits and investment portfolio somehow "relate

back" to the *Demory* complaint under Rule 15(c)(1)(b) and, therefore, are timely.  (Opp. at 89-

90).  That is wrong as a matter of law.

---

[39]      Not only are Plaintiffs' three cases, (Opp. at 86-87), contrary to the weight of authority, they are based on policy considerations clearly inapplicable here.  There, the courts were concerned about preventing absent class members who could reasonably have believed that they were included in the putative class from being disadvantaged and about preventing the judicial inefficiency that would result if every potential class member filed a separate action.  *In re Enron Corp. Sec., Derivative & "ERISA" Litig.*, 529 F. Supp. 2d 644, 708 (S.D. Tex. 2006); *In re Flag Telecom Holdings, Ltd. Sec. Litig.*, 352 F. Supp. 2d 429, 456 (S.D.N.Y. 2005); *Cal. Pub. Employees' Ret. Sys. v. Chubb Corp.*, 2002 U.S. Dist. LEXIS 27189, at *91 (D.N.J. June 26, 2002), *aff'd*, 394 F.3d 126 (3d Cir. 2004).  As discussed above, the *Demory* complaint was filed on the last day of the limitations period and, therefore, could not have caused any potential plaintiff to forego bringing Securities Act claims.  Plaintiffs' cases have been distinguished under such circumstances.  *See Wells Fargo*, 2010 WL 4117477, at *5 ("Unlike the new plaintiffs in *Flag Telecom* or *Enron*, the New Plaintiffs here had no reason to rely on the filing of the [original] complaints to protect their claims.  The original complaints did not allege that the named plaintiffs had *any* ownership interest in the 37 dismissed Offerings.  Thus, review of these complaints would have revealed that the Plaintiffs in the [original] actions had no standing to bring claims as to the 37 dismissed Offerings.").  Concurring opinions in both *American Pipe* and *Crown, Cork & Seal Co. v. Parker*, 462 U.S. 345, 354 (1983)--cases that balanced the goals of judicial economy and defendants' interests in certain application of statutes of limitations--each warned against permitting defective class action complaints to extend statutes of limitations.  (Mem. at 57).

The operative Complaint does not relate back to the *Demory* complaint because the *Demory* plaintiff did not purchase in the June 2008 offering and consequently lacked standing to bring a Securities Act claim.  "An amendment adding a party plaintiff relates back to the date of the original pleading only when . . . there is an identity of interests between the original and newly proposed plaintiff."  *In re Syntex Corp. Sec. Litig.*, 95 F.3d 922, 935 (9th Cir. 1996) (finding no relation back because there was no identity of interests where "the newly proposed class members bought stock at different values and after different disclosures and statements were made by Defendants and analysts").

Courts have repeatedly held that there can be no identity of interests--and no relation back--where the original plaintiff lacked standing.  *See Wells Fargo*, 2010 WL 4117477, at *7 (finding no relation back because there was no identity of interests where the original plaintiffs lacked standing to bring Securities Act claims and, therefore, had no interest in them); *Palmer*, 236 F.R.D. at 466 (finding no relation back because the original plaintiffs' "lack of standing to raise such claims means they have no interest in them" and holding that the additional plaintiffs' claims "must therefore be treated as filed on the day they were actually brought before this court").  As the First Circuit has explained in a similar context:

> [W]e repudiate the conceit that an action filed by one plaintiff gives a defendant notice of the impending joinder of any or all similarly situated plaintiffs.  Such a rule would undermine applicable statutes of limitations and make a mockery of the promise of repose.  We, like other courts, flatly reject the proposition that relation back is available merely because a new plaintiff's claims arise from the same transaction or occurrence as the original plaintiff's claims.

*Young v. Lepone*, 305 F.3d 1, 15-16 (1st Cir. 2002).[40]

Further, Plaintiffs should be estopped from even asserting that they may relate their claims back to the *Demory* complaint because such an argument is inconsistent with their prior position in this case.  Under the rule of judicial estoppel, "[w]here a party assumes a certain position in a legal proceeding, and succeeds in maintaining that position, he may not, thereafter, simply because his interests have changed, assume a contrary position, especially if it be to the prejudice of the party who has acquiesced in the position formerly taken by him."  *New Hampshire v. Maine*, 532 U.S. 742, 742-43 (2001) (internal quotation marks omitted).  On May 25, 2010, this Court entered an Order (Docket # 37) setting a pleading schedule for a "Consolidated Amended Complaint."  Pursuant to that Order, Plaintiffs filed a Consolidated Class Action Complaint on June 25, 2010.  When Plaintiffs filed a second amended complaint (*i.e.*, the operative Complaint) on July 29, 2010, they did not seek leave of this Court.  Rather, as their counsel told State Street's counsel, Plaintiffs took the position that they could do so as of right, thereby treating the Consolidated Class Action Complaint – not the *Demory* complaint – as the "first" complaint in this matter.  Accordingly, consistent with Rule 15, they asserted that neither of their complaints related back to the *Demory* complaint.  Having relied on the Consolidated Class Action Complaint as the "first" complaint in taking positions before both the Court and Defendants, Plaintiffs cannot now change course and argue that it relates back to the *Demory* complaint.

---

[40]    The cases cited by Plaintiffs, (Opp. at 89 & n.62), are not on point.  Both involve the application of the relation back doctrine in the context of mistakes about the identities of the named parties.  *See Krupski v. Costa Crociere S.p.A.*, 130 S. Ct. 2485, 2489 (2010); *In re Juniper Networks, Inc. Sec. Litig.*, 542 F. Supp. 2d 1037, 1052-53 (N.D. Cal. 2008).  There was no mistake in this case.  Plaintiffs knew of the Underwriters' role in the underlying dispute.  Not surprisingly, courts have rejected the same argument made by Plaintiffs here, distinguishing some of the same cases.  *See, e.g., Wells Fargo*, 2010 WL 4117477, at *7 ("[T]he *Krupski* case did not address the "identity of interests" issue . . . Nothing in the *Krupski* decision changes the fact that [the additional plaintiff] has failed to show an identity of interests with the [original] plaintiffs.").

Finally, the operative Complaint does not relate back to the *Demory* complaint with respect to the claims against the Underwriters because Plaintiffs did not timely serve the Underwriters with the *Demory* complaint.  As a matter of law, an amended complaint cannot relate back to an earlier complaint that was not timely served.  *Coons v. Industrial Knife Co.,* 620 F.3d 38, 43-44 & n.8 (1st Cir. 2010); *accord In re Chaus Sec. Litig.*, 801 F. Supp. 1257, 1261-62 (S.D.N.Y. 1992).[41]  In *Chaus*, for example, the plaintiffs filed the original complaint on December 7, 1988, against an issuer, lead underwriters, and individual defendants, asserting violations of Sections 11 and 12(a)(2) of the Securities Act and Section 10(b) of the Exchange Act.  *Id.* at 1260.  After the original complaint was dismissed, the plaintiffs filed an amended complaint on December 18, 1990.  *Id.*  The court found that the original complaint had not been served on the individual defendants in accordance with Rule 4 and that the plaintiffs had failed to establish good cause for the lack of timely service.  *Id.* at 1261.  The court then held that, as a result, the amended complaint could not relate back to the original complaint but should be deemed filed on December 18, 1990, as to the individual defendants.  *Id.* at 1263.  Since the Securities Act claims against the individual defendants did not relate back to the original complaint and the statute of limitations had run by the time the amended complaint was filed, the claims were time-barred.  *Id.*  The same is true here.  The Consolidated Class Action Complaint-- to the extent that it has been served (Mem. at 57-59)--is Plaintiffs' first complaint against the Underwriters for statute of limitations purposes.  It was filed more than 17 months after the

---

[41]     *See also Wilson v. Grumman Ohio Corp.*, 815 F.2d 26, 29 (6th Cir. 1987) (dismissing a new complaint as time-barred where the original complaint was never served); *Stein v. Reynolds Securities, Inc.*, 667 F.2d 33, 34 (11th Cir. 1982) (dismissing a new complaint as time-barred where the original complaint was dismissed for failure to prosecute); *Edwards v. Ocwen Federal Bank, FSB*, No. 08-317, 2010 WL 398902, at *4-5 (D.N.J. Jan. 25, 2010) (finding no relation-back to a complaint that was never served); *Barna v. Morgan*, 341 F. Supp. 2d 164, 167-68 (N.D.N.Y. 2004) (same); *Scott v. Guarantee Reserve Life Ins. Co.*, No. 95-C-6622, 1998 WL 177954, at *4-5 (N.D. Ill. April 7, 1998) (same); *Hunt v. Department of Air Force*, 149 F.R.D. 657, 662 (M.D. Fl. 1993) (holding that "a party must effectuate proper service under Rule 4 for relation-back under Rule 15 to be proper," the court dismissed the amended complaint as time-barred).

alleged "truth" about misstatements in the June 2008 offering materials emerged.  Therefore, the claims against the Underwriters are time-barred.[42]

### 3.    Plaintiffs' Claims Regarding FX Practices And Internal Controls Are Time-barred

Plaintiffs attempt to salvage a portion of their Securities Act claims by arguing that, even if the *Demory* complaint did not toll the statute of limitations, the Securities Act claims concerning FX practices and internal controls should nonetheless survive because the "truth" about these claims was disclosed at a later date and therefore MPERS brought its claims less than one year after the "truth" about such allegations emerged.  (Opp. at 88-89).  That, too, is wrong.

In fact, the claims on FX practices and internal controls are also barred by the statute of limitations because Plaintiffs' actual notice of alleged misrepresentations in the offering materials concerning the conduits and investment portfolio in January 2009 put them on notice that other statements in the offering materials could be false or misleading as well.  As an initial matter, "the plaintiff must plead and prove facts showing that he is in compliance with the statute."  *See Cook v. Avien, Inc.*, 573 F.2d 685, 695 (1st Cir. 1978).[43]  Plaintiffs have not done so.  Moreover, once Plaintiffs were on notice of any Securities Act claims, they had one year in which to bring all Securities Act claims.  *See In re USEC Sec. Litig.*, 190 F. Supp. 2d 808, 818 (D. Md. 2002) (dismissing all allegations of misstatements in offering materials as time-barred because the plaintiffs had notice of claims on some misstatements more than one year before filing their complaint).  Because Plaintiffs were aware of the facts necessary to bring Securities

---

[42]    The cases cited by Plaintiffs (Opp. at 89 & n.62) are also inapposite because they do not address a plaintiff's failure to serve timely the complaint.  *See Krupski*, 130 S. Ct. 2485; *Juniper*, 542 F. Supp. 2d 1037. Indeed, the First Circuit recently distinguished *Krupski* where, as here, the plaintiff failed to serve the defendant with the complaint.  *Coons*, 620 F.3d at 43-44 & n.8.

[43]    *Accord Me. State Ret. Sys. v. Countrywide Fin. Corp.*, 2:10-cv-00302, 2010 WL 4452571, at *6-*7 (C.D. Cal. Nov. 4, 2010) (dismissing case for failure to plead compliance with statute of limitations); *Ingenito v. Bermec Corp.*, 441 F. Supp. 525, 552 (S.D.N.Y. 1977) (same); *Kroungold v. Triester*, 407 F. Supp. 414, 419 (E.D. Pa. 1975) (same).

Act claims more than one year before MPERS filed its first complaint, all of their Securities Act claims must be dismissed. *See id.* at 819.[44]

### B.    Plaintiffs Did Not Timely Serve The Underwriters

Plaintiffs do not dispute that they did not timely serve the Underwriters.  Nor do Plaintiffs offer any excuse for their failure to serve the Underwriter Defendants, or even attempt to distinguish the cases cited in Defendants' opening brief in which courts have dismissed claims for failure to make timely service under similar circumstances.  Rather, Plaintiffs argue that service of process is a mere "technicality" that this Court should ignore.  Plaintiffs argue on that basis that the Court "should deem the time for service of the Underwriter Defendants extended through July 2010."  (Opp. at 90-91).  Plaintiffs' argument is both meritless and offensive.

Requiring service of process does not enforce a meaningless "technicality" and does not "put form over substance."  Contrary to Plaintiffs' assertions (*see* Opp. at 90-91), service of process is fundamental both to this Court's jurisdiction and to constitutional due process.  "It is elementary that one is not bound by a judgment *in personam* resulting from litigation in which he is not designated or to which he has not been made a party by service of process." *Zenith Radio Corp. v. Hazeltine Research, Inc.*, 395 U.S. 100, 110 (1969); *accord United Electrical, Radio and Machine Workers of Am. v. 163 Pleasant St. Corp.*, 960 F.2d 1080, 1085 (1st Cir. 1992) ("[S]ervice of process constitutes the vehicle by which the court obtains jurisdiction.").  This is the "consistent Constitutional rule." *Zenith,* 395 U.S. at 110; *accord Martin v. Wilks,* 490 U.S. 755, 762 (1989) (the rule is consistent with the tradition of affording every person his day in court).  "Failure to give notice violates the most rudimentary demands of due process of law."

---

[44]       *Cf. Kauthar SDN BHD v. Sternberg,* 149 F.3d 659, 671 (7th Cir. 1998) (dismissing allegations of "a plethora of fraudulent misrepresentations and omissions regarding a number of different aspects of [the plaintiff's] course of business dealings with the defendants" because "[the plaintiff] has pleaded that it was aware of sufficient facts to enable it to learn that it had a cause of action for fraud against the defendants more than one year before it filed suit"); *Eckstein v. Balcor Film Investors,* 58 F.3d 1162, 1168 (7th Cir. 1995) ("Plaintiffs complain of other omissions and statements, which do not require separate discussion.  The time begins when the investors should have discovered the general fraudulent scheme, not when they should have discovered particular details").

*Peralta v. Heights Medical Center, Inc.,* 485 U.S. 80, 84 (1988) (internal quotation marks omitted).[45]

Plaintiffs do not deny that they were aware of their service obligations, never attempted to serve timely the Underwriters, nor sought more time.  (Mem. at 58).  Plaintiffs have told this Court that MPERS "is a highly sophisticated institutional investor with extensive experience prosecuting securities class actions, and which is represented in this action by the Office of the Mississippi Attorney General. . . .  Accordingly, there can be no question that MPERS has the resources, experience and expertise to oversee this litigation . . . ."[46]  Moreover, according to Plaintiffs, their four law firms "are among the top firms in the nation representing plaintiffs in securities class action litigation and have been appointed sole or Co-Lead Counsel in numerous complex securities class actions in this District and around the country."[47]

Plaintiffs have no response to the decisions by courts in this District and elsewhere that have dismissed claims for lack of timely service--with the result that the claims were barred by the statute of limitations--where the plaintiffs demonstrated the lack of diligence exhibited by Plaintiffs here.  (*Compare* Opp. at 91 *with* Mem. at 58-59 & n.74).  Plaintiffs claim that they "would be gravely harmed" if their claims against the Underwriters were dismissed for lack of timely service (Opp. at 91), but provide no justification for allowing a suit to proceed without service.  Indeed, Plaintiffs cite no authority for such a position.  Moreover, Plaintiffs have

---

[45]    *Accord Friedman v. Estate of Presser*, 929 F.2d 1151, 1156 (6th Cir. 1991) ("[T]he requirement of proper service of process is not some mindless technicality."); *Del Raine v. Carlson*, 826 F.2d 698, 704 (7th Cir. 1987) ("As they were sued in their personal capacities, they had to be served.  This requirement is not some mindless technicality."); *United States v. Rodrigue*, 645 F. Supp. 2d 1310, 1320 (Ct. Int'l Trade 2009) ("Proper service of process is not some mindless technicality, but--rather--a critical part of a lawsuit."); *Advanced Portfolio Techs., Inc. v. Advanced Portfolio Techs., Ltd.*, 94-cv-5620, 1999 WL 64283, at *8 (S.D.N.Y. Feb. 8, 1999) ("The 120 day time limit in Rule 4(m) is not a technicality.").

[46]    Response of the Public Employees' Retirement System of Mississippi and Union Management Asset Holding AG to the National Automatic Sprinkler Industry Pension Fund's Supplemental Objection (Docket #25) at 3-4.

[47]    Memorandum of Law in Support of the Public Employees' Retirement System of Mississippi's and Union Asset Management Holding AG's Motion for Appointment as Lead Plaintiff, Approval of Their Selection of Lead Counsel, and Consolidation of All Related Actions (Docket #4) at 12-13.

articulated no "grave" harm here.  To the extent that Plaintiffs would be harmed, that would be true in any lawsuit and is a risk of which they and their counsel were surely aware when they failed to serve the Underwriters for *more than six months*--and *more than 60 days* after the 120-day deadline imposed by Rule 4(m).  Finally, dismissing the Underwriters for lack of timely service will not extinguish the possibility of any recovery for any putative class member.  The Underwriters are not even named as Defendants in the Exchange Act claims and are just four of twenty-one Defendants in the Securities Act claims.  The reality is that the Underwriter Defendants were added simply to increase the burden and costs of defending this case and therefore to attempt to increase Plaintiffs' settlement leverage.

### C.      Plaintiffs Do Not Allege An Actionable Misstatement Or Omission

Defendants' Brief showed that Plaintiffs did not identify any material misrepresentation in the offering materials because their Exchange Act allegations are defective and because they nowhere connect their general Exchange Act allegations to the *specific* June 2008 offering materials from which their Securities Act claims arise.  (Mem. at 59-66).  Instead, Plaintiffs try to save their Securities Act allegations by regurgitating an abridged version of their Exchange Act arguments (just as they tried to plead their Securities Act allegations by regurgitating an abridged version of their Exchange Act allegations).  In so doing, they rely on facts that they do not plead, disregard allegations in their own Complaint, and (once again) ignore rather than address Defendants' dispositive points and authorities.

### 1.      The FX Transaction Allegations Do Not State A Claim

Although Plaintiffs baldly assert that the Complaint pleads facts that provide a "basis to allege that the foreign exchange fraud was taking place throughout the Class Period" (Opp. at 78), they point to nothing but naked conclusions (Opp. at 77-78 & n.57).  Plaintiffs make no factual allegations supporting the claim that State Street materially misstated its revenue from

FX transactions during the period covered by the financial statements incorporated into the June

2008 offering materials (*i.e.*, FY 2007 and Q1 2008).  Plaintiffs refer to allegations based on

confidential witnesses (Opp. at 77); but none shows that State Street overcharged clients in the

period discussed in the prospectus.  (Mem. at 60-61).  Plaintiffs also cite to allegations that State

Street's supposed misstatements were material (Opp. at 77-78); but those allegations are

speculative *and* based on a decline in FX revenue from a period that post-dates the June 2008

offering by six months.  (Mem. at 61).[48]

In addition, Plaintiffs contend that the risk disclosures in the offering materials were false

because they warned that State Street "could have contractual disputes with customers and that

those disputes could affect State Street's operations," without disclosing actual disputes.  (Opp.

at 78-79).  This ignores a crucial point.  All the offering materials could disclose was the risk that

State Street could have contractual disputes with customers and the potential adverse impact of

such disputes on State Street's operations.  The June 2008 offering materials simply could not

have disclosed a contractual dispute at that time over the mark-up on FX transactions.  Indeed,

the Complaint does not allege that such a dispute then existed.

### 2.    The Internal Control Allegations Do Not State A Claim

Plaintiffs contend that their vague and conclusory internal control allegations should

survive this motion to dismiss based on (1) purported misrepresentations about State Street's

internal controls with respect to the conduits that were incorporated by reference into the offering

materials and (2) statements by confidential witnesses who "bolster" plaintiffs' allegations.

(Opp. at 79-80).  Yet plaintiffs' internal control allegations concern FX practices (Compl. ¶¶ 76-

82)--not the conduits--and the anecdotal statements of two former employees are insufficient as a

---

[48]      In fact, the Complaint lacks any factual support for the assertion that State Street made material
misstatements about FX transactions *at any time*.  *See supra* at 9-12

matter of law to call into question E&Y's unqualified opinion on State Street's internal controls over financial reporting (Mem. at 63).  Indeed, Plaintiffs simply ignore Defendants' fundamental point that the Complaint cannot plausibly allege that State Street's internal controls were inadequate just because those controls did not uncover that State Street was charging CalPERS and CalSTRS more for certain FX trades than their contracts allegedly permitted.  (Mem. at 62).  Even if CalPERS and CalSTRS had been overcharged, adequate internal controls do not necessarily detect all issues, but rather are "intended to provide *reasonable assurances* regarding the reliability of financial reporting," as State Street disclosed.  (Compl. ¶ 291) (emphasis added).

Plaintiffs also argue that the disclosures in the offering materials were meaningless because they did not warn investors that the risks associated with State Street's internal controls had already transpired.  (Opp. at 80).  Once again, Plaintiffs overlook a crucial point.  All the offering materials could disclose was the extent of State Street's internal controls over the risks associated with FX transactions and the possibility that those controls could be inadequate to identify and mitigate such risks.  Plaintiffs plead no facts showing that State Street's internal controls actually were inadequate during the period covered by the June 2008 offering materials (or at any time).  *See supra* at 13-15.

### 3.    The Conduit And Investment Portfolio Allegations Do Not State A Claim

Plaintiffs assert that "Defendants made actionable misstatements concerning State Street's Conduits and investment portfolio in public filings that were issued before the June 2008 offering, and which were incorporated by reference into the Offering Materials."  (Opp. at 81) (emphasis omitted).  As an initial matter, contrary to Plaintiffs' contentions (*see* Opp. at 82), the disclosures in the offering materials about the asset quality of the conduits and investment

portfolio were not actionable misrepresentations but rather inactionable opinions.  *See supra* at

19-21; Mem. at 36-41.  Moreover, Plaintiffs ignore their own Complaint, which demonstrates the

complete absence of support for any allegation that the offering materials misrepresented asset

quality.  Allegations that the real estate market collapse had caused *other* financial institutions to

take significant write-downs on mortgage-backed securities, *other* investment vehicles to suffer

losses, and *other* State Street investments to experience declines are not sufficient to plead that

any disclosures in the offering documents as to the conduit assets were false when made.  (Mem.

at 64 & n.76).  Further, Plaintiffs do not dispute that their real challenge to the conduit and

portfolio disclosures turns on alleged misstatements in October and November 2008 and

financial turmoil that intensified *after* June 2008, none of which can be the basis for claims of

misstatement in the June 2008 offering documents.  (*See* Mem. at 64-65).  Despite Plaintiffs'

argument (Opp. at 82), hindsight allegations cannot form the basis for a Securities Act claim.

*See Yu v. State Street Corp.*, 686 F. Supp. 2d 369, 376-77 (S.D.N.Y. 2010).[49]

Finally, Plaintiffs assert that the disclosures in the offering materials were inadequate

based on Judge Saris's ruling in *Kenny*.  *See Kenney v. State Street Corp.*, 694 F. Supp. 2d 67, 79

(D. Mass. 2010).  (Opp. at 82).  Plaintiffs mislead the Court once again.  As they well know,

Judge Saris' ruling did not concern the offering materials, which are not even at issue in *Kenney*,

but rather an isolated disclosure about asset quality in October 2008, considered out of context.

*Id*.; *supra* at 16-17.  Nor do Plaintiffs challenge the point that the offering materials disclosed

everything about the conduits and investment portfolio that should have been disclosed: State

---

[49]      Plaintiffs mislead the Court in their attempt to argue to the contrary.  (Opp. at 82).  In *Yu v. State Street Corp.*, 686 F. Supp. 2d 369 (S.D.N.Y. 2010), the court refused to allow the plaintiffs to rely on hindsight allegations.  The court permitted the plaintiffs to replead, requiring allegations that the statements at issue were materially misleading *at the time they were made*.  *Yu v. State Street Corp.*, 08 MDL No. 1945, 08-CV-8235, 2010 WL 2816259, at *3 (S.D.N.Y. July 14, 2010).  A motion to dismiss the second amended complaint was filed on August 27, 2010 and is currently pending.  *Yu v. State Street Corp.*, No. 08-cv-08235-RJH-JLC (S.D.N.Y. August 27, 2010) (docket entry #80).  In *In re Evergreen Ultra Short Opportunities Fund Sec. Litig.*, No. 08-11064, 2010 WL 1253114 (D. Mass. Mar. 31, 2010), (cited Opp. at 82), the court did not even address hindsight allegations but rather puffery.

Street's losses, the possibility of the conduits' consolidation with State Street, and the impact of potential consolidation on State Street's financials.  (Mem. at 65-66).

### D.     The Complaint Does Not Allege Scienter, As Required Because Plaintiffs' Claims Sound In Fraud

Plaintiffs do not dispute that the Securities Act claims are based on the same core allegations as the Exchange Act claims.  Plaintiffs argue, however, that "the Complaint is carefully structured to draw a clear distinction between negligence/strict liability and fraud claims, providing, effectively two stand-alone complaints."  (Opp. at 72).  This pleading contrivance does not excuse Plaintiffs from alleging the factual basis for a strong inference of scienter.

Plaintiffs' Securities Act claims sound in fraud because express allegations of fraud underpin the core of the Complaint.  For example, a cursory review of the Complaint's "Introduction" makes clear that Plaintiffs are alleging that Defendants "*fraudulently*" perpetrated an eight-year foreign exchange trading "*scheme*," committed an "unconscionable fraud" with their FX practices, "*concealed*" State Street's exposure to the conduits even as they allegedly "*knew*" of the declining value of State Street's investments, and "*intentionally*" understated "exposure to high risk investments" for the purpose of "artificially inflating" State Street's revenues.  Compl. ¶¶ 1-3, 7-8 (emphasis added).  Indeed, Plaintiffs argue in their Opposition that their *Securities Act claims* are viable because "fraud was taking place throughout the Class Period" and that "fraud" was material.  (Opp. at 78, 83-84).

Plaintiffs seek to distract the Court by misconstruing Defendants' position: "Essentially, Defendants argue that wherever a plaintiff's Exchange Act claims contain express allegations of fraud (as they must), concurrently pled Securities Act claims cannot escape Rule 9(b)."  (Opp. at 74) (internal quotation marks omitted).  Defendants argue nothing of the sort.  Rather, they

contend--notwithstanding Plaintiffs' assertions to the contrary (Opp. at 73-75)--that neither

structural complexity nor boilerplate disclaimers in the Complaint can cabin or disclaim away

allegations that are central to the narrative and at the very core of the claims.[50]  (Mem. at 67).

That is precisely the case here.  The Securities Act and Exchange Act claims are based on the

same purported misrepresentations about FX practices (*compare* Compl. ¶¶ 7-10, 50, 75, 77-78,

232 *with* Compl. ¶¶ 432-38, 450), internal controls (*compare* Compl. ¶¶ 224, 237, 251, 260, 270,

280, 293, 303, 313, 329, 342, 349 *with* Compl. ¶ 461), and the conduits and investment portfolio

(*compare* Compl. ¶¶ 12, 16, 17, 36, 89, 107-120, 146-48, 161, 166-73, 175, 188 *with* Compl.

¶¶ 432, 439-42, 458).  They rely on the same assertions by the California AG (*compare* Compl.

¶¶ 67-70 *with* Compl. ¶ 435), the same supposed statements by the same confidential witnesses

(*compare* Compl. ¶¶ 77-78 *with* Compl. ¶ 434), the same allegations of materiality (*compare*

Compl. ¶¶ 74-75 *with* Compl. ¶¶ 436-37), and the same events in the financial markets (*compare*

Compl. ¶¶ 89, 107-120, 161, 166-73, 175, 188 *with* Compl. ¶ 441).[51]

As a fall-back position, Plaintiffs argue that there is no requirement to plead scienter even

if Rule 9(b) applies to the Securities Act claims.  (Opp. at 75 n.55).  To the contrary, the

---

[50]     *Accord SEC v. Patel*, No. 07-0039-SM, 2008 WL 782483, at *4-5, 10 (D.N.H. Mar. 24, 2008); *Stumpf v. Garvey*, No. 03-1352-PB, 02-MDL-1335-PB, 2005 WL 2127674, at *17 (D.N.H. Sept. 2, 2005).

[51]     Despite Plaintiffs' protestations to the contrary, *In re Sonus Networks, Inc. Sec. Litig.*, No. 04-10294, 2006 WL 1308165 (D. Mass. May 10, 2006), is on point.  As in *Sonus*, Plaintiffs here base their Securities Act and Exchange Act claims on the same course of conduct.  The very different allegations in many of the cases cited by Plaintiffs (*see* Opp. at 73-75 & n.54) only serve to emphasize this fact, *see Shaw v. Digital Equip. Corp.*, 82 F.3d 1194, 1223 (1st Cir. 1996) ("if a plaintiff were to attempt to establish violations of Sections 11 and 12(2) as well as the anti-fraud provisions of the Exchange Act through allegations in a single complaint of a unified course of fraudulent conduct, fraud might be said to lie at the core of the action" (citations omitted)); *In re Number Nine Visual Tech. Corp. Sec. Litig.*, 51 F. Supp. 2d 1, 12 (D. Mass. 1999) (distinguished by *Sonus* because, *inter alia*, the plaintiff expressly excluded from the Securities Act claims over 30 numbered paragraphs related to scienter); *Ark. Pub. Employees Ret. Sys. v. GT Solar Int'l, Inc.*, No. 08-CV-312, 2009 WL 3255225, at *3 (D.N.H. Oct. 7, 2009) (the plaintiff made no Exchange Act or scienter allegations); *In re Suprema Specialties, Inc. Sec. Litig.*, 438 F.3d 256, 273 (3d Cir. 2006) (the plaintiff took great care in pleading its Securities Act claims first and "wholly apart" from its Exchange Act claims, allowing for a "clear conceptual separation" of the claims); *In re Majesco Sec. Litig.*, No. 05-3557, 2006 WL 2846281, at *1 (D.N.J. Sep. 29, 2006) (similar); *In re Atlas Air Worldwide Holdings, Inc. Sec. Litig.*, 324 F. Supp. 2d 474, 502 (S.D.N.Y. 2004) (the plaintiffs did more than simply disavow "allegations of fraud in other parts of the complaint," which alone would be "insufficient to avoid the operation of Rule 9(b)").  Indeed, in *Rombach v. Chang*, 355 F.3d 164 (2d Cir. 2004) (cited in Opp. at 74-75), the Second Circuit made clear that certain words are "classically associated with fraud," such as "untrue statements of material facts" and "materially false and misleading."  *Id.* at 172.  Plaintiffs make such allegations in pleading their Securities Act claims.  (Compl. ¶¶ 450, 458, 461, 472, 477).

Complaint must allege scienter where Securities Act claims sound in fraud, as courts in this District and elsewhere make clear.  (Mem. at 67-68 & n.80).[52]  Plaintiffs admit that "[t]he Complaint does not allege that . . . the underwriters acted fraudulently" (Opp. at 75), and the Complaint fails to plead facts showing that State Street or the officer defendants acted with scienter, *see supra* at 23-27.  Plaintiffs' claims must be dismissed.

### E.     Plaintiffs Lack Standing To Bring A Section 12(a)(2) Claim Against State Street Or The Underwriters

Plaintiffs do not dispute that the Complaint fails to allege expressly that they purchased State Street stock either (1) *directly* in the June 2008 offering or (2) from *any* of the Underwriters.  They argue instead that, notwithstanding such deficiencies, they "have adequately alleged that they purchased shares issued in the Offering from the Underwriter Defendants" because (1) the Complaint alleges that MPERS purchased stock "pursuant and/or traceable to the June 2008 Offering" and (2) the Certifications show that MPERS purchased State Street stock on the day of (and the day after) the offering.  (Opp. at 91-93 & n.63).  As demonstrated in Defendants' brief, these contentions are wrong as a matter of law.  (Mem. at 68-70).

Plaintiffs just ignore a long string of decisions in which courts have repeatedly held that allegations of purchases "pursuant and/or traceable to" offering materials--the exact allegation made by Plaintiffs here--fail as a matter of law to establish statutory standing.  (Mem. at 68-69 & n.83).  Nor can Plaintiffs save their claim by relying on MPERS' Certification.  *See In re Sterling Foster & Co. Sec. Litig.*, 222 F. Supp. 2d 216, 245-46 (E.D.N.Y. 2002) (finding a lack of statutory standing where "[s]ome of the purchase dates listed in the complaint"--including the day of, and the day after, the offering--"are close enough in time to suggest that the plaintiffs

---

[52]      In another attempt to distinguish *Sonus*, Plaintiffs ignore the plain language of the decision.  (*See* Opp. at 75 n.55).  As the court stated: "I apply the heightened pleading standards of Rule 9(b) to the Section 11 and 12(a)(2) claims in this case. . . . To serve the purposes of Rule 9(b) the court also requires plaintiffs to allege facts that give rise to a strong inference of fraudulent intent."  *Sonus*, 2006 WL 1308165, at *7-8.

could have made their purchases in the offering" because "the plaintiffs should specify at the pleading stage whether they made these purchases in the offering or in the secondary market"); *In re WRT Energy Sec. Litig.*, No. 96-3610, 1997 WL 576023, at *6 & n.3 (S.D.N.Y. Sept. 15, 1997) (similar), *vacated on other grounds*, 75 Fed. App'x 839 (2d Cir. 2003).

Plaintiffs also argue that (1) they "need not allege which underwriter sold securities to each plaintiff to state a claim under Section 12(a)(2)" and (2) in any event, they have adequately alleged that they purchased shares from the Underwriters by pleading that the Underwriters sold 95 percent of the shares from the offering "to MPERS and the rest of the Class." (Opp. at 92-93). Not so. For the Complaint to plead standing, Plaintiffs must allege which (if any) Underwriters actually sold State Street stock directly to *them*. (Mem. at 69-70). Since Plaintiffs fail to do so, they lack statutory standing and the claim against all Underwriters must be dismissed.

## IV.     CONCLUSION

For all of these reasons, the Complaint should be dismissed.

Respectfully submitted,


STATE STREET CORPORATION; RONALD E.
LOGUE; EDWARD J. RESCH; PAMELA D.
GORMLEY; KENNETH F. BURNES; PETER
COYM; NADER F. DAREHSHORI; AMELIA C.
FAWCETT; DAVID P. GRUBER; LINDA A.
HILL; CHARLES R. LAMANTIA; MAUREEN J.
MISKOVIC; RICHARD P. SERGEL; RONALD L.
SKATES; GREGORY L. SUMME; ROBERT E.
WEISSMAN

By their attorneys,

  /s/ Jeffrey B. Rudman
Jeffrey B. Rudman (BBO No. 433380)
William H. Paine (BBO No. 550506)
John J. Butts (BBO No. 643201)
Timothy Perla (BBO No. 660447)
WILMER CUTLER PICKERING
    HALE AND DORR LLP
60 State Street
Boston, Massachusetts, 02109
(617) 526-6000
john.butts@wilmerhale.com


CREDIT SUISSE SECURITIES (USA) LLC;
GOLDMAN, SACHS & CO.; MORGAN
STANLEY & CO. INCORPORATED; UBS
SECURITIES LLC

By their attorneys,

  /s/ Stephen D. Poss
Stephen D. Poss (BBO No. 551760)
Daniel P. Roeser (BBO No. 675223)
GOODWIN PROCTER LLP
53 State Street
Boston, Massachusetts, 02109
(617) 570-1000
sposs@goodwinprocter.com


Dated:  December 8, 2010.

## <u>CERTIFICATE OF SERVICE</u>

I, Gregory D. Chisholm, hereby certify that this document filed through the ECF System will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) dated December 8, 2010.

<u>  /s/ Gregory D. Chisholm</u>
Gregory D. Chisholm