# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MASSACHUSETTS

HILL v. STATE STREET CORPORATION                  )
                                                   )
                                                   )
_____)
                                                   )   Master Docket No. 1:09-cv-12146
THIS DOCUMENT RELATES TO THE                       )
ERISA ACTION                                       )
                                                   )
Docket No. 10-CV-10184-NG                          )
_____)

# REPLY MEMORANDUM
## IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS
### (Motion to Expand Page Limit Allowed Dec. 20, 2010)

## ORAL ARGUMENT REQUESTED

Jeffrey B. Rudman (BBO No. 433380)
William H. Paine (BBO No. 550506)
John J. Butts (BBO No. 643201)
Timothy Perla (BBO No. 660447)
WILMER CUTLER PICKERING
  HALE AND DORR LLP
60 State Street
Boston, MA 02109
(617) 526-6000
(617) 526-5000 (facsimile)

**TABLE OF CONTENTS**

PRELIMINARY STATEMENT ................................................................................1

I.    PLAINTIFF'S FX ALLEGATIONS PLAINLY SOUND IN FRAUD AND ARE
      THEREFORE SUBJECT TO RULE 9(B) ....................................................3

II.   PLAINTIFF'S UNSUPPORTED FX ALLEGATIONS .................................4

      A.    There Is No Basis for Plaintiff's Conclusory Claim That State Street Was
            Engaged in a Widespread Fraud. ..............................................................4

      B.    Plaintiff's Conclusion That State Street's Financial Results Were Materially
            Inflated Is the Product of Pure Speculation. ............................................7

III.  PLAINTIFF'S FAILURE TO ALLEGE A SUSTAINABLE PRUDENCE CLAIM .........8

      A.    Plaintiff's Prudence Claim Fails Even Without the Presumption of Prudence. ......8

      B.    The Presumption of Prudence Compels the Dismissal of Plaintiff's Claim. ..........10

            1.    The Investment Option at Issue Is an ESOP and Public Policy Fully
                  Supports its Retention as a Long-Term Retirement Asset. .......................11

            2.    The Presumption of Prudence Applies at the Pleading Stage. ...................11

            3.    Plaintiff Has Not Alleged Nearly Enough to Overcome the Presumption of
                  Prudence. ...........................................................................................16

IV.   PLAINTIFF'S DISCLOSURE CLAIMS FAIL ON MULTIPLE GROUNDS ...............17

      A.    Plaintiff Has Yet to Identify Any Actionable Misrepresentations. ........................17

      B.    Plaintiff Has Not Identified a Failure to Comply with the Limited Disclosure
            Obligations Set Forth in ERISA. ..........................................................19

      C.    The Opposition Presents No Compelling Justification for Treating State Street's
            SEC Filings as Fiduciary Communications. ...........................................23

      D.    The Complaint's Muddled Reliance Allegations. ..................................24

V.    THE CLAIMS AGAINST THE INDIVIDUAL DEFENDANTS ARE NOT
      VIABLE ...........................................................................................26

      A.    There Is No Plausible Basis for Plaintiff's Conclusion That Mr. Logue Was a
            "Functional Fiduciary" with Regard to Investment Selection or Participant
            Communications. .............................................................................26

B.      Plaintiff Has Not Alleged Facts Plausibly Showing That the Other Individual
         Defendants Knew or Should Have Known About the Alleged FX Scheme..........28

VI.    PLAINTIFF'S REMAINING CLAIMS MUST BE DISMISSED....................................30

CONCLUSION.........................................................................................................................33

# TABLE OF AUTHORITIES

Federal Cases

*Adams v. Cyprus Amax Minerals Co.*,
    149 F.3d 1156 (10th Cir. 1998) ........................................................ 32

*Alves v. Harvard Pilgrim Health Care*,
    204 F. Supp. 2d 198 (D. Mass. 2002) ................................................ 22

*ATSI Commc'ns Inc. v. Shaar Fund, Ltd.*,
    493 F.3d 87 (2d Cir. 2007) ................................................................. 9

*Baker v. Kingsley*,
    387 F.3d 649 (7th Cir. 2004) ............................................................. 20

*Bd. of Trs. of the CWA/ITU Negotiated Pension Plan v. Weinstein*,
    107 F.3d 139 (2d Cir. 1997) .............................................................. 20

*Bell v. Pfizer, Inc.*,
    2010 WL 3385949 (2d Cir. Aug. 30, 2010) ...................................... 24

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007) .......................................................................... 28

*Bendaoud v. Hodgson*,
    578 F. Supp. 2d 257 (D. Mass. 2008) ...................................... 21, 22, 25

*Bixler v. Central Pa. Teamsters Health & Welfare Fund*,
    12 F.3d 1292 (3d Cir. 1993) .............................................................. 22

*Borst v. Chevron Corp.*,
    36 F.3d 1308 (5th Cir. 1994) ............................................................. 32

*Broaddus v. Fl. Power Corp.*,
    145 F.3d 1283 (11th Cir. 1998) ........................................................ 32

*Brown v. Medtronic, Inc.*,
    2010 WL 5059594 (8th Cir. Dec. 13, 2010) ........................ 3, 12, 13, 30

*Bunch v. W.R. Grace & Co.*,
    555 F.3d 1 (1st Cir. 2007) ........................................................... 11, 12

*Café La France, Inc. v. Schneider Sec., Inc.*,
    281 F. Supp. 2d 361 (D.R.I. 2003) .................................................... 19

*Calderon v. Amvescap PLC*,
    2006 WL 735006 (D. Md. Feb. 27, 2006) ........................................ 27

*Christensen v. Harris*,
   529 U.S. 576 (2000) ................................................................................................ 15

*Dudenhoeffer v. Fifth Third Bancorp.*,
   2010 WL 4970767 (S.D. Ohio Nov. 24, 2010) ........................................... *passim*

*Edgar v. Avaya, Inc.*,
   2006 WL 1084087 (D.N.J. Apr. 25, 2006) ............................................................ 21

*Edgar v. Avaya, Inc.*,
   503 F.3d 340 (3d Cir. 2007) .................................................................................. 12

*Ehlmann v. Kaiser Found. Health Plan of Texas*,
   198 F.3d 552 (5th Cir. 2000) ................................................................................. 20

*ERISA, Gannell v. Prudential Ins. Co. of Am.*,
   502 F. Supp. 2d 167 (D. Mass. 2007) ................................................................... 32

*Ervast v. Flexible Prods. Co.*,
   346 F.3d 1007 (11th Cir. 2003) ............................................................................ 22

*Fuente v. DCI Telecommc'ns., Inc.*,
   259 F. Supp. 2d 250 (S.D.N.Y. 2003) .................................................................... 5

*Gearren v. McGraw Hill Cos., Inc.*,
   690 F. Supp. 2d 254 (S.D.N.Y. 2010) ............................................................. 14, 20

*George v. Duke Energy Ret. Cash Balance Plan*,
   259 F.R.D. 225 (D.S.C. 2009) .............................................................................. 26

*Gooley v. Mobil Oil Corp.*,
   851 F.2d 513 (1st Cir. 1988) ................................................................................. 28

*Graden v. Conexant Sys., Inc.*,
   574 F. Supp. 2d 456 (D.N.J. 2008) ....................................................................... 14

*Greebel v. FTP Software, Inc.*,
   194 F.3d 185 (1st Cir. 1999) ................................................................................. 17

*Haddock v. Nationwide Fin. Servs., Inc.*,
   262 F.R.D. 97 (D. Conn. 2009) ............................................................................ 27

*Halaris v. Viacom, Inc.*,
   2008 WL 3855044 (N.D. Tex. Aug. 19, 2008) ..................................................... 12

*Hampers v. W.R. Grace & Co.*,
   202 F.3d 44 (1st Cir. 2000) ................................................................................... 32

*Harris v. Amgen, Inc.*,
   2010 WL 744123 (C.D. Cal. Mar. 2, 2010) ........................................................................ 26

*In re Am. Express Co. ERISA Litig.*,
   2010 WL 4731434 (S.D.N.Y. Nov. 2, 2010) ...................................................................... 12

*In re AOL Time Warner, Inc. Sec. & ERISA Litig.*,
   2005 WL 563166 (S.D.N.Y. Mar. 10, 2005) ........................................................................ 3

*In re Avon Prods., Inc. Sec. Litig.*,
   2009 WL 848083 (S.D.N.Y. Mar. 3, 2009) .................................................................. 14, 31

*In re Bausch & Lomb ERISA Litig.*,
   2008 WL 5234281 (W.D.N.Y. Dec. 12, 2008) .................................................................. 12

*In re Biopure Corp. Deriv. Litig.*,
   424 F. Supp. 2d 305 (D. Mass. 2006) .................................................................................. 4

*In re Boston Scientific Corp. ERISA Litig.*,
   506 F. Supp. 2d 73 (D. Mass. 2007) .................................................................................... 3

*In re Citigroup ERISA Litig.*,
   2009 WL 2762708 (S.D.N.Y. Aug. 31, 2009) ................................................ 12, 16, 21, 27

*In re Citigroup, Inc. Sec. Litig.*,
   330 F. Supp. 2d 367 (S.D.N.Y. 2004) ............................................................................... 21

*In re Coca-Cola Enters., Inc. ERISA Litig.*,
   2007 WL 1810211 (N.D. Ga. June 20, 2007) ........................................................ 16, 17, 31

*In re Constellation Energy Grp., Inc.*,
   2010 WL 3221821 (D. Md. Aug. 13, 2010) ...................................................................... 29

*In re Dell, Inc. ERISA Litig.*,
   563 F. Supp. 2d 681 (W.D. Tex. 2008) ............................................................................. 12

*In re Duke Energy ERISA Litig.*,
   281 F. Supp. 2d 786 (W.D.N.C. 2003) ................................................................... 17, 19, 31

*In re Dynergy, Inc. ERISA Litig.*,
   309 F. Supp. 2d 861 (S.D. Tex. 2004) .............................................................................. 29

*In re Elec. Data Sys. Corp. ERISA Litig.*,
   305 F. Supp. 2d 658 (S.D. Tex. 2004) ................................................................................ 3

*In re First Am. Corp. ERISA Litig.*,
   2008 WL 5666637 (C.D. Cal. July 14, 2008) ............................................................. 10, 16

*In re Ford Motor Co. ERISA Litig.*,
    590 F. Supp. 2d 883 (E.D. Mich. 2008) ............................................................ 10

*In re Fremont Gen. Corp. Litig.*,
    564 F. Supp. 2d 1156 (C.D. Cal. 2008) ............................................................ 16

*In re Gen. Growth Prop., Inc. ERISA Litig.*,
    2010 WL 1840245 (N.D. Ill. May 6, 2010) ................................................ 14, 29

*In re ING Groep, N.V. ERISA Litig.*,
    2010 WL 1704402 (N.D. Ga. Mar. 31, 2010) .............................................. 3, 21

*In re Lehman Bros Sec. & ERISA Litig.*,
    683 F. Supp. 2d 294 (S.D.N.Y. 2010) ................................................ 27, 28, 29

*In re Marsh & McLennan Cos., Inc. Sec. Litig.*,
    501 F. Supp. 2d 452 (S.D.N.Y. 2006) .............................................................. 21

*In re McKesson HBOC, Inc. ERISA Litig.*,
    391 F. Supp. 2d 812 (N.D. Cal. 2005) .............................................................. 9

*In re McKesson HBOC, Inc. ERISA Litig.*,
    2002 WL 31431588 (N.D. Cal. Sept. 20, 2002) ............................................ 21

*In re McKesson HBOC, Inc. Sec. Litig.*,
    126 F. Supp. 2d 1248 (N.D. Cal. 2000) ............................................................ 6

*In re Merck & Co. Sec. Litig.*,
    2009 WL 331426 (D.N.J. Feb. 10, 2009) ...................................................... 26

*In re Pfizer, Inc. ERISA Litig.*,
    2009 WL 749545 (S.D.N.Y. Mar. 20, 2009) ............................................... 3, 29

*In re Polaroid ERISA Litig.*,
    240 F.R.D. 65 (S.D.N.Y. 2006) ....................................................................... 25

*In re Polaroid ERISA Litig.*,
    362 F. Supp. 2d 461 (S.D.N.Y. 2005) ............................................................ 27

*In re Radio Shack Corp. ERISA Litig.*,
    547 F. Supp. 2d 606 (N.D. Tex. 2008) ............................................................ 31

*In re Regions Morgan Keegan ERISA Litig.*,
    692 F. Supp. 2d 944 (W.D. Tenn. 2010) ........................................................ 29

*In re SLM Corp. ERISA Litig.*,
    2010 WL 3910566 (S.D.N.Y. Sept. 24, 2010) .............................................. 12

*In re Sofamor Danek Grp., Inc.,*
   123 F.3d 394 (6th Cir. 1997) ................................................................ 21

*In re Syncor ERISA Litig.,*
   516 F.3d 1095 (9th Cir. 2008) .............................................................. 10

*In re Syncor ERISA Litig.,*
   351 F. Supp. 2d 970 (C.D. Cal. 2004) ................................................. 16

*In re Tyco Int'l Ltd.,*
   2006 WL 2349338 (D.N.H. Aug. 15, 2006) ................................... 22, 25

*James v. Pirelli Armstrong Tire Corp.,*
   305 F.3d 439 (6th Cir. 2002) ................................................................ 22

*Johnson v. Radian Group, Inc.,*
   2009 WL 2137241 (E.D. Pa. July 16, 2009)......................................... 12

*Jones v. MEMC Elec. Material, Inc.,*
   2010 WL 4065202 (E.D. Mo. Oct. 18, 2010) ...................................... 12

*Jones v. NovaStar Fin., Inc.,*
   257 F.R.D. 181 (W.D. Mo. 2009) ........................................................ 25

*Kalda v. Sioux Valley Physician Partners, Inc.,*
   481 F.3d 639 (8th Cir. 2007) ................................................................ 22

*Kearns v. Benefit Trust Life Ins. Co.,*
   992 F.2d 214 (8th Cir. 1993) ................................................................ 26

*Kenney v. State Street Corp.,*
   694 F. Supp. 2d 67 (D. Mass. 2010) ............................................ *passim*

*Kenney v. State Street Corp.,*
   2010 WL 5035906 (D. Mass. Dec. 9, 2010) .................................. 24, 25

*Kirschbaum v. Reliant Energy, Inc.,*
   526 F.3d 243 (5th Cir. 2008) ....................................................... *passim*

*Kuper v. Iovenko,*
   66 F.3d 1447 (6th Cir. 1995) ................................................................ 16

*LaLonde v. Textron, Inc.,*
   369 F.3d 1 (1st Cir. 2004)............................................................... 11, 12

*Langlie v. Onan Corp.,*
   192 F.3d 1137 (8th Cir. 1999) ............................................................. 32

*Larue v. DeWolff, Boberg & Assocs.*,
    552 U.S. 248 (2008)........................................................................................ 25

*Lingis v. Motorola, Inc.*,
    649 F. Supp. 2d 861 (N.D. Ill. 2009) ............................................................ 21

*Mathews v. Sears Pension Plan*,
    144 F.3d 461 (7th Cir. 1998) ......................................................................... 32

*Mauser v. Raytheon Co. Pension Plan*,
    239 F.3d 51 (1st 2001) ................................................................................... 24

*Mertens v. Hewitt Assocs.*,
    508 U.S. 248 (1993)........................................................................................ 32

*Miss. Pub. Emps. Ret. Sys. v. Boston Sci. Corp.*,
    523 F.3d 75 (1st Cir. 2008) .............................................................................. 4

*Morrison v. MoneyGram Int'l, Inc.*,
    607 F. Supp. 2d 1033 (D. Minn. 2009) ............................................... 9, 12, 14

*Muller v. First Unum Life Ins. Co.*,
    341 F.3d 119 (2d Cir. 2003)........................................................................... 32

*Pugh v. Tribune Co.*,
    521 F.3d 686 (7th Cir. 2008) ......................................................................... 12

*Quan v. Computer Scis. Corp.*,
    623 F.3d 870 (9th Cir. 2010) ........................................................ 11, 12, 13, 16

*Rodi v. New Eng. Sch. of Law*,
    389 F.3d 5 (1st Cir. 2004)................................................................................. 3

*Rosenberg v. Merrill, Lynch, Pierce, Fenner & Smith, Inc.*,
    170 F.3d 1 (1st Cir. 1996) .............................................................................. 15

*S.E.C. v. Lee*,
    720 F. Supp. 2d 305 (S.D.N.Y. 2010)............................................................. 5

*S.E.C. v. Siebel Sys., Inc.*,
    384 F. Supp. 2d 694 (S.D.N.Y. 2005)........................................................... 21

*Shanehchian v. Macy's, Inc.*,
    2009 WL 2524562 (S.D. Ohio Aug. 14, 2009)............................................. 10

*Shaw v. Digital Equip. Corp.*,
    82 F.3d 1194 (1st Cir. 1996) ............................................................................ 9

*Smith v. Aon*,
  238 F.R.D. 609 (N.D. Il. 2006) ................................................................................. 25

*Sparks v. Fidelity Nat'l Title Ins. Co.*,
  294 F.3d 259 (1st Cir. 2002) ..................................................................................... 19

*Sprague v. Gen. Motors Corp.*,
  133 F.3d 388 (6th Cir. 1998) ................................................................................ 20, 32

*Thomas v. Oregon Fruit Prods. Co.*,
  228 F.3d 991 (9th Cir. 2000) ..................................................................................... 32

*Torchetti v. Int'l Bus. Mach. Corp.*,
  986 F. Supp. 49 (D. Mass. 1997) ................................................................................ 3

*Vapores, S.A. v. IBJ Schroder Bank & Trust Co.*,
  785 F. Supp. 411 (S.D.N.Y. 1992) ............................................................................. 6

*Varity v. Howe*,
  516 U.S. 489 (1996) ................................................................................................... 23

*Watson v. Deaconness Waltham Hosp.*,
  298 F.3d 102 (1st Cir. 2002) ..................................................................................... 22

*Wright v. Or. Mettallurgical Corp.*,
  360 F.3d 1090 (9th Cir. 2004) ................................................................................... 16

State Cases

*Bos. Symphony Orchestra, Inc. v. Commercial Union Ins. Co.*,
  545 N.E.2d 1156 (Mass. 1989) ................................................................................... 6

*Brehm v. Eisner*,
  746 A.2d 244 (Del. 2000) ........................................................................................... 6

Federal Statutes

29 U.S.C. § 1002(21)(A) ................................................................................................. 27

29 U.S.C. § 1105(a) ........................................................................................................ 28

29 U.S.C. § 1104(a)(1)(C) ............................................................................................... 9

29 U.S.C. § 1144(d) ........................................................................................................ 20

29 U.S.C. § 1021 *et seq.* ................................................................................................. 20

Pub. L. No. 94-455, 90 Stat. 1590 (1976) ................................................................. 11, 15

Federal Rules

Fed. R. Civ. P. 9(b) ................................................................................................. 3

Federal Regulations

17 C.F.R. § 239.16(b) ............................................................................................ 23

17 C.F.R. § 243.100(a) .......................................................................................... 21

Other Authorities

Amicus Brief of Sec'y of Labor, *Kirschbaum v. Reliant Energy, Inc.*,
    2006 WL 5952409 ............................................................................................ 15

Amicus Brief of Sec'y of Labor, *Moench v. Robertson*,
    1994 WL 16012393 .......................................................................................... 15

## PRELIMINARY STATEMENT

This case must be dismissed in its entirety because Plaintiff has not pleaded nearly enough facts to support his implausible assertion that State Street was engaged in a "widespread" or "massive" FX fraud, or that State Street indeed engaged in any fraud at all.  What Plaintiff does plead is a series of recycled, inconsistent allegations that he copied from others without adding any factual support of his own.   Plaintiff's theory of FX fraud was lifted from a now-superseded complaint filed by an anonymous relator (the "Relator") in California state court. Recognizing that the Relator's allegations are insufficient to state a claim here, Plaintiff supplemented them with other inconsistent conclusions he copied from the California Attorney General's Office's (the "AGO") complaint and related press statements.  None of these allegations are sufficient.  The AGO's allegations undermine the Relator's theory (which the AGO rejected in substantial part); and the AGO's alternative theory does not permit Plaintiff to state a claim under ERISA or otherwise.

At the end of the day, Plaintiff has alleged no more than that State Street is in the midst of a dispute as to two customers that turns on the AGO's strained interpretation of RFP response language.  Plaintiff admits that the amount at issue in that dispute—$56 million in purported overcharges over an eight-year period—is immaterial to a company of State Street's size; and he supplies no facts to plausibly support his baseless and admittedly speculative assertion that fraud pervaded State Street's FX business and caused the company's revenue to be overstated by an exponentially larger amount.  This requires all of Plaintiff's claims to be dismissed, because the logic of each claim depends on the existence of a material, fraudulent practice that Plaintiff is unable to substantiate.

The Complaint also does not provide plausible factual support for Plaintiff's conclusion that it was imprudent for Defendants to allow any Plan participant to invest even a nickel in State

Street's ESOP.  State Street was (and remains) a healthy company and a sound long-term investment.  In the years prior to the stock drop at issue, State Street made *billions* in profits, it reported substantial revenue growth, it paid hundreds of millions in dividends, and it was always "well capitalized" under the Federal Reserve's regulations.  Moreover, from 2004 through 2009, the company's stock performed about as well as the S&P 500 and much better than the S&P financial index.  *See* Affidavit of John J. Butts ("Aff.") Ex. 38 at 30.  On this record, the notion that Defendants should have unilaterally liquidated participants' ESOP investments, and prohibited any new investments, is absurd.

Plaintiff's contrary argument boils down to his conclusory allegation that State Street's stock price was "artificially inflated" by the supposed FX scheme, because the price fell $4.41 (or approximately 8%) on the day that the California AG announced his lawsuit.  Plaintiff's assertion that the AG's announcement caused the drop is logically unsupportable.  On the day of that announcement, State Street separately announced that it would earn less in 2010 than the market expected; and to the extent the market did react to the AGO's announcement, it obviously reacted to more than just the news of the lawsuit.  Moreover, Plaintiff also ignores that inflation in this amount could not conceivably make State Street's stock an imprudent investment.  In the nine months prior to the AG's announcement, State Street's stock price increased by $35 per share or 221%—an increase that was nearly *seven times* the S&P 500's growth during the same period.[1]  Plaintiff cannot seriously contend that ESOP participants should have been precluded from the opportunity to earn $35 per share to avoid an alleged loss of less than $5.

Plaintiffs' disclosure claims must be dismissed for additional reasons, including:  his failure to identify a false or misleading statement or a breach of one of ERISA's disclosure

---

[1] *See* Mem. in Support of Defs.' Mot. to Dismiss ("ERISA Br.") at 13.

obligations; the fact that the challenged statements were not fiduciary communications; and Plaintiff's inadequate reliance allegations.  Plaintiff's other claims fail, among other reasons, because they are derivative of his deficient prudence and disclosure claims.

## I.     PLAINTIFF'S FX ALLEGATIONS PLAINLY SOUND IN FRAUD AND ARE THEREFORE SUBJECT TO RULE 9(B)

There is no question that Plaintiff's FX allegations sound in fraud.  *See, e.g.*, Opp. at 9 (there was "a widespread scheme to overcharge State Street's customers for FX trades"); *id.* at 9-10 (State Street artificially inflated revenues "by hundreds of millions of dollars by bilking its clients"); *id.* at 42 ("State Street was engaging in a massive fraud"); Compl. ¶¶ 67, 69, 79, 99. He therefore must comply with Federal Rule of Civil Procedure 9(b), which requires Plaintiff to plead in detail the "who, what, where, and when" of the alleged fraud.  *Rodi v. New Eng. Sch. of Law*, 389 F.3d 5, 15 (1st Cir. 2004).  Contrary to Plaintiff's assertion, the mere fact that he is pursuing ERISA claims does not excuse him from that obligation.  *See, e.g., Brown v. Medtronic, Inc.*, --- F.3d ----, 2010 WL 5059594, at *7 (8th Cir. Dec. 13, 2010) ("Rule 9(b) sets its own heightened bar" as to the Plaintiff's ERISA misrepresentation claim); *Torchetti v. Int'l Bus. Mach. Corp.*, 986 F. Supp. 49, 51 (D. Mass. 1997) (applying Rule 9(b) to ERISA allegations premised on fraud); *In re ING Groep, N.V. ERISA Litig.*, --- F. Supp. 2d ----, 2010 WL 1704402, at *8 (N.D. Ga. Mar. 31, 2010) (same).[2]

---

[2]      The bulk of the cases Plaintiff cites in support of his claim that Rule 8 applies regardless of the nature of his claim are inapposite, either because they did not analyze this issue, *e.g., In re AOL Time Warner, Inc. Sec. & ERISA Litig.*, 2005 WL 563166, at *3 (S.D.N.Y. Mar. 10, 2005), or because they turned on the court's view that the allegations at issue did not sound in fraud.  *See, e.g., In re Boston Scientific Corp. ERISA Litig.*, 506 F. Supp. 2d 73, 76 (D. Mass. 2007); *In re Elec. Data Sys. Corp. ERISA Litig.*, 305 F. Supp. 2d 658, 672 (S.D. Tex. 2004); *In re Pfizer, Inc. ERISA Litig.*, 2009 WL 749545, at *5 (S.D.N.Y. Mar. 20, 2009).

Because Rule 9(b) applies to his FX allegations, Plaintiff cannot meaningfully distinguish his pleading obligations from those of the plaintiffs in *Hill*.[3] Thus, the claims in this case, and all of the FX-related claims in *Hill*, must be dismissed for the same reasons.

## II.    PLAINTIFF'S UNSUPPORTED FX ALLEGATIONS

### A.    There Is No Basis for Plaintiff's Conclusory Claim That State Street Was Engaged in a Widespread Fraud.

Whether reviewed under Rule 9(b) or the *Twombly* and *Iqbal* standard (requiring well-pleaded factual allegations supporting a plausible claim to relief), Plaintiff has not come close to pleading an adequate factual basis for his conclusion that State Street was engaged in a "massive" or "widespread" FX fraud. *Compare* ERISA Br. at 7-8 *with* Opp. at 9-10. The Complaint and Opposition make clear that the fraud theory upon which Plaintiff's claim is based was lifted directly from the anonymous Relator's superseded original complaint. *See* Opp. at 7 ("The *Qui Tam* plaintiffs . . . explained how the FX trading scheme worked . . . ."); Compl. ¶¶ 77-84. Plaintiff does not dispute that these unsubstantiated claims are not an adequate factual basis for his own claim. Instead, he engages in misdirection by insisting incorrectly that he is permitted to rely on allegations copied from the AGO, and ignoring the critical differences between the AGO's allegations and those in this Complaint. *See* Opp. at 15-16.

Even the Plaintiff's cases show that *his own* further investigation is required before a regulator's allegations have any weight. *See, e.g.*, *In re Biopure Corp. Deriv. Litig.*, 424 F. Supp. 2d 305, 307 (D. Mass. 2006) (Gertner, J.) ("Unlike other cases in which plaintiffs merely adopted wholesale the allegations in an SEC complaint, the plaintiffs in this case conducted their

---

[3]     Although *Hill* is also subject to the Private Securities Litigation Reform Act (the "PSLRA"), the First Circuit has held on multiple occasions that the PSLRA imposes the same pleading standard as Rule 9(b). *See, e.g., Miss. Pub. Emps. Ret. Sys. v. Boston Sci. Corp.*, 523 F.3d 75, 85 n.5 (1st Cir. 2008) (Rule 9(b) is "comparable to and effectively subsumed by the requirements of the PSLRA"); *Greebel v. FTP Software, Inc.*, 194 F.3d 185, 193 (1st Cir. 1999) ("Our previous strict pleading requirements under Rule 9(b) are, in our view, consistent with the PSLRA.").

own investigation and filed an initial complaint that made substantial allegations against defendants."); *de la Fuente v. DCI Telecommc'ns, Inc.*, 259 F. Supp. 2d 250, 260 (S.D.N.Y. 2003) (reliance on regulator's complaint allowed where "*every* allegation in the complaint was verified by plaintiff's counsel through independent investigation") (emphasis added); *SEC v. Lee*, 720 F. Supp. 2d 305, 341 (S.D.N.Y. 2010) (same)).  That disposes of these claims, because it is obvious that Plaintiff has not done *any* additional investigation.

Even putting that failing aside, however, the AGO allegations are inconsistent with Plaintiff's theory of FX fraud (drawn from the Relator's complaint), and in any event the AGO allegations do not supply a plausible factual basis to claim FX fraud.  *See* ERISA Br. at 5-6; State Street and Underwriter Defs.' Mem. in Support of Mot. to Dismiss *Hill* Action ("*Hill* Br.") at 24-25.  According to the Relator (and Plaintiff), State Street executed indirect FX trades early in the day, "watched market fluctuations over the course of the day," and falsified trading records at the end of the day to reflect the highest rate of the day for customers' purchases and the lowest rate for their sales—"pocket[ing] the difference from the actual rates of the trades." *Compare* Opp. at 8 ("The FX trading scheme was straightforward. . . .") *and* Compl. ¶¶ 76-82 *with* Aff. Ex. 42 at ¶¶ 18-27 (Relator's complaint).  But after the AGO's "thorough eighteen month" investigation (Opp. at 15), the AGO asserted no such thing.  According to the AGO, State Street's statement about FX pricing in an RFP response—that rates were "based on" an Interbank rate—somehow means that State Street's rates had to be equal to or the same as an Interbank rate.  *See* ERISA Br. at 5-6; *Hill* Br. at 5-6.  Because Plaintiff implicitly admits that he may not rely on the Relator's allegations, and because neither the AGO nor Plaintiff has supplied any factual support for the Relator's theory, Plaintiff's Complaint must be dismissed.

Plaintiff would not still be pressing the Relator's theory if he believed that the AGO allegations were sufficient to state a claim here. In fact, those allegations are insufficient. *See* ERISA Br. at 8; *Hill* Br. at 8 & n.25. Indeed, the Opposition does not address, let alone dispute, State Street's showing that its pricing practices (as alleged by the AGO) are reasonable and consistent with the RFP language that the AGO challenges. *See* ERISA Br. at 8; *Hill* Br. at 24-25. Thus, the AGO's allegations are not a sufficient basis for a fraud claim. *See Compania Sud-Americana de Vapores, S.A. v. IBJ Schroder Bank & Trust Co.*, 785 F. Supp. 411, 423 (S.D.N.Y. 1992) ("failing to disclose a breach of promise" to price FX at interbank rate "does not transform a contract action into one for fraud"); *Bos. Symphony Orchestra, Inc. v. Commercial Union Ins. Co.*, 545 N.E.2d 1156, 1160 (Mass. 1989) (incorrect contract interpretation did not amount to a deceptive act).

Nor can press comments by the AGO transform the AGO's complaint into something that it is not. Statements made in the press during the heat of an election campaign—in each case nothing more than charged conclusions in press-digestible formats—add nothing factual to the Complaint. *See Brehm v. Eisner*, 746 A.2d 244, 249 (Del. 2000) (quotations from media echoing conclusory allegations serve no purpose); *In re McKesson HBOC, Inc. Sec. Litig.*, 126 F. Supp. 2d 1248, 1272 (N.D. Cal. 2000) ("Conclusory allegations of wrongdoing are not more sufficient if they come from a newspaper article than from plaintiff's counsel."). This is particularly true where the actual allegations made by the AGO in its complaint are insufficient to state the claim Plaintiff makes here.

Contrary to Plaintiff's suggestion, the two-page ruling from the California Superior Court on State Street's demurrer to the AGO's complaint plainly did not decide any question presented here. The California case is not an ERISA case; and the California court never considered

whether the AGO's conclusory allegations were adequately supported by factual ones.  *See*

Order, *State of Cal. ex rel. Assocs. Against FX Insider Trading v. State Street Corp.*, No. 34-

2008-00008457-CU-MC-GD5 (Mar. 30, 2010), at 1-2 (Opp. Ex. A).  Rather, the court's cursory

ruling assumed the truth of the AGO's conclusions, and it expressly did not reach the question of

whether the AGO had an adequate or logical basis for its incorrect legal claims.  The court also

expressly did not resolve State Street's contention that the AGO's claims boiled down to a

flawed contract interpretation.  Thus, nothing in that decision is relevant to whether the Plaintiff

has pleaded a particular or plausible factual basis for his claims.

**B.**      **Plaintiff's Conclusion That State Street's Financial Results Were Materially Inflated Is the Product of Pure Speculation.**

Plaintiff does not contend that the amount the AGO alleged in overcharges ($56 million

over 8 years) had any material impact on State Street's financial results.  Instead he regurgitates

the *Hill* plaintiffs' logically flawed attempt to manufacture a much larger number by relying on a

number of unsupported conclusions.  *See* ERISA Br. at 6.  For example, Plaintiff alleges without

factual support that State Street's agreements with the two California pension funds were

"typical."  Opp. at 6.  All of the complex arithmetic he imported from the *Hill* Complaint

depends on this conclusion, because FX customers that asked different RFP questions or

obtained different responses cannot make the same claims as the AGO.  Because the Plaintiff

lacks a factual basis for this conclusion, the numbers he posits are worse than implausible.

Similarly, Plaintiff's repetition of the Relator's unsupported speculation that one-third of State

Street's FX revenue was overstated due to FX overcharges must be disregarded.  *See* Opp. at 10.

Plaintiff also lacks a plausible basis to conclude that a decrease in FX revenue (relative to

the prior year) after the filing of the AGO complaint was caused by that filing.  *Compare* ERISA

Br. at 22 & n.23 *with* Opp. at 10.  This form of reasoning (*post hoc ergo propter hoc*—"a thing

which follows another is therefore caused by it") has been recognized as illogical for centuries, and is "among the most common, specious and shallow of all." *Oxford English Dictionary* (post hoc ergo propter hoc) (online version Dec. 2010) (quoting 1880 *Princeton Review* 442). Plaintiff's insistence that he may rely on speculation of this sort is belied not only by his specious form of logic, but also by the fact that State Street's FX revenue had declined significantly *before* the AGO complaint was filed,[4] and Plaintiff's own admission that "it is not possible to determine" the amount by which State Street's revenues were overstated without access to State Street records that he does not have.[5] *Compare* Compl. ¶ 98 *with* ERISA Br. at 21-22 *and Hill* Br. at 27-29.

## III.   PLAINTIFF'S FAILURE TO ALLEGE A SUSTAINABLE PRUDENCE CLAIM

### A.   Plaintiff's Prudence Claim Fails Even Without the Presumption of Prudence.

Plaintiff grossly underestimates his burden with regard to pleading that State Street's stock was an imprudent investment—even if the Court does not apply the presumption of prudence at this stage of the litigation.  To state a claim, he must plead facts plausibly showing that State Street faced such a significant risk that it was imprudent to hold even a single share of the company's stock in the Plan.  This standard does not derive from case law, but rather from ERISA's plain language.  In particular, although prudence generally requires fiduciaries to "diversify[] the investments of the plan . . . to minimize the risk of large losses," 29 U.S.C. §

---

[4]      In the quarter of the AGO's announcement, State Street's FX revenue dropped only 5% from the prior quarter.  *Compare* Aff. Ex. 36 (10-Q filed Nov. 6, 2009) at 11 (FX revenue of $152 million during third quarter, and $533 million through first three quarters) *with* Reply Aff. Ex. 4 (10-K filed Feb. 22, 2010) at 41 (FX revenues of $677 million during 2009).

[5]      The allegation that after the AGO filed its lawsuit, State Street allegedly changed its FX trading practices to address customer interests for increased "transparency," which State Street disclosed might adversely impact revenue or profitability, adds nothing.  Opp. at 27.  Providing customers more information about how prices are set is not the same thing as changing its method of FX rate calculation, or any admission that its FX pricing practices were not inconsistent with contract terms.  Thus, it in no way substantiates Plaintiff's FX allegations, or warrants any inference in his favor.

1104(a)(1)(C), Congress has expressly exempted fiduciaries from that obligation insofar as it relates to ESOPs.  *Id.* § 1104(a)(2).  That exemption necessarily prohibits claims that a fiduciary should have reduced the Plan's company stock holdings, but not eliminated them altogether.  *See Morrison v. MoneyGram Int'l, Inc.*, 607 F. Supp. 2d 1033, 1051 (D. Minn. 2009) ("To get around MoneyGram's exemption from the duty to diversify, plaintiffs must allege that MoneyGram stock was such an imprudent investment that *no* Plan assets—not one cent—should have been invested in it."); *In re McKesson HBOC, Inc. ERISA Litig.*, 391 F. Supp. 2d 812, 828 (N.D. Cal. 2005) (§ 1104(a)(2) is a "bright-line exclusion" of diversification claims).

Plaintiff has not alleged anything remotely close to meeting that standard, and he cannot do so given State Street's financial success.  From 2006 until 2008, State Street had annual profits in excess of $1 billion; it was well capitalized under the Federal Reserve's regulations; it paid very large dividends; and it had dramatic revenue growth.  *See* ERISA Br. at 3-4.[6] Plaintiff's speculative assertion that State Street's operating results were overstated does not make investing in State Street stock imprudent.  Indeed, even if State Street's results were overstated by as much as Plaintiff contends, the company still would have earned over *$4.13 billion* between the fourth quarter of 2006 and the third quarter of 2009.  Compl. ¶ 99.  This is not the hallmark of an imprudent investment.

Even if Plaintiff's speculation that State Street's stock price was inflated by 8% was correct, it would not give rise to a prudence claim.[7]  Contrary to Plaintiff's assertion, merely

---

[6]    Plaintiff bemoans Defendants' use of the financial results that he chose not to mention in the Complaint. Those results, which come right from the documents at issue in his disclosure claim, properly are part of the record on a motion to dismiss.  *See Shaw v. Digital Equip. Corp.*, 82 F.3d 1194, 1206 n.13 (1st Cir. 1996) (superseded on other grounds) ("Since the complaint alleges nondisclosures in the registration statement and prospectus, the court may look to the text of those materials and the incorporated SEC filings to determine whether the plaintiffs' allegations are well founded."); *ATSI Commc'ns Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007) (court may consider "legally required public disclosure documents filed with the SEC").

[7]    The 8% alleged inflation represents the percentage of the drop in State Street's stock price on October 20, 2009, which is when the AGO announced his lawsuit.  If that announcement played any role in the drop (which

alleging some form of inflation is not enough to state a claim.[8]  *See Kirschbaum v. Reliant Energy, Inc*., 526 F.3d 243, 254 (5th Cir. 2008) ("[T]here is no principled difference between how a fiduciary should respond to 'artificial inflation' of the stock price as opposed to other sorts of negative insider information."); *Dudenhoeffer v. Fifth Third Bancorp.*, 2010 WL 4970767, at *8 (S.D. Ohio Nov. 24, 2010) ("[I]t makes little or no difference to the analysis that Plaintiffs allege that the price of Fifth Third stock was artificially inflated during the class period . . . ."). Even if State Street's stock price had been slightly inflated, there can be no doubt that participants still did very well by investing in the ESOP.  In recent years, State Street's stock has for the most part performed about as well the S&P 500 index, and better than the S&P financial index.  *See, e.g.,* Reply Affidavit of John J. Butts ("Reply Aff.") Exs. 1-2; Aff. Ex. 38 at 30.[9] Thus, Plaintiff simply has not alleged facts which, in context, plausibly show that State Street's stock was so unduly risky that it was imprudent to allow participants to invest any of their Plan accounts in it.

### B.       The Presumption of Prudence Compels the Dismissal of Plaintiff's Claim.

Although the Court may dismiss Plaintiff's prudence claim without applying the presumption of prudence, it serves as an additional basis on which the Court may do so.

---

Defendants deny), it could only have been a very small factor given State Street's simultaneous announcement that its earnings would be lower in 2010 than previously announced.  Compl. ¶ 73.

[8]        The cases Plaintiff cites involve much greater alleged inflation than the suppose 8% at issue here.  *See, e.g., In re Syncor ERISA Litig*., 516 F.3d 1095, 1098 (9th Cir. 2008) (50% drop in stock price triggered by disclosure of the supposed truth); *In re Ford Motor Co. ERISA Litig*., 590 F. Supp. 2d 883, 913 (E.D. Mich. 2008) (76% drop); *Shanehchian v. Macy's, Inc*., 2009 WL 2524562, at *7 (S.D. Ohio Aug. 14, 2009) (the stock "plummeted" on disclosure of the alleged truth); *In re First Am. Corp. ERISA Litig*., 2008 WL 5666637, at *3 (C.D. Cal. July 14, 2008) (52% drop).

[9] *Compare LaLonde v. Textron, Inc*., 369 F.3d 1 (1st Cir. 2004) (addressing an artificial inflation claim under the pre-*Twombly* interpretation of Rule 8(a) where company "significantly underperformed in comparison to the market as a whole (measured in terms of the S&P 500) and [the company's peer group").

1.      **The Investment Option at Issue Is an ESOP and Public Policy Fully Supports its Retention as a Long-Term Retirement Asset.**

The only Plan investment option at issue here is an ESOP.[10]  *See e.g.*, Opp. at 4 ("One option made available was the State Street Corporation ESOP Fund."); Compl. ¶¶ 2, 40.  It invests "primarily in State Street stock," Aff. Ex. 41 § 1.1,[11] and its objective is to give participants the opportunity to become owners of the company and to share in State Street's financial performance.  *See* Aff. Ex. 40 at last page (ESOP Fund fact sheet).  This is the same reason that Congress encourages employers to offer ESOPs.  *See* Tax Reform Act of 1976, Pub. L. No. 94-455, § 803(h), 90 Stat. 1590 (1976) (ESOPs are intended to "strengthen[] the free private enterprise system" and "bring[] about stock ownership by all corporate employees"); *Quan v. Computer Scis. Corp.*, 623 F.3d 870, 881 (9th Cir. 2010) (Congress favors ESOPs because "[p]lans that tie employee compensation to the company's success are widely believed to be good for employee productivity and loyalty").  This policy is served regardless of whether an ESOP is mandated, encouraged, or permitted by pension plan documents.

2.      **The Presumption of Prudence Applies at the Pleading Stage.**

Contrary to Plaintiff's assertion, there is nothing in *Bunch v. W.R. Grace & Co.*, 555 F.3d 1 (1st Cir. 2007), or *LaLonde v. Textron, Inc.*, 369 F.3d 1 (1st Cir. 2004), that prevents the Court from applying the presumption on this motion.  *LaLonde* is the only case in which the First Circuit has addressed the presumption as a fiduciary's defense to retaining an ESOP.[12]  The court

---

[10]      Defendants never argued that the *Plan* is an ESOP.  The Plan is an individual account plan set up pursuant to ERISA § 404(c) which gave participants the opportunity to allocate their own retirement contributions from among a diverse menu of twenty mutual funds, the ESOP, and a self-directed brokerage account which provided participants access to hundreds more investment options.  *See* Aff. Ex. 40 at 18-22 (Summary Plan Description, dated June 10, 2008).

[11]      A small portion may be kept in cash or other short-term investments to provide liquidity to facilitate participant transactions.  *See* Aff. Ex. 40 at last page.

[12]      In *Bunch*, the First Circuit addressed the opposite circumstance in which a plaintiff attempted to use the presumption of prudence to establish liability against fiduciaries who liquidated an ESOP after the employer's stock

did not, however, decide whether to adopt the presumption, noting that at the time there were

only a "few . . . discordant judicial decisions" addressing the issue and the law was therefore

neither "mature nor uniform." *Id.* at 6. That is not the case anymore: "[F]ollowing the Supreme

Court's ruling in *Twombly*, courts have regularly applied *Moench* at the motion-to-dismiss

stage." *In re Citigroup ERISA Litig.*, 2009 WL 2762708, at *16 (S.D.N.Y. Aug. 31, 2009).[13]

Indeed, just a few weeks ago, the Ninth Circuit joined the many other courts that apply

the presumption. *See Quan*, 623 F.3d at 881. In doing so, the Ninth Circuit recognized that

"[n]o federal appellate court has rejected the *Moench* presumption on its merits." *Id.* at 880; *see

also Brown*, 2010 WL 5059594, at *7 ("We are unable to identify any circuit court that has

expressly rejected the presumption on its merits . . . .").[14] The Ninth Circuit also correctly

explained the First Circuit's decision in *Bunch*, noting that the plaintiff in that case had

challenged "the fiduciary's decision to *divest* the plan of the employer's stock," and thus

applying the presumption in that context would not serve Congress's policy goal of promoting

and maintaining ESOPs. *Quan*, 623 F.3d at 880 (emphasis in original); *see also Brown*, 2010

---

price rose. 555 F.3d at 10. If anything, *Bunch* supports applying the *Moench* presumption in this circumstance because it describes the presumption as something that was created as a "shield" against fiduciary liability rather than a "sword" that creates it. *Id.* (noting also that the presumption is "applicable" when a fiduciary retains an ESOP).

[13] Among the cases that, since *Twombly*, have applied the presumption of prudence at the pleading stage are: *Pugh v. Tribune Co.*, 521 F.3d 686, 701-02 (7th Cir. 2008); *Edgar v. Avaya, Inc.*, 503 F.3d 340, 347 (3d Cir. 2007); *Citigroup ERISA Litig.*, 2009 WL 2762708, at *16; *Johnson v. Radian Group, Inc.*, 2009 WL 2137241, at *17 (E.D. Pa. July 16, 2009); *In re Avon Prods., Inc. Sec. Litig.*, 2009 WL 848083, at *10-11 (S.D.N.Y. Mar. 3, 2009); *Morrison v. MoneyGram Int'l, Inc.*, 607 F. Supp. 2d 1033, 1051, 1053 (D. Minn. 2009); *In re Bausch & Lomb ERISA Litig.*, 2008 WL 5234281, at *5 (W.D.N.Y. Dec. 12, 2008); *Halaris v. Viacom, Inc.*, 2008 WL 3855044, at *2 (N.D. Tex. Aug. 19, 2008); *In re Dell, Inc. ERISA Litig.*, 563 F. Supp. 2d 681, 693 (W.D. Tex. 2008); *In re RadioShack Corp. ERISA Litig.*, 547 F. Supp. 2d 606, 614 (N.D. Tex. 2008); *In re Am. Express Co. ERISA Litig.*, 2010 WL 4731434, at *10 n.2 (S.D.N.Y. Nov. 2, 2010); *Jones v. MEMC Elec. Material, Inc.*, 2010 WL 4065202, at *2 (E.D. Mo. Oct. 18, 2010); *In re SLM Corp. ERISA Litig.*, 2010 WL 3910566, at *7 (S.D.N.Y. Sept. 24, 2010); *Dudenhoffer v. Fifth Third Bancorp*, 2010 WL 4970767, at *5 (S.D. Ohio Nov. 24, 2010).

[14] In addition to the Ninth Circuit, the presumption has been applied by the Third Circuit in *Moench v. Robertson*, 62 F.3d 553, 571 (3d Cir. 1995), the Fifth Circuit in *Kirschbaum* 526 F.3d at 256, the Sixth Circuit in *Kuper v. Iovenko*, 66 F.3d 1447, 1459 (6th Cir. 1995), and the Seventh Circuit in *Pugh v. Tribune*, 521 F.3d 686, 701-02 (7th Cir. 2008).

WL 5059594, at *7 (distinguishing *Bunch* on the same ground).  *But see Kenney v. State Street Corp.*, 694 F. Supp. 2d 67, 74-75 (D. Mass. 2010) (contrary conclusion prior to *Quan*).

The Ninth Circuit's decision is significant because of its clear explanation of why the presumption is critical to the achievement of Congress's policy goals:

> We adopt the *Moench* presumption because it provides a substantial shield to fiduciaries when plan terms require or encourage the fiduciary to invest primarily in employer stock.  ***Fiduciaries are not expected to predict the future of the company stock's performance; without the Moench presumption, a fiduciary "could be sued for not selling if he adhered to the plan [and the company stock dropped], but also sued for deviating from the plan [and selling] if the stock rebounded."*** *Kirschbaum,* 526 F.3d at 256.  Moreover, the "long-term horizon of retirement investing" requires protecting fiduciaries from pressure to divest when the company's stock drops. *Id.* at 254.  The *Moench* presumption should also make it less likely that a plan fiduciary would be tempted to use insider information to divest the plan from company stock, since continued investment in the plan will be presumed prudent.

*Quan*, 623 F.3d at 881-82(emphasis added); *compare* ERISA Br. at 13.

As *Quan* and *Moench* make clear, Plaintiff is incorrect that the presumption does not apply unless the Plan's documents required an ESOP.  *Compare* Opp. at 22-23 *with Quan*, 623 F.3d at 881 (presumption applies "when plan terms require or encourage option to invest primarily in employer stock") & 879 n.6 (presumption applied despite the trustees' discretion to defer investing in company stock if they deemed it "to be in the best interests of the Participants").  In *Moench*, the court held that the presumption applies when an ESOP is "not absolutely required" under the plan, as long as it is "more than simply permitted."  63 F.3d at 571.  There can be no doubt that State Street's Plan either required or strongly encouraged an ESOP.  The Plan itself states that it "*contains* a stock bonus feature consisting of an employee stock ownership plan," Aff. Ex. 41, § 1.1, and that the "ESOP Fund *will* be invested primarily in State Street Stock." *Id.* § 15.2.  The presumption of prudence therefore applies. *See, e.g., Moench*, 62 F.3d at 559 (applying the presumption where the plan indicated that "amounts

contributed are to be invested in company stock," but "the trustee ha[d] the power to invest in other vehicles"); *Morrison*, 607 F. Supp. 2d at 1049 (applying the presumption even where "the Plan did not clearly require MoneyGram to invest all employer contributions in the Employer Stock Fund"); *In re Avon Prods., Inc. Sec. Litig*., 2009 WL 848083, at *7-9 (S.D.N.Y. Mar. 3, 2009) (applying the presumption where "the overall plan offers a variety of investment choices," but the ESOP fund in particular "shall invest primarily in shares of the common stock of the Employer . . . to the extent available").[15]

Plaintiff is also incorrect that *Moench* establishes an evidentiary presumption that is inapplicable on a motion to dismiss.  Opp. at 23-24.  In fact, although courts refer to *Moench's* "presumption of prudence," this is "merely a shorthand way to refer to what the *Moench* court called a standard of review" and the term does not "trigger the rule that evidentiary presumptions are inapplicable at the motion-to-dismiss stage."  *Gearren v. McGraw Hill Cos., Inc.*, 690 F. Supp. 2d 254, 269-70 (S.D.N.Y. 2010).  Rather, the *Moench* presumption provides context in which to evaluate whether "a given allegation can plausibly," *i.e.*, within the meaning of *Twombly* and *Iqbal*, "constitute a breach of fiduciary duty."  *Id*.; *see also Morrison*, 607 F. Supp. 2d at 1051 ("To say that the presumption of prudence 'applies' at the pleading stage is just another way of saying that plaintiffs must allege sufficient facts to demonstrate that they have a non-speculative claim that the fiduciary abused its discretion . . . ."); *Dudenhoeffer*, 2010 WL 4970767, at *5 ("In light of *Twombly* and *Iqbal*, . . . if the plan at issue is an ESOP, as in this

---

[15]     The two cases Plaintiff cites for the contrary proposition are easily distinguished.  In *Graden v. Conexant Sys., Inc.*, 574 F. Supp. 2d 456, 463 (D.N.J. 2008), the court considered only whether the plan required employer stock as an investment option or it permitted such an option.  It failed to consider whether or not the plan encouraged investment in company stock.  The governing document for the plan at issue in *In re Gen. Growth Prop., Inc. ERISA Litig*., 2010 WL 1840245, at *6 (N.D. Ill. May 6, 2010), did not encourage an ESOP.  It merely stated that the plan "*may* include a fund investing solely in shares of" the employer company, not that the plan does include an ESOP option.

case, there really is no choice but to apply the . . . presumption [of prudence] at the pleading stage.").

The amicus briefs submitted by the Department of Labor ("DOL") in other cases are due no weight. The views that the DOL has expressed in litigation (which are not embodied in any federal regulation) are not entitled to *Chevron* deference and are helpful (if at all) only to the extent they are persuasive.[16] *See Christensen v. Harris*, 529 U.S. 576, 587 (2000) (DOL opinion letters interpreting ERISA are "entitled to respect . . . but only to the extent that those interpretations have the power to persuade"); *Rosenberg v. Merrill, Lynch, Pierce, Fenner & Smith, Inc.*, 170 F.3d 1, 12 (1st Cir. 1996) (refusing to defer to position taken in amicus brief by EEOC and explaining "[w]e do not defer to views espoused only in the context of litigation"). The DOL's argument that there should be no presumption of prudence is not persuasive because it is plainly inconsistent with Congress's desire that courts not treat ESOPs like ordinary investment options. *See* Tax Reform Act of 1976, Pub. L. No. 94-455, § 803(h), 90 Stat. 1590 (1976) ("The Congress is deeply concerned that [the] objectives sought [by laws encouraging ESOPs] will be made unattainable by regulations or rulings which treat employee stock ownership plans as conventional retirement trusts."). It is also contrary to the great majority of circuit and district courts that have applied the presumption. *See supra* nn.12-13. A number of those courts considered and rejected the DOL's position. *See, e.g.*, Brief of Sec'y of Labor, *Kirschbaum v. Reliant Energy, Inc.*, 526 F.3d 243 (5th Cir. 2008), 2006 WL 5952409; Brief of Sec'y of Labor, *Moench v. Robertson*, 62 F.3d 553 (3d Cir. 1995), 1994 WL 16012393.

---

[16]      *Chevron U.S.A., Inc. v. Natural Resources Defense Council*, 467 U.S. 837 (1984), describes when a Court must defer to an agency decision.

### 3. Plaintiff Has Not Alleged Nearly Enough to Overcome the Presumption of Prudence.

Where an ESOP is presumed to be a prudent investment, a plaintiff can only state a claim by alleging facts plausibly showing a threat to the company's viability. More specifically, the allegations must "clearly implicate[] the company's viability as an ongoing concern" or show "a precipitous decline in the employer's stock . . . combined with evidence that the company is on the brink of collapse or is undergoing serious mismanagement." *Quan*, 623 F.3d at 882 (quotation omitted); *Kirschbaum*, 526 F.3d at 247 ("There [was] no indication that REI's viability as a going concern was ever threatened or that REI's stock was in danger of essentially becoming worthless."); *Dudenhoeffer*, 2010 WL 4970767, at *7 ("[T]he fact that the company remained viable despite a substantial drop in the stock price is a strong indicator that no breach of fiduciary duty occurred by remaining invested in employer securities."); *Citigroup*, 2009 WL 2762708, at *19 (dismissing claim where there was "no indication" that the company's "viability as a going concern was ever threatened").

Plaintiff does not even try to assert that the issues in this case threatened State Street's viability. Instead, he argues for the slightly lesser standard that some courts have applied. Many of the cases he cites, however, are district court decisions from within the Ninth Circuit which have been overruled by *Quan*.[17] The others require much more to rebut the presumption than Plaintiff admits. For example, the Sixth Circuit does not simply ask whether another fiduciary would have acted differently, but rather whether retaining the ESOP was "an abuse of discretion." Opp. at 27 (citing *Kuper v. Iovenko*, 66 F.3d 1447, 1459 (6th Cir. 1995)).

---

[17] These cases include *In re First Am. Corp. ERISA Litig.*, 2008 WL 5666637, at *5 (C.D. Cal. July 14, 2008), *In re Fremont Gen. Corp. Litig.*, 564 F. Supp. 2d 1156, 1159 (C.D. Cal. 2008), and *In re Syncor ERISA Litig.*, 351 F. Supp. 2d 970, 980 (C.D. Cal. 2004).

Plaintiff's claim fails regardless of whether it is evaluated under a threat to viability or an abuse of discretion standard.  That is because State Street was (and remains) a healthy financial institution.  *See, e.g., Wright v. Or. Mettallurgical Corp.*, 360 F.3d 1090, 1098-99 (9th Cir. 2004) (no claim where company was "profitable and paying substantial dividends throughout [the] period"); *In re Coca-Cola Enters., Inc. ERISA Litig.*, 2007 WL 1810211, at *10 (N.D. Ga. June 20, 2007) (no claim where company's "financial information evidences that the company is a robust and viable investment option").  Also weighing in favor of dismissal is the fact that, even with the luxury of 20/20 hindsight, participants were well served by their ESOP investments. *See, e.g.,* Reply Aff. Exs. 1-2; Aff. Ex. 38 at 30; ERISA Br. App. Ex. A.

## IV.     PLAINTIFF'S DISCLOSURE CLAIMS FAIL ON MULTIPLE GROUNDS

### A.     Plaintiff Has Yet to Identify Any Actionable Misrepresentations.

In what might be seen as an example of dramatic irony (in which the speaker is unaware that what he is saying is obviously false), Plaintiff asserts that Defendants have ignored numerous alleged misstatements about State Street's FX trading revenue, including that State Street's reported revenue was supposedly inflated by "hundreds of millions of dollars" and that the growth in FX revenue was "in large part . . . due to a widespread scheme to overcharge" customers.  Opp. at 38.  The only party who has ignored anything is Plaintiff, who has entirely ignored Defendants' detailed showing that these conclusory allegations are not plausibly supported by well-pleaded facts.  *See* ERISA Br. at 21-22; *Hill* Br. at 27-29.  That is, it is Plaintiff who ignores that he at most has alleged that State Street is in the midst of a dispute relating to two customers about purported annual FX overcharges of $7 million—or less than one-tenth of one percent of State Street's annual revenue.

Even if the allegations in the AGO's complaint were correct and substantiated by Plaintiff's investigation (and they are not), State Street's FX revenue disclosures would not be

misleading, much less materially so.  And contrary to Plaintiff's assertions, there is nothing in

the Complaint that should prevent dismissal on materiality grounds regardless of whether the

Court considers materiality from a qualitative or quantitative perspective.  *See, e.g., Greebel v.*

*FTP Software, Inc.*, 194 F.3d 185, 206 (1st Cir. 1999) (affirming dismissal because alleged

improper recognition of 4.2% of revenue was not material); *In re Duke Energy ERISA Litig.*, 281

F. Supp. 2d 786, 792 (W.D.N.C. 2003) (alleged improper recognition of $217 million in revenue

(less than 1% of overall the company's overall revenue) was quantitatively and quantitatively

immaterial despite plaintiff's allegation that misrepresentation prevented participants from

understanding that the company lacked adequate personnel and internal controls to appropriately

manage a core business and that the business did not provide the engine for future growth that

the company previously indicated).

     Plaintiff likewise fails to offer a cogent response to Defendants' showing that the two

other purported misrepresentations identified in the Complaint were neither false nor misleading.

He continues to rely on distortion, suggesting that State Street's statement that it offered software

and "consultative services that use quantitative tools designed to optimize customers' returns"

was a warranty that the rates State Street offered to customers did so.  Opp. at 9 & 30; Compl. ¶¶

107, 112, 117.[18]  No one could have reasonably read that statement in the way that Plaintiff asks

the Court to read it; and Plaintiff identifies no customer who even allegedly did so.

     Plaintiff also has no factual basis for his challenge to a statement in State Street's 2008

Annual Report to the effect that the company had a "reputation as a trusted, experienced partner

and long-standing relationships with customers."  Opp. at 41.  Plaintiff asserts that this statement

---

[18]    The strains in Plaintiff's portrayal of this statement are also evident from the inconsistency of his characterizations.  Although he asserts on two occasions that this statement was a warranty that State Street had optimized returns (Opp. at 9 & 39), Plaintiff later claims that the statement said only that State Street "*attempted* to optimize customer returns."  Opp. at 39.

was misleading because it did not also say that State Street was responding to the AGO's investigation.  But no one could have read that disclosure as a statement that the company was not involved in any regulatory investigation.  Indeed, the same report disclosed that State Street was routinely involved in regulatory investigations.  Reply Aff. Ex. 3 (2008 Annual Report) at 23.  Moreover, Plaintiff's claim that the statement somehow implied that State Street would never face any customer claims is belied by the fact that elsewhere in the same report State Street disclosed that it faced such claims "[f]rom time to time," *id.*, and also that the company had established a $625 million reserve to address its legal exposure on customer claims in an unrelated area of State Street's business. *Id*. at 24.

For reasons like this, courts routinely hold that statements about a company's reputation are inactionable puffing.  *See* ERISA Br. at 23 (citing cases).  Plaintiff argues in vain that statements by fiduciaries can never be considered "puffery."  Opp. at 40.[19]  In fact, the *Kenney* decision that Plaintiff relies on so heavily elsewhere in his brief reveals that this is not so.  *See, e.g., Kenney*, 694 F. Supp. 2d at 78 (dismissing ERISA misrepresentation claim as to three statements on the grounds that they were inactionable puffing).[20]

## B.    Plaintiff Has Not Identified a Failure to Comply with the Limited Disclosure Obligations Set Forth in ERISA.

While Plaintiff in passing attempts to characterize the Complaint as encompassing an omission claim, the claim he actually pleaded rests solely on purported misrepresentations.  *See* Compl. ¶¶ 87-121 (identifying no pure omissions despite the subheading).  That is, although the

---

[19]    The statement is not a fiduciary communication.  *See infra* at 23-24.

[20]    The lone case Plaintiff cites for his argument does not actually help him.  In *Café La France, Inc. v. Schneider Sec., Inc.*, 281 F. Supp. 2d 361, 373 (D.R.I. 2003), the court held that an underwriter's statement of "trust us" was puffery and that it did not convert the underwriter into a fiduciary.  *Id.*  The court contrasted this status to a promoter in a public offering, which typically has a fiduciary relationship with the corporation that is going public.  The court said nothing about whether, *after* an entity has been established as a fiduciary, its statements of puffery can be actionable.

Opposition asserts that State Street failed to disclose information, the only actual duty to disclose upon which Plaintiff relies in this regard is the duty to disclose information necessary to make what was actually said not misleading.  Plaintiff does not assert any pure omission claim—an omission in violation of some other disclosure duty.  *Compare Sparks v. Fidelity Nat'l Title Ins. Co.*, 294 F.3d 259, 274 (1st Cir. 2002) ("In the absence of a specific duty to disclose, [there can be no liability] for an omission of information.") *with* Opp. at 37-43.

In particular, ERISA's affirmative disclosure obligations are specifically set forth in the statute, *see* 29 U.S.C. §§ 1021-31, and Plaintiff has not asserted that Defendants failed to comply with any of them.  He instead contends incorrectly that ERISA's general fiduciary standards— which say nothing about disclosure—implicitly impose on fiduciaries an unlimited duty to continually disclose all material information about the company's business whenever the company offers an ESOP.  *See Ehlmann v. Kaiser Found. Health Plan of Texas*, 198 F.3d 552, 555 (5th Cir. 2000) ("[W]here ERISA provides a section specifically dealing with a particular information scheme, courts should not supplement that scheme . . . ."); *Sprague v. Gen. Motors Corp.,* 133 F.3d 388, 405 (6th Cir. 1998) ("It would be strange indeed if ERISA's fiduciary standards could be used to imply a duty to disclose information that ERISA's detailed disclosure provisions do not require to be disclosed."); *Bd. of Trs. of the CWA/ITU Negotiated Pension Plan v. Weinstein*, 107 F.3d 139, 147 (2d Cir. 1997) ("[W]e think it inappropriate to infer an unlimited disclosure obligation on the basis of [ERISA's general fiduciary standards] that say nothing about disclosure.").

If Plaintiff were correct that an ESOP sponsor had the duty to disclose all material information about its business in real time, ERISA would swallow and overwhelm the more limited duties of disclosure imposed by the federal securities laws—a result that is inconsistent

with ERISA's express terms and Congress's intention to encourage ESOPs.  *See* 29 U.S.C. §

1144(d) (nothing in ERISA "shall be construed to alter, amend, modify, invalidate, impair, or

supersede any law of the United States").  The effect of such a rule would be to "either render

much of the securities laws a dead letter, or (more likely) dissuade employers from offering

company stock to employees . . . in direct contravention of Congress's objectives." *Gearren*,

690 F. Supp. 2d at 273; *see Baker v. Kingsley*, 387 F.3d 649, 662 (7th Cir. 2004) (imposing such

a duty would risk "disturbing the carefully delineated corporate disclosure laws").[21]  Tellingly,

under the securities laws Street had no duty to accuse itself of wrongdoing, to disclose

allegations of wrongdoing, or to predict possible regulatory action.  *See In re Sofamor Danek*

*Grp., Inc.*, 123 F.3d 394, 400-02 (6th Cir. 1997) (no duty to disclose that company was engaged

in allegedly illegal activity, or to predict the possibility of future regulatory action); *In re Marsh*

*& McLennan Cos., Inc. Sec. Litig.*, 501 F. Supp. 2d 452, 471 (S.D.N.Y. 2006) ("a general duty to

disclose corporate mismanagement or uncharged criminal conduct has been rejected"); *In re*

*Citigroup, Inc. Sec. Litig.*, 330 F. Supp. 2d 367, 377 (S.D.N.Y. 2004) ("federal securities laws do

not require a company to accuse itself of wrongdoing").[22]

---

[21]     *See also  Dudenhoeffer,* 2010 WL 4970767, at *11 ("ERISA does not impose a duty on fiduciaries to disclose information to plan participants beyond what the statute itself requires."); *ING Groep, N.V. ERISA Litig.*, 2010 WL 1704402, at *9 (N.D. Ga. Mar. 31, 2010) ("ERISA does not impose an obligation to disclose broad categories of non-public financial information regarding publicly traded securities."); *Lingis v. Motorola, Inc.*, 649 F. Supp. 2d 861, 876 (N.D. Ill. 2009) ("Creating a standard that requires Plan fiduciaries 'to continuously gather and disclose nonpublic information bearing some relation to the plan sponsor's financial condition' would 'extend[] the statutory language [of ERISA] beyond [its] plain meaning.'"); *In re Citigroup ERISA Litig.*, 2009 WL 2762708, at *21 (S.D.N.Y. Aug. 31, 2009) (fiduciaries have an obligation to disclose information about plan benefits but not "information about the financial status of plan *investments*") (emphasis in original).

[22]     Moreover, because information that might affect a stock's price is necessarily of equal interest to companies' public shareholders as it is to ESOP participants, Plaintiff's disclosure rule would put companies in the position of having to disclose all material information about their affairs to everyone on a daily basis.  *See* Regulation FD, 17 C.F.R. §§ 243.100(a) & (b)(1)(iv) (making selective disclosure of material non-public information obligates a company to disclose the same information publicly); *S.E.C. v. Siebel Sys., Inc.*, 384 F. Supp. 2d 694, 696 (S.D.N.Y. 2005) (same).  Any allegation that State Street should have simultaneously disclosed any omitted FX information to the market would doom Plaintiff's case because simultaneous disclosure would, according to Plaintiff's view of the information's significance, only have resulted in a "swift market adjustment" of State Street's stock price that would have prevented participants from selling at a higher pre-announcement price. *Edgar v. Avaya, Inc.*, 2006 WL 1084087, at *9 (D.N.J. Apr. 25, 2006); *see In re McKesson HBOC, Inc. ERISA Litig.*, 2002 WL 31431588, at *6 (N.D. Cal. Sept. 20, 2002) (same).

Plaintiff's argument that Defendants had a duty to speak is based largely on dicta from the Court's decision in *Bendaoud v. Hodgson*, 578 F. Supp. 2d 257 (D. Mass. 2008)—a case in which the Court was not asked to consider the conflict between the limited disclosure obligations in the securities laws and the expansive construction of ERISA that Plaintiff is pursuing here.[23] Instead, in the context of addressing an argument about materiality, the Court said that a fiduciary has a duty to disclose material facts that the fiduciary "knows the beneficiary does not know and which the beneficiary needs to know for his protection." *Id*. at 278 (emphasis added).[24] The two cases that the Court cited as support for its statement has nothing to do with ESOPs. *See Watson v. Deaconness Waltham Hosp.*, 298 F.3d 102, 115 (1st Cir. 2002) (long-term disability benefits); *Alves v. Harvard Pilgrim Health Care*, 204 F. Supp. 2d 198, 214 (D. Mass. 2002) (health insurance). Because the Court did not consider the many cases constraining—consistent with the federal securities laws—an ESOP sponsor's duty to disclose, *Bendaoud's* dicta should not apply.

The bulk of the cases Plaintiff cites are distinguished on the same basis. The dicta in *In re Tyco Int'l Ltd.* (D.N.H. Aug. 15, 2006) related to an ESOP, but it also relied on the First Circuit's decision in *Watson.* 2006 WL 2349338, at *6 n.7 (quoting *Watson*, 298 F.3d at 114-15). It too did not consider the law as it has developed concerning the duty to disclose in the ESOP context. *Id.* (noting that, as of the date of the decision, the law governing the duty to disclose was still "developing"). Except for one completely unrelated case,[25] the rest of

---

[23]   The defendants in *Bendaoud* did not brief the issues of whether ERISA's general fiduciary standards impose a duty to speak where ERISA's disclosure requirements do not, or the inconsistency of any such duty with federal securities law.

[24]   The Court's statement offers Plaintiff no refuge because there are no well-pleaded facts in the Complaint plausibly to support any assertion that any defendant had actual knowledge of any FX fraud.

[25]   *Ervast v. Flexible Prods. Co.*, 346 F.3d 1007 (11th Cir. 2003), is plainly inapposite. In that case, the court held that the plaintiff's disclosure claim—that the defendants had an affirmative duty to disclose merger negotiations —sounded in state law, *not* ERISA. *Id*. at 1016. Also, the dicta that Plaintiff cites does not address Plaintiff's

Plaintiff's cases concern benefits other than publicly traded stock. *See Kalda v. Sioux Valley Physician Partners, Inc.*, 481 F.3d 639, 643 (8th Cir. 2007) (amounts of employer's pension contributions); *Bixler v. Central Pa. Teamsters Health & Welfare Fund*, 12 F.3d 1292, 1300-01 (3d Cir. 1993) (insurance coverage); *James v. Pirelli Armstrong Tire Corp.*, 305 F.3d 439, 452 (6th Cir. 2002) (early retirement incentive program).

C.    **The Opposition Presents No Compelling Justification for Treating State Street's SEC Filings as Fiduciary Communications.**

Plaintiff does not address the logic of State Street's argument that its SEC filings were not transformed into fiduciary communications just because they were provided to Plan participants or incorporated by reference into the Plan's summary plan description ("SPD"). *See* ERISA Br. at 18-21.[26] Instead, he cites *Bendaoud*, even though the Court in that case was not presented with (and therefore could not have considered) either this logic or the application of the Supreme Court's decision in *Varity v. Howe*, 516 U.S. 489 (1996).

More specifically, in *Bendaoud*, the defendants did not assert and the Court did not assert that the company's distribution disclosures, including a "pass through" incorporation of SEC filings in a Summary Plan Description, was done to satisfy a requirement under the securities laws. *See* 17 C.F.R. §§ 239.16(b), 230.428; *compare* ERISA Br. at 18-21 with Defs.' Mem. in Supp. of Mot. to Dismiss at 7-8, *Bendaoud v. Hodgson*, No. 06-cv-11873, Docket No. 9 (D. Mass. 2006). Because communications that are not "intentionally connected" to plan benefits are not fiduciary communication, *Varity*, 516 U.S. at 505, and because communications required under the securities laws are not so connected, the disclosures challenged here were not fiduciary

---

argument that fiduciaries have an unending duty continually to provide all material information that may affect the company's stock price.

[26]    Plaintiff does not dispute that SEC filings by themselves are corporate communications, not fiduciary communications. *See* ERISA Br. at 18-19 (citing cases).

communications.  *See* ERISA Br. at 20-21 & n.22 (citing cases); *Dudenhoeffer*, 2010 WL

4970767, at *10.[27]

###### D.      The Complaint's Muddled Reliance Allegations.

The Complaint is hardly a model of clarity with regard to reliance.  It initially alleges that

Plaintiff and the other class members are presumed to have relied on State Street's allegedly

defective annual reports, and then, in the next breath, it alleges that "Plaintiff and the other Class

members" did rely.  *Compare* Compl. ¶¶ 186-87.  The latter allegation is, on its face,

implausible.  Plaintiff obviously has no factual basis to assert that every ESOP investor read the

disclosures at issue and made an investment decision based upon them.  If Plaintiff himself

actually did so read and rely, he should state unambiguously which of the statements at issue he

in fact read and relied upon and whether he did so to his detriment.

To the extent that there are any statements about which Plaintiff is either unwilling or

unable to allege detrimental reliance, his challenge to those statements must be dismissed.  *See*

*Mauser v. Raytheon Co. Pension Plan*, 239 F.3d 51, 55 (1st 2001) ("[R]elief is only appropriate

if the participant demonstrates significant or reasonable reliance . . . ."); *Bell v. Pfizer, Inc.*, 2010

WL 3385949, at *8 (2d Cir. Aug. 30, 2010) (for ERISA claims of "material misrepresentation or

omission, the plaintiff must establish detrimental reliance"); *Kenney v. State Street Corp.*

("*Kenney II*"), --- F. Supp. 2d. ----, 2010 WL 5035906, at *2 (D. Mass. Dec. 9, 2010) ("[T]o

establish that State Street breached its duties under ERISA by negligently misrepresenting

information about the plan, the plaintiff must prove 'significant or reasonable reliance' on these

misrepresentations.") (quoting *Mauser*, 239 F.3d at 54-55).

---

[27]       Contrary to Plaintiff's assertion, Judge Saris did not resolve this question in *Kenney*.  She only noted the issue and the divided case law after the defendants identified the issue and reserved the right to raise it later.  *See Kenney*, 694 F. Supp. 2d at 76; Defs.' Br. in Support of Mot. to Dismiss at 21-22 n.20, Civ. A. No. 09-10750-PBS, Docket No. 18.

Plaintiff simply cannot cover up any deficiency in this regard by importing inapposite principles from securities cases.  There is nothing in *Mauser* suggesting that the First Circuit intended that reliance was only an element in certain types of ERISA cases, and Plaintiff offers no compelling justification here.[28]  Also, contrary to Plaintiff's assertion, the fact that he purports to sue on behalf of the "plan as a whole" does not affect the analysis because State Street's Plan is a defined contribution plan.  *See* Compl. ¶ 35; Opp. at 34.  The Supreme Court's decision in *Larue v. DeWolff, Boberg & Assocs.*, 552 U.S. 248, 250 n.1 (2008), established that when a participant in a defined contribution plan files suit to recover an alleged financial loss, the claim is *individual* in nature.  *See Bendaoud*, 578 F. Supp. 2d at 266 (explaining the distinction between defined benefit and defined contribution plans, and that "[o]ne defined contribution plan participant has no pecuniary interest in the accounts of another"); *Kenney II*, 2010 WL 5035906, at *2 (agreeing with *Bendaoud* and holding that individual reliance is required even where a plaintiff "casts [his] claim as one made on behalf of the entire plan").

Plaintiff is also unable to circumvent the element of reliance by importing a presumption of reliance that is applicable to some securities cases.  Opp. at 33-34.  Nearly all of the cases that Plaintiff cites in support of his argument were based on the outdated view that defined contribution plan participants sued on behalf of the plan as opposed to their own accounts.  *See Jones v. NovaStar Fin., Inc.*, 257 F.R.D. 181, 191 (W.D. Mo. 2009); *In re Polaroid ERISA Litig.*, 240 F.R.D. 65, 75 (S.D.N.Y. 2006); *Smith v. Aon*, 238 F.R.D. 609, 616 (N.D. Il. 2006); *Tyco*, 2006 WL 2349338, at *5 (D.N.H. Aug. 15, 2006).  In *Larue*, the Supreme Court made clear that these claims are individual in nature.  Since then, courts have been largely unwilling to extend a presumption of reliance to ERISA cases like this.  *See Harris v. Amgen, Inc.*, 2010 WL 744123,

---

[28]     The recent *Kenney* decision is dispositive of Plaintiff's argument that reliance is only required in ERISA cases that are unrelated to ESOPs.  Opp. at 34 n.24.

at *13 (C.D. Cal. Mar. 2, 2010) ("Contrary to Plaintiffs' argument, the element of detrimental reliance is not presumed."); *George v. Duke Energy Ret. Cash Balance Plan*, 259 F.R.D. 225, 240 (D.S.C. 2009) ("Plaintiffs' argument essentially amounts to a request that the detrimental reliance element be presumed for all class members, but they have yet to present any authority to support that position."); *In re Merck & Co. Sec. Litig.*, 2009 WL 331426, at *5 (D.N.J. Feb. 10, 2009) (refusing to extend *Affiliated Ute* presumption to ERISA and characterizing the extension Plaintiff seeks here as "a big leap").[29]

## V.   THE CLAIMS AGAINST THE INDIVIDUAL DEFENDANTS ARE NOT VIABLE

### A.   There Is No Plausible Basis for Plaintiff's Conclusion That Mr. Logue Was a "Functional Fiduciary" with Regard to Investment Selection or Participant Communications.

Plaintiff does not dispute that Mr. Logue's designated fiduciary responsibilities were limited to appointing and monitoring the Benefits Committee.  *See* Compl. ¶ 57.  Plaintiff therefore cannot pursue a claim against Mr. Logue for purportedly breaching an ERISA fiduciary duty to prudently manage the Plan's investments (Count I) or to appropriately communicate with participants (Count III).  *See Bendaoud*, 579 F. Supp. at 276 (since a person can be liable "*only* 'to the extent'" of her fiduciary responsibilities, it is "necessary to examine each type of act [the plaintiff] complains of to determine whether it was undertaken in a defendants' capacity as an ERISA fiduciary").[30]

---

[29]    Plaintiff bemoans the supposed unfairness of requiring him to comply with First Circuit law that unambiguously holds that reliance is an element of ERISA disclosure claims, arguing that "it would be perverse" to impose a higher pleading burden for ERISA plaintiffs than securities fraud plaintiffs.  Opp. at 33 n.22.  While ERISA may generally impose a lesser pleading burden, that is not to say that any element that may be more difficult to plead should be cast aside.  If there is anything perverse, it is that Plaintiff is trying to shoehorn a securities fraud action into an ERISA claim, no doubt to seek a second recovery and fee.  If there is any class recovery in the *Hill* action (which, like this case, is meritless), the Plan is eligible to share in it and then distribute the recovery to participants who allocated portions of their Plan account to the ESOP.

[30]    *See also Kearns v. Benefit Trust Life Ins. Co.*, 992 F.2d 214, 217 (8th Cir. 1993) (the court must determine "whether a person is a fiduciary with respect to the particular activity in question"); *In re Polaroid ERISA Litig.*, 362

Changing field, Plaintiff puts forward a new theory that is not found in the Complaint. He now asserts that Mr. Logue took on additional responsibilities as a "de facto" or "functional" fiduciary, meaning someone who becomes a fiduciary through their conduct.

That assertion, however, does Plaintiff no good.  As with designated fiduciaries, functional fiduciary status is not an all or nothing concept.  29 U.S.C. § 1002(21)(A) ("a person is a [functional] fiduciary with respect to a plan *to the extent* [she has certain types of discretionary authority]") (emphasis added); *see Haddock v. Nationwide Fin. Servs., Inc.*, 262 F.R.D. 97, 122 (D. Conn. 2009) ("ERISA employs a 'functional' approach to determining whether a particular person or entity is a fiduciary *and to what extent.*") (emphasis added).  In other words, liability can only attach if the defendant was a functional fiduciary with regard to the particular act at issue.  Since none of the actions that supposedly gave rise to Mr. Logue's functional fiduciary status involved managing the Plan's investment options, *see* Opp. at 44-45, Mr. Logue must be dismissed from Plaintiff's prudence claim.

Mr. Logue should also be dismissed from Plaintiff's communications claim because the only arguably relevant act that Plaintiff identifies is that Mr. Logue signed annual reports that purportedly contained misrepresentations.  As several courts have held, people who prepare "SEC filings do not become ERISA fiduciaries through those acts."  *In re Lehman Bros Sec. & ERISA Litig.*, 683 F. Supp. 2d 294, 300 (S.D.N.Y. 2010); *In re Citigroup ERISA Litig.*, 2009 WL 2762708, at *23; *see Calderon v. Amvescap PLC*, 2006 WL 735006, *3 (D. Md. Feb. 27, 2006). It does not matter if State Street's annual reports eventually became fiduciary communications (which Defendants deny, *see supra* at 23-24) when they were distributed to participants because

---

F. Supp. 2d 461, 473 (S.D.N.Y. 2005) ("ERISA does not attach liability for investment decisions to fiduciaries whose roles were limited to appointing, retaining, and removing other fiduciaries.").

Mr. Logue was not part of that distribution.  *See, e.g., Lehman Bros.*, 683 F. Supp. 2d at 300

(holding that director defendants did not become functional fiduciaries by making allegedly

inaccurate statements in SEC filings and that it did not matter that these filings were incorporated

into an SPD because that was done by the plan committee).

   Plaintiff is also unable to circumvent Mr. Logue's limited responsibilities with the

conclusory argument that Mr. Logue can be held liable for the acts of co-fiduciaries.  In addition

to the fact that Plaintiff has not plausibly alleged that the other defendants breached any fiduciary

duty, he has not alleged any facts that would meet the test set forth in 29 U.S.C. § 1105(a)

(requiring factual allegations showing that a defendant knowingly participated in or concealed

another fiduciary's breach, enabled another's breach, or knew of another's breach and failed to

make reasonable efforts to remedy the breach).  Tellingly, the only allegations Plaintiff is able to

cite in support of his argument are those setting forth the elements of Counts I and III.  *See* Opp.

at 47 (citing Compl. ¶¶ 167-77, 190-97).

   **B.   Plaintiff Has Not Alleged Facts Plausibly Showing That the Other Individual
         Defendants Knew or Should Have Known About the Alleged FX Scheme.**

   It should no longer be news that, after *Twombly* and *Iqbal*, a plaintiff cannot state a claim

with "labels and conclusions, and a formulaic recitation of the elements of a cause of action."

*Twombly*, 550 U.S. 544, 555 (2007); *see also Gooley v. Mobil Oil Corp.*, 851 F.2d 513, 515 (1st

Cir. 1988) (complaint must contain "*factual* allegations, either direct or inferential, respecting

*each* material element" of the plaintiff's legal claims) (emphasis added).  Yet that is exactly what

Plaintiff claims he is entitled to do when he argues that it was enough for him to simply allege

that the "Committee Defendants 'knew or should have known'" about the supposed FX fraud.

Opp. at 48.[31]  To the contrary, "[a] conclusory statement that all defendants should have known specific facts about a company is generally insufficient to state a claim; it must be alleged that each defendant was in a position to know or learn of the information."  *Pugh*, 521 F.3d at 701; *see In re Lehman Bros.*, 683 F. Supp. 2d at 300-01 ("conclusory allegations" that defendants "should have known" are not enough to state a claim).

In the absence of actual knowledge, alleging that a defendant should have known requires a plaintiff to plead the existence of a "red flag."  *Pugh*, 521 F.3d at 701 (no duty to continually audit the company's affairs in the absence of a red flag); *In re Huntington Bancshares, Inc. ERISA Litig.*, 620 F. Supp. 2d at 852 (S.D. Ohio 2009) (same); *In re Constellation Energy Grp., Inc.*, 2010 WL 3221821, at *6 (D. Md. Aug. 13, 2010) (same).

The Complaint offers nothing of the sort.  Indeed, Plaintiff all but concedes as much with regard to defendants DeSalvo, Gutschenritter, Horgan, Jones, Longerstay, McLellan, Rigby, and Tangen.  The opposition does not even mention them except for including these individuals in the definition of "Committee Defendants."  Opp. at 3 n.3.  That near silence is consistent with the Complaint, which only identifies these individuals as parties.

Plaintiff's arguments as to the few defendants who are mentioned in the opposition—defendants O'Leary, Quirk, Donahue, Gormley, Malerba and Cutrell—are no better.  Those individuals were among a small group of very senior executives who were responsible for running a diversified, multi-national financial services institution with more than 27,000 employees across the globe.  Plaintiff's claim is essentially that these individuals should have

---

[31]    The cases Plaintiff cites as support are easily distinguished.  In most of them, this issue was not even litigated.  *See, e.g., In re Gen. Growth Props., Inc.*, 2010 WL 1840245, at *7 (N.D. Ill. May 6, 2010); *In re Regions Morgan Keegan ERISA Litig.*, 692 F. Supp. 2d 944, 962-63 (W.D. Tenn. 2010); *Pfizer*, 2009 WL 749545 at *9-12; *Kenney*, 694 F. Supp. 2d at 76.  The others are inconsistent with *Twombly* and *Gooley*.  For example, in *In re Dynergy*, which was decided several years before *Twombly*, the court's holding was expressly based on the outdated view that "Rule 8 does not require a plaintiff to allege facts to support every element of a prima facie case."  *In re Dynergy, Inc. ERISA Litig.*, 309 F. Supp. 2d 861, 881-82 (S.D. Tex. 2004).

known every detail about every issue that even arguably related to their area of responsibility. For example, Mr. O'Leary and Ms. Quirk supposedly should have surmised there was an FX issue because they should have realized that FX traders' bonuses were a high percentage of their base salary.  Ms. Donahue, Ms. Gormley, and Mr. Malerba oversee auditing, compliance, and accounting.  According to Plaintiff, they therefore should have figured out that FX trades were always profitable (yet another unsupported conclusion) and then made the leap that this profitability must be the result of fraud.[32]  The tenuousness of these asserted connections speaks volumes about their implausibility.

Plaintiff cannot fill this gap in his pleading with speculation that the supposed scheme was "well-known within the Company."  Opp. at 51.[33]  His assertion that the committee members "would have learned" about the Relator's complaint when it was filed is equally speculative.  And to the extent any member learned about the complaint, that knowledge would not have served as a red flag because that complaint offers no basis to conclude that there was a widespread fraud.  *See supra* at 4-8.

## VI.   PLAINTIFF'S REMAINING CLAIMS MUST BE DISMISSED

Plaintiff is simply incorrect when he argues that his duty to monitor and conflict of interest claims (Counts II and IV) can stand without an actionable prudence or disclosure claim. *See Brown*, 2010 WL 5059594, at *9 (affirming dismissal of these "derivative" claims because "neither . . . can survive without a sufficiently pled theory of an underlying breach"); *Kenney*,

---

[32]     Plaintiff's allegation that State Street virtually never lost money on an FX trade is both unsupported and in light of State Street's status as an FX dealer, highly implausible.  *See* ERISA Br. at 26-27.  Plaintiff does not respond to these allegations in his Opposition.

[33]     Plaintiff's assertion that "everyone knew" about the supposed FX scheme is just empty rhetoric.  It is based on the allegations that:  (i) State Street held "off-site conferences" that related to its FX business but with no allegations that any purported fraudulent practice was even mentioned; (ii) "high-ranking executives" attended those conferences; and (iii) passing references to unidentified "senior management" and "State street executives" by the confidential witnesses quoted in the *Hill* Complaint.  *See Compl.* ¶¶ 124-25, 129-34; *Hill* Reply at 7.

694 F. Supp. 2d at 79 (dismissing same claims because they "derive substantially from plaintiff's imprudence claim"); *Avon Prods.*, 2009 WL 848083, at *16-18 (same); *Coca-Cola*, 2007 WL 1810211, at *11-12 (same); *Duke Energy*, 281 F. Supp. 2d at 795 (same); *In re Radio Shack Corp. ERISA Litig.*, 547 F. Supp. 2d 606, 616 (N.D. Tex. 2008) (same).

Plaintiff has also failed to satisfactorily address the independent failings of these claims. For example, he asserts in his opposition that the source of Defendants' supposed conflict of interest was the desire to avoid damaging the Company's reputation and thereby their own personal financial interests. *See* Opp. at 56. But the Complaint is silent as to both, including paragraph 195 which Plaintiff cites as the sole support for his argument. And even if there was such an allegation, Defendants' interests were fully aligned with ESOP participants who also had a stake in the company. Plaintiff is also incorrect that Defendants had an obligation to hire an independent fiduciary. As is evident from Plaintiff's argument, ERISA permits fiduciaries to wear more than one hat, one for their corporate role and the other in their fiduciary role. *See id.*

As for the duty to monitor claim, Plaintiff asserts that Mr. Logue should have disclosed the existence of the supposed FX scheme to the other committee defendants. *See* Opp. at 55. In addition to failing to adequately plead the existence of such a scheme, the Complaint contains no well-pleaded facts indicating that Mr. Logue had any knowledge the alleged scheme. And to the extent that the Relator's complaint disclosed the supposed "truth," Plaintiff now claims (although the Complaint does not) that the committee members learned about the *qui tam* case in April 2008, approximately a year and a half before the October 20, 2009 stock drop. *See* Opp. at 50.

## VII.    THERE IS NO REASON TO WAIT TO STRIKE PLAINTIFF'S JURY DEMAND

If the Court permits this case to go forward, it should deny Plaintiff's request to defer a decision on his right to a jury trial. All Plaintiff is able to offer in his attempt to counter the "overwhelming weight of authority" holding that there is no right to a jury trial under ERISA,

- 31 -

*Gannell v. Prudential Ins. Co. of Am.*, 502 F. Supp. 2d 167, 172 (D. Mass. 2007), is the tepid

argument the Supreme Court's decision in *Larue* might allow for a jury trial if it is read as

"*implying* that [ERISA] claims *may* be legal and not equitable." Opp. at 57 (emphasis added).

*Larue* says nothing about the right to a jury trial and Plaintiff tellingly is unable to cite any court

that has accepted this novel argument. Moreover, the possibility of recovering monetary relief is

not new to *Larue*. The Supreme Court acknowledged it fifteen years earlier in *Mertens v. Hewitt*

*Assocs.,* 508 U.S. 248, 255-56, 262 (1993). Nevertheless, every circuit court that has addressed

the issue since then has held that ERISA does not permit jury trials.[34]

---

[34]     *See Hampers v. W.R. Grace & Co.,* 202 F.3d 44, 54 (1st Cir. 2000) (affirming district court's refusal to grant a jury trial in an ERISA case); *Muller v. First Unum Life Ins. Co.,* 341 F.3d 119, 124 (2d Cir. 2003) ("there is no right to a jury trial under ERISA"); *Borst v. Chevron Corp.,* 36 F.3d 1308, 1324 (5th Cir. 1994) (plaintiffs were not entitled to a jury trial for their ERISA claims, even though they sought monetary relief); *Sprague v. Gen. Motors Corp.,* 133 F.3d 388, 406 (6th Cir. 1998) ("Although the plaintiffs sought a jury trial on their ERISA claims, our circuit precedent teaches that they were not entitled to one."); *Mathews v. Sears Pension Plan,* 144 F.3d 461, 468 (7th Cir. 1998) ("there is no right to a jury trial in [an ERISA] case"); *Langlie v. Onan Corp.,* 192 F.3d 1137, 1141 (8th Cir. 1999) ("there is no right to a jury trial under ERISA"); *Thomas v. Oregon Fruit Prods. Co.,* 228 F.3d 991, 997 (9th Cir. 2000) (there is no right to a jury trial for ERISA claims); *Adams v. Cyprus Amax Minerals Co.,* 149 F.3d 1156, 1162 (10th Cir. 1998) (reversing order denying defendants' motion to strike jury demand on ERISA claims); *Broaddus v. Fl. Power Corp.,* 145 F.3d 1283, 1287 n.** (11th Cir. 1998) (district court did not err in striking jury demand in ERISA case).

## CONCLUSION

For the foregoing reasons, as well as those in Defendants' opening brief, the Complaint should be dismissed with prejudice.

                                   DEFENDANTS

                                   By their attorneys,

                                   */s/ Jeffrey B. Rudman*_____ _____
                                   Jeffrey B. Rudman (BBO No. 433380)
                                   William H. Paine (BBO No. 550506)
                                   John J. Butts (BBO No. 643201)
                                   Timothy Perla (BBO No. 660447)
                                   WILMER CUTLER PICKERING
                                     HALE AND DORR LLP
                                   60 State Street
                                   Boston, Massachusetts 02109
                                   (617) 526-6000
Dated:  December 22, 2010          jeffrey.rudman@wilmerhale.com

## **CERTIFICATE OF SERVICE**

I, Jeffrey Rudman, hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) dated December 22, 2010.

*/s/ Jeffrey B. Rudman*_____ _____
Jeffrey Rudman

US1DOCS 7799870v1