**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| HILL v. STATE STREET CORPORATION | : <br> : <br> : |
| THIS DOCUMENT RELATES TO THE SECURITIES ACTIONS <br><br> DOCKET NO. 09-cv-12146-NG | : **Master Docket No. 09-cv-12146-NG** <br> : <br> : **Leave To File Granted** <br> : **On May 27, 2011** <br> :: |

**NOTICE OF RECENT FACTUAL DEVELOPMENTS AND LEGAL AUTHORITY,**
**AND RESPONSE TO DEFENDANTS' NOTICE OF SUPPLEMENTAL AUTHORITY**

Lead Plaintiffs make this submission to alert the Court to two developments that impact the pending motions to dismiss, and in response to Defendants' latest submission of "supplemental authority."

First, on May 9, 2011, State Street announced that the Securities and Exchange Commission ("SEC") has joined multiple other state and federal regulators in investigating whether State Street wrongfully overcharged its investment clients for foreign exchange services. *See* State Street Corp.'s Form 10-Q for the period ending March 31, 2011 (available at www.sec.gov); *see also* Ex. A (May 12, 2011 article from the Boston Globe).

Second, on March 22, 2011, the Supreme Court issued a 9-0 decision in *Matrixx Initiatives, Inc. v. Siracusano*, 131 S.Ct. 1309 (2011), which affirmed the denial of motions to dismiss a securities class action asserted under the Private Securities Litigation Reform Act of 1995 ("PSLRA"). *See* Ex. B. As explained below, the Supreme Court's March 22, 2011 decision in *Matrixx* demonstrates that Defendants' latest submission of "supplemental authority," the March 18, 2011 decision in *Hill v. Gozani*, 2011 WL 924242 (1st Cir. Mar. 18, 2011), provides no support for their arguments.

1. **The SEC Has Joined Numerous Government Agencies Investigating State Street's Foreign Exchange Pricing Practices**

On May 9, 2011, State Street announced in its Form 10-Q for the period ending March 31, 2011, that:

> [A]ttorneys general from a number of these other jurisdictions, as well as U.S. Attorney's offices, <u>the SEC and other regulators, have made inquiries or issued subpoenas concerning our foreign exchange pricing.</u>

State Street Corp. Form 10-Q, at 65 (available at www.sec.gov) (emphasis added). This is the first time that State Street has disclosed that the SEC – the primary overseer and regulator of the United States' securities markets – is involved in the ongoing government investigations into State Street's foreign exchange practices. As described in a May 12, 2011 article in the <u>Boston Globe</u>, "the Securities and Commission has joined a <u>long list</u> of state and federal investigators examining whether State Street Corp. overcharged investment clients millions of dollars for foreign exchange transactions." *See* Ex. A (emphasis added).

The SEC's decision to join the multiple investigations into State Street's foreign exchange practices belies State Street's primary argument for dismissal – that the alleged foreign exchange fraud was an "isolated contract dispute" that did not have a "material" impact on State Street's financials. The SEC is responsible for enforcing the federal securities laws, which prohibit the making of materially false and misleading statements about publicly traded securities. It is highly unlikely that the SEC would investigate an "isolated" contract dispute between State Street and two clients. Rather, the SEC's involvement provides yet another indication that the alleged fraudulent activity was widespread, had a material impact on State Street's publicly reported financial condition, and that discovery will reveal additional evidence

supporting the claims.[1]  *See In re Boston Sci. Corp.*, 523 F.3d 75, 90-91 (1st Cir. 2008) ("we cannot hold plaintiffs to a standard that would effectively require them, pre-discovery, to plead evidence").  *See also Matrixx Initiatives, Inc. v. Siracusano*, 131 S.Ct. 1309, 1323 (2011) (discussed below) ("these allegations suffice to raise a <u>reasonable expectation that discovery will reveal evidence</u>" supporting claim) (emphasis added).

### 2. The Supreme Court's Unanimous Decision in *Matrixx* Demonstrates That Defendants' Latest "Supplemental Authority" Does Not Advance Their Cause

It is telling that Defendants waited more than six weeks to make their latest submission of "supplemental authority," *Hill v. Gozani*, 2011 WL 924242 (1st Cir. Mar. 18, 2011).  This delay alone suggests that the case provides little support for their arguments.  Moreover, Defendants neglect to inform the Court that, on March 22, 2011, four days <u>after</u> the First Circuit's decision in *Hill*, the Supreme Court issued its 9-0 decision in *Matrixx Initiatives, Inc. v. Siracusano*, 131 S.Ct. 1323 (2011) (*"Matrixx"*).  *Matrixx* bears directly on the "materiality," "falsity," and "scienter" arguments raised by Defendants in this case and demonstrates conclusively that Defendants' motions to dismiss should be denied.  *See* Ex. B.

In *Matrixx,* the Supreme Court unanimously upheld Section 10(b) claims based on facts far less compelling than those at issue here.  The complaint in *Matrixx* alleged that defendants violated Section 10(b) by failing to disclose information regarding a "possible link" between the company's principal product (an over-the-counter medication) and "adverse effects" potentially caused by the product.  *Matrixx,* 131 S.Ct. at 1313.  Despite the fact that the undisclosed information consisted mainly of 10 adverse event reports over 5 years – information that the Supreme Court acknowledged was not "statistically significant" – the Supreme Court

---

[1] Lead Plaintiffs have, in any event, demonstrated that Defendants' "contract dispute" and "materiality" arguments are baseless.  *See* Mem. in Opp. to Defs. Mots. To Dismiss, Docket No. 79 ("Opp.") at 34-36, 39-40, 42, n.28, 40-43; *see also* Tr. of Arg. ("Tr."), Day 2 (Feb. 17, 2011), at 13-16, 18-22.

unanimously held that the complaint stated a claim for securities fraud. As discussed below, *Matrixx* demonstrates that allegations of falsity and inferences of culpability need not be as overwhelming as Defendants contend.

For example, the *Matrixx* defendants argued that they did not make a material misstatement because the possible risks to the company were not "statistically significant" and therefore not "certain" enough to render their positive statements materially misleading. *Id.* at 1317. In rejecting that argument, the Supreme Court reaffirmed that materiality is "an inherently fact-specific finding" inappropriate for resolution as a matter of law. *Id.* at 1318. The Supreme Court held that plaintiffs had adequately pleaded "the element of a material misrepresentation" because the complaint "alleges facts suggesting [the existence of] a significant risk," the disclosure of which would have "significantly altered the total mix of information made available" to investors." *Id.* The Supreme Court also unanimously held that the complaint easily satisfied the PSLRA's heightened standards for pleading a "strong inference of scienter," which requires the court to "review all the allegations holistically" and determine whether the inference of recklessness is "at least as compelling as any opposing [innocent] inference." *Id.* at 1324-25.

The holding in *Matrixx* is flatly contrary to Defendants' contention that no securities fraud claim can be stated unless Defendants knew of, but failed to disclose, that State Street faced a "near certainty of ruin" or concealed information that "portended certain ruin." *See* State Street Defs. Motion for Leave to File Notice of Supp. Authority in Support of their Motion to Dismiss (Docket No. 99) ("Def. Supp.") at 3. Instead, the Supreme Court has made clear that the securities laws compel disclosure of any "significant" risk that would "significantly alter the total mix" of information available to investors. *Matrixx*, 132 S.Ct. at 1318.

Moreover, while there is no requirement that Lead Plaintiffs establish that the State Street Defendants knew of a "near certainty of ruin," we note that another Judge in this District recently held that the level of risk that the conduits posed to State Street's business is an issue of fact that cannot be resolved on a motion to dismiss. *See* Report and Recommendation on Plaintiff's Motion for Leave to Amend, *Kenney v. State Street Corp.*, No. 09-10750, May 18, 2011 (Docket No. 141), attached hereto as Ex. C, at 3. On May 18, 2011, Judge Dein issued a Report and Recommendation in the *Kenney* case, which asserts claims under ERISA based on "the significant risk of loss that the Company was facing as a result of its sponsorship of four asset-backed commercial paper conduits[.]" *Id.* In her opinion, which assessed a complaint that primarily relied on public sources and involved far fewer particularized allegations than the Complaint in this case, Judge Dein held that:

> [t]he question of whether the conduit business posed an extraordinary risk to the financial health of the entire operation [*i.e.,* State Street] <u>can only be resolved after further development of the factual record</u>.

*Id.* at 31 (emphasis added); *see also id.* at 35-36.

The particularized and detailed allegations of the Complaint in this case easily "suffice to raise a reasonable expectation that discovery will reveal evidence" supporting plaintiffs' claims. *Matrixx*, 131 S.Ct. 1323, 1325. As alleged, in October and November 2008 – in the middle of the fourth quarter 2008 – Defendants made "pat on the back" assurances to investors that State Street's investment portfolio and conduit assets were "high quality." [2] These statements were

---

[2] For this reason, *Hill* is not applicable here even by its own terms. In *Hill*, the gravamen of plaintiffs' claim was that the company's risk warnings themselves were false and misleading. *Hill*, 2011 WL 924242, at *6 (plaintiffs alleged that "defendants' warnings regarding the risk of non-reimbursement were misleading or false"). As Defendants acknowledge, however (*see infra* note 3), the Complaint here does not allege that State Street's risk warnings were false; rather, it alleges that Defendants made false affirmative statements regarding the Company's foreign exchange practices and conduits and investment portfolios. *See* ¶¶134-42, 226-357. By choosing to go beyond their boilerplate risk warnings the State Street Defendants had an obligation to ensure that their positive statements were not misleading. *See*

5

revealed as false and misleading when the company announced an "eye-popping!" $4.4 billion in additional losses just six weeks later.[3] *See Kenney v. State Street Corp.,* 694 F. Supp. 2d 67, 79 (D. Mass. 2010).

The notion that such severe losses occurred without warning in just six weeks is not credible. *See* Opp. at 25-26, 66-67; *Boston Scientific Corp.*, 523 F.3d at 90-91. Indeed, the Complaint is replete with facts showing that Defendants knew in October and November 2008 that there was (at a minimum) a "significant" risk that substantial additional unrealized losses could occur – indeed, the facts suggest that these losses had already occurred but were not disclosed. *See, e.g.,* Pls. Opp. to Defs. Supp. Authority, Docket No. 98, at 4. For instance, Defendants' allegedly false statements were made after other financial institutions had taken massive write-downs on the very same subprime, Alt-A and MBS assets. ¶¶134-49. Moreover, relevant benchmarks demonstrate that the losses occurred no later than the third quarter of 2008 – *i.e.,* more than 4 months before they were disclosed and two months before Defendants assured investors they were "high quality") ¶¶154-57; *see also* ¶¶161-71 (Defendants ignored internal warnings from employees and knew that the assets were invested in notoriously troubled companies); ¶¶174-79, 180-87 (numerous SIVs, which were similar to the conduits, had already collapsed, despite high credit ratings); ¶¶188-207 (State Street itself had already lost hundreds of

---

*Matrixx*, 132 S.Ct. at 1321-22 ("companies can control what they have to disclose under [Section 10(b)] by controlling what they say to the market").

[3] Defendants acknowledge that Lead Plaintiffs' claims are based on the alleged falsity of these affirmative statements rather than, as in *Hill*, that risk disclosures themselves were incomplete and misleading. *See* Def. Supp. at 3, n.1. In an effort to evade the impact of this fact, Defendants simply rehash their thoroughly discredited argument that the statements were "misinterpreted" by investors, and are inactionable statements of opinion. *Id.* As previously demonstrated, these were factual assertions by company insiders that are plainly actionable under the securities laws. *See* Tr. at 4-6, 9-11; *In re Credit Suisse First Boston Corp.,* 431 F.3d 36, 46-47 (1st Cir. 2005) (ratings agencies statements are opinions because they are "unlike the statements sued upon in an archetypical section 10(b) action because they result upon outsiders' views about a corporation rather than upon a corporate insider's factual assertions regarding his or her own company").

millions of dollars on nearly identical investments – losses that State Street tried to conceal, prompting SEC investigations). *See* Opp. at 25-29; 66-70. These facts, when viewed "holistically" at the pleading stage, raise powerful inferences of falsity and scienter that are "at least as compelling as any opposing inference." *Matrixx*, 132 S.Ct. at 1324-25.

Finally, Defendants' latest effort to rehash their argument that they adequately disclosed the risks relating to the conduit and investment portfolios is misplaced. *See* Def. Supp. at 3. The notion that State Street meaningfully warned investors in October and November 2008 that there was a substantial risk of $4.4 billion in additional unrealized losses occurring in the fourth quarter of 2008 is belied by the fact that (a) State Street's stock declined an astonishing 60% when investors learned of these "eye-popping!" additional losses (¶148); (b) all three rating agencies immediately downgraded the Company (¶¶16, 148); and (c) experienced analysts stated that the "Company's credibility . . . has been dramatically weakened" by the disclosure of the additional losses. ¶148; *see also* Opp. at 49-52.

Moreover, the generalized disclosures that Defendants point to – referencing unspecific risks relating to "market downturns" (Def. Supp. at 3) – are the kind of disclosures that courts routinely hold are insufficient to evade liability. Even the court in *Hill*, cited by Defendants, noted that "a statement of risk does not insulate the speaker from liability, particularly where it is "generic and formulaic." *Hill*, 2011 WL 924242, at *15. This is the same analysis that Judge Saris engaged in when rejecting this exact argument in *Kenney*, holding that "while there were lengthy, turgid disclosures in the SEC filings, they did not clearly explain the risks posed by [the conduits and investment portfolio.] *Kenney*, 694 F. Supp. 2d 67, 79 (D. Mass. 2010) (emphasis added). In sum, Defendants' efforts to cite to the "turgid" and unspecific risk warnings buried in their SEC filings does not provide a basis for dismissing this case at the pleading stage.

7

## CONCLUSION

For the reasons set forth above and in Lead Plaintiffs' previous submissions in support of their opposition to Defendants' motions to dismiss, Lead Plaintiffs respectfully request that the Court deny Defendants' Motions to Dismiss in their entirety.

Dated: May 31, 2011                               Respectfully submitted,


*/s/ Peter A. Pease*
Peter A. Pease (BBO #392880)
**BERMAN DEVALERIO**
One Liberty Square
Boston, MA 02109
Tel.: (617) 542-8300
Fax: (617) 542-1194
Email: ppease@bermandevalerio.com

*Liaison Counsel for Plaintiffs*

Steven B. Singer (*Admitted Pro Hac Vice*)
John C. Browne (*Admitted Pro Hac Vice*)
Lauren A. McMillen (*Admitted Pro Hac Vice*)
**BERNSTEIN LITOWITZ BERGER**
**& GROSSMANN LLP**
1285 Avenue of the Americas, 38th Floor
New York, New York 10019
Tel.: (212) 554-1400
Fax.: (212) 501-0300
Email: johnb@blbglaw.com

**MOTLEY RICE LLP**
James M. Hughes (*Admitted Pro Hac Vice*)
28 Bridgeside Blvd.
Mt. Pleasant, SC 29464
Tel.: (843) 216-9000
Fax: (843) 216-9450

William H. Narwold (*Admitted Pro Hac Vice*)
One Corporate Center
20 Church Street, 17th Floor
Hartford, CT 06103
Tel.: (860) 882-1676
(860) 882-1682

*Co-Lead Counsel for Lead Plaintiffs and the Proposed Class in the Securities Actions*

## **CERTIFICATE OF SERVICE**

I, Peter A. Pease, hereby certify that this document, filed through the ECF system, will be sent electronically to the registered participants as identified on the Notice of Electronic Filing on May 31, 2011.

        */s/ Peter A. Pease*
        PETER A. PEASE