**UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS**

|  |  |
|---|---|
| HILL v. STATE STREET CORPORATION ) | |
| ) | Master Docket No. 1:09-cv-12146 |
| THIS DOCUMENT RELATES TO THE ) SECURITIES ACTIONS ) | |
| Docket No. 09-cv-12146 ) | |

**STATE STREET DEFENDANTS' RESPONSE TO LEAD PLAINTIFFS' MOTION
FOR LEAVE TO FILE NOTICE OF RECENT FACTUAL DEVELOPMENT
AND LEGAL AUTHORITY, AND RESPONSE TO DEFENDANTS' NOTICE
OF SUPPLEMENTAL AUTHORITY**

The State Street Defendants in the Securities Action respectfully submit this response to Lead Plaintiffs' Motion For Leave to File Notice of Recent Factual Development and Legal Authority, and Response to Defendants' Notice of Supplemental Authority.

**A.    The "Factual Developments" Plaintiffs Submit Are Irrelevant And Improper**

The "factual developments" at issue in Plaintiff's notice are wholly irrelevant to the issues that are now before the Court. The only thing they reference is that the SEC has "made inquiries or issued subpoenas concerning our foreign exchange pricing." *See* State Street Corp. Form 10-Q filed May 9, 2011, at 65. That's it. There should be no confusion that the SEC has not (i) adopted the Plaintiffs' theory that State Street fraudulently revised FX prices late in the day, (ii) endorsed the Relators' complaint or the different theory contained in the California AG's complaint, (iii) alleged any misstatement to State Street's stockholders, (iv) found materiality, (v) found scienter, or (vi) otherwise reached any conclusion that wrongdoing occurred or is even suspected.

Most fundamentally, Plaintiffs' suggestion that the mere existence of a regulatory subpoena means "widespread" fraud has occurred, or that evidence of such fraud will soon emerge (Pltfs.' Motion at 2–3), is wild speculation, and is based on fallacious reasoning. For example, the Boston Globe article Plaintiffs cite states that the Massachusetts Attorney General "*spent more than a year investigating the State Street currency business but declined to bring a case*." *See* Pltfs.' Motion, Exhibit A (emphasis added). Moreover, the SEC's own policies make clear that an "investigation is not the same as a prosecution. . . . During an investigation, neither the staff nor the Commission makes any determination of wrongdoing." An Overview of Enforcement, SEC Int'l Institute for Securities Market Development Program, *available at* http://www.sec.gov/ about/offices/oia/oia_enforce/overviewenfor.pdf. For that reason, courts routinely disregard allegations about pending SEC investigations when assessing the sufficiency of a complaint brought under the securities laws. *See, e.g.*, *In re Ceridian Corp. Sec. Litig.*, 542 F.3d 240, 248–49 (8th Cir. 2008) (rejecting plaintiffs' argument that district court should have given weight to the mere existence of an ongoing SEC investigation in ruling on motion to dismiss Rule 10b-5 claim); *In re Moneygram Int'l, Inc. Sec. Litig.*, 626 F. Supp. 2d 947, 981 (D. Minn. 2009) (rejecting argument that "SEC's seizure of documents and ongoing investigation supports a strong inference of scienter," where "ongoing SEC investigation [did] not result in hearings or adverse findings").

Plaintiffs' submission of this "recent factual development" —which they must know is not permissibly part of the record on this motion – speaks volumes about their own estimation of the weakness of the claims. The Motion to Dismiss record consists of the complaint, attachments thereto, and documents incorporated into it. *See Cooperativa de Ahorro y Credito Aguada v. Kidder, Peabody & Co.*, 993 F.2d 269,  272 (1st Cir. 1993) (on a Rule 12(b) motion,

"any consideration of documents not attached to the complaint, or not expressly incorporated therein, is forbidden") (quotations omitted); *Ording v. BAC Home Loans Servicing, LP*, Civil Action No. 10-10670-MBB, 2011 WL 99016, at *1 (D. Mass. Jan. 10, 2011) ("In considering the merits of a motion to dismiss, the court is limited in its review to the facts alleged in the pleadings, documents attached as exhibits or incorporated by reference in the complaint, and matters of which judicial notice can be taken.") (quotations omitted).  The Boston Globe article and a 10-Q report, both of which post-date the Complaint by almost a year, discuss an inquiry that is simply not found in the Complaint.  They therefore cannot be considered part of the motion to dismiss record.  The Court should disregard and disallow this portion of Plaintiffs' submission.  *See, e.g.*, *Quaak v. Dexia* S.A., 357 F. Supp. 2d 330, 338 (D. Mass. 2005) (striking news article exhibits because they were "not submitted with or referenced in the complaint" and were not "central to the allegations in the complaint").  If Plaintiffs had confidence in their claims, they would not have brought before the Court information that is both irrelevant and not part of the record on this motion.

      **B.**     **The *Kenney* Report And Recommendation And The *Matrixx* Decision Do Not Aid Plaintiffs' Position**

The State Street Defendants do not object to Plaintiffs' submissions of Chief Magistrate Judge Dein's recent Report and Recommendation in *Kenney v. State Street Corp.* ("R&R"), and *Matrixx Initiatives, Inc. v. Siracusano*.  However, neither case supports the Plaintiffs' position.

Plaintiffs' discussion of the *Kenney* R&R (Pltfs.' Motion at 5) is misleading.  Apparently hoping to foster the incorrect conclusion that Magistrate Judge Dein's decision supports their case, Plaintiffs cite and discuss only the irrelevant portion of the R&R pertaining to Kenney's

ERISA "prudence" claim.[1]  They fail to acknowledge or address the far more relevant portion that analyzes and recommends dismissal of conduit disclosure claims very similar to those asserted here.  Although Magistrate Judge Dein based her holding on lack of reliance by Kenney, she repeatedly highlighted State Street's abundant disclosures concerning the conduits, including:

- "State Street regularly issued statements about the conduit business in its SEC filings." R&R at 4.

- "State Street did make a great number of disclosures concerning the conduits, and, despite the plaintiff's challenges, State Street's public filings will be cited extensively in this decision." *Id.* at 10 n.2.

- "As the Company disclosed to investors in its public filings, under [identified] circumstances, State Street could be required to purchase the asset from the conduit." *Id*. at 11.

- "State Street disclosed those declines [in the market value of conduit assets] each quarter throughout the Class Period in its financial statements filed with the SEC.  For example, but without limitation, the Company warned investors that if it had been required to consolidate the conduits' assets and liabilities onto its consolidated balance sheet, it would have recognized an after-tax loss of about $215 million as of September 30, 2007.  By December 31, 2008, the Company revealed that there were $3.56 billion in after-tax net unrealized losses associated with the assets held by State Street-sponsored conduits." *Id.* at 15 (internal citations omitted).

- "[T]he filings disclose the liquidity, credit and consolidation risks described above with respect to the conduits." *Id.* at 18.

- "Kenney ignores all the disclosures of risk made throughout State Street's SEC filings." *Id.* at 41 n.6.

- State Street disclosed the risk that State Street would be required to provide liquidity to the conduits. *Id.* at 10.

- State Street disclosed "credit enhancements" it provided to the conduits. *Id.* at 10.

---

[1] Specifically, Plaintiffs assert that Judge Dein "held that the level of risk that the conduits posed to State Street's business is an issue of fact." Pltfs.' Motion at 5.  This language pertains to Kenney's claim that ERISA fiduciaries violated their substantive duties to direct or restrict the investments of retirement plan participants in a prudent way.  In addition to considering a completely irrelevant issue (fiduciary prudence), the Court was applying a Rule 8 pleading standard and an irrelevant measure of prudence.  *See* R&R at 24–37.

- State Street disclosed risks in the event of a conduit asset default. *Id.* at 11.

- State Street disclosed the risk that, if it was required to purchase a conduit asset with a fair market value below cost, it would be required to recognize a loss. *Id.* at 11.

- State Street disclosed the risk that in the future it would be required to consolidate the conduits in its financial statements; disclosed that consolidation could result in losses; and "repeatedly described the potential magnitude of any such losses." *Id.* at 12.

- State Street "acknowledged the potential losses that would have occurred if it had been required to consolidate the conduits into its consolidated financial statements." *Id.* at 16.

To conclude that this language lends any support to Plaintiffs' claims is absurd. On the contrary, Magistrate Judge Dein highlighted the rigor with which State Street repeatedly disclosed all matters concerning the conduits, which undermines Plaintiffs' claims in this case.[2]

Plaintiffs' *Matrixx* discussion fares no better. *Matrixx* simply reaffirmed the long-settled *TSC Industries* materiality standard.[3] In *Matrixx*, stockholders accused a defendant pharmaceutical company of securities fraud and the Court considered defendants' proposed *per se* rule that the disclosure of adverse patient reactions to a drug (loss of sense of smell from the cold remedy, Zicam) would be material to stockholders *only if* a statistically significant number of patients experienced them. 131 S.Ct. 1309. The Court reiterated that no such universal bright-line rule exists under the *TSC* standard. *Id.* at 1318 ("any approach that designates a single fact or occurrence as always determinative of an inherently fact-specific finding such as materiality, must necessarily be overinclusive or underinclusive"); *In re Wachovia Equity Sec. Litig.*, 753 F. Supp. 2d 326, 362-63 (S.D.N.Y. 2011) (*Matrixx* held that materiality is not limited to bright-line statistical significance).

---

[2] To the extent that the Plaintiffs otherwise align themselves with Kenney's dismissed disclosure claims (Pltfs.' Motion at 5-6), Judge Dein's additional observations about Kenney's allegations are relevant. *E.g., id.* at 41 n.6 (observing that Kenney cites supposed "omissions" in State Street's SEC filings that were actually disclosed, and cites the disclosures in State Street's 2007 Form 10-K as an example); *id.* at 41 n.6 (observing that Kenney "ignores all the disclosures of risk made throughout State Street's SEC filings").

[3] *See Basic Inc. v. Levinson*, 485 U.S. 224, 231–32 (1988) ("[T]here must be a substantial likelihood that the disclosure of the omitted fact would have been viewed by the reasonable investor as having significantly altered the 'total mix' of information made available.") (quoting *TSC Indus., Inc. v. Northway, Inc.*, 426 U.S. 438, 449 (1976)).

*Matrixx* adds nothing to this case. State Street is not a pharmaceutical company and it does not sell cold remedies or consumer products. Also, the State Street Defendants have not argued statistical significance, challenged the complaint's conduit allegations on materiality grounds, advocated for a new universal materiality rule that contravenes *TSC*, or challenged any other accepted principle of law. Further, Plaintiffs' opinion that the allegations in *Matrixx* are "less compelling" than here is irrelevant, and makes no sense. Adverse patient reactions to nasal cold remedies, and thoroughly disclosed issues about asset backed commercial paper conduits, are apples and oranges.[4]

It is unclear why Plaintiffs submit *Matrixx*. Although their discussion of it is confusing, they seem to suggest that *Matrixx* somehow undermines *Hill v. Gozani*, --- F.3d ----, 2011 WL 924242 (1st Cir. Mar. 18, 2011), which Defendants submitted on April 29, 2011 (*see* Docket No. 99). *See, e.g.,* Pltfs.' Motion at 3 (arguing that *Matrixx* "demonstrates" that *Gozani* "does not advance [Defendants'] case"). This makes no sense; the two cases have nothing to do with one another. *Matrixx* did not overrule *Gozani*, or even mention it. *Matrixx* concerns the materiality standard, whereas materiality was not at issue in *Gozani*. *Gozani*, 2011 WL 924242, at *15 (finding materiality and then affirming dismissal on other grounds).

If anything, the Court should see the well of ink that Plaintiffs spill on *Gozani* and the *Kenney* R&R as a preemptive strike addressing the problems those authorities present for their claims. *See supra* (Kenney R&R discussion); Docket No. 99 (showing why *Gozani* disposes of

---

[4] *Matrixx* does not diminish State Street's argument that the FX allegations are immaterial under *TSC* because they concern a $56 million dollar dispute. *Matrixx* re-affirms *TSC*, which both parties here already agree applies. Factually, *Matrixx* is simply not a relevant data point on materiality: finding potential materiality based on a severe side effect associated with a drug company's flagship drug (*Matrixx*) is a far cry from finding that an alleged $56 million overcharge over eight years is material to a multi-billion dollar company (Plaintiffs' claim).

Plaintiffs' claims).[5]  Plaintiffs' thesis that the securities markets were not well informed about conduits and conduit risks cannot withstand the scrutiny of the record that is before the Court—a record that is similar to the one that was before Magistrate Judge Dein.  *See supra* (citing abundant disclosures concerning conduit assets, liquidity, accounting, risks, potential for consolidation, unrealized losses, credit enhancements, and other matters).  Indeed, her R&R captured only some of the disclosures.  State Street also disclosed, for instance:  (i) the exact, increasing quarterly amount of unrealized losses (from $474 million in Q3 2007, to $678 million in Q4 2007, to $1.94 billion in Q1 2008, to $2.01 billion in Q2 2008, to $3.28 billion in Q3 2008, to $6.32 billion in Q4 2008, to $5.85 billion in Q1 2009), (ii) that "a significant market downturn . . . could reduce the value" of the debt securities in the conduits and State Street's investment portfolio; (iii) those debt securities' credit ratings (overwhelmingly AA and AAA), (iv) the absence of defaults (zero during the class period—every penny owed to State Street was paid), and (v) State Street's opinion (which proved correct) that asset quality was high.  *See* State Street & Underwriter Defendants' Memorandum in Support of Their Motions to Dismiss at 16–19, 32–35; *id.* Aff. Ex. 20 at 4–5 (8-K filed June 2, 2008).  Given this record, to conclude that State Street inadequately informed the market about conduits—or effectively promised by saying that the debt security assets were "high quality" that their market price would not fall in the height of the global financial crisis—is not credible or plausible.  *See also* State Street & Underwriter Defendants' Memorandum in Support of Their Motions to Dismiss at 32–35.  Tellingly, Judge Dein did not conclude that these statements would have been actionable had plaintiff relied on them.

---

[5]    Plaintiffs cannot successfully distinguish *Gozani* as concerning "risk warnings" rather than "affirmative statements." Pltfs.' Motion at 5 n.2.  *Gozani* concerned affirmative misstatements.  Specifically, a medical device manufacturer allegedly downplayed risks that a device procedure would soon receive a less favorable Medicare billing code that would dampen demand.  *Id.* at *1-4.  Among other things, plaintiffs claimed that defendant *misleadingly asserted* that the "reimbursement situation for [the product] is very positive." *Id.* at *18.

Likewise, Plaintiffs' FX allegations do not survive *Gozani*. Plaintiffs' conclusory FX allegations are cut and pasted from a relator's superseded complaint, containing a theory of liability that even the California AG declined to adopt (*i.e.*, that State Street re-prices FX trades late in the day). By comparison, the fraud allegations in *Gozani*—allegedly misleading statements and omissions concerning Medicare reimbursement where two senior employees resigned after their concerns about fraud were not taken seriously, Medicare questioned the company's use of billing codes, and a grand jury was convened—were insufficient to allege securities fraud. *See generally Gozani*, 2011 WL 924242.

## CONCLUSION

For these reasons, and those set forth in Defendants' briefing, the Court should grant Defendants' Motion to Dismiss in its entirety.

Respectfully submitted,

STATE STREET CORPORATION; RONALD E. LOGUE; EDWARD J. RESCH; PAMELA D. GORMLEY; KENNETT F. BURNES; PETER COYM; NADER F. DAREHSHORI; AMELIA C. FAWCETT; DAVID P. GRUBER; LINDA A. HILL; CHARLES R. LAMANTIA; MAUREEN J. MISKOVIC; RICHARD P. SERGEL; RONALD L. SKATES; GREGORY L. SUMME; and ROBERT E. WEISSMAN

By their attorneys,

 */s/ Jeffrey B. Rudman* _____
Jeffrey B. Rudman (BBO No. 433380)
William H. Paine (BBO No. 550506)
John J. Butts (BBO No. 643201)
Timothy Perla (BBO No. 660447)
WILMER CUTLER PICKERING
   HALE AND DORR LLP
60 State Street
Boston, Massachusetts, 02109
(617) 526-6000
Jeffrey.rudman@wilmerhale.com

Dated: June 1, 2011

## CERTIFICATE OF SERVICE

I, Jeffrey Rudman, hereby certify that on this day, I caused a true copy of foregoing document to be served on Plaintiffs' counsel through the ECF system.

                                                    */s/ Jeffrey B. Rudman*