WILMERHALE

March 23, 2012

**James W. Prendergast**

+1 617 526 6181 (t)
+1 617 526 5000 (f)
james.prendergast@wilmerhale.com

**By ECF**

The Honorable Judith G. Dein
United States District Court
District of Massachusetts
John Joseph Moakley United States Courthouse
1 Courthouse Way - Suite 6420
Boston, MA 02210

Re: Hill v. State Street Corp., Master Docket 09-cv-12146

Dear Judge Dein:

The State Street Defendants hereby respond to Plaintiffs' March 9, 2012 letter seeking an order compelling them to produce in this matter all discovery materials from the California AG Action, as well as transcripts of any testimony ("Plaintiffs' Letter" or "PL").

The Court should not order the relief that Plaintiffs seek because: (i) Plaintiffs have not met their burden of establishing the relevance of what they seek (*i.e.,* every shred of paper from the California AG Action), (ii) claiming that the cases have the same "factual nucleus" does not establish relevance as the federal discovery standard, which assesses relevance against the claims and defenses actually made, is "narrower" than the California standard, and (iii) State Street has already made a detailed key word search proposal designed to capture the relevant materials from the California AG Action consistent with this narrower federal standard.

Plaintiffs have not shown State Street's proposal to be inadequate and have declined State Street's invitation to propose any supplemental searches of their own.  Nothing about State Street's proposal prevents Plaintiffs from obtaining anything that is actually relevant from the portion of the California production not being produced.  Instead, State Street has proposed a practical solution that provides Plaintiffs promptly with a large amount of the California production (likely larger than that to which they are entitled) while preserving their right to request additional information on a proper basis (*i.e.*, by specific category as opposed to mere reference to the fact that it has been produced to a different party, on different claims, applying California state substantive and procedural law).

Accordingly, the Court should deny Plaintiffs' demand and order State Street's proposal.

**I.      Simply Demanding Copies of All California Discovery Does Not Satisfy Plaintiffs' Burden Of Establishing Relevance**

Plaintiffs' core premise is that "State Street faces an extremely high burden" to resist discovery (PL at 2).  They have it backwards.  "The *party seeking discovery information* over an

WILMERHALE

The Honorable Judith G. Dein
March 23, 2012
Page 2

adversary's objection *has the burden* of showing the information's relevance."[1] *Cutter v. HealthMarkets, Inc.*, 2011 WL 613703, at *2 (D. Mass. Feb. 10, 2011) (emphasis supplied; citations and quotations omitted).[2]  More specifically, Plaintiffs must establish that the documents they seek—in this case, all of them—are relevant to the particular *claims and defenses at issue*.  *See, e.g.*, *Silva v. Pioneer Janitorial Servs., Inc.*, 2011 WL 4729783, at *1 (D. Mass. October 4, 2011) (Dein, M.J.) (denying motion to compel because the information sought was not relevant to claims or defenses at issue); *Thibault v. Bellsouth Telecomms., Inc.*, 2008 WL 4808893, at *3 (E.D. La. Oct. 30, 2008) (courts consider document requests not in the abstract "but rather with respect to the specific claim being asserted").  Plaintiffs undifferentiated demand for every single shred of paper ever produced or ever to be produced in the California AG Action is not consistent with this standard.

*First*, even Plaintiffs acknowledge that their blanket demand captures irrelevant documents.  *See* PL at 3 (blanket production may capture "arguably irrelevant" documents).  While Plaintiffs vastly underestimate the volume of irrelevant materials at issue,[3] even their grudging acknowledgement of "a few" (PL at 3) irrelevant documents ends the discussion.  Plaintiffs are not entitled to the production of *any* irrelevant materials.  *See In re Subpoena to Witzel*, 531 F.3d 113, 118, 120 (1st Cir. 2008) (affirming district court's denial of motion to compel because information sought was not relevant to claims or defenses at issue); *Iantosca v. Benistar Admin. Servs., Inc.*, 2012 WL 220224, at *4 (D. Mass. Jan. 24, 2012) (denying motion to compel "because the information sought is not relevant" to claims or defenses).  To avoid that result, something more tailored than a just-produce-everything approach is necessary.  As detailed below, State Street has made such a proposal.[4]

---

[1] Plaintiffs' draw their citation for their "extremely high burden" argument from an irrelevant portion of the *New Century* opinion discussing not who has the burden to show relevance, but which party must establish whether a request is *too burdensome*.

[2] *See also In re Musicland Holding Corp.*, 424 B.R. 95, 103 (S.D.N.Y 2010) (denying motion to compel because moving party failed to sustain burden of demonstrating that requested discovery was relevant); *Caouette v. OfficeMax, Inc.*, 352 F. Supp. 2d 134, (D.N.H. 2005) (denying motion to compel because moving party "offer[ed] no explanation how the data he seeks but has not received bears any relevance to this matter").

[3] For example, a large volume of the documents produced in California concern State Street's performance of its custodial duties for the California pension funds, and have nothing whatsoever to do with foreign exchange. Plaintiffs incorrectly argue that the AG's document requests did not call for documents such as performance reports. PL at 3.  The AG's document requests 23 and 24 call for them.  PL, Ex. 8 at 11.

[4] To the extent Plaintiffs argue that blanket production would be convenient, suffice to say, no amount of convenience can override lack of relevance.  A "trial judge may not order discovery into matters that are not relevant." *Karl v. Asarco Incorporated*, 166 F.3d 1200, 1998 WL 916517, at *2  (2d Cir. Dec. 31, 1998), citing *In re Surety Ass'n of America*, 388 F.2d 412, 414 (2d Cir. 1967).

WilmerHale

The Honorable Judith G. Dein
March 23, 2012
Page 3

*Second*, Plaintiffs argue that the California AG Action and this case share "a common factual nucleus."  PL at 1.  Even if true,[5] it does not follow that California discovery is relevant here, because the standard for relevance in discovery under California state law is broader than under the federal rules.  *See* 2 WITKIN, CAL. EVID. 4th (2010 supp.) Discovery, § 9, p. 195 (reciting California standard that discovery must be "relevant to the subject matter of the pending action" and noting that Federal Rules permit only discovery that is relevant only to the claim or defense of any party).[6]  In fact, "contrary to popular belief," under the California rules, even "fishing expeditions" are permissible. *See, e.g., Gonzalez v. The Superior Court of Los Angeles County*, 33 Cal. App. 4th 1539, 1546, 39 Cal. Rptr. 2d 896, 901 (1995).  In contrast, as this Court has repeatedly admonished, under the federal rules, "[d]iscovery is not a fishing expedition." *Ayanna v. Dechert, LLP*, 2011 WL 6370945, at *1  (D. Mass. Dec. 19, 2011); *Silva*, 2011 WL 4729783, at *2 ("fishing expedition . . . goes beyond the acceptable boundaries of discovery.").

*Finally*, contrary to Plaintiffs' contention otherwise (PL at 2-3), the correct rule of law does *not* call for the undifferentiated production of documents from other matters, even when the matters share a so-called common "core." *See Harris v. Koenig*, 271 F.R.D. 356, 369 (D.D.C. 2010) (denying motion to compel discovery into other litigations).[7]  Plaintiffs' cases in fact do not hold that everything produced in one matter that is in some sense factually related to another must be produced in the second.  None of Plaintiffs' cited cases on this point even discuss relevance.  Rather, each involves only the question of whether the courts ought to lift the temporary

---

[5] Both cases concern foreign exchange, but they advance different claims and theories.  The AG alleges State violated the California False Claims Act by adding markups and markdowns to foreign currency exchange rates charged to its California pension fund clients CalPERS and CalSTRS.  *See* PL Ex. 7 at 2.  Here, Plaintiffs allege that State Street materially overstated revenues earned through foreign exchange business because State Street's foreign exchange traders set foreign exchange trade prices early in the day and fraudulently re-priced transactions later.

[6] *See also Bernstein  v. Travelers Ins. Co.*, 447 F.Supp.2d 1100 (N.D. Cal. 2006) ("We acknowledge that, as a result of the amendments to Rule 26 in the year 2000, the presumptive scope of discovery is narrower under the Federal Rules than it is under the California Code of Civil Procedure…. Absent objection and judicial intervention, this difference can be significant."); *Heights At Issaquah Ridge Owners v. Steadfast Ins. Co.*, 2007 WL 4410260, *3 (W.D. Wash. 2007) (distinguishing California state case law on ground that it "was decided under California state discovery rules, which allow discovery of 'any matter, not privileged, that is relevant to the subject matter involved in the pending action ...'  The scope of discovery under the Federal Rules of Civil Procedure, allowing discovery of 'any matter, not privileged, that is relevant to the claim or defense of any party ...,' is narrower.").

[7] *See also Pensacola Firefighters' Relief Pension Fund Bd. of Trustees v. Merrill Lynch Pierce Fenner & Smith, Inc.*, 265 F.R.D. 589, 597 (N.D. Fla. 2010) (accepting "defendant's position that production of all of the documents produced to the SEC, without a more particularized request, could potentially allow plaintiff to bypass the limitations on the scope of discovery established by the [Federal] Rules [of Civil Procedure]"); *Mallinckrodt Chem. Works v. Goldman, Sachs & Co.*, 58 F.R.D. 348, 352 (S.D.N.Y. 1973) ("The production of documents to an agency or other investigative body does not automatically make those documents discoverable in a separate proceeding.").

WilmerHale

The Honorable Judith G. Dein
March 23, 2012
Page 4

discovery stay imposed by the PSLRA so plaintiffs would not be unduly prejudiced in making pending litigation decisions.[8]  There is no analog here.

The net result is simple—under the relevance standard and case law applicable to the federal rules, Plaintiffs are not entitled to the blanket production of everything from the California AG Action.  A more tailored approach is required, which is precisely what State Street has already proposed.[9]

## II.      The Court Should Adopt State Street's Proposal

Even though the burden was on Plaintiffs to propound only relevant discovery, State Street undertook considerable effort to craft a proposal to segregate and produce relevant documents from the California AG Action.  The proposal is set forth in Exhibit B to Plaintiffs' Letter.  Generally, it involves culling the California production by relevant search terms and date range, and producing the result.  Although invited to do so, Plaintiffs have made no attempt to work with the search term proposal—no proposed revisions to the search terms, no suggestions on improvement, no explanation as to how relevant material might be missed.  And none of their objections to the proposal are persuasive.  This is particularly true because the proposal addresses only those documents that will be produced quickly, without prejudice to further production of anything else that is ultimately shown to be relevant to Plaintiffs' claims and the defenses *in this case*.

---

[8] *See, e.g., In re Bank of Am. Corp. Sec., Deriv., & ERISA Litig.*, 2009 U.S. Dist. LEXIS 108322, at *8 (S.D.N.Y. Nov. 16, 2009) (lifting PSLRA discovery stay because "[w]ithout access to documents produced in these other proceedings, plaintiffs in these cases will be unduly prejudiced and will be less able to make informed decisions about litigation strategy.  Plaintiffs' pursuit of discovery will also 'fall substantially behind the SEC and other governmental actions'"); *In re WorldCom, Inc. Sec. Litig.*, 234 F. Supp. 2d 301, 305-06 (S.D.N.Y 2002) (lifting PSLRA discovery stay and ordering that documents "must be produced in order to prevent undue prejudice to the interests" because plaintiffs "would be severely disadvantaged in [settlement] discussions if they are denied access to the documents they now request"); *In re Firstenergy Corp. Sec. Litig.*, 229 F.R.D. 541, 545 (N.D. Ohio 2004) (granting partial lift of PSLRA discovery stay because "without discovery of documents already made available to government entities, Plaintiffs would be unfairly disadvantaged in pursuing litigation and settlement strategies"); *Singer v. Nicor, Inc.*, 2003 WL 22013905, at *2 (N.D. Ill. Apr. 23, 2003) (lifting PSLRA stay because "Plaintiffs here may well be unfairly disadvantaged if they do not have access to the documents . . . during the pendency of the motion to dismiss").

[9] Plaintiffs repeatedly mis-describe State Street's California production and the proceedings in that case.  Plaintiffs claim that State Street has produced "FX trading data related to numerous clients" (PL at 2).  That is wrong—only data for CalPERS and CalSTRS has been produced.  In the very next paragraph, Plaintiffs claim that the California court found that "ongoing investigations" by governmental entities "are relevant."  But the Court's order (PL, Ex. 7) says no such thing.  Under California's broader standard for discovery relevance, the Court merely required the production of State Street's communications with governmental entities.

WILMERHALE

The Honorable Judith G. Dein
March 23, 2012
Page 5

A.      **Plaintiffs' Objections to State Street's Proposed Search Strings Are
        Unwarranted**

In order to facilitate culling the relevant documents from the California AG Action, State Street
proposed to use search strings—a well-accepted practice for gathering documents in discovery.
The proposed search strings appear in Exhibit B to Plaintiffs' letter.  As the Court will see, they
are calculated to obtain documents relevant to foreign exchange.  Plaintiffs object, but make no
effort to explain what relevant documents these search strings will miss.

Instead, Plaintiffs argue generally that State Street should use the exact same "30-50" search
terms used in California.  As an initial matter, Plaintiffs' assertion that State Street has chosen
"just 17" of the California search terms is entirely misleading.  The very first proposed search
string, in fact, envisions 17 separate searches.  A fairer count would be that State Street has
proposed approximately 32 search strings to apply here.  Even with this corrected count,
comparing this number to the "30-50" strings used in California is not accurate.  In particular,
there were at least ten strings which doubled to twenty in the California set when applied once
for CalPERS and once for CalSTRS.  In State Street's proposed list of search strings, it simply
eliminated this duplication of CalPERS and CalSTRS as unnecessary.

State Street's other changes are reasonably designed to capture documents that are related to
State Street's foreign exchange practices.  In the California AG Action, several search strings
used only a single investment-related term combined with either the term "CalPERS" or
"CalSTRS" (*e.g.,* "prevailing rates," "spreads," "basis point").  Obviously, documents identified
by such strings might or might not relate to State Street's FX practices, particularly as State
Street dealt with these clients on numerous investment matters entirely unrelated to FX.
Accordingly, State Street's proposed search terms reasonably ensure that such terms appear in
documents in proximity to what is relevant, *i.e.,* "(fx (foreign /3 exchange) (foreign /3 currency)
(CFX forex repatriat+ AIR)."  Similarly, State Street omitted terms relating to whether and to
what extent State Street was a fiduciary of the California Plaintiffs—an issue that is not part of
any claim made here.  That said, even under State Street's proposal, if a document discussed
both State Street's purported fiduciary role and hit on one of its search strings, it would be
produced.

To be sure, State Street has not eliminated any searches for foreign exchange materials, and has
not pre-tested its proposed search terms to ascertain what they will and will not yield (*i.e.,* there
is no conscious effort to exclude anything particular).

WILMERHALE

The Honorable Judith G. Dein
March 23, 2012
Page 6

B.    **Plaintiffs Are Not Entitled to Documents Relating to All Other Custody Clients**

Plaintiffs also demand the production of "requests for proposal materials and trading data related to custody clients other than CalPERS and CalSTRS." PL at 5. To the extent Plaintiffs seek trading data for other custody clients, none was produced in the California AG Action. To the extent Plaintiffs demand requests for proposal materials of other custody clients, Plaintiffs are not entitled to all such materials, and the State Street Defendants are prepared to produce the relevant subset.

Specifically, Plaintiffs' claims are premised on the allegation that State Street's foreign exchange conduct was inconsistent with the terms of a so-called "typical contract between State Street and its custodial clients" which is "illustrated by the contract between State Street and the State of California's largest public pension funds, the California Public Employees' Retirement System ("CalPERS") and the California State Teachers' Retirement System ("CalSTRS")." *See, e.g.*, *Hill* Complaint, ¶¶ 42, 43, 51; *Richard* Complaint, ¶¶ 65, 66, 76, 77. Although initially proposing to restrict production to such materials as they related to CalPERS and CalSTRS, the State Street Defendants will additionally produce requests for proposal materials exchanged with pension fund clients that have the so-called "typical contract" (*i.e.*, one "illustrated by the contracts between State Street and CalPERS and CalSTRS"). That is the relevant universe—the claims of the Complaint define the scope of discovery and, by Plaintiffs' own allegations, requests for proposal materials pertaining to custody clients that do not have the challenged "typical contract" are irrelevant.[10] A fishing expedition for claims not pleaded with regard to clients having a different form of contract is not permitted under the federal rules. *See, e.g.*, *Sommerfield v. City of Chicago*, 613 F. Supp. 2d 1004, 1015 (N.D. Ill. 2009) (discovery impermissible when not directed to instances where party is "similarly situated.").

C.    **Time Limitations Tailored to This Case Are Appropriate**

Finally, Plaintiffs demand production of California discovery materials dated as early as 2000, whereas the State Street Defendants proposed a cutoff of May 2006. There is good reason why the California production time period runs back to 2000, and why that is not warranted here: the discovery standards and allegations are different.

---

[10] Plaintiffs cite a statement by "an attorney in the California AG's office" that pricing terms of State Street's "contracts" with "public pension funds" are "nearly identical." PL at 5. This is a statement made by a litigation adversary, and should be evaluated as such. It is also incorrect (for one thing, custody contracts do not address FX pricing). More to the point, to the extent that other public pension fund clients received pricing terms that mirror those terms challenged by CALSTRS and CALPERS, as detailed above, Plaintiffs will receive those documents. Perhaps most importantly, Plaintiffs' reference reinforces the fact that what is relevant to their claim are only those clients with "contracts" having a common identity with contracts of CALSTRS and CALPERS.

WILMERHALE

The Honorable Judith G. Dein
March 23, 2012
Page 7

The custody contracts at issue in the California AG Action were signed in 2000. California, unlike this Court, follows a subject matter relevance standard for discovery. Thus, when the California AG challenged the CalSTRS and CalPERS contracts, a discovery period beginning in 2000 applied in order to cover the subject matter.

That logic does not transfer to this case. This Court follows a claims-based approach to relevance and confronts different allegations. Plaintiffs allege that shareholders and ESOP participants were harmed because they purchased State Street common stock (or ESOP shares) at prices inflated by fraudulent FX revenues. They allege that this inflation prevailed from the fourth quarter of 2006 to October 2009. *See* Hill Complaint, ¶ 436; Richard Complaint, ¶ 99.[11] The State Street Defendants have agreed to produce documents for that entire period, and, with this response, are prepared to go further. Specifically, the State Street Defendants will extend this to a period from January 1, 2006 through April 30, 2010, *i.e.,* six months after October 2009. No more than this is required—even the cases on which Plaintiffs rely permitting discovery beyond a putative class period do so for periods of months, not *six years*. *See, e.g., In re Scholastic Corp. Sec. Litig.*, 252 F.3d 63, 73 (2d Cir. 2001) (PL at 5) (noting that data from three months after close of class period "may be relevant"); *Novak v. Kasaks*, 216 F.3d 300, 312-13 (2d Cir. 2000) (information "six months after the Class Period" could be relevant).

Moreover, the allegations in this case confirm that events prior to 2006 are irrelevant. Relying on allegations of the California relator that the California AG chose not to assert, Plaintiffs' core FX allegation is that State Street's risk traders engaged in a fraud whereby they would re-price transactions late in the day. *See, e.g., Hill* Am. Compl. (ECF 51) ¶¶ 55 ("Upon receipt of the request, State Street's foreign exchange traders would check the exchange rate, set a price, and execute the transaction, which typically occurred early in the day since State Street traders are at their desks by 7 a.m. Eastern Standard Time.").[12] The relators left State Street long before 2006, and Plaintiffs have advanced no factual basis to assert that risk traders had any responsibility for indirect FX execution during the period relevant to this case. Quite to the contrary, the documents that State Street has agreed to produce will show that, in early 2006, State Street's FX procedures were overhauled and the risk traders no longer had *any* role in pricing transactions. Given the absence of basis to conclude that the alleged scheme continued into the relevant period, and the plain evidence to the contrary, events prior to 2006 have no probative value concerning whether State Street engaged in a fraud involving foreign exchange traders after

---

[11] Plaintiffs offer little support for their demand that the State Street Defendants produce documents from the early 2000s beyond their insistence that they should receive the documents because the California AG received them. Their unsupported say-so assertion that "[s]imilar disclosures regarding State Street's foreign exchange trading revenues were made in earlier [than 2005 and 2006] annual reports" is not a sufficient basis on which to extend the period of relevant discovery for an additional six years.

[12] *See also* ¶¶56 ("State Street would observe market fluctuations until sometime around 3 p.m. in the afternoon and then assign either a higher exchange rate (for purchases) or a lower exchange rate (for sales) to the foreign exchange transactions occurring during the day."); 61 (additional allegations against traders); 67 (same).

WilmerHale

The Honorable Judith G. Dein
March 23, 2012
Page 8

2006.  Obviously, Plaintiffs are entitled to discovery concerning the process actually used during
the relevant period.  The Court should focus Plaintiffs on that period first, and State Street
proposes to produce documents from that period promptly.  Thus, at this point, there is no need
for bulk production of documents from a period six years prior to the relevant period, solely
because they happened to have been produced in a case that did not even assert that the risk
trader scheme upon which Plaintiffs rely even occurred.

Plaintiffs' other supposition about the period prior to May 2006 is no better.  For example,
Plaintiffs cite two so-called "smoking gun" emails that "may well have been written before May
2006."  PL at 4, n.3.  The emails in question are all smoke, and both post-date May 2006.  Thus,
they fall within State Street's proposed production.

Plaintiffs also make the leap that there are likely to be relevant documents in this period because
defendant Ronald Logue was then Chief Operating Officer and supposedly "directly responsible
for overseeing State Street's FX trading practices."  PL at 4.  The suggestion is a weak one and
not a basis for discovery here.  As COO for *the entire Company* (*i.e.*, thousands of employees),
Mr. Logue was "directly" responsible for FX only in the same broad sense that he was "directly"
responsible for all other operations (*i.e.*, he was many tiers up the organizational chart from FX).
This is why it is improper and illogical for Plaintiffs to posit that Mr. Logue may have had
knowledge of alleged fraud during 2000-2004 solely on the basis of his status as COO.  *See
Maldonado v. Dominguez*, 137 F.3d 1, 9-10 (1st Cir. 1998) (rejecting allegations that defendants
must have been aware of facts by virtue of their positions); *Carney v. Cambridge Tech. Partners,
Inc.*, 135 F. Supp. 2d 235, 255 (D. Mass. 2001) ("status" and "general allusions to unspecified
corporate information" insufficient to plead scienter).[13]  Indeed, if he had been so responsible
then no doubt State Street would have produced more than sixteen e-mails for Mr. Logue in
California, and at least one would have reflected something significant about FX.  In fact, all
sixteen are irrelevant.[14]

For these reasons, the State Street Defendants respectfully request that the Court deny Plaintiffs'
request for blanket production of all documents and transcripts from the California case, and
instead order the parties to abide by the State Street Defendants' proposal.

---

[13] Plaintiffs change nothing by parroting AG allegations that State Street began defrauding CalSTRS and CalPERS
"as early as" 2000 and claiming that such time period is thus relevant to Defendants' "knowledge of the fraudulent
conspiracy."  PL at 4.  Whatever State Street was or was not doing in 2000, the Plaintiffs in the present action claim
inflation of stock prices beginning in the latter half of 2006, and it is knowledge at that time that matters.  In any
event, Plaintiffs demand for 2000-2006 discovery is overbroad.  If their asserted basis for relevance relates solely to
knowledge/scienter of particular individuals, then their burden is to articulate discovery requests tailored to obtain
relevant documents.  A demand for every shred of paper over a six-year period does not meet that burden.

[14] Of the 16 emails for Mr. Logue that were produced in the California AG Action for the period prior to May 2006,
none have anything to do foreign exchange.  They involve scheduling meetings with the pension funds. This is no
reason to require the production of hundreds of thousands, even millions, of pages of materials from this period.

WILMERHALE

The Honorable Judith G. Dein
March 23, 2012
Page 9


Very truly yours,

/s/ James W. Prendergast

James W. Prendergast
cc:     Counsel of record (via ECF)

**CERTIFICATE OF SERVICE**

I, James W. Prendergast, hereby certify that this document was filed through the ECF

system and will be sent electronically to the registered participants as identified on the Notice of

Electronic Filing (NEF) dated March 23, 2012.

/s/ James W. Prendergast
James W. Prendergast