# EXHIBIT 1

| **BERNSTEIN LITOWITZ BERGER & GROSSMANN LLP** | **MOTLEY RICE LLC** | **STULL, STULL & BRODY** |

May 30, 2012

**By ECF**

The Honorable Judith G. Dein
United States District Court
District of Massachusetts
John Joseph Moakley United States Courthouse
1 Courthouse Way – Suite 6420
Boston, MA 02210

      Re:    *Hill v. State Street Corporation, et al.*, Master Docket No. 09-12146 (GAO)
              *Kenney v. State Street Corporation, et al.*, Civil Action No. 09-10750 (GJC)

Dear Judge Dein:

    Pursuant to the Court's April 5, 2012 order, plaintiffs in the above-referenced actions write to report that the parties have reached an impasse regarding defendants' production of certain documents relating to State Street's Conduits – *i.e.,* the off-balance sheet entities that suffered billions of dollars of losses during the class period. The parties have met and conferred over these disputes, but have been unable to reach a resolution.

    As set forth in more detail below, defendants have refused to produce any documents relating to State Street's internal assessments of whether the severely declining asset values and increasing "risk of loss" attributable to assets held by the Conduits required State Street to consolidate them onto its own financial statements during the class period. The requested documents are highly relevant to plaintiffs' Conduit-related claims. For instance, they will include critical accounting analyses relating to, among other things, the "risk of loss" associated with the Conduits, the valuation of the risky residential mortgage backed securities, securitized credit card debt, securitized student loans and other assets held by the Conduits, and the ever changing "loss models" and valuation methodologies used by State Street. Indeed, this Court has previously recognized the relevance of these documents in connection with a motion to compel filed in the *Kenney* case, where Your Honor ordered defendants to produce "hard copy work papers concerning conduit consolidation" (*Kenney* ECF No. 86, at 2 (Dein, J.) attached hereto as Exhibit A), and defendants <u>themselves</u> identified these very same types of documents as relevant in their Rule 26(a) initial disclosures in the *Kenney* action, attached hereto as Exhibit B.

    Notwithstanding the obvious – and previously acknowledged – relevance and importance of these documents to plaintiffs' Conduit-related claims, defendants now disingenuously contend that these documents relate solely to the very narrow issue of when and how defendants decided to consolidate the Conduits. Defendants further contend that the Securities Plaintiffs have

The Honorable Judith G. Dein
May 30, 2012
Page 2

"effectively abandoned" the consolidation claim, and therefore defendants have refused to produce the requested documents. Defendants' arguments are meritless. As an initial matter, the requested documents do not relate exclusively to the narrow issue of consolidation of the Conduits but in reality will contain critical information regarding the performance, value and quality of the Conduit assets – one of the key issues in this case. They are therefore highly relevant to <u>all</u> of plaintiffs' Conduit-related claims and should be produced. In any event, even if defendants were correct that these documents only relate to plaintiffs' consolidation allegations (which they do not), the documents still must be produced because plaintiffs have not "abandoned" those claims.

### I.   Documents Concerning the Consolidation of the Conduits Are Highly Relevant To Plaintiffs' Conduit-Related Claims

The *Hill* plaintiffs allege that throughout the Class Period defendants falsely assured investors that billions of dollars of assets contained in the Conduits, which included high risk mortgage backed securities ("MBS") and backed by toxic Alt-A real estate loans, were "high quality" and performing well despite difficult economic conditions. *See Hill v. State Street Corp.*, Consolidated Amended Class Action Complaint, No. 09 Civ. 12146 (GAO), *Hill* ECF No. 51 ("*Hill* Compl.") ¶¶84, 100-05, 114-18, 134-42. These assurances were critically important to investors because, among other reasons, under applicable accounting standards, if the Conduits suffered substantial losses then State Street was required to consolidate them onto its own books, which would have had a significantly negative impact on State Street's earnings and Tangible Common Equity ("TCE") ratio – a key metric that State Street's regulators used to assess whether the bank was adequately capitalized. *Id.* ¶¶13, 157-59. The issue of whether or not State Street was going to consolidate the Conduits was therefore highly material to investors and repeatedly discussed by both securities analysts that followed the Company and by defendants themselves in their public statements. *Id.*  ¶¶13-15, 139-42. Indeed, as late as October and November 2008 – in the midst of an unprecedented global financial collapse – State Street continued to assure investors that the "asset quality of both our investment portfolio and the conduits remains high" and that State Street would not have to consolidate the Conduits. *Id.* ¶15.[1]

These statements were revealed to be false just two months later. On January 20, 2009, State Street disclosed that during the fourth quarter of 2008 it had been forced to purchase $8.9 billion dollars of the Conduits' commercial paper that the Conduits were unable to sell into the market

---

[1] *See Hill v. State Street Corp.*, 2011 WL 3420439, at *21 (D. Mass. Aug. 3, 2011) (noting that "[b]y the time that State Street announced on October 14, 2008, that the portfolio and conduits' assets were high quality, investors were likely desperate to find a secure institution in which to invest money.").

The Honorable Judith G. Dein
May 30, 2012
Page 3

in order to supply the Conduits with liquidity and that unrealized losses in its Conduits and investment portfolio totaled nearly $10 billion, or almost double what defendants had stated in October and November 2008. *Id.* ¶16. All three major rating agencies immediately downgraded State Street and the price of its common stock plummeted, falling from $36.35 to $14.89, a stunning decline of more than 60%. *Id.* Investors knew that as a result of these massive losses, it was inevitable that State Street would be required to consolidate its Conduits, which State Street in fact did on May 15, 2009. *Id.* ¶¶143-49.[2]

The *Kenney* plaintiffs similarly allege that defendants' decision to continue to invest plan assets in State Street common stock was imprudent and in breach of their fiduciary duties under ERISA in light of the significant risk of loss that State Street was facing as a result of its sponsorship of the Conduits and the likelihood that the Conduits would be consolidated. Specifically, the *Kenney* plaintiffs allege that in May 2009, when State Street did consolidate the conduits, it had to raise approximately $2.23 billion in equity by means of issuing common stock (resulting in dilution) to achieve the required 3 percent TCE ratio. This is also illustrative of the true level of risk the Conduits imposed upon State Street and the lack of prudence in Defendants permitting continued investment or maintenance of State Street stock in the Plan. *Kenney v. State Street Corp.*, Second Amended Complaint for Breach of Fiduciary Duty, No. 09 Civ. 10750 (DJC), *Kenney* ECF No. 157 ("*Kenney* Compl.") ¶61.

Thus, State Street's internal analyses of whether increasing losses and declining asset values in the Conduits would require the Company to consolidate them onto its own balance sheet is highly relevant to both the *Hill* plaintiffs' claim that State Street misrepresented the true value of the Conduits to investors and to the *Kenney* plaintiff's claim that continuing to invest Plan assets in State Street's common stock was imprudent. Indeed, with regard to risk of loss and consolidation, ████████████████████████████████████████████████████████████████████████:

████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████

---

[2] Recognition of the previously unrealized losses on Conduit assets upon consolidation led to a quarterly loss of more than $7 per share and if not for the fact that State Street made an almost simultaneous stock offering of over $2 billion would have resulted in a perilously low TCE ratio. *Kenney* Compl. ¶¶ 43, 61.

The Honorable Judith G. Dein
May 30, 2012
Page 4



attached hereto as Exhibit D.

attached hereto as Exhibit E.

  For these reasons, plaintiffs have sought the following categories of documents, which defendants have refused to produce (those requests and defendants' objections thereto are attached as Exhibit C):

- Documents concerning Fin 46(R) (*i.e.*, the accounting standard that governs when a public company like State Street has to consolidate a variable interest entity or "VIE" like the Conduits); State Street's Fin 46(R) loss model; modifications of that model; and other loss calculations or estimates performed on the Conduit assets, including advice about consolidation that State Street received from its auditor defendant Ernst & Young LLP ("E&Y") (Request Nos. 107-10, 124-25, 132);

- Documents concerning whether State Street was required to consolidate the Conduits under the relevant Fin 46(R) standard (Request No. 127);

- Documents concerning the effect of consolidation on State Street's balance sheet (*Id.*, Request No. 132);

- Documents concerning State Street's compliance (or lack thereof) with its accounting policies and the accuracy of State Street's financial statements in connection with the Conduits (Request No. 145);

- Documents showing that State Street was discussing the likelihood of consolidation and/or preparing to consolidate the Conduits at the same time that it publicly assured investors that this would not happen (Request Nos. 128, 127);

- Documents reflecting what E&Y told State Street about the riskiness of the assets in the Conduits (Request Nos. 130-31; *see also* Request No. 146); and

The Honorable Judith G. Dein
May 30, 2012
Page 5

- Documents concerning services performed by non-party consultants relating to the Conduits, including the valuation of and loss projections on the assets in the Conduits and opinions from consultants, including Oliver Wyman, regarding whether State Street should consolidate the Conduits (Request Nos. 97, 101).

These documents are all directly relevant to what defendants knew or should have known about the true value and likely future losses on the assets held by the Conduits. Indeed, these documents will contain highly relevant information regarding State Street's internal assessments of the Conduits' asset values and risk of loss and will shed significant light on whether State Street's public statements to investors regarding the Conduit's asset quality and value were accurate and whether State Street common stock was a prudent investment. There is simply no basis for defendants' refusal to produce these documents.

Indeed, the relevance of these documents has previously been recognized by both Your Honor and by defendants themselves. In response to a motion to compel filed in the *Kenney* action, State Street has already been compelled to produce, among other things, "hard copy work papers concerning conduit consolidation." Ex. A at 2. The *Kenney* defendants have yet to produce any of the material Your Honor previously ordered them to produce. Moreover, in their Rule 26(a)(1) Initial Disclosure Statement dated February 19, 2010 and served on the *Kenney* plaintiffs, defendants identified individuals ███████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████
*See* Ex. B at 7. Defendants' belated attempt to claim that these documents are not relevant is baseless and should be rejected.[3]

## II.   Defendants' Objection To Production On The Ground That The *Hill* Plaintiffs "Effectively Abandoned" The Accounting Claim Is Baseless

As stated above, the only basis that defendants provide for their refusal to produce documents concerning consolidation of the Conduits is that the *Hill* plaintiffs have "effectively abandoned" their claims relating to Conduit consolidation. Defendants are wrong.

---

[3] Notably, Defendants' objections to these requests are also impeding important non-party discovery. Plaintiffs have each issued a document subpoena to Oliver Wyman, but after numerous meet-and-confers, Counsel for Oliver Wyman informed plaintiffs on May 25, 2012 that, based on State Street's objection, Oliver Wyman will not produce any documents until the Court rules on this issue.

The Honorable Judith G. Dein
May 30, 2012
Page 6

In order to prevail on their "effective abandonment" argument, defendants must show that plaintiffs' purported abandonment was "unequivocal," and accordingly, any ambiguity must be resolved in favor of plaintiffs. *See Pac. Bell Tel. Co. v. Linkline Commc'n*, 555 U.S. 438, 446-47 (2009) (finding no effective abandonment because plaintiff had not "unequivocally" abandoned her claim); *compare Nieves-Vega v. Ortiz Quiñones*, 443 F.3d 134, 138 n.2 (1st Cir. 2006) (finding effective abandonment where plaintiff explicitly stated in her opposition to defendants' motion to dismiss that the allegation at issue was "made not as a cause of action").

Here, even defendants admit that the *Hill* plaintiffs' amended complaint set forth a claim relating to consolidation of the Conduits. And defendants do not contend that plaintiffs have withdrawn those allegations. Rather, they contend that plaintiffs "effectively abandoned" this claim in connection with motion to dismiss briefing, presumably by not mentioning it (or not mentioning it enough in the motion papers). But, contrary to defendants' contentions, Judge Gertner sustained the *Hill* plaintiffs' <u>entire complaint</u> despite the fact that defendants' explicitly raised this "abandonment" argument in their reply brief on the motion to dismiss. *See* Defs. Reply at 21, *Hill* ECF No. 84 ("Plaintiffs simply walk away from their allegations that any GAAP violation occurred. Given this concession, Plaintiffs fail to state a claim on these grounds.") In doing so, Judge Gertner <u>disagreed</u> with defendants and explicitly held that "Plaintiffs claim [that] Defendants also violated generally accepted accounting principles ('GAAP'). Defendants provide no basis to relitigate Judge Gertner's ruling on the motions to dismiss. Thus, Defendants cannot establish that the *Hill* plaintiffs "effectively abandoned" their accounting claim, and even if they could, this would not constitute a valid objection to the discovery plaintiffs seek here.[4]

\*   \*   \*

For the foregoing reasons, plaintiffs respectfully request that the Court compel defendants to produce documents in response to the Requests identified herein, all of which seek documents relevant to plaintiffs' Conduit-related claims.[5]

---

[4] Even if defendants could establish "effective abandonment" in connection with the *Hill* case, it does not apply to the *Kenney* case and the documents would therefore need to be produced in any event.

[5] The parties continue to meet and confer to resolve other issue on which they disagree – such as defendants' refusal to produce any documents reflecting communications with regulators with respect to their Conduits. Plaintiffs reserve their rights to raise these issues with the Court at a later date should there be no resolution.

The Honorable Judith G. Dein
May 30, 2012
Page 7

Respectfully submitted,

| s/ John C. Browne | s/ William H. Narwold | s/ Mark Levine |
|---|---|---|
| John C. Browne<br>Lauren A. McMillen<br>Rebecca E. Boon<br>**BERNSTEIN LITOWITZ BERGER & GROSSMANN LLP**<br>1285 Avenue of the Americas<br>New York, New York 10019 | William H. Narwold<br>Badge Humphries<br>**MOTLEY RICE LLC**<br>28 Bridgeside Blvd.<br>Mt. Pleasant, SC 29464 | Mark Levine<br>Patrick Slyne<br>**STULL, STULL & BRODY**<br>6 East 45th Street<br>New York, NY 10017 |

Encls.
cc:  Counsel of Record (*via* ECF and email)