| SHAPIRO HABER | BERNSTEIN LITOWITZ | MOTLEY RICE LLC |
| & URMY LLP | BERGER & GROSSMANN LLP | |

May 30, 2012

**By ECF**

The Honorable Judith G. Dein
United States District Court
District of Massachusetts
John Joseph Moakley United States Courthouse
1 Courthouse Way – Suite 6420
Boston, MA 02210

    Re:    *Hill v. State Street Corporation, et al.*, Master Docket No. 09-12146 (GAO)
              *Richard v. State Street Corporation, et al.*, Civil Action No. 10-10184 (GJC)

Dear Judge Dein:

    In accordance with the Court's April 5, 2012 order (the "April 5 Order"), Plaintiffs in the above-referenced actions write to report that the parties have reached an impasse regarding the State Street Defendants' production of documents previously produced in the matter of *People of the State of California v. State Street Corporation, et al.*, Index No. 34-2008-00008457 (Cal. Super. Ct.) (the "California AG Action").  The parties have met and conferred, but are unable to resolve their disputes.  While Plaintiffs are currently reviewing State Street's productions, several deficiencies that warrant the Court's attention have already materialized.

1. The State Street Defendants have failed to produce a group of approximately 8,000 documents based on a purported lack of relevance.  As discussed in more detail below, it is extremely likely from the manner in which the documents were excluded from the production by State Street – in reliance solely on unilaterally selected search terms – that many of the withheld documents are relevant and should be produced.

2. The State Street Defendants' non-production log is insufficient and does not comply with the Court's April 5, 2012 Order.  As set forth below, the log fails to describe the documents being withheld with the particularity required by the Court and is so cursory that it does not provide Plaintiffs with a meaningful opportunity to challenge the withheld documents.  Indeed, as Plaintiffs first learned during the meet-and-confer process, separate and apart from the 8,000 documents described above, the log fails to even list two categories of documents that State Street unilaterally carved out of the California AG's production.  The fact that Plaintiffs would not have known that State Street was withholding these documents if they had not asked specific questions during a meet and confer underscores the importance of a <u>complete</u> non-production log that fully complies with the Court's April 5, 2012 Order.

3. Finally, the two categories of documents that State Street withheld – but did not list on the non-production log – are highly relevant and should be produced. First, State Street withheld all of its custodial contracts and requests for proposal ("RFPs") that were in effect during the period from October 17, 2004 through October 19, 2011 and were produced to the California AG. Second, State Street withheld communications with regulatory and law enforcement officials, which were produced pursuant to a Court order in the California AG Action. As set forth below, the Court should order State Street to produce these documents.

Plaintiffs will be prepared to further address these matters during the June 6 conference.

I.  **The Court's April 5, 2012 Order And The Non-Production Log**

On April 5, 2012, the Court ordered State Street to produce by April 18, 2012 documents it had produced in the California AG Action and that covered the time period of October 17, 2004 through October 19, 2011 "to the extent that such documents are relevant and responsive to the document production requests in this action . . . ." At the hearing and in the April 5 Order, the Court also ordered State Street to produce a non-production log of all documents produced in the California AG Action that were being withheld from production. The Court stated:

> It seems to me that there are going to be classes of documents that are not going to be produced. I actually think you're going to end up with nothing but we'll see. I'm not a betting person so it doesn't matter. <u>To the extent that you have produced documents in California that are not being produced in this case you need to identify them either in a category or that is sufficient for the plaintiffs to be able to challenge the documents</u> .... And if it's not specific then we may end up with an in-camera review. ...

April 4, 2012 Status Conference Transcript at 46 (emphasis added).

Part of the dispute leading to the April 4 hearing resulted from State Street's attempt to limit production to only documents that met an inappropriately restricted set of electronic search terms. The Court did not rule directly on whether and how search terms could be used in determining the relevant universe of documents to be produced. As to the non-production log, however, the Court expressly ordered State Street to "identif[y] <u>not the search term information</u> but the types of documents that are being withheld," directing State Street to "think of it as a privilege log . . . <u>with sufficient particularities</u> . . . so that [Plaintiffs] can move to compel." April 4, 2012 Status Conference Transcript at 48 (emphasis added).

On April 18, 2012 and May 14, 2012, the State Street Defendants produced some, but not all, of the documents they had previously produced to the California AG. On May 2, 2012, they produced a non-production log containing only two entries (attached as Exhibit A). Plaintiffs seek an order compelling further production as described below.

The Honorable Judith G. Dein
May 30, 2012
Page 3 of 8

## II. In Violation Of The April 5 Order, State Street Almost Certainly Failed To Produce All Relevant And Responsive Documents

The April 5 Order states that "the State Street Defendants shall produce all of the documents that were produced in the California AG Action, but only to the extent that such documents are relevant and responsive to the document production requests in this action . . . ." In their non-production log the State Street Defendants indicated that they had withheld two classes of documents from the California AG Action document production. They categorized the first set of withheld documents as "[d]ocuments concerning solely the performance of State Street's non-foreign exchange custodial duties or functions." Relying on this representation, Plaintiffs have no dispute with this category, although Plaintiffs reserve their right to request samples of such performance documents following Plaintiffs review of the documents produced to date.

However, while State Street broadly categorized the second set of withheld documents as "[d]ocuments that do not concern foreign currency exchange," it has since become clear that State Street made that determination not through any substantive document review, but by simply withholding any documents from the California AG Action production that did not contain at least one of the following seven terms: (1) fx; (2) "foreign /3 exchange"; (3) "foreign /s currency"; (4) CFX; (5) forex; (6) repatriate+; or (7) AIR. This resulted in the removal of 8,176 documents (36,241 pages) that were produced in the California AG Action and should have been produced to Plaintiffs in this case.

State Street's decision to carve these documents out of the California AG Action production based on the absence of seven limited terms and without any substantive review is not consistent with the Court's April 5 Order. This decision is particularly indefensible considering that the burden of reviewing 8,176 documents is minimal. Moreover, the removal of these documents almost certainly resulted in relevant and responsive documents being withheld. In fact, State Street does not dispute that the documents produced to the California AG were carefully reviewed for relevance and responsiveness prior to their production and therefore are almost certainly related to State Street's foreign exchange services.[1] Indeed, it is highly likely that the seven terms cherry picked by State Street will not identify all relevant documents. For instance, in a preliminary review of the documents produced to date, Plaintiffs have identified numerous other potential search terms indicating that a document is relevant.[2] But under State Street's document production regime, any document containing these terms but not one of the seven selected terms was unilaterally withheld from production.

For all of the above reasons, Plaintiffs respectfully request that the Court order State Street to produce the 8,176 documents improperly withheld from production. In the alternative, the Court

---

[1] This is especially true given that, as noted above, State Street had already carved out "[d]ocuments concerning solely the performance of State Street's non-foreign exchange custodial duties or functions."

[2] These terms include, but are by no means limited to, the following: (1) FXConnext; (2) interbank; (3) CFXS; (4) repat!; (5) "repat types"; (6) "CLS /3 Settlement"; (7) GTSS; (8) FXOMS; (9) MOMS; (10) WSS; (11) spread; (12) "time stamp"; (13) time-stamp; (14) MCH.

The Honorable Judith G. Dein
May 30, 2012
Page 4 of 8

should order State Street to review these documents to make an actual determination as to their relevance, and to properly log any documents that it still withholds following this review.

### III. In Violation Of The April 5 Order, The State Street Defendants Failed To Disclose All Documents That State Street Had Withheld

The April 5 Order stated that "the State Street Defendants shall produce a 'non-production' log describing with specificity the categories of documents that were produced in the California AG Action and cover the time period from October 17, 2004 through October 19, 2011, but have been withheld from production in this action." As described below, the State Street Defendants' non-production log does not comply with the Court's order and is wholly insufficient to allow Plaintiffs to meaningfully challenge (or even fully understand) the documents that State Street has withheld. Plaintiffs respectfully request that the Court order the State Street Defendants to provide a new log that describes, with particularity, <u>all</u> documents withheld from production, and the reasoning behind each exclusion.

#### A. The State Street Defendants Logged Documents Solely By Reference to Search Terms Despite the Court's Explicit Rejection of This Procedure

As noted above, the Court specifically ordered that the non-production log "identif[y] <u>not the search term information</u> but the types of documents that are being withheld," directing State Street to "think of it as a privilege log . . . <u>with sufficient particularities</u> . . . so that [Plaintiffs] can move to compel." April 4, 2012 Transcript at 48 (emphasis added). State Street's May 2, 2012 non-production log does not comply with the Court's directive. There are only two entries in this "log," and the second reads <u>in its entirety</u>:

> **Documents that do not concern foreign currency exchange:** In their April 18, 2012 document production, the State Street Defendants withheld documents that, based on relevant search term identification, do not related to State Street's foreign currency exchange practices. Specifically, the State Street Defendants did not produce documents from the Production Period that lacked any reference to the following terms: fx, "foreign /3 exchange," "foreign /3 currency," CFX, forex, repatriat+, or AIR – in total, 7,454 documents (30,834 pages). (emphasis in original)[3]

Even if State Street can show that some subset of these documents was properly withheld, the non-production log does not meet the specificity required by the Court, and utterly fails to provide Plaintiffs with sufficient information to challenge a document's non-production. The log does not identify the documents withheld by category, or by type of document, or by author and

---

[3] State Street repeated the same categories of documents withheld from its May 14, 2012 supplemental production with additional total numbers.

4

recipient, all of which are minimally necessary for Plaintiffs to challenge any specific document or documents withheld on this ground.[4]

### B. In Violation Of The April 5 Order, State Street Withheld And Did Not Log Two Categories Of Relevant And Responsive Documents

During the meet and confer process, State Street admitted it withheld at least two other broad categories of documents that were produced in the California AG Action, that it did not even purport to "log": (1) all custodial contracts and RFPs produced in the California AG Action, and (2) all communications with regulatory and law enforcement agencies produced in the California AG Action. The omission of these documents from the production and from the non-production "log" underscores the importance of the Court ordering a <u>complete</u> non-production log. As discussed in Point IV below, these documents not only should have been included on the log, but are plainly relevant and should be produced to Plaintiffs.

### IV. State Street's Custodial Contracts, RFPs, And Communications With Regulatory And Law Enforcement Agencies Are Directly Relevant

There is no justification for State Street's refusal to produce (nor for its failure to disclose that it was not producing) State Street's custodial contracts, RFPs and communications with regulatory and law enforcement agencies.

### A. State Street's Custodial Contracts and RFPs

As the Court is aware, these actions and the California AG Action share a common factual nucleus – whether State Street engaged in a fraudulent scheme to overcharge its clients for FX trades it executed on their behalves. *See* ECF No. 51, ¶¶5-11, 39-82; ECF No. 46, ¶¶69, 92-94, 110- 21, 134. Indeed, the California AG recently characterized the AG Action as an inquiry into "whether State Street knowingly submitted false claims to two California pension funds <u>as part of a corporate-wide scheme to secretly mark up/mark down its FX trade prices for all public pension fund clients</u>." *See* ECF No. 144-5, at 1 (emphasis added). In recognition of the alleged systematic misconduct at the heart of that case, the California court overseeing the California AG Action has repeatedly rejected State Street's arguments that the California case is limited to a contract dispute between State Street and two California pension funds, and has instead

---

[4] During the parties' May 7, 2012 meet and confer, Plaintiffs requested that the State Street Defendants disclose the search terms that were applied to the documents produced in the California AG Action and for the withheld electronic documents provide metadata fields identifying the author, recipients, date and subject of each communication so that Plaintiffs could ascertain some information about the withheld documents. Defendants refused to do so. On May 15, 2012, State Street represented that it was working on creating a spreadsheet with additional metadata information, but Plaintiffs have received no such document. In any event, while this information may be informative, it is unclear whether such information would even be helpful, given State Street's failure to describe the withheld documents.

permitted broad discovery into the company's FX trading. *See, e.g.*, ECF Nos. 144-6 & 144-7 (ordering production of documents from January 1, 2000 through the present).[5]

Among the documents State Street produced in the California AG Action are "a number of RFP responses it submitted to other public pension fund clients," and which, upon review, a Deputy California AG "determined that the FX pricing provisions in these RFP responses are nearly identical to those found in the contracts with [the California funds]." *See* ECF No. 144-12, at 1-2 ¶¶4, 6 (emphasis added). Those RFPs and any custodial contracts (including any investment manager guides) produced in the California AG Action are relevant and should be produced in these actions. *See also Arkansas Teachers*, No. 11-10230-MLW, tr. at 22-24, and 27-31, 55, 73-75, 84-85 (Judge Wolf found that the terms of plaintiffs' contracts with State Street were central to the denial of State Street's motion to dismiss).

Nonetheless, State Street has withheld from production all RFP responses and associated custodial contracts on the improper basis that only contracts State Street unilaterally deems to be "typical" of, or identical to, the contracts entered into between State Street and the two California pension funds (characterized as "Allegedly Typical Custodial Contracts") will be produced in these actions. Notably, State Street has not produced even the "Allegedly Typical Custodial Contracts," and has still not produced a single RFP or contract.[6] Moreover, State Street has refused to provide samples of custody contracts and RFPs it deems to be non-typical. Indeed, State Street has even refused to provide a non-production log of the contracts and RFPs it will withhold on the utterly baseless ground that, although the contracts and RFPs were in effect during the 2004-2011 time period, they were created prior to 2004 and thus are not included in the April 5 Order.

State Street's refusal to produce these documents (or to even explain the full extent of what is being withheld) is wholly unjustified. State Street's argument that the contracts are not relevant was rejected in California and should be rejected here. While Plaintiffs highlighted the terms of the California pension fund contracts in their complaints as examples of the fraudulent representations made to State Street's custody clients, the gravamen of Plaintiffs' claims in this case is that it was State Street's company-wide practice to overcharge its custodial clients for FX trades. Indeed, a putative class action on behalf of all custodial clients challenging similar practices has been sustained by Judge Wolf. *Arkansas Teachers* No. 11-10230-MLW, tr. at 83-

---

[5] State Street has previously argued that the challenged foreign exchange pricing practices were permitted by the relevant contracts (including in RFPs) in the California AG Action. The production of custodial client contracts and RFPs is vital to Plaintiffs' prosecution of these actions, which allege that it was State Street's company-wide practice to overcharge its custody clients. Indeed, another Judge in this District recently sustained a putative class action brought on behalf of all State Street custodial clients challenging similar foreign exchange practices to those challenged in this case. *See Arkansas Teacher Ret. Sys. v. State Street*, No. 11-10230-MLW, Transcript of Motion to Dismiss Hearing, at 22-24, and 27-31, 55, 73-75, 84-85 (D. Mass. May 8, 2012), ), attached as Exhibit B.; Order adopting reasoning in Transcript (May 8, 2012), attached as Exhibit C.

[6] State Street claimed in a May 15, 2012 letter to be "in the process of collecting RFP responses and associated custodial contracts that contain language comparable to the language forming the basis for the allegations contained in Plaintiffs' Complaints, *i.e.*, 'Allegedly Typical Custody Contracts . . . .'"

The Honorable Judith G. Dein
May 30, 2012
Page 7 of 8

4. Defendants' decision to limit their production in this case to documents concerning custody clients whose contracts and RFPs happen to share identical or nearly identical language with the California pension fund contracts and RFPs has no basis, especially in light of the fact that Defendants were ordered to produce RFPs and contracts with no such limitation in the California AG Action. (As Plaintiffs previously informed the Court, a Deputy California AG has stated, in a sworn declaration, that those RFPs and contracts are "nearly identical" in substance to the California funds' RFPs and contracts, *see* ECF No. 144-12, at 1-2 ¶¶4, 6.)

For these reasons, Plaintiffs respectfully request that the Court compel State Street to produce all RFPs and contracts produced in the California AG Action.

### B. Communications with Regulatory and Law Enforcement Agencies

State Street's FX trading practices are currently under investigation by (i) at least six other state Attorneys General, including the Attorneys General of New York, Massachusetts, Illinois, Virginia, Florida and Washington State (which reached a settlement with State Street in October 2010); (ii) the SEC; and (iii) various United States Attorneys' offices. *See* ECF Nos. 144-3 & 144-4. On November 2, 2011, the California court granted the California AG's motion to compel "the production of communications relating to law enforcement investigations of State Street's operations regarding other public pension funds" through the present day. *See* ECF No. 144-7, at 2. These communications and related documents are particularly relevant to Plaintiffs' securities and ERISA claims because Plaintiffs have specifically alleged that State Street fraudulently overcharged its clients throughout the nation and across the globe. *See* ECF No. 46, ¶¶66, 85-86; ECF No. 51, ¶¶5-11, 39-82. To the extent these documents fall within the time period of October 17, 2004 through October 19, 2011, they should have been produced to Plaintiffs pursuant to the Court's April 5, 2012 order.

Nonetheless, State Street not only failed to produce these documents, it failed to even log them on its non-production log. Instead, when pressed by Plaintiffs, State Street stated in a May 15, 2012 letter, that it "do[es] not consider these communications to be appropriate for discovery in this matter." This is baseless. For the reasons stated above, Plaintiffs respectfully request that the Court order the immediate production of these documents in this action.[7]

Plaintiffs look forward to discussing the issues outlined above at the June 6 conference.

---

[7] In its May 15, 2012 letter following a meet and confer call, the State Street Defendants advised Plaintiffs that the State Street Defendants were "considering our position further" regarding these communications, and would "advise [Plaintiffs] shortly of the number of such communications that fall within the Production Period." Two weeks have gone by with no update from the State Street Defendants. If this issue is resolved prior to the June 6 conference, Plaintiffs will promptly advise the Court.

The Honorable Judith G. Dein
May 30, 2012
Page 8 of 8

Respectfully Submitted,

| /s/ John C. Browne | /s/ William H. Narwold | **/**s/ Michelle H. Blauner |
|---|---|---|
| John C. Browne | William H. Narwold | Thomas G. Shapiro |
| Lauren A. McMillen | Badge Humphries | Michelle H. Blauner |
| **BERNSTEIN LITOWITZ BERGER & GROSSMANN LLP** | **MOTLEY RICE LLC** | Robert E. Ditzion |
| 1285 Avenue of the Americas | 28 Bridgeside Blvd. | **SHAPIRO HABER & URMY LLP** |
| New York, New York 10019 | Mt. Pleasant, SC 29464 | 53 State Street |
|  |  | Boston, MA 02109 |

cc.: all counsel (by ECF)