**BERNSTEIN LITOWITZ**                                    **MOTLEY RICE LLC**
**BERGER & GROSSMANN LLP**

June 7, 2012

<u>**By ECF**</u>

The Honorable Judith G. Dein
United States District Court
District of Massachusetts
John Joseph Moakley United States Courthouse
1 Courthouse Way – Suite 6420
Boston, MA 02210

   Re: *Hill v. State Street Corporation, et al.*, Master Docket No. 09-12146 (GAO)

Dear Judge Dein:

   We write in response to the State Street defendants' May 18, 2012 letter motion to compel ("May 18 Letter").  In their May 18 Letter, defendants seek an order compelling plaintiffs to search for and produce a vast array of documents that are unrelated to either the alleged misrepresentations or the State Street securities at issue in this case.  Indeed, while defendants ignore it, Judge Gertner has already held that many of the documents defendants seek are irrelevant.  Moreover, Courts throughout the nation routinely hold that the type of sweeping discovery requests that defendants have asserted here are unlikely to lead to the discovery of relevant documents, are unduly burdensome and harassing, and are inconsistent with the purposes of the Private Securities Litigation Reform Act of 1995 ("PSLRA").  Accordingly, as described further below, defendants' motion to compel should be denied.

**I.**  **Documents Concerning The Term "High Quality" In Contexts Other Than State Street's Use of That Term Are Irrelevant To This Case**

   Plaintiffs allege that the State Street defendants' statements in October and November 2008 regarding the supposed "high quality" of the assets in State Street's Conduits and investment portfolio were materially false and misleading.  Compl. ¶¶135-207.  Defendants respond by arguing, among other things, that their statements were not false because investors understood they were using the term "high quality" to refer solely to the "credit quality," *i.e.,* risk of default, of State Street's assets and not their asset value.  May 18 Letter at 1.  Based on this, defendants claim they are entitled to discovery into "how Plaintiffs understood State Street's use of the term ["high quality"] during the Class Period."  *Id.* at 2.

   While plaintiffs dispute that defendants' argument has any merit, during the meet-and-confer process, plaintiffs agreed to search for and produce all documents reflecting plaintiffs' knowledge or understanding of what State Street meant when it used the term "high quality"

The Honorable Judith G. Dein
June 7, 2012
Page 2

during the class period.  By definition, such a production will capture virtually all documents, if any exist, relevant to the issue of what plaintiffs understood State Street to mean when it used the term "high quality" in October and November 2008.

Not satisfied with this, defendants seek a broad order compelling production of "[a]ll documents concerning or referring to the term 'high quality' as used in connection with an asset, fund, portfolio, investment, or investment product."  Def. Doc. Request 42.  In short, defendants ask that plaintiffs search for and produce <u>any</u> document containing the term "high quality" in relation to <u>any</u> asset or asset class plaintiffs held during the class period.  This is baseless.

Contrary to defendants' assertion, "[p]laintiffs' understanding of this term ["high quality"] <u>as applied to investments</u>" is not "at the very heart of Plaintiffs' claims of misrepresentation."  May 18 Letter at 1.[1]  In reality, plaintiffs' claims focus exclusively on <u>State Street's</u> use of the term "high quality" in describing the assets in State Street's Conduit and investment portfolio.  Whether or not the term "high quality" was sometimes used differently in <u>other</u> contexts (and State Street has not produced a shred of evidence suggesting it was) by other companies discussing other investments is irrelevant to the question of whether State Street's statements regarding the purported high quality of its own assets were false and misleading when made.

Judge Gertner reached this precise conclusion in rejecting the same argument regarding the "credit quality" of State Street's assets that defendants recite in their May 18 Letter.  Judge Gertner held that:

> The meaning of the phrase "high quality" must be evaluated <u>in the context in which Defendants used that term.</u>  State Street's statements on October 15, 2008 provide that context.

*Hill v. State Street Corp.*, 09 Civ. 12146 (NG), 2011 WL 3420439, at *16 (D. Mass. Aug. 3, 2011).  Judge Gertner went on to state that State Street's October 15, 2008 press release "speaks about 'high quality' assets in the same paragraph as market illiquidity and mark-to-market losses, <u>not just credit</u>."  *Id.* at *17.  In short, Judge Gertner has already held that the truth or falsity of defendants' statements must be determined by the context in which defendants made them, and that context is provided by looking at defendants' own public statements.[2]  Accordingly, how

---

[1] All emphasis is added unless otherwise noted.

[2] As Judge Gertner noted, "it is important to remember what occurred in the weeks leading up to the October and November statements . . . [b]y the time that State Street announced on October 15, 2008 that the portfolio and conduits assets were high quality, investors were likely desperate to find a secure institution in which to invest money.  <u>It was predictable</u> that a person would understand 'high quality' assets at that point in time to mean that the assets would not trigger massive losses for the Company."  *Id.* at *21.

The Honorable Judith G. Dein
June 7, 2012
Page 3

companies other than State Street may have used the term "high quality" in discussing other assets in other contexts is simply not relevant.

The irrelevance of the documents defendants seek must be weighed against the very significant burden that would be placed on plaintiffs if they were required to search through all of their files for every mention of the word "high quality" used in virtually any possible context (including in contexts not even remotely related to State Street) for a period of more than three years.  Plaintiffs are institutional investors who collectively oversee more than $240 billion in assets.  During the class period plaintiffs held literally thousands of securities across hundreds of "asset classes."  Plaintiffs have already agreed to make an extensive search for documents relating to their purchases of the State Street common stock at issue in this case.  However, because defendants' additional requests are completely unrelated to State Street, plaintiffs would not be able to search for responsive instances of the term "high quality" by issuer name.  Each plaintiff would have to, in the first instance, review every single investment it held during the class period and determine if, anywhere within the records relating to those holdings, there is any reference to the word "high quality."  This would be a colossal task that would impose an immense burden on plaintiffs – likely requiring hundreds of hours of human review.  Indeed, it is not even clear how plaintiffs could conduct such an all-encompassing and undefined search.

For these reasons, courts regularly any marginal relevance to documents concerning transactions other than in the securities at issue in the case is far outweighed by the burden and expense on plaintiffs if they were forced to search for such documents.  *See, e.g., In re New Century*, No. CV 07-0931 (DDP) (C.D. Cal. Dec. 7, 2009) (attached as Exhibit A), at 8 (refusing to require institutional plaintiff  to search for minimally relevant documents because it "would divert valuable staff time from other important matters, including investment transactions, legislative initiatives, benefits questions and human resources issues"); *In re Motel 6 Sec. Litig.*, 93 Civ. 2183 (JFK), 1996 WL 474175, at *1 (S.D.N.Y. Aug. 21, 1996) ("[A] blunderbuss request for plaintiffs' prior trading in other, unrelated securities promises to be both extremely burdensome and of only marginal value . . . .").  In sum, defendants' request that plaintiffs search their entire portfolio and transaction history for multiple years for any mention of the word "high quality" is overly burdensome, harassing and should be denied.

## II.      Documents Concerning SIVs, MBS, Subprime Mortgages And Other Subjects Completely Unrelated To State Street's Investments in Those Assets Are Not Relevant and Producing Them Would Be Unduly Burdensome

Defendants also ask the Court to order plaintiffs to search for and produce all documents that contain any mention of dozens of subjects referenced in the complaint, including "SIVs, mortgage-backed securities, subprime mortgages, fixed-income bond funds, rating agencies, and securities involving Washington Mutual, Countrywide, IndyMac, and New Century."  May 18

The Honorable Judith G. Dein
June 7, 2012
Page 4

Letter at 2.  The breadth and scope of defendants' requests in this regard is simply astonishing, as they seek, for example:

> All communications with, and all Documents provided to or received from, any of Plaintiff's investors, clients enrollees, or fund participants, including, any annual reports, client letters, newsletters, and marketing material concerning any evaluation, assessment, analysis, study, guideline, or recommendation with regard to . . . Conduits, SIVs, MBSs, Subprime, fixed income bond funds, rating agencies, Washington Mutual, Countrywide, IndyMac and New Century.

*See* Request 69.[3]  Defendants claim these documents are relevant because "they speak to the Plaintiffs' knowledge (or lack thereof) of the matters about which they claim to have been misled" and may reveal whether plaintiffs were aware of the "risks" involved with purchasing State Street common stock.  May 18 Letter at 4.  Defendants are wrong.

During the meet-and-confer process, plaintiffs offered to produce documents concerning their knowledge of State Street's exposure to particular assets held in the Conduits and investment portfolio during the class period.  Defendants rejected that proposal.  Moreover, defendants have refused to make any effort to streamline their requests so that they focus on information regarding plaintiffs' knowledge about State Street or to plaintiffs' decision to invest in State Street's common stock – the core issue in this case.  Defendants' refusal to narrow their fatally overbroad requests confirms that they are engaged in a pure fishing expedition designed to harass and burden the institutional investors appointed by the Court as lead plaintiffs.

Indeed, no court in the country has ever granted the nearly limitless discovery of a lead plaintiff that defendants seek here.  To the contrary, Courts routinely reject the notion that in putative class actions plaintiffs must produce documents relating to securities that are not the subject of the litigation.  *See, e.g., In re New Century*, No. CV 07-0931 (DDP) (C.D. Cal. Dec. 7, 2009) (attached as Exhibit A), at 5 (denying motion to compel because "the operative complaint alleges misrepresentations based on transactions in New Century common stock . . . not investments in mortgage-based securities"); *Burstein v. Applied Extrusion Tech. Inc.,* 153 F.R.D. 488 (D. Mass 1994) (denying motion to compel production of plaintiffs' investment history); *Malanka v. Data Gen. Corp*., 85 Civ. 2154 (Mc),1986 WL 541, at *2 (D. Mass. July, 2, 1986) (documents relating to plaintiff's investment practices and sophistication "are not relevant and are, therefore, not discoverable"); *Epstein v. MCA, Inc.,* 54 F.3d 1422, 1423 (9th Cir. 1995) (information regarding plaintiffs' investment history and information relating to plaintiffs' investments in securities other than defendants' stock was irrelevant and "would have no bearing

---

[3] *See also* Request 67 ("All internal communications" relating to "Conduits, SIVs MBSs, Subprime, fixed income bond funds, rating agencies," WaMu, Countrywide, IndyMac, and New Century).

The Honorable Judith G. Dein
June 7, 2012
Page 5

on . . . the merits of the case"); *Jaffe Pension Plan v. Household Int'l Inc.*, 02 Civ. 5893, 2005 WL 3801463, at *4 (N.D. Ill. Apr. 18, 2005) (plaintiffs' investment history is irrelevant to any class-wide liability issues); *In re Lucent Tech. Inc. Sec. Litig.*, 00 Civ. 821 (JAP), 2002 U.S. Dist. LEXIS 8799, at *4 (D.N.J. May 9, 2002) (defendants' request for plaintiffs' investment history "cannot shed any light on the overall issue of liability"); *In re Motel 6 Sec. Litig.*, 1996 WL 474175, at *1 (S.D.N.Y. Aug. 21, 1996) (requests for plaintiffs' prior trading in other securities "promises to be both extremely burdensome and of only marginal value").

In this case, defendants' arguments for why the requested documents are relevant are particularly unconvincing. For instance, contrary to defendants' assertions, any documents that plaintiffs may possess which generally discuss SIVs, Conduits, MBS or subprime investments cannot possibly have a meaningful bearing on plaintiffs' knowledge of the risk in investing in State Street's common stock during the class period. This is because State Street has never disclosed the identity of the specific assets it held in its Conduits or investment portfolio. *See Hill*, 2011 WL 3420439, at *22 ("State Street itself admits that the company limited its disclosures about the composition of the conduits to vague details . . . .").

As a result, during the class period investors knew nothing beyond very general information about the <u>types</u> of broad asset classes contained in State Street's Conduits and investment portfolio. Accordingly, they could not make any meaningful independent judgments regarding the value of those (undisclosed) assets, nor could they evaluate whether those (undisclosed) assets created a material risk that State Street's common stock price was artificially inflated. Investors were instead forced to rely on State Street's assurances that the assets were "high quality" and were being valued appropriately. Thus, any documents plaintiffs may have relating to MBS investments or subprime investments generally could not possibly have provided plaintiffs with any meaningful information regarding the riskiness of State Street's assets – for the simple reason that investors <u>did not know</u> what specific assets State Street held.[4]

The fundamental irrelevance of the documents defendants seek is further demonstrated by the fact that the price of State Street's common stock plummeted by an astonishing 60% upon State Street's January 2009 announcement that unrealized losses in its Conduits and investment portfolio had increased to <u>$9.9 billion</u> from November 2008. *See Hill*, 2011 WL 3420439, at

---

[4] Defendants' insistence on receiving "all documents" that reference IndyMac, Countrywide, New Century and WaMu demonstrates this point. The *Hill* plaintiffs' complaint <u>specifically alleges</u> that State Street never disclosed that it held investments in these notoriously troubled companies. *See, e.g.*, Compl. ¶¶103, 106, 166. Rather, this information only came to light as a result of the Lead Plaintiffs' extensive investigation prior to filing the Amended Complaint. *Id.*, ¶¶165-67. Indeed, <u>to this day</u>, State Street has refused to confirm whether its Conduits and investment portfolio held securities issued by these companies. Accordingly, any information plaintiffs had during the Class Period about these companies could not possibly have informed their decision to purchase State Street common stock.

The Honorable Judith G. Dein
June 7, 2012
Page 6

*20, *21 ("[I]nvestors felt blind-sided by State Street's January 16 news").  Given this market reaction, it is completely implausible for defendants to contend that general information that investors may have had about MBS securities or SIVs somehow alerted investors to the undisclosed risks inherent in State Street's common stock.  *Id.* at *21 ("[G]iven such a drastic drop . . . it is clear that some of the State Street disclosures simply failed to provide sufficient warning or detail, while others actually obscured as much as they revealed").  For this reason, in circumstances such as these, Courts routinely reject arguments that evidence regarding the knowledge of any individual plaintiff is relevant.  *See, e.g., In re WorldCom Inc. Sec. Litig.*, 02 Civ. 3288 (DLC), 2005 WL 408137, at *4 (S.D.N.Y. Feb. 22, 2005) (excluding testimony regarding plaintiffs' financial advisors' knowledge because "[t]he information and understanding of these financial advisors is an unreliable proxy for the market's knowledge and understanding.").

Finally, even if there was some marginal relevance to the documents defendants seek, it would be far outweighed by the incredible burden involved in searching for and producing them.  As described above, plaintiffs are institutional investors that held billions of dollars in assets during the class period and invested in thousands of securities.  It would be virtually impossible for plaintiffs to search their records for any instance where MBS securities, subprime investments, Conduits, SIVs, "bond funds," "securities lending," "ratings agencies" and dozens of other incredibly common terms are mentioned in any context (whether or not it is related to State Street) over a period of multiple years.  Defendants' requests should be rejected for this reason alone.  *See supra.*

Indeed, permitting such broad and burdensome discovery would frustrate one of the primary purposes of the PSLRA – to encourage sophisticated institutional investors to lead securities class actions.  *See, e.g., Ravins v. Iftikar*, 174 F.R.D. 651, 661 (N.D. Cal. 1997) ("The [PSLRA] affords large, sophisticated institutional investors a preferred position in securities class actions.").  It defies logic to believe that Congress intended for sophisticated investors to have to sift through years of records and investment history unrelated to the securities at issue in the litigation and produce mountains of documents that are, at best, only tenuously related to the claims and defenses in the litigation and extremely unlikely to lead to the discovery of any admissible evidence.  As commentators have recognized, "[d]iscovery from class members . . . is susceptible to being used by the parties as a device to harass and embarrass."  Manual for Complex Litigation, (Third) § 30,12, at 216 (1995).

### III.    Documents Concerning Plaintiffs' Understanding of How Banks Other Than State Street Charged For F/X Transactions Are Irrelevant

Defendants also seek the production of documents relating to plaintiffs' understanding of how banks other than State Street conducted and charged for F/X transactions.  *See* May 18 Letter at 4 (requesting all documents pertaining to "the methods by which banks calculate the

6

The Honorable Judith G. Dein
June 7, 2012
Page 7

rates and in fact charge their clients for FX transactions.")  Specifically, defendants seek the following:

> All Communications with, and all Documents provided to or received from, any of Plaintiff's investors, clients, enrollees, or fund participants, including any annual reports, client letters, newsletters, and marketing materials, concerning any evaluation, assessment, analysis, study, guideline, or recommendation with regard to FX Transactions, FX Rates, FX Transaction Execution . . . .

Def. Doc. Request No. 69; *see also* Def. Doc. Request Nos. 35-37, 71 (seeking other numerous documents related to foreign exchange transactions) (attached as Exhibit A to the May 18 Letter).  As with their other requests, to the extent that defendants are seeking information that is unrelated to <u>State Street</u>, these requests are overbroad, not reasonably calculated to lead to the discovery of admissible evidence, and should be denied.

Plaintiffs have already agreed to produce documents, if any exist, reflecting their knowledge and understanding during the class period of how State Street charged its own custodial clients for foreign exchange transactions.  Plaintiffs understanding, if any, of other companies' methods for calculating foreign exchange rates is simply not relevant here, and for the same relevancy and burden reasons discussed above, the Court should deny defendants' motion to compel on this issue.

Specifically – as with the identities of the particular assets in State Street's Conduits and investment portfolio – investors could not have known whether State Street's methods for calculating foreign exchange rates violated the terms of its custodial contracts, the associated responses to requests for proposal ("RFPs"), or other applicable law without having access to such information particular to State Street, its methods, and its contracts.  Indeed, defendants are refusing to provide such basic information as the terms of its custodial contracts and responses to RFPs in this litigation.  *See* ECF No. 157, at 5-7.  Accordingly, what, if any, information plaintiffs may have had about foreign exchange transactions in general is completely irrelevant.

\*       \*       \*

For the reasons set forth above, defendants' motion to compel plaintiffs to search for an unmanageably broad range of irrelevant documents on dozens of vaguely defined matters is unduly burdensome, seeks irrelevant information, and should be rejected.

Respectfully Submitted,

The Honorable Judith G. Dein
June 7, 2012
Page 8

| /s/ John C. Browne | /s/ William H. Narwold |
|---|---|
| John C. Browne | William H. Narwold |
| Lauren A. McMillen | Badge Humphries |
| **BERNSTEIN LITOWITZ** | **MOTLEY RICE LLC** |
| **BERGER &** | 28 Bridgeside Blvd. |
| **GROSSMANN LLP** | Mt. Pleasant, SC 29464 |
| 1285 Avenue of the Americas | |
| New York, New York 10019 | |

cc.: all counsel (by ECF)

**CERTIFICATE OF SERVICE**

I, Lauren A. McMillen, hereby certify that on this 7th day of June, 2012, a copy of the foregoing was served by ECF filing to counsel for the parties in the above-captioned action.

/s/  Lauren A. McMillen