# WILMERHALE

June 13, 2012

**By ECF**

James W. Prendergast

+1 617 526 6181(t)
+1 617 526 5000(f)
james.prendergast@wilmerhale.com

The Honorable Judith G. Dein
United States District Court
District of Massachusetts
John Joseph Moakley United States Courthouse
1 Courthouse Way - Suite 6420
Boston, MA 02210

Re: <u>Hill v. State Street Corp., Master Docket 09-cv-12146</u>

Dear Judge Dein:

The State Street Defendants write in response to Plaintiffs' May 30, 2012 letter in which they once again seek to compel the production of all documents produced by State Street in the California AG Action ("Letter").

During the April 4, 2012 hearing in this case, the parties and the Court addressed whether and to what extent State Street must produce documents previously produced in a case pending against State Street by the California Attorney General ("the California AG Action"). Plaintiffs argued that State Street should be required to produce all documents from the California AG Action. This Court disagreed, and instead ordered State Street: (i) within two weeks to produce relevant documents from a certain date range, and (ii) within four weeks to log by category what documents were withheld within the date range. State Street timely complied by producing the vast majority of the documents from the California AG Action, and describing the two categories that it withheld (documents concerning only performance, and documents having nothing to do with FX).

Plaintiffs now, under the guise of an argument that State Street failed to comply, once again demand wholesale production of all documents from the California AG Action. However, the Court should again deny the request, because none of the Plaintiffs' arguments has merit: *(i)* using search terms to identify relevant documents was necessary given the volume and timing, and was within the letter of this Court's ruling, *(ii)* State Street's non-production log appropriately listed the only two withheld categories, *(iii)* Plaintiffs are not entitled to the production custody contracts and RFP responses because none were produced in California from within the relevant date range, and *(iv)* Plaintiffs are not entitled to copies of regulatory correspondence, which is irrelevant.

For these reasons, and as set forth below, the Court should deny Plaintiffs' motion.[1]

---

[1] For the Court's reference, State Street's Responses to Plaintiffs' Requests For Production are attached.

WILMERHALE

The Honorable Judith G. Dein
June 13, 2012
Page 2

## I. State Street Complied With Its Production and Logging Obligations

### A. State Street Used an Appropriate Procedure to Identify and Produce Relevant Documents

On April 5, 2012, the Court Ordered State Street to produce from among the California AG Production documents relevant to this litigation. Plaintiffs argue that State Street failed to comply because it used search terms to identify documents for production, and therefore "almost certainly" failed to produce all relevant documents. Letter at 3-4.

However, the use of search terms is precisely the procedure contemplated during the April 4, 2012 hearing. After rejecting Plaintiffs' demand for blanket production of all documents from the California AG Action, this Court described the procedure that it envisioned:

> To me the way – what I'm sort of envisioning, and maybe I'm totally wrong, *is you run your new search terms against your old database and you see what you pull out* and you identify those and then we'll see if we're talking about anything real or not.

Transcript of April 4, 2012 Status Conference at 34 (emphasis added). Indeed, given the Court's order to produce all relevant documents within just two weeks, Plaintiffs cannot seriously argue that State Street was expected to *re-review millions of documents by hand*. State Street's use of search terms complied with the letter and spirit of the Court's requirement.

Moreover, Plaintiffs engage in pure speculation by positing that the search terms "almost certainly" (Letter at 3) missed relevant documents from within 8,000 withheld documents. What documents? The search terms were designed to capture anything in any way relating to foreign exchange. And, if Plaintiffs were unsatisfied with the list of search terms, they should have acted on State Street's repeated invitations to discuss them.[2]

Finally, if Plaintiffs were genuinely interested in receiving relevant documents (rather than blanket production of everything), they would have accepted State Street's reasonable proposed compromise. On June 7, 2012, solely as a compromise (to avoid needless expensive of litigating about 8,000 documents), State Street offered to add the disputed 8,000 documents to the same review and production queue being set up generally to process documents collected for review in this case (*i.e.,* documents not part of the California AG case). Under that procedure, the documents would be reviewed and relevant materials would be produced. Plaintiffs refused.

---

[2] For instance, on February 29, 2012, State Street emailed a list of potential search terms to Plaintiffs and invited discussion. Plaintiffs never responded.

**WilmerHale**

The Honorable Judith G. Dein
June 13, 2012
Page 3

### B. State Street Identified Categories of Non-Produced Documents

At the April 4, 2012 Status Conference, the Court instructed State Street to "identify *the categories of documents* that you're not producing that were produced in California." Transcript of April 4, 2012 Status Conference at 34 (emphasis added). This is precisely what State Street did in the log sent to Plaintiffs on May 2, 2012.

Plaintiffs' primary complaint about State Street's "non-production log" is that it covers only two categories of documents (*i.e.,* documents solely about performance, or having nothing to do with FX). The reason for that is simple: State Street produced nearly everything from the California AG Action, leaving only two *categories* of documents to put on its "non-production log." In their letter, Plaintiffs insist on a log that would require a complete re-review and logging of every document withheld from production. *See, e.g.,* Letter at 4-5 (demanding, *inter alia*, "author" and "recipient" for every document). But that demand is not consistent with the requirement of a log *by category*. Nor does it comport with the entire premise of this exercise, which was to quickly produce materials from the California AG case *without need for manual re-review* (which would take months). Thus, State Street fully complied with its obligations.[3]

### II. Plaintiffs Are Not Entitled to Custody Contracts and RFP Responses

Plaintiffs argue that the Court's April 5 Order compelled State Street to produce requests for proposal ("RFP") and custodial contracts contained in the California AG production, and that State Street wrongfully withheld them. That is incorrect. Per this Court's April 5 Order, the start date for the production was October 17, 2004. All of the custody contracts and RFP responses contained in the California AG production pre-date that cutoff. Thus, State Street was under no obligation to produce or log them.[4]

In any event, most RFP responses and contracts are irrelevant to this litigation, and the relevant ones are already being produced separate and apart from the California AG production. The *Hill* and *Richard* Complaints do not challenge RFP responses and custody contracts generally. Rather, they claim wrongdoing, resultant misreporting of revenues, and the inflation of the price

---

[3] Nevertheless, since the time Plaintiffs challenged the log, in the interest of compromise, State Street has informed Plaintiffs that it is willing to go above and beyond a categorical log to the extent it can do so without unreasonable burden. Specifically, State Street can generate a document by document non-production log of the electronic documents from among the approximately 8,000, to include whatever fields can be automatically electronically populated—*i.e.*, the Date/To/From/CC/File Name/Subject line for each document, where available.

[4] Although State Street had no obligation to log these documents, Plaintiffs are nonetheless wrong in suggesting that State Street was not forthright about its objection to producing them. State Street's objection was far from secret. For instance, State Street's March 21, 2012 responses to Plaintiffs' requests for production state, "Plaintiffs' Requests for the production of information concerning any client beyond those that had an Allegedly Typical Custodial Contract with State Street exceed the scope of relevant discovery permitted under Fed. R. Civ. P. 26(b)(1)." This limitation has already been the subject of meet and confer dialogue.

WilmerHale

The Honorable Judith G. Dein
June 13, 2012
Page 4

of State Street's common stock arising from an alleged fraud perpetrated by State Street in connection with certain foreign exchange trading.  As alleged, State Street perpetrated that fraud by pricing FX transactions for clients in a way that was inconsistent with contractual obligations that were—in Plaintiffs' words—"illustrated by the contract between State Street and the State of California's largest public pension funds, the California Public Employees' Retirement System("CalPERS") and the California State Teachers' Retirement System ("CalSTRS")." (*See, e.g.*, *Hill* Complaint, ¶¶ 42, 43, 51; *Richard* Complaint, ¶¶ 65, 66, 76, 77).  Plaintiffs allege that the FX pricing fraud went beyond CalPERS and CalSTRS insofar as the CalPERS and CalSTRS contracts with State Street were "typical contract(s) between State Street and its custodial clients".  *Id.*  Thus, Plaintiffs' claims are based on an alleged fraud perpetrated against (i) CalPERS, (ii) CalSTRS, and (iii) other clients whose contracts and RFP responses are "typical" (Plaintiffs' word) of CalPERS or CalSTRS.  State Street has already agreed to produce RFP responses and contracts covering these three categories.

Plaintiffs have no basis for demanding that State Street produce RFP responses and contracts that are *not* typical of CalPERS and CalSTRS.  The Complaints do not describe any fraud involving non-typical contracts and RFP responses, or even refer to them.  Plaintiffs now belatedly claim that CalPERS and CalSTRS were just "examples," (Letter at 6), but that's not what the Complaints say.  Plaintiffs are only entitled to discovery on the claim they actually brought (*i.e.,* based on fraud against CalPERS, CalSTRS and other clients having typical contracts).  *See, e.g.*, *Silva v. Pioneer Janitorial Servs., Inc.*, 2011 WL 4729783, at *1 (D. Mass. October 4, 2011) (Dein, M.J.) (denying motion to compel because the information sought was not relevant to claims or defenses at issue); *Thibault v. Bellsouth Telecomms., Inc.*, 2008 WL 4808893, at *3 (E.D. La. Oct. 30, 2008) (courts consider document requests not in the abstract "but rather with respect to the specific claim being asserted"); Fed. R. Civ. P. 26(b)(1).  A fishing expedition for claims not pleaded with regard to clients having a different form of contract (*i.e.,* clients not similarly situated to CalSTRs and CalPERS) is not permitted under the federal rules.  *See, e.g.*, *Sommerfield v. City of Chicago*, 613 F. Supp. 2d 1004, 1015 (N.D. Ill. 2009) (discovery impermissible when not directed to instances where party is "similarly situated.").  The prohibition on discovery untethered to the Complaints applies with particular force where, as here, the Private Securities Litigation Reform Act ("PSLRA") expressly limits discovery to claims that have survived dismissal.  *See, e.g., In re Vivendi Universal, S.A. Sec. Litig*, 381 F. Supp. 2d 129 (S.D.N.Y. 2003) (discovery only permissible once claims have survived dismissal).

Plaintiffs make no headway by protesting that State Street has "unilaterally" identified typical contracts and RFP responses, and failed to describe "what is being withheld."  *See* Letter at 6.  That is all true, but it is perfectly proper; it is how discovery works—parties responding to document requests "unilaterally" make reasonable, good faith efforts to gather documents, review them for responsiveness (based on the requests made, objections thereto, and any court orders), and produce responsive results.  Plaintiffs are in no position to complain about this regime:  in response to State Street's document requests, they too have "unilaterally" gathered

**WilmerHale**

The Honorable Judith G. Dein
June 13, 2012
Page 5

documents for production, and have not told State Street "what is being withheld." This is entirely appropriate; nothing in the Federal Rules entitles either party to audit the other's review process, or to "sample" non-produced documents to confirm their irrelevance. *Compare* Letter at 6 (complaining that Plaintiffs have not received a "sample" of irrelevant, non-typical contracts) *with cases cited supra* (only relevant documents are subject to discovery).

Finally, Plaintiffs are incorrect in speculating that State Street has limited its search for "typical" contracts to those that are "identical or nearly identical" to CalPERS and CalSTRS. To the contrary, State Street has cast a broad net in identifying typical contracts. The challenged RFP response language in the California AG case is as follows:

- "Clients executing foreign exchange transactions with State Street, whether through your dedicated Special Trade Support representative or Global Treasury, are guaranteed to receive the most competitive rates available for all FX transactions, regardless of size, currency or contract type, because all trades are priced based on the interbank rates at the time the trade is executed." (CalPERS RFP Response)

- "All trades are priced based on the interbank rates at the time the trade is executed. As all trades are priced based on the prevailing interbank rate at the time of the trade, we guarantee that State Street Global Trading and Research provides competitive pricing for all foreign exchange transactions, regardless of size, currency or contract type." (CalSTRS RFP Response)

State Street's search has not been limited to contracts or RFP responses containing language that is "identical or nearly identical" to the above. Rather, State Street has searched for anything that shares the challenged feature of the CalPERS and CalSTRS RFP responses (*i.e.,* a guarantee of pricing based on the interbank rate). Examples of variations on the CalPERS and CalSTRS language appearing in contracts or RFP responses that State Street has already identified for production include:

- "We guarantee clients the most competitive rates available as all trades are priced based on the prevailing Interbank rates at the time the trade is executed."

- "Clients executing foreign exchange transactions with State Street, whether through GIMS or Global Treasury, are guaranteed to receive the most competitive rates available for all FX transactions, regardless of size, currency or contract type, because all trades are priced based on the interbank rates at the time the trade is executed."

- "As all trades are priced based on the prevailing interbank rate at the time of the trade, we guarantee that we provide competitive pricing for all foreign exchange transactions, regardless of size, currency or contract type."

WILMERHALE

The Honorable Judith G. Dein
June 13, 2012
Page 6

- "We guarantee clients the most competitive rates available as all trades are priced based on the prevailing interbank rates at the time the trade is executed."

- "We guarantee clients the most competitive rates available as all trades are priced based on the prevailing Interbank rates at the time the trade is executed."

- "As all trades are priced based on the prevailing interbank rate at the time of the trade, we guarantee that State Street Global Markets provides competitive pricing for all foreign exchange transactions, regardless of size, currency or contract type."

- "Whichever method they choose, clients are guaranteed to get the most competitive rates available because all trades are priced based on the prevailing interbank rates at the time the trade is executed."

If State Street identifies other typical contracts or RFP responses, it will produce those too. Plaintiffs are not entitled to anything more.

### III.    Plaintiffs Are Not Entitled to Regulatory Correspondence

Finally, Plaintiffs continue to press their demand for copies of State Street's regulatory correspondence, which is irrelevant.[5]  Plaintiffs' only argument is that such communications are relevant because the California court ordered them produced in the California AG lawsuit.  *See* Letter at 7.  But this is exactly the same argument that Plaintiffs unsuccessfully advanced in their last motion to compel (in which they unsuccessfully argued that all documents from the California AG production are relevant and must be produced here).  As State Street has already explained, the fact of production in California does not make a document relevant here:  the relevance standards are broader in California than here, and the law simply does not require the blanket production of documents from one litigation in another.  *See Harris v. Koenig*, 271 F.R.D. 356, 369 (D.D.C. 2010) (denying motion to compel discovery into other litigations). Plaintiffs offer no independent reason why regulatory correspondence is relevant, and it is not. To the extent regulatory correspondence relates to document production, Plaintiffs will receive the documents if they are responsive in this case.

---

[5] Plaintiffs are incorrect in implying that State Street hid the non-production of regulatory correspondence from them.  That makes no sense:  Plaintiffs were well aware that the correspondence existed, so why would State Street think it could hide its existence via non-production?  Suffice to say, State Street's objection to such production was made clear.  State Street timely objected to production of such correspondence (Response 75 of State Street's Responses to Plaintiffs' Request For Production), and has never deviated from that position.

WILMERHALE

The Honorable Judith G. Dein
June 13, 2012
Page 7

Very truly yours,

/s/ James W. Prendergast

James W. Prendergast
cc: Counsel of record (via ECF)

## CERTIFICATE OF SERVICE

I, James W. Prendergast, hereby certify that this document was filed through the ECF system and will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) dated June 13, 2012.

/s/ James W. Prendergast
James W. Prendergast