WILMERHALE

June 20, 2012

**By ECF**

John J. Butts

+1 617 526 6515 (t)
+1 617 526 5000 (f)
john.butts@wilmerhale.com

The Honorable Judith G. Dein
United States District Court
District of Massachusetts
John Joseph Moakley Courthouse
One Courthouse Way, Suite 6420
Boston, MA 02210

Re:   *Hill v. State Street Corp. et al.*, 09-12146 (GAO)
      *Kenney v. State Street Corp. et al.*, 09-10750 (DJC)

Dear Judge Dein,

I am writing on behalf of the State Street Defendants in response to Plaintiffs' May 30, 2012 letter in which they seek to compel the production of documents related to State Street's accounting for four asset-backed commercial paper conduits.

Plaintiffs' motion reflects a significant change in position which speaks volumes about just how "important" these documents are to Plaintiffs' claims. In the motion to dismiss briefing for the Securities Action, Plaintiffs walked away from any challenge to the way in which State Street accounted for the conduits by choosing not to respond *at all* to the State Street Defendants' detailed showing that the Amended Complaint's accounting theory was utterly incorrect. And there is a rich body of law establishing that such silence is an abandonment of the claims at issue. Plaintiffs should, therefore, not be able to use those allegations as a basis for discovery.

No doubt recognizing this, Plaintiffs' primary argument on this motion is that accounting-related documents are relevant to the Plaintiffs' claims that State Street's former CEO misled the market by referring to the conduits' assets as "high quality." That argument is simply incorrect. This case will turn on whether, in context, "high quality" meant that there was a low risk of default (as the State Street Defendants submit) or somehow was an assurance that the market price of these assets would not fall any further during the darkest days of the recent financial crisis (as Plaintiffs submit). But the meaning of the term "high quality" will not turn on whether the complex accounting rules for variable interest entities (FIN 46R) required State Street to consolidate the conduits' balance sheets with its own sooner than State Street did.

Although this case is still in its early stages, it is clear that the scope of discovery will be very broad since Plaintiffs have asserted claims about disparate subject matters such as the conduits, State Street's investment portfolio, foreign exchange trading, and ERISA. Indeed, Plaintiffs thus far have served ***two hundred and thirty*** document requests that seek an extraordinary array of documents, many of which seek a decade's worth of documents. Given the broad scope of the claims and defenses that are actually in dispute and Plaintiffs' substantial discovery demands,

WILMERHALE

The Honorable Judith G. Dein
June 20, 2012
Page 2

Plaintiffs should not also be given license to go on a fishing expedition for information about unrelated issues like conduit accounting.

For these reasons, and as set forth below, the Court should deny Plaintiffs' motion.

I.      **Plaintiffs Have Effectively Abandoned Any Claim Regarding Conduit Accounting.**

Plaintiffs' response to the State Street Defendants' objection that Plaintiffs effectively abandoned any conduit accounting claim is an afterthought, and it is easy to see why. Although a section of the Amended Complaint in the Securities Action was sub-titled "Defendants' Accounting for the Conduits Violated GAAP," *see* ¶¶ 208-22, Plaintiffs walked away from those allegations rather than defend them against the Defendants' motion to dismiss.

"A plaintiff who makes a claim . . . in his complaint, but fails to raise the issue in response to a defendant's motion to dismiss . . ., has effectively abandoned his claim . . . ." *Carvalho v. Equifax Information Servs., LLC*, 629 F.3d 876, 888 (9th Cir. 2010); *see also Markert v. PNC Fin. Servs. Grp., Inc*., 828 F. Supp. 2d 765 (E.D. Pa. 2011) ("Where an issue of fact or law is raised in an opening brief, but it is uncontested in the opposition brief, the issue is considered waived or abandoned by the non-movant in regard to the uncontested issue."); *Adams v. New York State Educ. Dept*., 752 F. Supp. 2d 420, 426 n.5 (S.D.N.Y. 2010) (dismissing claim on the grounds that plaintiff "did not respond to Defendants' motion to dismiss as to this claim and thus . . . the claim should be deemed abandoned"); *Ferdinand-Davenport v. Children's Guild*, 742 F. Supp. 2d 772, 777 (D. Md. 2010) (dismissing claim because plaintiff abandoned her discriminatory discharge claim by failing to respond to arguments made in motion to dismiss); *Elkins v. Elkins*, No. 09-582-P-H, 2010 WL 2301152, at *4 (D. Me. June 7, 2010) ("Although Erika Elkins's complaint is not limited to her quest to nullify the libel judgment, that objective is the only objective she advances in opposition to the motions to dismiss, which amounts to an abandonment of her other claims.").

Plaintiffs make no serious response to the fact that they abandoned these allegations. Nor can they. In their opening brief on the motion to dismiss the Securities Action, the State Street Defendants directly challenged Plaintiffs' allegations that the accounting rules required State Street to consolidate the conduits' financial statements earlier than State Street did. *See* Defs.' MTD Br., Dkt. No. 70, at 13-16 & 42-45. Among other things, the State Street Defendants described in detail (1) the accounting rules that govern the consolidation of the conduits' losses, (2) the conclusions State Street drew from those rules regarding consolidation, and (3) State Street's thorough disclosure of those conclusions and their bases. *See id.* at 43-44. Plaintiffs put forward *no defense whatsoever* to this showing, and, in fact, did not even mention in their opposition the allegations on which they now implicitly rely for this motion. *See generally* Opp. Br., Dkt. No. 79; Pls.' Letter at 3 (appearing to recognize that the opposition did "not mention[]"

WILMERHALE

The Honorable Judith G. Dein
June 20, 2012
Page 3

these issues). The State Street Defendants thereafter made their position clear in their reply brief that Plaintiffs had "walk[ed] away from their allegations that any GAAP violation occurred" in connection with the conduits. Reply at 21, Dkt. No. 84. Even more telling is that Plaintiffs did not quarrel with that assertion at the hearing, or even mention conduit accounting. *See* Hearing Tr. (Feb. 16, 2011), Dkt. No. 94, at 49:20 – 56:4; Hearing Tr. (Feb. 17, 2011), Dkt. No. 95, at 3:6 – 13:1, 25:1 – 29:4 (lacking any reference by Plaintiffs' counsel to allegations about conduit accounting).

In light of Plaintiffs' silence on this issue, Judge Gertner understandably did not address any accounting allegations in her decision. The closest she came was:

> The Securities Action Plaintiffs . . . allege that State Street; its Chairman of the Board of Directors and CEO during the class period, Logue; and its Executive Vice President and CFO during the claim period, Resch . . . violated the Exchange Act by making false and misleading statements concerning both their FX trading business and the debt securities contained in State Street's investment portfolio and four asset-backed commercial paper conduits. In do doing, Plaintiffs claim, Defendants also violated generally accepted accounting principles ("GAAP").

Mem. and Order, Dkt. No. 108, at 16. That fleeting reference to GAAP cannot be reasonably read to suggest that Judge Gertner sustained conduit accounting allegations that Plaintiffs chose not to defend. If anything, Judge Gertner's reference to GAAP should be interpreted as speaking to *FX issues* given her subsequent analysis of Plaintiffs' claim that "Defendants violated the Exchange Act by misstating . . . the FX revenue it had earned." *Id.* at 17. There is nothing remotely similar about conduit accounting.

But now, almost two years after Plaintiffs chose not to mention conduit accounting issues in their opposition, accounting issues are suddenly front and center as they press to dramatically expand the scope of discovery. But Plaintiffs fail to cite any authority to refute the fact that silence in the face of a motion to dismiss is the abandonment of the claims at issue. *See Carvalho*, 629 F.3d at 888 (concluding that plaintiff's effective abandonment of claims at the motion to dismiss stage also precluded plaintiff from raising claims on appeal). Plaintiffs' citation to *Nieves-Vega v. Ortiz Quiñones*, 443 F.3d 134 (1st Cir. 2006), certainly does not. In that case, the First Circuit concluded only that an express disavowal of a claim constitutes the claim's abandonment, but it did not address whether a plaintiff's silence does the same. *Id.* at 138 n.2.

The only other case Plaintiffs cite, *Pacific Bell Tel Co. v. Linkline Communc'n,* 555 U.S. 438 (2009), has no bearing on the viability of a claim in a situation like this. *Pacific Bell* addresses a case in the "unusual posture" of a plaintiff requesting that a decision in his own favor be vacated so that the plaintiff could allege a new theory in support of its claim. *Id.* at 446-47. The

WilmerHale

The Honorable Judith G. Dein
June 20, 2012
Page 4

defendants characterized this unusual request as a "confession of error" by the plaintiff, and asked that the case be declared moot. The question presented to the Court was whether a live dispute remained between the parties, given the defendants' view that the plaintiffs had conceded defeat. *Id.* at 446. The Court concluded that because the plaintiff continued to refer to his original allegations during the appellate proceedings, the Court could not say that the plaintiff had conceded defeat as opposed to just seeking to pursue an alternate theory—and therefore it held that the case remained a live controversy. *See id.* at 447 (citing plaintiff's comments in briefing and at oral argument). *Pacific Bell*'s unique procedural posture has no significance here.

Nor can Plaintiffs look to the *Kenney* case as a basis for conducting discovery as if there were a live accounting claim. As Your Honor noted in her recommendation on *Kenney's* motion to amend, the amended *Kenney* complaint "does not allege that the timing of the consolidation was inappropriate under applicable accounting standards." Report and Recomm. on Pl.'s Motion for Leave to Amend, No. 09-civ-10750, Dkt. No. 141, at 20 n.4; *see* Memo. and Order on Objections to Report and Recomm., Dkt. No. 156 at 8 (Judge Casper noting Plaintiffs' "failure to allege that Defendants' accounting was improper").

## II.     Discovery Into Conduit Accounting Is Overly Broad, and Unduly Burdensome.

Plaintiffs already appear to be taking a scorched earth approach to discovery, serving on the State Street Defendant 230 document requests, many of which seek more than a decade's worth of documents. Although discovery under the Federal Rules may be broad, it is not boundless. *See Herbert v. Lando*, 441 U.S. 153, 177 (1979) ("[J]udges should not hesitate to exercise appropriate control over the discovery process."). Among other things, discovery must be limited to documents that are relevant to the "actual" claims and defenses in the case. *See* Fed. R. Civ. P. 26(b)(1); Advisory Committee's Notes to 2000 Amendments (discovery should "focus on the *actual* claims and defenses involved in the action") (emphasis added). As shown above, conduit accounting is well outside those boundaries.

Plaintiffs' actual conduit claims are that some of the State Street Defendants violated ERISA (*Kenney*), and some of the State Street Defendants violated the federal securities laws (*Hill*) because statements that the conduit assets were "high quality" supposedly artificially inflated the price of State Street's stock, and as Kenney alleges, made State Street's ESOP an imprudent investment. Although the context of the statements at issue reveals that "high quality" meant credit risk, Defendants have agreed to provide wide ranging discovery in response to the more than *eighty-eight* conduit-related document requests Plaintiffs served. And contrary to Plaintiffs' assertions, that discovery will include a substantial volume of documents concerning the "performance, value and quality of the Conduit assets" and "State Street's internal assessments of the Conduits' asset values and risk of loss," the two issues Plaintiffs claim are critical. More

WILMERHALE

The Honorable Judith G. Dein
June 20, 2012
Page 5

specifically, although the parties are still discussing a number of Plaintiffs' requests, the State Street Defendants have already agreed to provide:

- Documents discussing (i) risk associated with potential defaults of conduit assets or (ii) risk of declines in the mark-to-market value of those assets (Pls.' Letter Ex. C, Response to Request No. 131);

- The conduits' monthly, quarterly, and year-end financial statements (Response to Request No. 87);

- Documents sufficient to identify the conduit assets and monthly value (Response to Request No. 99);

- Documents sufficient to identify the credit ratings of the assets held by the conduits (Response to Request No. 106);

- Documents sufficient to show the calculation of unrealized mark-to-market losses (Response to Request Nos. 102, 159);

- Documents sufficient to show the methodologies used to assess the mark-to-market value of assets held by the conduits (Response to Request No. 129);

- Documents concerning the factual basis for the October 15, 2008 statement that "the asset quality of . . . the conduits remains high" (Response to Request No. 137);

- Documents concerning the preparation of certain statements referring to the "high quality" of assets held by the conduits (Response to Request No. 140);

- Documents concerning the reason(s) for the conduit's issuance of additional first-loss notes during the first two quarters of 2008 (Response to Request No. 149);

- Documents sufficient to show the quarterly calculation of State Street's tangible common equity ("TCE") ratio and pro forma TCE ratio (*i.e.*, what the ratio would be if State Street had to consolidate the conduits) (Response to Request No. 166); and

WILMERHALE

The Honorable Judith G. Dein
June 20, 2012
Page 6


- Documents sufficient to show the plan State Street announced on or about February 5, 2009 to strengthen its TCE ratio and State Street's reasons for implementing the plan (Response to Request No. 174).[1]

These documents belie Plaintiffs' suggestion that they need discovery relating to conduit consolidation to be able to uncover documents relating to "[1] the 'risk of loss' associated with the Conduits, [2] the valuation of the risky residential mortgage backed securities, securitized credit card debt, securitized student loans and other assets held by the Conduits, and [3] the ever changing 'loss models' and valuation methodologies used by State Street."  To the extent these areas are proper subject matters for discovery, the State Street Defendants have agreed to produce, among other things, [1] documents discussing risks associated with potential default of conduit assets or risk of declines in the mark-to-market value of those assets, [2] documents sufficient to identify the value of each asset held by the conduits on a monthly basis, and [3] documents sufficient to show the methodologies used to assess the mark-to-market value of assets held by the conduits.

There is no valid justification for Plaintiffs to stray into topics that were written as if Plaintiffs were pursuing a claim for accounting fraud.  For example, Plaintiffs seek in this motion documents concerning "State Street's compliance (or lack thereof) with its accounting policies and the accuracy of State Streets financial statements in connection with the Conduits," the interactions with State Street's auditor, Ernst & Young, whether consolidation was required under FIN 46R, and State Street's FIN 46 loss model.  *See* Pls.' Letter at 4-5.

Those subject areas simply are not relevant to the parties' claims and defenses.[2]  For example, documents concerning how State Street understood and complied with the FIN 46R accounting rules have no bearing on the "quality" of the conduits' assets, either under Plaintiffs' professed understanding of that term (future market price) or State Street's (low risk of default). Furthermore, the determination of whether the conduits had to be consolidated onto State Street's balance sheet turned on the results of a sophisticated financial model that simulated hundreds of thousands of probability-weighted scenarios, performed stress tests and sensitivity analyses, and then compared possible cash flows from estimated cash flows.  *See* Defs.' MTD Br., Dkt. 70, at 13-16.  State Street then had to evaluate that result against the amount of first-loss notes the conduits had outstanding to see whether State Street or the first-loss note holders were projected

---

[1] In addition, the State Street Defendants have already provided the securities plaintiffs with more than 600,000 pages that were previously produced in *Kenney*, the vast majority of which relate to the conduits.

[2] The initial disclosures Plaintiffs cite from *Kenney* are not to the contrary.  To begin with, they were served on February 19, 2010 (Pls.' Letter Ex. B) in response to a superseded complaint and prior to Judge Saris's ruling on the motion to dismiss which was issued nearly a month later on March 15, 2010.  *See Kenney v. State Street Corporation*, 694 F. Supp. 2d 67 (D. Mass. 2010).

WilmerHale

The Honorable Judith G. Dein
June 20, 2012
Page 7

to bear the majority of any loss projected by the model. *See id.* The model does not predict whether an asset is likely to default or how its market price may change.

Moreover, even if the Court were to accept that the documents Plaintiffs seek might turn up something marginally relevant to the parties' actual claims and defenses, any such relevance would be outweighed by the undue burden of adding such wide ranging discovery. As it is, the State Street Defendants expect to produce, at an extraordinary cost, *millions* of pages of documents about the quality of the assets held by the conduits. As the First Circuit has held, parties "ought not to be permitted to use broadswords [in discovery] where scalpels will suffice, nor to undertake wholly exploratory operations in the vague hope that something helpful will turn up." *Mack v. Great Atl. & Pac. Tea Co., Inc.*, 871 F.2d 179, 187 (1st Cir. 1989). The Federal Rules likewise prohibit discovery like this which is "unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive," or where "the burden or expense of the proposed discovery outweighs its likely benefit." Fed. R. Civ. P. 26(b)(2)(C)(i) & (iii).

This principle is entirely consistent with the Court's prior discovery ruling in *Kenney*. Specifically, although the Plaintiff sought wide-ranging documents about conduit consolidation, the Court only ordered the production of "hard copy work papers concerning conduit consolidation." Pls.' Letter Ex. A at 2. Although the State Street Defendants respectfully do not consider those documents to be relevant here, they have agreed to produce them. *See* Pls.' Letter Ex. C, Response to Request No. 167.[3] But Plaintiffs' attempt to go far broader by seeking "*all documents*" responsive to more than 14 multi-year requests targeted on accounting issues cannot be justified in the absence of a live accounting claim.

For these reasons, State Street Defendants respectfully request that the Court deny Plaintiffs' motion.

Sincerely,

/s/ John J. Butts

John J. Butts
cc: Counsel of record (via ECF)

---

[3] Judge Saris allowed the State Street Defendants' motion for summary judgment in *Kenney* before those documents were produced. The State Street Defendants anticipate producing them very shortly.