# WILMERHALE

August 1, 2012

**By ECF**

Timothy Perla

+1 617 526 6696(t)
+1 617 526 5000(f)
timothy.perla@wilmerhale.com

The Honorable Judith G. Dein
United States District Court
District of Massachusetts
John Joseph Moakley United States Courthouse
1 Courthouse Way - Suite 6420
Boston, MA 02210

Re: <u>Hill v. State Street Corp., Master Docket 09-cv-12146</u>

Dear Judge Dein:

I write on behalf of the ERISA Defendants ("Defendants")[1] in response to the ERISA Plaintiffs' ("Plaintiffs") July 18, 2012 letter motion to compel the production of certain documents ("Motion" or "Mot.").

In their Motion, Plaintiffs in effect seek to compel Defendants to produce virtually every shred of paper relating to the State Street Salary Savings Program ("the Plan"), even though this case concerns just one of many Plan investment options (*i.e.,* the Employee Stock Ownership Program, "ESOP"). However, Plaintiffs' motion proceeds from—and fails based on—the false premise that Defendants have "refused to search for or produce discoverable documents that do not specifically reference the ESOP." In reality, Defendants are producing *many categories of ERISA documents unrelated to the ESOP*. These include, but are not limited to, minutes and meeting materials from the relevant committee, minutes from other committees, Plan communications, information about Plan investments, information about Plan participants, and other documents. These categories more than meet Plaintiffs' professed need to go beyond the ESOP to understand generally who administers the Plan and how. Inexplicably, Plaintiffs' Motion acknowledges none of this agreed-upon production, which had already begun.

More accurately framed, the parties' dispute concerns whether—in addition to everything Defendants are already producing—they must search for *email* concerning the ERISA plan that has *nothing to do with the ESOP*. Such a search is unwarranted. It is one thing for the ERISA Defendants to gather and produce complete sets (*i.e.* not limited to ESOP) of discrete documents such as minutes and plan communications. It is quite another to conduct an email search for *any message in any way relating to the Plan*. Even if that search could be conducted with reasonable burden, it would be unwarranted. The Plan offers a wide variety of investment options, but

---

[1] The ERISA Defendants are: Charles Curtrell, Stephen DeSalvo, Jayne Donahue, Pamela Gormley, David Gutschenritter, Kathryn Horgan, Lee Jones, Ronald Logue, Jacques Longerstaey, James Malerba, Ross McLennan, David O'Learly, Allison Quirk, Doreen Rigby, and Anne Tangen (the "Individual ERISA Defendants"), and State Street Corporation, State Street Bank and Trust Company, the North American Regional Benefits Committee of State Street Corporation ("NARBC"), and the Investment Committee of State Street Corporation.

WILMERHALE

The Honorable Judith G. Dein
August 1, 2012
Page 2

Kenney and Richard Complaints challenge just *the ESOP*. As a result, the most burdensome aspect of discovery—email—is appropriately targeted to the ESOP. Plaintiffs do not and cannot claim that they are being deprived of any documents concerning the ESOP. And, to the extent Plaintiffs want to understand the Plan more generally, documents being produced suffice.

For these reasons, and as further described below, the ERISA Defendants respectfully request that this Court decline to further expand an already broad and burdensome scope of discovery, and deny Plaintiffs' motion.

## I. Plaintiffs Are Not Entitled to Every Shred of Paper Concerning the Plan

### A. Defendants Are Already Making a Very Extensive Production of ERISA Documents Not Limited to the ESOP

The premise of Plaintiffs' Motion is that Defendants have "refused to search for or produce discoverable documents that do not specifically reference the ESOP." This is simply not true. Defendants have already committed (prior to this motion being filed) to producing:

1. All non-privileged minutes and resolutions of and materials provided to the NARBC for the period October 17, 2004 through October 19, 2011;[2]

2. All non-privileged minutes and resolutions of and materials provided to the Investment Committee for the period October 17, 2004 through October 19, 2011;

3. All non-privileged minutes and resolutions of and materials provided to the Executive Committee for the period October 17, 2004 through October 19, 2011, to the extent that they refer to the Plan (not just the ESOP);

4. Documents sufficient to show *all* investment options available under the Plan, as well as their performance;

5. Documents sufficient to show the Board of Director's and/or Executive Committee's authority to appoint or remove members of the Benefits and Investment Committees;

6. Non-personalized Plan communications to Plan participants in connection with 29 CFR § 2550.404c, including but not limited to Plan documents and summary plan descriptions;

7. Account statements and the employment files for Casey J. Richard and Thomas U. Kenney;

8. Forms of claim releases and/or covenants not to sue that relate to ERISA claims and were signed by Plan participants; and

---

[2] The NARBC is the committee that administers the Plan.

The Honorable Judith G. Dein
August 1, 2012
Page 3

WilmerHale

    9. Documents sufficient to show the Plan participants who executed the releases and covenants.

None of these categories of documents is limited to those that reference the ESOP. *See, e.g.*, May 8, 2012 Telephonic Meet-and-Confer (defendants agree to provide committee minutes, forms of claim releases and covenants not to sue); June 28, 2012 Telephonic Meet-And-Confer (defendants agree to provide committee minutes, forms of claims releases and covenants not to sue, account statements and employment files of Richard and Kenney); July 4, 2012 Letter of Timothy Perla, Esq. to Michelle Blauner, Esq. ("We intend to produce on Wednesday, July 18, 2012 the NARBC minutes and packages dating from March 2007 through October 2009. Thereafter we will make a production of earlier-dated NARBC minutes."); July 10, 2012 Letter of Gregory Chisholm, Esq. to Michelle Blauner, Esq. ("We will produce forms of all relevant releases signed by prospective class members, as well as the names of the prospective class members who signed each type of form."); July 18, 2002 Email of Gregory Chisholm, Esq. to Robert Ditzion, Esq. Michelle Blauner, Esq., Mark Levine, Esq., and Patrick Slyne, Esq. ("We will produce committee minutes covering the entire date range of 10/17/2004 through 10/19/2011. The subset produced today was an effort to get you what we could quickly.").

Plaintiffs nonetheless argue that they are being denied documents reflecting how the Plan was administered, how investments were selected, retained, monitored or liquidated, and who the relevant fiduciaries were.[3] As the above list testifies, this is simply not true. The above categories provide exactly the information Plaintiffs insist they are being denied: the process by which Defendants undertook their duties, the identity of individuals who administered the Plan and the process by which they did so, and the process by which Defendants assessed non-ESOP investments. To the extent the committees took action related to *any* Plan investments (ESOP or otherwise), such action is reflected in the very minutes and materials that Defendants have already agreed to produce.[4]

---

[3] Plaintiffs employ numerous, but nearly identical, rhetorical phrasing for the their claim: Plaintiffs claim to be denied "document reflecting how the Plan was administer, including who the fiduciaries were, the nature of their duties set forth under ERISA and in the Plan documents, how they carried out those duties, and how they were supervised an monitored;" in reference to Plaintiffs' Document Request No. 186, "discovery concerning the guidelines and procedures for selecting, removing, and monitoring investment option;" "[d]ocuments reflecting the process that ERISA Defendants (through committees) followed in selecting or removing investment options under the Plan, and for the evaluation, selection, monitoring, retention, and liquidation of Plan investments;" "documents relating to the process that fiduciaries used to asses and monitor Plan investments;" and "documents concerning the interpretation or implementation of any of the provisions of the Plan and the Plan's trust agreements."

[4] For example, Plaintiffs' claim that they are being denied "documents reflecting the process that Defendants followed in selecting or removing investment options under the Plan, and for the evaluation, selection, monitoring, retention, and liquidation of Plan investments" (emphasis supplied). Not true: the committee documents being produced will reflect how Defendants (through committees) took this action.

WilmerHale

### B. Defendants Have Also Already Agreed to Conduct an Expansive Email Search, Which Must be Limited to ESOP-Related Documents

In addition to producing all of the documents listed above, Defendants have agreed in connection with the ERISA claims to search for, collect, and review email from 15 custodians (the Individual ERISA Defendants, members of the relevant committees).[5] As part of this effort, Defendants will search for, collect, and review each email that contains *any* reference to the ESOP (using many search term variants).[6] Plaintiffs, however, seek to compel Defendants to broaden this search and production to encompass *all* email relating to the Plan, whether or not it concerns the ESOP. The Court should not order that.

Plaintiffs' proposal—effectively a demand for scorched-earth production of all documents touching upon the Plan—is overbroad, and calls for irrelevant documents. The Plan is a self-directed ERISA retirement plan that offers participants a large menu of investment options (at least 20) including, *e.g.,* mutual funds, target retirement funds, a brokerage account, and an ESOP. However, the Kenney and Richard Complaints are both premised on allegations that the fiduciaries breached their duties to prudently administer *the ESOP*. *Kenney v. State Street Corp. et al.*, No 09-cv-10750-DJC, Second Amended Complaint (Sept. 20, 2011) (Dkt. No. 157) ¶ 38 ("Throughout the Class Period, State Street Common stock was not a prudent investment for the Participants' individual retirement accounts under the Plan"); *id.* ¶ 42 ("State Street stock performed significantly worse than available alternative prudent investments during the Class Period"); *id.* ¶ 92 ("It was imprudent of Defendants to permit Plan Participants to continue to purchase and/or maintained investments in State Street stock"); *Richard v. State Street Corp., et al.*, No. 10-cv-10184-GAO, First Amended Complaint (June 28, 2010) (Dkt. No. 46) ¶ 2 ("State Street Corporation … common stock is one of the investment alternatives made available to Plan participants"); *id.* ¶ 3 ("Plaintiff is a participant in the Plan who invested in State Street stock through the Company Stock Fund [i.e., the ESOP]. He brings this suit on behalf of a class all [sic] participants in the Plan who had any portion of their plan accounts allocated to the Company Stock Fund"); *id.* ¶ 144 ("assets invested in Company stock were imprudently invested"); *id.* ¶ 147 ("Defendants' liability … aris[es] out of the Plan's imprudent investments in State Street stock."); *id.* ¶ 150 ("Plaintiff bring this action as a class action … on behalf of all participants in or beneficiaries of the Plan who allocated any portion of their Plan account to the Company Stock Fund [i.e., the ESOP]."). Nothing in the Complaints makes any challenge to the

---

[5] Charles Curtrell, Stephen DeSalvo, Jayne Donahue, Pamela Gormley, David Gutschenritter, Kathryn Horgan, Lee Jones, Ronald Logue, Jacques Longerstaey, James Malerba, Ross McLennan, David O'Learly, Allison Quirk, Doreen Rigby, and Anne Tangen.

[6] The precise search protocol to be used is: "ESOP" OR "employee! stock ownership plan" OR "employer securities" OR "employer security" OR "employer stock" OR ("SPD" "Summary Plan Description" w/10 "company stock" "state street stock" "state street corporation stock" "employe! Stock") OR "State Street Corporation Stock Fund" OR "State Street Stock Fund."

**WILMERHALE**

The Honorable Judith G. Dein
August 1, 2012
Page 5

ERISA Defendants' administration of other Plan investments.[7]  Thus, aspects of the Plan other than the ESOP are not relevant.  Plaintiffs offer two contrary arguments, but neither establishes relevance.

*First*, Plaintiffs argue that they need to understand "who administered the Plan."  Mot. at 5-7.  This issue is makeweight—the members of the NARBC administered the Plan.  Plaintiffs know this already because *they sued these people*, and presumably did so in good faith.  If there is any remaining doubt, Defendants are producing all non-privileged meeting minutes and materials from all NARBC meetings over a many-year period.[8]  Plaintiffs will see not only "who" is on the NARBC, but also precisely what they did during each and every meeting.  *Compare* Mot. at 5-7 (Plaintiffs erroneously arguing that existing production will not allow them to see how the Plan was administered).

Further, Plaintiffs cannot seriously contend that all aspects of Plan administration are relevant.  Indeed, the NARBC's duties include such irrelevant matters as health insurance, disability benefits, benefits related to medical leave, and life insurance.

Plaintiffs' fare no better arguing that they need limitless Plan discovery because Defendants "do not admit that they are Plan fiduciaries."  Mot. at 5.  That is true, but does not justify additional discovery.  ERISA fiduciary status with respect to a plan is not a binary choice—a person is an ERISA fiduciary only "to the extent" that they have discretionary authority with respect to a particular issue.  *See* 29 U.S.C. S 1002(21)(A) (defining fiduciary).  Given this definition, courts routinely find that persons are ERISA fiduciaries for some purposes, but not others.  *See, e.g.*, *Beddall v. State Street Bank & Trust Co.*, 137 F.3d 12 (1st Cir. 1998) ("fiduciary status is not an all or nothing proposition"); *Haddock v. Nationwide Fin. Servs., Inc.*, 419 F. Supp. 2d 156, 165 (D. Conn. 2006) ("courts construing ERISA have held that an entity can be a fiduciary with respect to a plan for some purposes, but not others"); *Coleman v. Nationwide life Ins. Co.*, ("in other words, a court must ask whether a person is a fiduciary with respect to the particular activity at issue").  Thus, the relevant question is whether Defendants were fiduciaries *with respect to the ESOP*.[9]  Thus, the relevant scope of discovery concerns documents relating to the ESOP.  Examining whether a Defendant was a fiduciary with respect to issues other than the ESOP would be irrelevant to establishing fiduciary status that matters in this case.  As such,

---

[7] Apart from one target retirement fund each, Kenney and Richard were not even invested in any of the other options besides ESOP.

[8] To the extent Plaintiffs surmise a role for the Investment Committee or the Executive Committee, those minutes are being produced as well.

[9] One cannot take for granted that *any* of the Defendants were fiduciaries with respect to the ESOP because fiduciary status turns on discretionary authority, and the Plan did not permit removal of the ESOP as an investment option (*i.e.,* no discretion).

WILMERHALE

The Honorable Judith G. Dein
August 1, 2012
Page 6

Defendants' proposed production – many hard copy documents concerning the entire Plan plus email concerning the ESOP – is appropriately tailored and sufficient.

*Second*, Plaintiffs argue that they need to examine Defendants' administration of non-ESOP investments, apparently hoping to make some comparison (*i.e.,* if the Defendants did X, Y, and Z to administer a mutual fund, then why not the ESOP?). As an initial matter, Plaintiffs have not explained—and it is far from obvious—how any such comparison could be valid. It does not follow that one should administer an ESOP in the same way as a mutual fund, or a mutual fund in the same way as a brokerage account, etc.

More importantly, even if the administration of non-ESOP investments were tangentially relevant to support some comparison, that would not justify a scorched-earth email search. Defendants have already agreed to produce all meeting materials from the NARBC, a listing of all investment options, all plan communications (on any issue), and other documents that speak to the administration of the Plan generally. This will amply show how the Defendants administered the Plan and its investment options. A costly search for non-ESOP email is, under these circumstances, "unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive." *See* Rule 26(b)(2)(C)(i); *New Park Entertainment LLC v. Electric Factory Concerts, Inc.*, No. Civ.A. 98-775 , 2000 WL 62315, *6 (E.D. Pa. 2000) (denying motion to compel where discovery sought is of "some marginal value" but "the burden and expense of producing the information outweighs the likelihood of finding relevant material"); *City of Waltham v. U.S. Postal Serv*., 11 F.3d 235, 243 (1st Cir. 1993) ("The court has broad power to control discovery. In doing so, it can weigh discovery burdens against the likelihood of finding relevant material").[10]

---

[10] Plaintiffs' cited authority are inapposite. In neither *Beauchem* nor *Hammond* was the cost or burden to the producing party weighed against the benefit to be derived from the discovery sought. *Beauchem v. Rockford Products Corp.*, No. 01 C 50134, 2002 WL 100405 (N.D. Ill. Jan. 24, 2002); *Hammond v. Trans World Airlines*, Inc., No. 89 C 8398, 1991 WL 93498, (N.D. Ill. May 22, 1991). Further, the relevance of the discovery sought in those cases is not analogous to the case here because the allegations of wrongful conduct in each of those cases is much different than what is alleged here. The *Beauchem* plaintiff alleged that specific purchases and sales of company stock by the ESOP were improperly valued compared to valuations given the same stock by two other specific plans. *Beauchem*, 2002 WL 100405 at *1-2. In such a case, documents relating to the valuation of company stock by the other plans are relevant to the claimed misevaluation by the ESOP. *Id.* Here, no such dispute or allegation exists. In *Hammond*, the claims centered on the short-notice (10 days) termination of a retirement plan, not on the management of an ESOP. *Hammond*, 1991 WL 93498 at *1. Finally, the *Beauchem* is further distinguishable because many of the documents that were ordered produced in *Beauchem* are already being produced by Defendants in this case (e.g., "board minutes," "minutes of the meetings of fiduciaries for the non-ESOP plans"). *Beauchem*, 2002 WL 100405 at *2.

**WilmerHale**

    **C.**    **The Current Email Custodian List is Sufficient, Particularly Where Plaintiffs Cannot Proffer a Single Name to Add (Other than "Jane Doe")**

Plaintiffs also claim that the ERISA Defendants "have completely failed" to search the email of appropriate custodians. This, too, is not true. Defendants have committed to searching the documents of 15 custodians, including the Individual ERISA Defendants (members of the relevant committees). Although Plaintiffs protest loudly, they *fail to offer a single additional name that they think should be added to the custodian list*, instead taking silly positions such as that email boxes of the "Jane Doe" defendants should be searched. Mot. at 8.

This omission is telling because, at Plaintiffs' request as part of the meet and confer process, Defendants already produced nearly three year's worth of NARBC minutes and materials. These documents provide the names of the attendees of each meeting and the authors of materials provided thereto, and a window into the Committee's work. Even with those documents in hand—core materials from the core time period—Plaintiffs cannot muster a single custodian name that they claim is missing.

Under such circumstances, the appropriate result is simple. The Court should deny Plaintiffs' motion (indeed, Defendants would have no idea how to comply with an order to add custodians like "Jane Doe"). If Plaintiffs later find a new custodian who they think is relevant, Defendants will stand willing to meet-and-confer to discuss the propriety of including such a person as a custodian for search.

**II.**    **Plaintiffs Mischaracterize Defendants' Posture on Draft Documents, and Otherwise Have Made No Reasonable Effort to Identify Relevant Drafts**

Plaintiffs next claim that Defendants "have refused to produce drafts of otherwise discoverable documents." This, too, is not true. Defendants have agreed to produce responsive final documents, as well as non-privileged drafts of those documents (located via a reasonable search) which contain relevant edits, but not drafts where the variations from the final are irrelevant. For example, if the final document addresses ten issues, of which one is relevant, State Street would not produce drafts it located that are the same as the final as to the only relevant issue.

Defendants' intention is to avoid having to conduct a very broad search for, and logging or production of, *all drafts*, irrespective of relevance. For instance, all three of the consolidated cases relate to State Street's SEC filings—*Hill* and Richard challenge those filings directly and the Kenney Complaint relies extensively on information contained in them. As a result, the relevant custodians include those who reviewed the filings, or otherwise received copies. Their email is likely to be littered with drafts of these filings. Identifying and potentially producing every draft of every SEC filing is neither practical nor necessary. If a draft contains non-

privileged edits of relevance, it will be produced.  Otherwise, the production is objectionable both on grounds of undue burden and potentially privilege.[11]

### III. The ERISA Defendants Have Properly Objected to Other Specific Requests

Finally, Plaintiffs challenge Defendants' responses to other, isolated document requests. Defendants respond as follows.

Request 182[12]: In this request, Plaintiffs seek State Street SEC filings Forms 11-K, Forms S-8, and Forms 5500.  These documents are largely available to the public, and are as easily obtained by Plaintiffs as by Defendants.  Particularly where Defendants already confront very heavy discovery burdens, Plaintiffs should not demand production of documents equally available to them.  Fed. R. Civ. P. 2(b)(2)(C)(i) ("the court must limit the … extent of discovery … if it determines that … the discovery sought … can be obtained from some other source that is more convenient, less burdensome, or less expensive"); *Cabot v. Wal-Mart Stores, Inc.*, no. CIV 11-0260 JB/RHS, 2012 WL 592874 (D.N.M. Feb. 16, 2012) (court will not order production of publicly available documents because they are publicly available); *Sabratek Liquidating LLC v. KPMG LPP*, No. 01 C 9582, 2002 WL 31520993 (N.D. Ill. Nov. 13, 2002) ("While we agree that the information sought [on a motion to compel] may contain information useful for gaining admissions and impeaching testimony, we do not believe this justifies such a potentially enormous amount of production on the part of KPMG.  Moreover, most, if not all, of the information sought is publicly available.  Accordingly, we will not compel KPMG to produce this information.").  To the extent Plaintiffs inform Defendants in good faith that specific documents are not publicly available to them, Defendants will collect and produce those documents.  But, in the first instance, the onus should be on Plaintiffs to collect what they can reasonably collect without further burdening Defendants.

Request 183[13]: In this request, which seeks Plan financial statements as well as other "analyses", Plaintiffs falsely claim that Defendants have "refused to produce any documents in response to this request."  Defendants have already begun producing all reports and statements related to the Plan (not solely to the ESOP) presented to the NARBC during a seven year period.  However,

---

[11] Plaintiffs also claim that Defendants have "refused to provide non-final or informal materials and communications" relating to committee documents.  If this means drafts, the above response applies.  If it refers to final documents (notwithstanding whatever "informal" means, they will be evaluated for production based on the same responsiveness and privilege criteria as any other documents.

[12] "All government filings, including, but not limited to, any Forms 11-K, Forms S-8, and Forms 5500, and all related exhibits, schedules, attachments thereto, filed with Securities and Exchange Commission ("SEC"), the Department of Labor ("DOL") or the Internal Revenue Service ("IRS") concerning the Plan or the ESOP Fund, and drafts thereof."

[13] "All annual reports, summary annual reports, audited financial statements, financial statements, states of financial condition or income, and actuarial reports, valuations and analyses for the Plan, including all exhibits, appendices and attachments thereto, and drafts thereof."

WILMERHALE

The Honorable Judith G. Dein
August 1, 2012
Page 9


Defendants object to—and do not understand how to interpret—a vague demand for "actuarial" materials and "analyses." Whatever this means, if it was presented to the NARBC, or concerns the ESOP, existing production agreements will capture it. Beyond that, production is unwarranted on grounds of vagueness and irrelevance.

Request 205[14]: Here, again, Plaintiffs wrongly assert that Defendants "have refused to agree to produce" responsive documents. The request appears to call for documents concerning the offering of the ESOP as a Plan investment option. As explained, above, Defendants have produced, and will continue to produce, minutes and materials, and will search email for ESOP materials. Defendants do not understand what else Plaintiffs want, or is relevant.

Requests 209-14, 220[15]: Defendants have agreed to produce non-personalized, form Plan communications to Plan participants that concern the ESOP fund *or* investment alternatives

---

[14] All documents and communications concerning whether, and to what extent, the Plan required the Plan fiduciaries to offer Company Stock or the ESOP Fund as an investment option under Plan or gave Plan fiduciaries discretion to remove or eliminate Company Stock or the ESOP Fund as an investment option under the Plan. This includes, but is not limited to, all interpretations of any legal obligations under ERISA, Plan provisions or related documents, including:

> a. Plan § 10.2 (under which the Benefits Committee had "full discretionary power and authority to administer the Plan in all of its details," which included the power and authority "to select the investment options available under the Plan");
>
> b. Plan § 5.2 (stating that Participant accounts "shall be invested . . . as the Participants . . . direct from among such investment options as the Committee or Plan Sponsor may make available from time to time");
>
> c. The Plan's Investment Policy Statement (stating, inter alia, that the Benefits Committee "provides oversight and determines the investment options available under the Plan," and establishes guidelines "for overseeing the selection, maintenance and removal of investment alternatives under the Plan," and "determines which funds are offered by the Plan");
>
> d. All fiduciary duties under ERISA to invest Plan assets prudently and for the exclusive benefit of participants.

[15] Request 209: "All communications from, documents concerning communications from, and documents disseminated by the Company, the Trustee, any Defendant, or any agent of the Company or the Trustee (including its officers, Directors, members of the Benefits or Investments Committees, and any fiduciaries or trustee of the Plan) to the Plaintiffs or to any other any Plan Participants concerning the financial performance of the Company, the ESOP Fund, Company Stock, the Plan, any employee investments (whether through the Plan or separately) in Company Stock, or any investment alternatives available under the Plan."

Request 210: "Any fund fact sheets or performance reviews of each individual investment alternative made available in the Plan (including investments in the ESOP Fund or Company Stock). This request includes any responsive documents ever posted on Web sites maintained by or for the Company, including http://statestreet.csplans.com."

Request 211: "All communications from (or documents disseminated by) the Company, any Defendant, or any agent of the Company (including its officers, Directors, members of the Benefits or Investments Committees, and any fiduciaries or trustee of the Plan) to any Plan Participants that refer or relate to the Plan, and/or their rights, entitlements, benefits and/or obligations under the Plan."

The Honorable Judith G. Dein
August 1, 2012
Page 10

available under the Plan, and fund fact sheets than can be practically identified after a reasonable search. Again, Defendants do not understand what else Plaintiffs want, or is relevant.

Request 226[16]: Defendants already agreed to produce documents sufficient to show their ESOP transactions through the Plan. Defendants' personal investment outside of the Plan are none of Plaintiffs' counsel's business. The Complaints do not contain any allegations concerning such transactions. Stock market transactions are not the same thing as ESOP investments, and it does not follow that an individual's purchase of common stock on the open market speaks to their subjective view of the ESOP. Plaintiffs will receive information concerning the ERISA Defendants' ESOP investments, anything else is wholly irrelevant to any claim of imprudence or breach of fiduciary duty in managing or monitoring the Plan.

Best regards,

/s/ Timothy Perla
Timothy Perla
cc: Counsel of record (via ECF)

---

Request 212: "All communications and other documents (including but not limited to proxy statements and annual reports to shareholders) disseminated or made available to the Plaintiffs and the Participants of the Plan for the purposes of exercising his or her right to direct the Trustee how to vote his or her allocated share of Company Stock held in his or her Plan account at the annual meeting of shareholders, or at any other shareholder vote."

Request 213: "All communications from or documents concerning communications from the Company, the Trustee, any Defendant, the Benefits Committee, the Investment Committee, the Plan, or any fiduciary of the Plan to the Plaintiffs or to any other Plan Participants for the purpose of fulfilling disclosure requirements under 29 C.F.R. §2550.404c or under any other provision of ERISA or its regulations."

Request 214: "All documents concerning the Company's compliance, and the Benefits Committee's or Investment Committee's inquiry into the Company's compliance with the requirements of Section 10(a) of the 1933 Act, 15 U.S.C. §77j, at or before the time of the Company's sale of Company Stock to Participants, as required by Section 5(b)(2) of the 1933 Act, 15 U.S.C.77e(b)(2), including but not limited to the Company's compliance with SEC Release No. 33-6867, Section II A, F (June 6, 1990), and delivery to Plan Participants of a prospectus containing specified types of information concerning the offering so as to enable Participants to make informed decisions whether or not to invest their money in Company Stock."

Request 220: "All communications and documents concerning communications between any of the Defendants, the Plan, any fiduciary of the Plan, or anyone acting on behalf of the foregoing, on the one hand, and the Plaintiffs or any other Participant of the Plan, on the other, concerning the ESOP Fund, Company Stock, the Company's financial condition, or the Company's FX Transaction revenue or practices."

[16] "All documents and communications concerning investments made by any Individual Defendant in Company Stock outside the Plan, including, inter alia, all documents concerning the purchase, sale or retention of any Company Stock by themselves or their spouses or children or on their behalf."