WILMERHALE

September 17, 2012

John J. Butts

+1 617 526 6515(t)
+1 617 526 5000(f)
john.butts@wilmerhale.com

**By ECF**

The Honorable Judith G. Dein
United States Magistrate Judge
United States District Court
District of Massachusetts
John Joseph Moakley United States Courthouse
1 Courthouse Way – Suite 6420
Boston, MA 02210

Re:  *Hill v. State Street Corporation, et al.*, Master Docket No. 09-12146-GAO
     *Kenney v. State Street Corporation, et al.*, No. 09-10750-DJC

Dear Judge Dein:

Although the Court gave the parties a clear direction to submit only "an agenda" in advance of the September 19 status conference, counsel for Plaintiffs in the *Hill* and *Kenney* actions have separately filed letters to which State Street has no choice but to respond.  At the last hearing, the Court held that it was appropriate for State Street to produce monthly FIN 46 reports as an interim step until Judge O'Toole rules on State Street's motion for clarification as to whether the Securities Plaintiffs abandoned any challenge to conduit accounting, *i.e.*, whether State Street had any obligation to consolidate the conduits earlier than it did.  Plaintiff Kenney has already made clear that he is not challenging the timing of consolidation.  *See* July 20, 2012 Letter from Counsel for Kenney to M.J. Dein, No. 09-10750, Dkt. 190 at 5 ("The timing of the Consolidation itself is not in dispute in the Kenney Complaint.").

Plaintiffs now attempt a second bite at the apple by arguing that documents concerning "the likelihood of consolidation" are relevant regardless of whether there is a live conduit accounting claim.  In so doing, they have grossly mischaracterized their claims.  For example, according to the *Hill* plaintiffs, the Securities complaint "contains numerous core allegations detailing Defendants' materially false and misleading statements related to the risks and likelihood of the conduits' consolidation."  Not so.  The *Hill* complaint alleges that a number of conduit-related statements were false and misleading because State Street purportedly mischaracterized the conduits' assets as "high quality."  That is what discovery should focus on.

In reality, only *one* of the dozens of alleged misstatements mentioned in the Securities complaint even refers to conduit consolidation. Specifically, on October 15, 2008, State Street's CFO said: "Due to the high quality of the assets and their performance, we do not currently believe we need to consolidate the conduits."  *See, e.g.*, Hill Am. Compl. (Dkt. 51) ¶¶ 14, 320 (quoting earnings call).  But nowhere do Plaintiffs challenge whether that statement accurately reflected State Street's belief about consolidation as of October 15, 2008.  Rather, context makes clear that

WILMERHALE

The Honorable Judith G. Dein
September 17, 2012
Page 2

Plaintiffs challenge the first clause, in which State Street described the conduits' assets as "high quality." *See* Hill Am. Compl. ¶ 14. Documents relating to consolidation are not necessary to test that statement. Even if they were, there is absolutely no basis for Plaintiffs to demand documents dating to the third quarter of 2007 relating to this complex accounting issue just to validate a statement made on October 15, 2008.[1]

Any doubts that Plaintiffs' conduit claims are focused on whether the conduit assets were "high quality" should be put to rest by the unambiguous allegations of the Securities complaint. In the very first paragraph, the *Hill* complaint alleges that "State Street and its senior executives told investors that the Company was . . . investing only in 'high quality' assets . . . ." Hill Am. Compl. ¶ 1. Two paragraphs later, Plaintiffs add, "As late as October 15, 2008, State Street assured investors that 'the asset quality of both our investment portfolio and the conduit program remains high.' This was false." *Id.* ¶ 3. Further allegations echo these charges. *See, e.g., id.* ¶ 14 ("[I]nvestors were forced to rely on State Street's assurances that its Conduits and investment assets were 'high quality' and performing well."); *id.* ¶ 84 ("[D]efendants were continuing to assure investors that the highly-risky subprime and other MBS assets in the Conduits and investment portfolio were 'high quality' and performing well."); *id.* (Defendants should have known that "the MBS assets . . . were not 'high quality'.").

Aside from the implausible claim that State Street violated GAAP (which Plaintiffs never pursued in the motion to dismiss briefing), the *Hill* complaint does not allege that State Street misled the public about *when* it would have to consolidate the conduits. It is therefore no surprise that counsel for Mr. Kenney has told this Court that "[t]he timing of the Consolidation itself is not in dispute in the Kenney Complaint." July 20, 2012 Letter from Counsel for Kenney to M.J. Dein, No. 09-10750, Dkt. 190 at 5. Because the timing of consolidation is not disputed by Messrs. Kenney or Hill, documents that relate solely to the likelihood of conduit consolidation are not relevant to this litigation and State Street should not be burdened with searching for, reviewing, and producing them.

The *Hill* plaintiffs also charge that State Street's refusal to produce documents that relate exclusively to the "likelihood of consolidation" represents a "reversal of the position Defendants have taken to date." Again, not true. All of the documents attached to Plaintiffs' September 4 letter are responsive for reasons that are independent of their mere mention of conduit consolidation. For example:

- STT-KEN-E0149569–573. The second page of this email chain describes the measure of the unrealized loss ($2.7 billion as of June 30, 2008) and states "we do not currently have a view of what securities are viewed to be impaired (if any)." It goes on to say that

---

[1] Of course, the FIN 46 monthly reports that have already been produced clearly demonstrate that consolidation was not required in October 2008.

WILMERHALE

The Honorable Judith G. Dein
September 17, 2012
Page 3

        taking a "more conservative[e]" approach, State Street might assume that "90% accretes back into income," meaning that in the worst case hypothetical forecast, 10% of conduit assets might default. This statement is directly related to the quality and value of the assets held by the conduits, topics which State Street has agreed to include in discovery.

- STT-KEN-E010434–449. This document includes the comment "assume 90% of mark is not credit related." That goes to the value and quality of the conduit assets.

- STT-KHR-E00051850. In this document, State Street's CEO is suggesting providing specific commentary about the conduits in response to a question from investors. State Street agreed to produce documents like this in response to Plaintiffs' request for production seeking "all documents concerning conference calls with investors and analysis and the topic (or potential topic) of the Conduits…."

- STT-KEN-E0121098–1101. This document encloses a press release State Street issued relating to the conduits and is responsive for that reason.

- STT-KEN-E0161686–688. This document is responsive because it relates to the quality and value of the assets held by the conduits and the investment portfolio. The document indicates that "basically we like our portfolio and aren't going to make changes," and adds, "nor are we going to raise additional capital to cover [the conduits]."

- STT-KEN-E0534833–841. This presentation clearly relates to the quality of assets held by the investment portfolio and the conduits. The "Summary" page lists the percentage of assets with AAA and AA ratings, the growth in unrealized losses, and the types of assets held by the conduits.

In short, the documents State Street has produced are either responsive because they relate to the quality and value of the assets held by the conduits, or they are responsive because they fall into some other category that State Street has agreed to produce. Plaintiffs cannot come forward with documents that relate exclusively to the likelihood of conduit consolidation because State Street has not been producing those documents, and they have no bearing on Plaintiffs' claims in either the Securities Action or the *Kenney* Action. In an already sprawling case, there is no need to

WILMERHALE

The Honorable Judith G. Dein
September 17, 2012
Page 4


expand the scope of responsiveness to include documents relating to the likelihood of conduit consolidation when that subject is only tenuously connected to the Plaintiffs' claims.[2]

Counsel for Plaintiff Kenney also insists upon the relevance of "documents reflecting State Street's inability to sell sufficient amounts of Conduit issued commercial paper in the open market." Although State Street disputes that these documents have any relevance to Mr. Kenney's ERISA stock drop claim, it will agree to include these search terms and review the resulting documents. If those documents fall within the categories State Street has agreed to produce, State Street will produce them.

Finally, Plaintiffs' continued requests for documents relating to Oliver Wyman's engagements are misplaced. State Street retained Oliver Wyman to work on at least twelve projects encompassing a variety of areas (many of which have nothing whatsoever to do with the conduits) and spanning a period of multiple years. Plaintiffs have requested "*all documents*" relating to these engagements, ignoring the fact that many of these documents have literally nothing to do with the issues in this case.

State Street is not withholding twelve documents, as Plaintiffs would have this Court believe. To the contrary, State Street has agreed to collect and review documents related to Oliver Wyman's work to the extent that those documents address the quality or value of the conduit assets. Anything else is irrelevant, and will only serve to add to the already extraordinary discovery burden State Street has across the entire case. For example, State Street has now agreed to *forty* ESI custodians. Plaintiffs should not be allowed to add to that burden with a fishing expedition into irrelevant areas of Oliver Wyman's work.


Respectfully submitted,



/s/ John J. Butts
John J. Butts

cc: Counsel of Record (via ECF)

---

[2] Plaintiff Kenney continues to insist that these documents "would reflect risk of loss from consolidation." Yet he ignores two important facts. First, State Street has produced the monthly FIN 46 analyses for each conduit that show in precise quantitative terms the "cushion" that justified maintaining the conduits off-balance sheet. Second, State Street regularly disclosed the precise magnitude of the loss that State Street would realize when it consolidated the conduits. Taken together, Mr. Kenney knows exactly what the loss would be upon consolidation, and how close to consolidation the conduits were on a monthly basis. It is hard to see how he needs anything else.