# BERNSTEIN LITOWITZ BERGER & GROSSMANN LLP

ATTORNEYS AT LAW

NEW YORK • CALIFORNIA • LOUISIANA

October 26, 2012

**By ECF**

The Honorable Judith G. Dein
United States District Court
District of Massachusetts
John Joseph Moakley United States Courthouse
1 Courthouse Way – Suite 6420
Boston, MA 02210

Re:  *Hill v. State Street Corporation, et al.*, Master Docket No. 09-cv-12146 (GAO)

Dear Judge Dein:

Lead Plaintiffs Public Employees' Retirement System of Mississippi ("MissPERS") and Union Asset Management Holding AG respectfully submit this response on behalf of themselves and named plaintiff The Miami Beach Employees Retirement Plan ("Miami Beach") to the State Street Defendants' motion to compel Plaintiffs to add electronic search terms and custodians to their document collection in this action (ECF No. 206) (the "Motion").

In their Motion, Defendants improperly try to relitigate their May 18, 2012 motion to compel, which was largely denied by this Court. As described below, contrary to Defendants' mischaracterizations, Plaintiffs have agreed to conduct a comprehensive search for electronic documents using relevant search terms and custodians that are most likely to have responsive documents. Nonetheless Defendants ask that this Court order Plaintiffs to conduct burdensome and irrelevant searches and to apply those irrelevant search terms to dozens of additional custodians that are not likely to possess relevant documents. Defendants' request is nothing but a fishing expedition that serves no purpose other than to unduly burden and harass Plaintiffs. Accordingly, Defendants' motion to compel should be denied.

I. **The Court Has Already Ruled That The Scope Of Plaintiffs' Discovery Is Limited Largely To Documents Concerning State Street**

On May 18, 2012, Defendants moved to compel Plaintiffs to search for and produce a vast array of documents unrelated to either State Street's alleged misrepresentations or the State Street securities at issue in this case. *See* Defendants' May 18, 2012 letter motion (ECF No.

BERNSTEIN LITOWITZ BERGER & GROSSMANN LLP

The Honorable Judith G. Dein
October 26, 2012
Page 2

153). In particular, Defendants sought the production of, *inter alia*, all documents that referenced the term "high quality" without any connection to State Street's use of the term or the assets State Street used that term to describe; all documents concerning conduits (*i.e.*, beyond the conduits at issue in this action); all documents concerning "the status, condition, or risks of investments in issuers engaged in, or having an interest in, securities lending, FX transactions, fixed-income bond funds, conduits, SIVs, MBSs, or subprime investments;" all documents concerning negative information related to Washington Mutual, Countrywide, IndyMac, New Century, non-State Street SIVs identified in the Complaint, HSBC Holdings Plc, and Citigroup; all documents concerning "Plaintiffs' knowledge of the reliability of rating agencies with respect to the ratings given to asset-backed securities;" and all documents concerning Plaintiffs' understanding of how banks other than State Street charged for FX transactions. *Id.*

Following a June 26, 2012 hearing, the Court largely denied Defendants' motion, and ordered Plaintiffs to produce only the narrow categories of documents listed below, most of which relate directly to State Street. These categories are the following:

(a) "[D]ocuments reflecting plaintiffs' understanding of <u>State Street's use of the term 'high quality'</u> with respect to SIVs, mortgage-backed securities, Alt-A investments and asset-backed securities" (which plaintiffs had offered to produce), [and] "documents reflecting <u>industry definitions or understandings</u> as to the meaning of the term 'high quality'";[1]

(b) "[D]ocuments concerning [Plaintiffs'] knowledge of <u>State Street's exposure to particular assets</u> held in the Conduits and in its investment portfolio during the Class Period";

(c) "[D]ocuments from <u>committees or other groups charged with risk analysis</u> which reflect an analysis or internal assessment of the risk of investing in the types of assets at issue in this case," *i.e.*, SIVs, MBS, Alt-A investments and asset-backed securities;[2] and

(d) "[D]ocuments reflecting [Plaintiffs'] knowledge and understanding, during the Class Period, as to how <u>State Street conducted foreign exchange</u>."

*See* June 27, 2012 Order at 1-2 (emphases added) (ECF No. 172) ("June 27 Order").

In addition to this narrow set of State Street-related documents that the Court ordered Plaintiffs to produce, Plaintiffs have not objected to numerous additional requests propounded by Defendants. For the most part, those requests are directed at: (a) information concerning

---

[1] The Court noted that industry literature such as "an industry standard that is reflected in . . . the industry dictionary . . . like our law dictionary or words" is what the Court intended to be produced in response to section 1(A). June 26, 2012 Hearing Transcript, at 9-10 ("June 26 Tr.") (attached hereto as Exhibit A).

[2] The Court made clear that this category of documents does not include emails, but instead calls for "significant document[s]" such as minutes or memoranda to or from the "committees or other groups charged with risk analysis." June 26 Tr. at 34-35. Plaintiffs have conducted searches of high level documents from "committees or other groups charged with risk analysis" to satisfy this category of documents.

BERNSTEIN LITOWITZ BERGER & GROSSMANN LLP

The Honorable Judith G. Dein
October 26, 2012
Page 3

Plaintiffs' purchases of <u>State Street's</u> securities (Request Nos. 1-4, 27-28, 30-31, 33-34, 38, 41, 64, 70); (b) information that was used to support the allegations against <u>State Street</u> in Plaintiffs' complaint (Request Nos. 17-18, 21-25, 44-60); (c) information concerning Plaintiffs' structure and policies (Request Nos. 72-80); and (d) information concerning Plaintiffs' knowledge of <u>State Street's</u> wrongdoing prior to the end of the Class Period (Request Nos. 11-16, 65, 68).[3]

## II. Defendants' Proposed Additional Search Terms Are Overbroad, Directly Contrary To The Court's June 27 Order, And Must Be Rejected

Plaintiffs have proposed a list of search terms that will capture a broad universe of responsive documents and fully satisfy Plaintiffs' discovery obligations. Indeed, Plaintiffs already have produced over 34,000 pages of documents as part of their production.[4] Moreover, Plaintiffs have agreed to perform additional electronic searches of relevant custodians using the term "State Street" and its logical derivations "STT" and "statestreet.com." These are broad and all-encompassing terms that are likely to locate any responsive documents relating to State Street and its misrepresentations in this action. *See* Motion, Ex. F.

Not content with this, on August 27, 2012, Defendants proposed a list of 16 separate search strings containing over <u>200 search terms</u>. *See* Motion, Ex. I. As explained below, although these 16 search strings are highly burdensome and largely irrelevant, in the spirit of compromise, Plaintiffs agreed to two of Defendants' additional search strings:

- (Galleon, Spinnaker, Schooner, Clipper, Keel and Eurogalleon) [These terms are the names of State Street's Conduits.];

- ("high quality" /10 (mean* defin* qualif* underst*) /10 ("SIV*" "structured investment" "mortgage-back*" "Alt-A" "asset-backed" "MBS" "ABS").[5]

September 28, 2012 Letter (Motion, Ex. N).

---

[3] Plaintiffs' March 21, 2012 responses to Defendants' January 27, 2012 requests are attached to Defendants' Motion as Exhibit B. Plaintiffs agreed to produce responsive documents in response to the above-cited requests, subject to the general and specific objections noted therein.

[4] For example, MissPERS alone has already produced documents relating to the purchase and sale of State Street's common stock; MissPERS' Annual Reports for 2006-2010 (which contain organizational charts, and information regarding investment portfolios and managers); its Investment Standard Operating Procedures Manual; its Securities Litigation Policy; the investment advisory contracts with the four investment managers that purchased State Street common stock on its behalf; the investment consultant reports prepared for MissPERS by Callan and Mercer (its investment consultants) and MissPERS' agreements with Callan and Mercer; its document retention policies; information about previous litigations in which MissPERS served or serves as a lead plaintiff; responsive investment committee minutes; and documents cited within the Complaint.

[5] In their Motion, Defendants accepted Plaintiffs' proposed "high quality" search string with one modification changing the second "/10" to "/50." See Motion at 6 (Search No. 12). Defendants moved to compel that change rather than simply discussing their modification with Plaintiffs in a "meet and confer" teleconference. In any event, to avoid further dispute, Plaintiffs accept Defendants' modification.

BERNSTEIN LITOWITZ BERGER & GROSSMANN LLP

The Honorable Judith G. Dein
October 26, 2012
Page 4

  Without any further discussion, Defendants summarily rejected Plaintiffs' offer and filed this Motion the next business day. In a sweeping request that would essentially reverse the Court's June 27 Order, Defendants ask the Court to order Plaintiffs to apply 14 broad search strings (encompassing over 200 terms) to their document collection efforts. Motion at 4-6. As discussed below, Defendants' proposed terms are burdensome, are not likely to lead to relevant and responsive documents, and should be rejected.[6]

  **Searches For FX Documents Unrelated To State Street:** The first five of the 15 search strings Defendants propose comprise over 50 terms purportedly "designed to locate documents relating to foreign exchange trading." Motion at 4. Because none of these terms are tied to State Street, they are directly contrary to the June 27 Order, which orders Plaintiffs to produce only documents reflecting knowledge as to how "State Street conducted foreign exchange transactions and charged its custodial clients for such transactions." June 27 Order, ¶1(D) (emphasis added). Plaintiffs' proposed search for "State Street," "statestreet.com," and "STT" will locate the required documents relating to State Street's foreign exchange trading.[7]

  **Searches For Plaintiffs' General Knowledge Of Conduit Assets:** Defendants propose seven additional search strings (Search Nos. 6, 8-11, 14-15) consisting of over 100 search terms purportedly directed to Plaintiffs' knowledge of the risks associated with conduits, SIVs, and mortgage and asset-backed securities and the relationship between the Conduits and the "TCE." Motion at 5-6. These search terms are also contrary to the June 27 Order, which specifically rejected Defendants' motion to compel documents concerning "SIV's, mortgage-backed securities, subprime mortgages, fixed-income bond funds, rating agencies, and securities involving Washington Mutual, Countrywide, Indymac, and New Century," unless they relate to State Street or are documents from high level "committees or other groups charged with risk analysis," which are best located through targeted, non-electronic searches *See* Order at ¶1.

---

[6] While Defendants attempt to justify their overbroad and unreasonable search terms described below by identifying a handful of Requests that they argue will not be captured by Plaintiffs' proposed search terms (Motion at 2 (citing Request Nos. 29, 41, 47, 48, 51, 53, 54 & 64)), their argument only demonstrates the adequacy of Plaintiffs' terms. Responsive documents to the vast majority of these Requests, as modified by the Court's June 27 Order, will plainly be captured by Plaintiffs' proposed search terms. *See* Request Nos. 29, 41 (satisfied by State Street search terms); 47 (satisfied by "high quality" search string and targeted searches described below); 48 (satisfied by State Street search terms and otherwise seeks expert opinion); 51 (satisfied by State Street and Conduit search terms); Request No. 64 (satisfied by State Street search terms ). Other requests have been rejected by the Court. *See* Request Nos. 53, 54 (seeking documents relating to ratings agencies).

[7] While Defendants attempt to defend these requests on the grounds that MissPERS was a custodial client of State Street, they ignore that MissPERS ceased its custodial relationship with State Street in June 2005, over one year before the start of the Class Period. In the spirit of compromise, MissPERS agreed to search for FX-related documents beginning on October 17, 2004. Any search of those documents using the term "State Street," "STT" or "statestreet.com" will locate responsive documents reflecting Plaintiffs "knowledge and understanding, during the Class Period, as to how State Street conducted foreign exchange transactions and charged its custodial clients for such transactions." As described below, contrary to Defendants' contention, Plaintiff Union is not a custodial client of State Street.

BERNSTEIN LITOWITZ BERGER & GROSSMANN LLP

The Honorable Judith G. Dein
October 26, 2012
Page 5

To the extent that Plaintiffs' documents relate to the assets identified in the June 27 Order and State Street, they will be located through Plaintiffs' search for "State Street" and its derivations, the names of the State Street Conduits, and the proposed "high quality" search string. Moreover, Plaintiffs have searched and will continue to search for high level documents from committees and other groups reflecting analyses of the risks of investing in SIVs, mortgage-backed securities, Alt-A investments and asset-backed securities. Indeed, MissPERS has reviewed each of its investment committee meeting minutes within the Class Period, and produced every single one that contained any discussion of SIVS, subprime mortgages, mortgage-backed securities, Alt-A investments or asset-backed securities. Miami Beach has undertaken a similar review of its investment meeting minutes, locating no documents responsive to section 1(C) of the June 27 Order. Union is still in the process of reviewing documents. Because Plaintiffs' searches already will capture the vast majority of relevant documents relating to State Street's Conduits, Defendants' burdensome, irrelevant and impermissibly broad additional search strings should be rejected.

**Searches For Plaintiffs' General Knowledge Of Credit Ratings:** Another search – Search No. 7 – targets "documents related to plaintiffs' knowledge of the reliability of credit ratings" (Motion at 5) and is likewise in clear violation of the Court's June 27 Order. That Order rejected completely Defendants' motion to compel documents concerning "Plaintiffs' knowledge of the reliability of rating agencies with respect to the ratings given to asset-backed securities." *See* May 18, 2012 letter motion to compel, ECF No. 153 at 4 (moving to compel, *inter alia*, Request Nos. 35-37, 43, 61-63, 67, 69, and 71).

**Searches For "High Quality" And "Mark to Market" Losses:** Finally, Defendants' search strings that purportedly target documents relating to "high quality" are far too broad (Search Nos. 12 & 13). Again, the June 27 Order states that Plaintiffs need produce only "documents reflecting <u>industry definitions or understandings</u> as to the meaning of the term 'high quality,' as well as any documents reflecting plaintiff's understanding of <u>State Street's use of the term 'high quality</u>,' with respect to SIVs, mortgage-backed securities, Alt-A investments and asset-backed securities." June 27 Order, ¶1(A) (emphases added). Defendants' searches simply do not comply with this limitation. For example, Search No. 13, targeting documents relating to "mark to market" losses, is far beyond the scope of both Defendants' discovery requests and the June 27 Order. Indeed, the term "mark to market" is not included in any of Defendants' documents requests and is used only twice in the Complaint (¶¶146 & 365) with neither reference sufficient to provide a reasonable basis for additional search terms.

In the interest of compromise, as noted above, Plaintiffs agree to Defendants' proposed Search No. 12 (which is largely what Plaintiffs themselves proposed on September 28, 2012).

### III.   Plaintiffs' Electronic Document Custodians Are Adequate

Defendants also seek to expand the number of custodians that Plaintiffs are searching from 15 to at least 62 individuals and entities. Defendants seek to add the names of individuals – such as, among others, individual members of Miami Beach's and MissPERS' Boards of

BERNSTEIN LITOWITZ BERGER & GROSSMANN LLP

The Honorable Judith G. Dein
October 26, 2012
Page 6

Trustees, a Special Assistant Attorney General for the Office of the Attorney General of the State of Mississippi and two of Union's legal counsel – who are not likely to possess responsive documents. Defendants' proposal also ignores Plaintiffs' previous and repeated explanations as to why the custodians they identified as likely to possess relevant documents are sufficient.

### 1. MissPERS

MissPERS has identified two custodians in its investments group: (1) Lorrie Tingle, who is MissPERS' Chief Investment Officer and the individual charged with oversight for all investments during the agreed-to relevant time period, and (2) Charles Nielsen, the portfolio manager who oversaw the investment managers who were permitted to invest in State Street securities during the relevant time period. Defendants' bald assertion that Ms. Tingle and Mr. Nielsen are "inadequate" is baseless.[8] MissPERS maintained an investment staff of only 3-4 individuals at any point during the relevant time period, and the other 1-2 MissPERS employees had no role whatsoever in the oversight of any investments in State Street.

In asking the Court to compel 23 additional custodians, including MissPERS' Executive Director and the fund's entire Board of Trustees, Defendants' primary contention is that this will enforce some type of "parity" between Defendants' and Plaintiffs' custodians. Motion at 8-9. This simply confirms that Defendants' motion is targeted more at harassing the Plaintiffs than it is at identifying relevant individuals. As the Court has acknowledged, Plaintiffs and Defendants in this case are neither subject to the same discovery demands, nor similarly situated. *See* June 26 Tr. at 10 (Plaintiffs "possess mostly "documents [concerning] other entities that are not involved in this litigation [that] are not necessarily the relevant world.")

Defendants also completely disregard the roles that certain individuals play at MissPERS. Indeed, MissPERS and Miami Beach make all of their investment decisions through outside investment managers; MissPERS' Board of Trustees makes no investment decisions, and any relevant information Board members discussed or saw at committee meetings has been produced or is in the possession of one of MissPERS' proposed custodians. In addition, George Neville, also targeted by Defendants, is Special Assistant Attorney General to the State of Mississippi, and serves as a legal counsel to MissPERS. He would have no responsive non-privileged documents in his possession relating to the allegations in the Complaint.

### 2. Union Asset Management Holding AG

Union Asset Management Holding AG has already proposed eight custodians, all of whom were "Fondsmanagers" for the investment funds whose transactions in State Street

---

[8] Defendants do not mention Plaintiffs' offer of an additional MissPERS custodian who is a member of its accounting staff who works with MissPERS' custodial bank. That custodian's documents will be searched for the limited purpose of locating documents, if any, related to FX transactions and pricing in connection with MissPERS' custodial relationship with State Street between October 17, 2004 and State Street's termination in mid-2005.

BERNSTEIN LITOWITZ BERGER & GROSSMANN LLP

The Honorable Judith G. Dein
October 26, 2012
Page 7

common stock are at issue in this case. Yet, Defendants demand more custodians on the grounds that it "is simply not plausible" that only eight individuals "could have discussed investment in State Street or in other relevant securities." Motion at 9. This is not true. First, this Court has confined general discovery to Plaintiffs' investment in State Street common stock only, limiting discovery concerning the general risks of investments in SIVs, MBS, ABS, and Alt-A investments to documents reflecting "an analysis or internal assessment" of such risks from high level "committees or other groups charged with risk analysis." As discussed above, Plaintiffs are also performing targeted searches to identify documents responsive to that limited category of documents. Second, the eight proposed custodians were selected because as the managers for the investment funds whose transactions in State Street common stock are at issue here, they are the individuals likely to possess responsive documents.

A clarification of the structure of Plaintiff Union Asset Management Holding AG and its related entities may assist the Court in understanding the question of relevant custodians. Plaintiff Union Asset Management Holding AG is the holding company of the Union Investment Group. Within the Union Investment Group, three investment management companies – Union Investment Privatfonds GmbH, Union Investment Luxembourg S.A., and Union Investment Institutional GmbH – manage a variety of investment funds, and twelve such funds are at issue in this case. Plaintiff Union Asset Management Holding AG provides services – such as information technology, human resources, and legal services – to the investment management companies and associated funds. Plaintiff Union Asset Management Holding AG has the authority to prosecute the legal claims of the funds, and in this case, the funds have even assigned those claims to Plaintiff to eliminate any confusion in this regard. See Plaintiff's Certification Pursuant to Federal Securities Laws (ECF No. 5, at Ex. B).

The eight custodians identified are the managers of the investment funds that made the relevant transactions at issue in this case. Plaintiffs have since identified three additional fund managers who may possess relevant documents, and Plaintiffs will add their names to the list of custodians, bringing to a total number of Plaintiffs' custodians to 15. Defendants argue in their Motion that "no manager appears to be listed," Motion, at 10, while at the same time noting that these individuals were explicitly designated with the title "Fondsmanager," *id.* at 9. Thus, Defendants' argument contradicts itself. Defendants also seek the addition of Dr. Joachim von Cornberg and Clemens Gaebel to the custodian list. *Id.* However, Dr. von Cornberg and Mr. Gaebel are legal counsel for Union Asset Management Holding AG and, therefore, would possess no documents responsive to the requests at issue. *See* Plaintiff's Certification Pursuant to Federal Securities Laws (ECF No. 5, at Exs. B, D).

Finally, Defendants seek a custodian "responsible for FX trading." Motion at 9. However, State Street was not a depositary bank for any of the relevant funds. Defendants have not provided Plaintiffs with any basis to demand a custodian responsible for FX trading, and that demand is contrary to the Court's prior order for the reasons discussed above.

BERNSTEIN LITOWITZ BERGER & GROSSMANN LLP

The Honorable Judith G. Dein
October 26, 2012
Page 8

### 3. Miami Beach

Miami Beach has no dedicated investments group. Its Pension Administrator, Rick Rivera, is responsible for overseeing Miami Beach's outside investment managers and is the appropriate custodian here. Contrary to Defendants' contention, Miami Beach has no internal investment managers; the individuals identified by Defendants – Robert Martinez, Echo Chandler and Alex Gutierriez – are clearly Miami Beach employees involved in plan administration, not investments. This is confirmed by the website link cited by Defendants, which identifies them as such. *See* Motion at 7, n.10.

Members of Miami Beach's Board of Trustees are not proper custodians for the same reasons that members of MissPERS' Board of Trustees are not proper custodians: they play no role in particular investment decisions with respect to State Street or any other particular stock. Defendants' assertion that Plaintiffs are "playing hide the ball" is nonsense. The fact is that unlike State Street, where hundreds of employees potentially possess highly relevant documents, neither the nature of this case nor Plaintiffs' corporate structure results in an analogous scenario here.

*****

Defendants also contend that each Plaintiff must search the files of any outside advisor who could possess potentially responsive documents. Motion at 8-10. Plaintiffs, however, have no ability to search the files of outside investment managers. For example, MissPERS produced its investment advisory contracts with the four investment managers that purchased State Street common stock. Those contracts do not give MissPERS any custody or control over the advisors' documents, and Defendants do not (and cannot) point to any provisions to the contrary.

Defendants do cite a consulting services agreement between MissPERS and Mercer Investment Consulting, Inc. ("Mercer"). Motion at 9, n.14. Mercer served as an investment consultant to MissPERS for part of the Class Period, but made no investment decisions on MissPERS' behalf. The contract provides only that MissPERS owns any work product created by Mercer and turned over to MissPERS. It does not provide MissPERS with any right to obtain information "contained in Mercer's databases, and reports systems..." Indeed, MissPERS "acknowledge[d] and agree[d] that [it] acquire[d] no rights to or in Mercer Materials solely by virtue of entering into this Agreement or receiving the services under the Agreement."

MissPERS has already produced every Class Period investment consultant report in its possession. Similarly, Miami Beach has produced every investment review provided to it by its outside advisors. If any additional responsive documents are located through electronic searches of MissPERS' or Miami's custodians, those documents will also be produced.

BERNSTEIN LITOWITZ BERGER & GROSSMANN LLP

The Honorable Judith G. Dein
October 26, 2012
Page 9

### IV. Plaintiffs Will Commence The Additional Electronic Searches Once The Court Resolves Defendants' Motion

Plaintiffs have already collected, reviewed and produced over 34,000 pages of documents, and are prepared to commence further electronic searches when Defendants' Motion is resolved. Defendants' assertion that Plaintiffs should run electronic search terms in piecemeal stages before the Court has ruled on their Motion is not supportable. Indeed, Defendants did not apply the Conduit ESI Protocol until this Court resolved remaining disputes over that protocol and scope of production on September 20, 2012. Defendants have not yet applied any part of the FX ESI Protocol, which is the subject of Plaintiffs' pending motion to compel.

Respectfully submitted,

| /s/ Lauren A. McMillen | /s/ William H. Narwold |
|---|---|
| John C. Browne | William H. Narwold |
| Lauren A. McMillen | Badge Humphries |
| Rebecca E. Boon | **MOTLEY RICE LLC** |
| **BERNSTEIN LITOWITZ BERGER & GROSSMANN LLP** | 28 Bridgeside Blvd. |
| | Mt. Pleasant, SC 29464 |
| 1285 Avenue of the Americas | |
| New York, New York 10019 | |

Encls.

cc: Counsel of Record (*via* ECF and email)

BERNSTEIN LITOWITZ BERGER & GROSSMANN LLP

The Honorable Judith G. Dein
October 26, 2012
Page 10

## CERTIFICATE OF SERVICE

I, Lauren A. McMillen, hereby certify that this document, filed through the ECF system, will be sent electronically to the registered participants as identified on the Notice of Electronic Filing, and paper copies will be sent to those indicated as nonregistered participants by first class mail on October 26, 2012.


Dated: October 26, 2012                                              /Lauren A. McMillen