# Exhibit 2

# WILMERHALE

Timothy Perla

+1 617 526 6696(t)
+1 617 526 5000(f)
timothy.perla@wilmerhale.com

November 6, 2012

**By ECF**

The Honorable Judith G. Dein
United States District Court
District of Massachusetts
John Joseph Moakley United States Courthouse
1 Courthouse Way – Suite 6420
Boston, MA 02210

Re: *Hill v. State Street Corp.*, Master Docket No. 09-cv-12146-GAO

Dear Judge Dein:

The State Street Defendants ("Defendants") hereby submit this brief reply in support of their October 1, 2012 Motion to Compel ("MTC"). In their Opposition, Plaintiffs (i) make several assertions and arguments that are fatally undermined by documents recently produced in discovery; and (ii) make unsupportable arguments concerning burden, which the Court should not entertain. This submission addresses those points.

**I.     Plaintiffs' Document Production Demonstrates the Relevance of the Requested Searches**

Plaintiffs acknowledge that the Court's June 27 Order compels them, inter alia, to produce (i) documents concerning assessments of the risks associated with certain types of assets, and (ii) documents concerning their understanding of "high quality." *See* Opp. at 2-3. Yet, Plaintiffs refuse to conduct a robust electronic search, arguing that "targeted searches" (which they have consistently refused to explain or define) and very truncated custodian lists are adequate.[1] Documents that Plaintiffs recently produced fatally undermine this argument.[2]

As this Court is aware, this case concerns a challenge to Fall 2008 statements that conduit and portfolio assets were of "high quality." Plaintiffs claim to interpret the phrase as a promise that

---

[1] As an initial matter, Plaintiffs bolster their argument by misconstruing this Court's June 27, 2012 Order as modifying, and even rejecting, requests for production that *were not raised* in State Street's May 18, 2012 motion to compel and therefore were not covered by the June 27, 2012 Order. *See* Opp. at 4 fn. 6.
[2] Plaintiffs also argue that the Court's Order does not require them to search email *at all* on at least some categories. *See* Opp at 2. But the portion of the record that they cite says no such thing—what the Court said was that Plaintiffs do not need to produce emails merely reflecting a "random thought" about asset quality (a position with which State Street agrees). *See* June 26 Tr. at 34-35. The Court never ruled that no email search is necessary. In any event, Plaintiffs should be estopped from arguing that they need not search email, because they are taking exactly the opposite position in their own motions to compel. *See* Docket No. 211 at 3 (arguing that even a limited electronic search by State Street would violate the federal rules of civil procedure because parties must not "fail[] to examine records in its control.").

WILMERHALE

Page 2

the mark-to-market value of mortgage backed securities ("MBS") held would never decline. (*See Hill* Amended Complaint, ¶¶ 17, 84, 104, 147, 159, 180). Thus, the meaning of high quality—including how Plaintiffs understood it—is central to this litigation. For this reason, Defendants have propounded discovery requests, and proposed custodians and search terms, designed to capture discussions about the quality of MBS and similar instruments. Plaintiffs have resisted.[3]

Even the limited discovery that Plaintiffs have provided to date has now shown that Plaintiffs *routinely discussed the quality of mortgage backed securities—and even referred to them as being of high quality*. This underscores why a robust custodian list and email search is necessary.

For example, since the filing of State Street's Motion to Compel,  *See* Exhibit A.

*See* Ex. A (emphasis supplied).

MissPERS also produced a copy of its 2008 Annual Report, which discusses the state of the fund portfolio. On page 51, the Chief Investment Officer informs investors:

> The investment portfolio, excluding investments purchased with securities lending cash collateral, was composed of 46.5 percent domestic; 22.7 percent international, and 1.4 percent global equities; 23.7 percent debt securities; 4.7 percent real estate investments; and 1.0 percent cash and cash equivalents at fiscal year-end. The System continued to maintain a ***high quality debt portfolio as evidenced by the fact that 74 percent of the bond investments carried a AAA rating***.

---

[3] In the Opposition, the Plaintiffs frequently attempt to cloak their failure to abide by the Court's June 27 Order by mischaracterizing the discovery obligations imposed by that Order as "limited largely to documents concerning State Street." This is precisely the sort of limitation for which the Plaintiffs previously argued and that the Court has already rejected:

> MR. BROWNE: I would suggest maybe, I don't, you know, maybe something like an analysis of the risk inherent in investing in State Street due to the types of assets at issue here.
> THE COURT: No, it's the risk inherent in investing in an entity owning, holding the assets that are at issue here… (*See* Opposition, Ex. A., p. 30, lns. 18-24).

WILMERHALE

Page 3

*See* Ex. B.[4]  There are other, similar examples as well.[5]

These documents undermine Plaintiffs' Opposition in at least three respects:

- *First*, the documents refute Plaintiffs' argument that the proposed searches are a "fishing expedition." *See* Opp. at 1. ███████████████████████████████ ███████████████████████████████ ███████████████████████████████ ███████████ However, Plaintiffs' refusal to conduct a robust email search—or any email search for some categories—and insistence on mere "targeted searches of "high level" documents or committees[6], means that Defendants will not receive discovery ███████████████████████████████.

- *Second*, the documents undermine Plaintiffs' assertion that the Trustees "make[] no investment decisions." Opp. at 6. ███████████████████████████ ███████████████████████████████ ███████████████████████████████ ███████████████████████████████

- *Finally*, the documents spotlight the inadequacy of Plaintiffs' proposed custodian lists. MissPERS is proposing to use just three custodians. ███████████ ███████████████████████████████ ███████████████████████████████ Plaintiffs'

---

[4] Confirming State Street's interpretation of the term "high quality," MissPERS' representation that "high quality" is evidenced by high credit ratings is precisely the same representation that it claims State Street made: "Defendants relied on these ratings as a justification for why the assets were supposedly of "high quality" and posed little risk to the Company." (*See Hill* Amended Complaint, ¶180).
[5] *E.g.*, ███████████████████████████████████████████████.
[6] Four times in their Opposition, Plaintiffs claim that their obligation to review and produce documents is limited to "high level" documents or committees. However, such a restriction nowhere appears in the Court's June 27 Order and the term was not used once by the parties or the Court during the hearing on State Street's initial motion to compel. *See* Opposition, Ex. A. To the contrary, the Court's focus was on the content not the nature of the document:

> THE COURT: **But I don't want to say**—
> MR. HUMPHRIES: Okay.
> THE COURT: --**here it's got to be a formal report** and then end up in a fight on whether it's a report or minutes. I mean **what I'm ordering is the production of documents that reflect frankly your client's internal assessment of the risks of these types of investments**. If you find out that you've never done anything, then you'll have a discussion that says none of the above, all right, but it sounds to me if your, that there's a potential that this type of internal analysis goes on in an organization that handles the kinds of dollars that you invest in. So – it either is or it isn't. But if it exists it should be produced. (Emphasis supplied) (*See* Opposition, Ex. A, p. 35, lns. 7-20).



Page 4

custodian list does not include ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓.[7]

In short, Plaintiffs cannot meet their discovery obligations merely through "targeted searches" (whatever that means) for "high level" documents (whatever that means). None of the searches that Plaintiffs are proposing would capture substantive content on highly relevant matter contained in communications, presentations, and analyses surrounding the topics of quality and risk ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓. Absent relief from the Court, Plaintiffs will not even search for, *e.g.,* the Chief Investment Officer's communications leading up to her characterization of MBS as being of "high quality," or ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓.[8] Defendants proposed custodians and search terms will do so.

Finally, the Court's order compelling production should extend to Miami Beach and Union. They have made much smaller productions than MissPERS, which is why the above examples were drawn from the MissPERS production. But there is no reason to believe that Miami Beach or Union were situated any differently (and Miami Beach and Union have never argued such). Miami Beach, like MissPERS, has a Board of Trustees vested with investment authority, and there is every reason to expect their discussions would be similar to those of MissPERS. Additionally, documents produced by Miami Beach indicate that its investment managers held MBS on its behalf. Union is a very sophisticated financial firm, and it is implausible that, during the financial meltdown, they were not having discussions about the risks attendant to MBS. If they had discussions similar to those depicted above, they ought to produce them. If they did not, then compelling the production of a null set would not inflict any burdens.[9]

## II. Plaintiffs Have Failed to Substantiate That the Requested Discovery Is Unduly Burdensome

Plaintiffs also argue that the requested discovery will cause undue burden. *E.g.,* Opp. at 1. As the party resisting discovery, they have the burden of proof on that issue. *See Sanchez-Medina v. UNICCO Service Co.*, 265 F.R.D. 24, 27 (D.P.R. 2009) (citation omitted).[10] However, Plaintiffs' Opposition offers *no evidence of any kind* to substantiate that using the proposed additional custodians or search terms will inflict undue burdens. And this is despite Defendants' repeated requests for a hit report. On October 2, 2012, Defense counsel emailed the following request to Plaintiffs' counsel:

---

[7] Because Plaintiffs still have failed to produce adequate organizational charts and/or documentation that would shed light on those departments, groups, and individuals likely to have responsibilities in assessing and understanding the quality of and risks associated with the types of investments at issue this case (*see* MTC, p. 7 and n. 9) – and the Opposition makes no promise to do so, the Defendants have no way to assess if even ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ captures the full set of relevant MPERS custodians.

[8] The 2008 Annual Report also demonstrates the relevance of Defendants' request for documents concerning discussion of the reliability of credit ratings. In the Annual Report, the CIO directly equated "high quality" with credit ratings.

[9] Plaintiffs also challenge Defendants' request that they use search terms designed to capture foreign exchange documents, arguing that a search for "State Street" is good enough. But they have failed to address Defendants' central argument: at least as to some Plaintiffs, State Street was their foreign exchange provider, so *any discussion about foreign exchange is a discussion about State Street foreign exchange, irrespective of whether the custodian managed to use the word "State Street."*

[10] When, in the past, Defendants have asserted undue burden, they have proven it by generating detailed "hit reports" showing (or at least estimating) the number of documents captured by particular custodians or search terms.

WILMERHALE

Page 5

> As you know, a portion of State Street's motion to compel addresses the Hill Plaintiffs' search terms. In the past, Judge Dein has requested that the parties examine search term hit reports in connection with addressing disputes over search terms. Accordingly, State Street requests that Miami Beach, MissPERS, and Union each supply separate hit reports concerning the search terms that are in dispute, as well as those agreed to.

*See* Ex. C. Plaintiffs never responded. On October 31, 2012, after Plaintiffs filed their Opposition (and included a burden argument), Defense counsel renewed the request. *See id.* On November 1, 2012 Plaintiffs responded that they would not produce hit reports. *See id.*

Because Plaintiffs have failed to establish burden—and indeed have refused all requests even to meet and confer on the issue with the benefit of a hit report—the Court should not entertain arguments that the requested discovery is unduly burdensome.

Very truly yours,

*/s/ Timothy Perla*

Timothy Perla
Encl.

cc: Counsel of record (via ECF)

## **CERTIFICATE OF SERVICE**

I, Timothy Perla, hereby certify that a redacted copy of this document and its attached exhibits, filed through the ECF system, will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) dated November 6, 2012. Additionally, all counsel will be served with an unredacted copy of this document and attached exhibits via electronic mail on November 6, 2012.

Dated: November 6, 2012

*/s/ Timothy Perla*

Timothy Perla