WILMERHALE

November 7, 2012

James W. Prendergast

+1 617 526 6181 (t)
+1 617 526 5000 (f)
james.prendergast@wilmerhale.com

**By ECF**

The Honorable Judith G. Dein
United States District Court
District of Massachusetts
John Joseph Moakley United States Courthouse
1 Courthouse Way, Suite 6420
Boston, MA 02210

Re: *Hill v. State Street Corp. et al.*, Master Docket No. 09-cv-12146

Dear Judge Dein:

The State Street Defendants (collectively, "State Street") hereby respond to Plaintiffs' October 22, 2012 letter seeking an order compelling them to perform searches of additional custodian data and to produce discovery materials from the California AG Action (ECF No. 211) ("Pls.' Letter").

Plaintiffs' request is an improper attempt to rewrite the history of the parties' painstaking discovery negotiations and to relitigate issues that the Court has already resolved.  State Street has fully complied with all of the Court's instructions, including those related to FX discovery and the California AG Action.

- State Street has already reviewed, processed and produced the data from the California custodians that is relevant to this litigation.  Plaintiffs' request for additional review for these custodians is untimely and without foundation in the record or the parties' negotiations.

- State Street has fully complied with the Court's instructions regarding the production of State Street's communications with regulators or enforcement agencies that may have been produced in the California AG Action.  The Court made clear that such communications had to be responsive to Plaintiffs' other written document requests (beyond the request for the communications themselves), and Plaintiffs have failed to identify any documents from the log of non-responsive communications that are responsive to such requests or relevant to Plaintiffs' claims more broadly.

- Plaintiffs continue to insist on running one search string ((*dumb or smart or stupid) /5 client!*) independent of any relation to FX terms.  State Street agrees that these terms should be included in the already robust and comprehensive FX search terms, but in order to capture potentially responsive documents, the string should be run in connection with and in proximity to a set of broad FX-related terms.

WilmerHale

The Honorable Judith G. Dein
November 7, 2012
Page 2

- State Street will continue to produce documents from the California AG Action productions consistent with the Court's Order, and State Street has never said otherwise.

## I.    Plaintiffs' Request for an Additional Review of Data from the California Custodians Is Dilatory and Baseless

Throughout the course of discovery in this litigation, Plaintiffs have represented to the Court and to State Street that the documents produced in the California AG Action signify the heart of the materials relevant to Plaintiffs' FX claims. Since the Court first ordered production of those materials in April 2012, Plaintiffs have never identified any additional categories of documents whose production required additional searches of the custodians in the California AG production. Accordingly, discovery has proceeded on the assumption that the only FX ground *not* covered were documents to come from any additional FX custodians whose data was not processed in the California AG Action.

Now, however, Plaintiffs reverse course, and claim that they are no longer satisfied by the millions of pages produced from the California AG Action. They assert that they are now entitled to searches against the massive volume of data that was deemed irrelevant even under the California AG Action's broad search parameters. The time for making such an expansive request—one that has the potential to dramatically alter the scope of this litigation—has clearly passed.

### A.    Provision of the California AG Production Was To Be "Closer to an End" Than a "Start"

Plaintiffs have constantly maintained that the documents produced in California are equally relevant here. Indeed, in their October 22, 2012 letter, Plaintiffs maintain that the two actions "share a similar factual core." Pls.' Letter at 3; *see also* Pls.' Mar. 9, 2012 Letter Request to Compel (ECF No. 144) at 1 (the actions have "identical core allegations"). And, in requesting the California AG production, Plaintiffs expressly stated that this production would largely provide them with the documents they needed to litigate their FX claims. In encouraging the Court to order production of the California AG Action materials as an efficient mechanism for discovery, Plaintiffs assured the Court that any further production that might be needed would merely be to fill gaps not covered by the materials reviewed for the California AG Action. Plaintiffs have identified no such gaps.

As Plaintiffs assured the Court during the April 2, 2012 conference:

> MR. BROWNE:  . . . [I]f I'm frank about it if we got the documents from California and had an opportunity to review them ***there is no question that it would greatly narrow the things that***

WILMERHALE

The Honorable Judith G. Dein
November 7, 2012
Page 3

> *we've asked for in our request* because the California request and
> our request overlap in a very large, large respect.

Apr. 2, 2012 Tr. at 6:22 – 7:2.  From this, State Street, and presumably the Court, fairly expected
Plaintiffs to identify discrete issues and materials not covered by the California AG production.
Later in the same hearing, Plaintiffs reinforced this assurance to the Court and State Street:

> MR. BROWNE:  You know we have a nationwide scheme here
> that alleges that they defrauded their clients consistently.
> THE COURT: *And are you willing to limit your scope to*
> *whatever California asked for?* I mean I don't know if--
> MR. BROWNE: *Absolutely*.
> THE COURT: --California--
> MR. BROWNE: That's the--
> THE COURT: --limited it to certain client, certain customers--
> MR. BROWNE: Oh, well--
> THE COURT: --or not.
> MR. BROWNE: . . . I think my answer to that is it's a really good
> start. *I can't say for sure we would never ask for anything else*
> *but I think a lot of good information would be in there*.

*Id.* at 16:12 – 17:10 (emphasis added).  More precisely, as Plaintiffs' counsel promised the
Court, production of materials from the custodians reviewed for the California AG Action was
supposed to be bring the parties near to the end of FX-related document production:

> MR. BROWNE:  . . . I think it, you know, I do think it would be,
> you know, *much closer to an end than really a start* if we were to
> get that stuff.

*Id.* at 21:4-9.

In seeking to persuade the Court to order the production of the California AG materials over
State Street's strong objection, Plaintiffs' clear representation was that this production would go
far in satisfying the majority of Plaintiffs' FX-related document requests—and that any specific
information still needed would be identified and put on the table as a request for State Street's
consideration.  Plaintiffs, however, have ignored the commitment that they made.  Instead, they
came to State Street less than a month ago with a blanket request to apply all FX search terms
across all 123 California custodians whose documents were already reviewed, without explaining
how the millions of pages already produced and to be produced to them from the California AG
Action are insufficient.  Indeed, if the State Street Defendants are to be required to run all of the

WILMERHALE

The Honorable Judith G. Dein
November 7, 2012
Page 4

FX search terms against all of the California custodians, production of the materials produced from the California AG Action did nothing in the way of making discovery in this action more efficient or less burdensome.  The parties would have been far better off doing precisely what State Street had originally proposed—to negotiate an appropriate set of terms and custodians, and then to do a single review.

### B.     Plaintiffs Fail to Identify Any Responsive Documents That Have Been Excluded from the California AG Production

Plaintiffs' motion is premised on rank speculation that relevant data from the California custodians has not already been provided to Plaintiffs through the California AG production.  Plaintiffs provide no support for this assertion.  Plaintiffs merely assert that the "scope of this action . . . is broader than the scope of the California AG action" (Pls.' Letter at 3), while failing to identify or describe *any* documents relevant to this litigation that have not already been produced.  Far from it, as State Street has consistently maintained, the scale of the litigation in California is broader than it is here.  *See* Apr. 2, 2012 Tr. at 27: 15-25.

There is no reason in the abstract to conclude that the chaff of the data in question—the data from the California custodians that was not identified by search terms, processed, and reviewed—is relevant.  If, as Plaintiffs have argued, the cases share a common "factual core," then the scope of the California discovery (which if anything is broader than federal discovery)[1] is sufficient.  If Plaintiffs are now disavowing that position and arguing that the cases are different, then it does not follow that *any* of the California materials are presumptively relevant, and Plaintiffs need to establish such relevance for each custodian and each document now requested.  *See Cutter v. HealthMarkets, Inc.*, No. 10-cv-11488, 2011 WL 613703, at *2 (D. Mass. Feb. 10, 2011) ("The *party seeking discovery information* over an adversary's objection

---

[1] *See* State Street Defs.' Letter Opp. to Mot. to Compel (ECF No. 147) (Mar. 23, 2012); *see also Bernstein v. Travelers Ins. Co.*, 447 F. Supp. 2d 1100 (N.D. Cal. 2006) ("We acknowledge that, as a result of the amendments to Rule 26 in the year 2000, the presumptive scope of discovery is narrower under the Federal Rules than it is under the California Code of Civil Procedure . . . . Absent objection and judicial intervention, this difference can be significant."); *Heights At Issaquah Ridge Owners v. Steadfast Ins. Co.*, No. C07-1045RSM, 2007 WL 4410260, at *3 (W.D. Wash. Dec. 13, 2007) (distinguishing California state case law on ground that it "was decided under California state discovery rules, which allow discovery of 'any matter, not privileged, that is relevant to the subject matter involved in the pending action . . . .' The scope of discovery under the Federal Rules of Civil Procedure, allowing discovery of 'any matter, not privileged, that is relevant to the claim or defense of any party . . . ,' is narrower.").  In fact, "contrary to popular belief," under the California rules, even "fishing expeditions" are permissible. *See, e.g., Gonzalez v. The Superior Court of Los Angeles County*, 33 Cal. App. 4th 1539, 1546, 39 Cal. Rptr. 2d 896, 901 (1995).  In contrast, as this Court has repeatedly admonished, under the federal rules, "[d]iscovery is not a fishing expedition." *Ayanna v. Dechert, LLP*, No. 10-cv-11488, 2011 WL 6370945, at *1 (D. Mass. Dec. 19, 2011); *Silva v. Pioneer Janatorial Servs., Inc.*, No. 10-11264, 2011 WL 4729783 (D. Mass. Oct. 4, 2011), at *2 ("[A] fishing expedition . . . goes beyond the acceptable boundaries of discovery.").

WILMERHALE

The Honorable Judith G. Dein
November 7, 2012
Page 5

*has the burden* of showing the information's relevance.") (emphasis supplied; citations and quotations omitted).[2]

### C.    Plaintiffs Mischaracterize the Circumstances Surrounding the Production of Documents from the California AG Action

In an attempt to undermine the significance of the California AG production and the processing of the California custodian data that has already occurred, Plaintiffs mischaracterize the production of documents from a different litigation as a straightforward and non-contentious issue.

With no authority except for their say-so, Plaintiffs claim that "such reproduction is common," and was "an uncontroversial and simple way to expedite the initial production of documents in this case." Pls.' Letter at 3.  This is a surprising characterization given that the parties litigated this issue extensively—at multiple junctures.  *See* Joint Statement for Nov. 9, 2011 Status Conference (ECF No. 128)  at 7-9; Apr. 5, 2012 Order (ECF No. 149); June 27, 2012 Order (ECF No. 172).  In the briefing on this very question, State Street identified numerous courts that have rejected re-production of documents from other proceedings.  *See* Defs.' Opp. to Pls.' Motion to Compel (ECF No. 147) at 3.[3]  Indeed, in order to persuade the Court to overcome its original decision not to require the re-production of materials from the California AG Action, Plaintiffs assured the Court that the production of such documents would go far in responding to Plaintiffs' FX-related requests.  *See supra* Part I.A.  Accordingly, Plaintiffs' portrayal of this

---

[2] Plaintiffs suggest that they are unable to rely on the California AG production because they do not know the search parameters used in that action.  This is little more than a makeweight argument. At the hearing on Plaintiffs' motion seeking the California AG Action materials, State Street made clear that the search terms used in that case were functionally similar to those used for production of those materials in this action, with the principal exception being that here State Street did not use stand-alone terms unconnected to FX:

> MR. PRENDERGAST: . . . the vast majority of what we have cut out of these
> terms is simply taking those things that were individual terms that could, have to
> do with anything other than FX and make sure that they are joined with FX.

Apr. 2, 2012 Tr. at 27:18-21.  Plaintiffs fail to say how this limitation in any way deprives them of relevant FX materials.

[3] *See Harris v. Koenig*, 271 F.R.D. 356, 369 (D.D.C. 2010) (denying motion to compel discovery into other litigations); *Pensacola Firefighters' Relief Pension Fund Bd. of Trustees v. Merrill Lynch Pierce Fenner & Smith, Inc.*, 265 F.R.D. 589, 597 (N.D. Fla. 2010) (accepting "defendant's position that production of all of the documents produced to the SEC, without a more particularized request, could potentially allow plaintiff to bypass the limitations on the scope of discovery established by the [Federal] Rules [of Civil Procedure]"); *Mallinckrodt Chem. Works v. Goldman, Sachs & Co.*, 58 F.R.D. 348, 352 (S.D.N.Y. 1973) ("The production of documents to an agency or other investigative body does not automatically make those documents discoverable in a separate proceeding.").

WILMERHALE

The Honorable Judith G. Dein
November 7, 2012
Page 6

production as merely a preliminary, threshold production, rather than the massive delivery of
FX-related documents that it was, is contradicted by the record.

Nor is it accurate to state—without citing any support—that State Street "conceded" that each of
the 123 California custodians possessed potentially relevant information.  Pls.' Letter at 3.  State
Street has never made any such concession and denies that this is true.  In fact, in the parties'
February 2012 discussions of the California AG production, State Street expressly stated that the
terms of the production were premised on the understanding that "Plaintiffs agree not [to] cite
the production of any of these materials as a concession" that the documents were "relevant or
otherwise not objectionable."  Ex. A (f, 2012 Email from James Prendergast) at 1.

>    **D.** **The Parties Never Agreed to Run the FX Search Terms Against the
>    Underlying California Custodian Data**

Contrary to Plaintiffs' contention, State Street never gave its "explicit agreement" to run the FX
search terms against the California custodians.  Rather, the record of the parties' correspondence
reflects the understanding that the FX search terms were to be applied to those individuals *other*
than those whose data had already been processed in the California AG Action.  Indeed, far from
showing an express agreement, the very documents on which Plaintiffs rely demonstrate just the
opposite.

In a May 15, 2012 letter to Plaintiffs, State Street memorialized aspects of the parties' FX
discovery negotiations:

>    c) Enclosed is a list of the State Street custodians whose documents *were
>        produced* in the California AG Action.

>    d) The State Street Defendants are still working to compile a list of those
>        additional custodians, *beyond those provided in response to subparagraph (c)
>        above*, who are likely to possess information relevant to the FX allegations in
>        this action. We will keep you advised of our progress and provide you an
>        update as soon as we can.

Pls.' Ex. 3 (May 15, 2012 Letter from James Prendergast) at 2 (emphasis added).  State Street
made clear that pertinent documents from the custodians in the California AG Action had already
been produced.   What remained were only the "additional custodians" possessing information
beyond what had already been collected and reviewed in the California AG Action.

At the June 26, 2012 hearing, State Street again distinguished the "California materials" (those
materials reviewed for the documents produced in the California AG Action) from the remaining
custodians to be negotiated:  "We have in that situation for the California materials at FX that's

WILMERHALE

The Honorable Judith G. Dein
November 7, 2012
Page 7

somewhere in the neighborhood of 125 custodians.  There are *another 36 custodians* that have
been identified and that we're actively working obtaining their documents and queuing them up
so that they can be reviewed for each of these series of issues that we have talked about."  June
26, 2012 Tr. at 5 (relevant pages at Pls.' Ex. 4).  This again confirmed to State Street that the
protocol for the California materials was distinct from the non-California custodians.

Finally, in a July 11, 2012 letter that Plaintiffs neglect to mention, Plaintiffs acknowledged that
the FX terms were not to be applied to the California AG materials.  Instead, they attached
"proposed search terms for FX-related documents beyond the California AG production."  Ex. B
(July 11, 2012 Letter from Badge Humphries) at 1.  Accordingly, Plaintiffs' July 11 letter
confirmed once more for State Street that Plaintiffs were requesting terms to be applied to
documents beyond the substantial effort in the California AG Action.

> **E.**     **Plaintiffs Are Requesting an Expansion of Discovery Unjustified by**
> **Plaintiffs' Claims and the Parties' FX Negotiations**

Lastly, Plaintiffs' position defies logic.  If Plaintiffs were correct that State Street had agreed to
apply the FX search terms across the 123 California custodians, then the discovery negotiations
over the FX terms would have certainly proceeded much differently.  As Plaintiffs point out, the
parties negotiated the FX search terms over a number of months.  The search term list that
resulted from this process fills three pages, and includes search strings with over 150 search
terms and was heavily informed by expected volume.  *See* Pls.' Ex. 1.  Weighing burden against
marginal relevance, a list of search terms that is appropriate for 50 custodians may be very
different from a list that is appropriate for 200 custodians.  Indeed, State Street has confirmed
that the universe of documents against which such terms would be run come to over 17 million
*documents* (not pages)—documents that have already been deemed irrelevant through the
processes employed in California AG Action.

During the lengthy FX negotiation process, Plaintiffs did *not once* request that these negotiated
search terms be applied to the custodians in the California AG Action.  Plaintiffs' current motion
does not cite any communication or claim otherwise.  Although they now state that the California
custodians "include many individuals that the California AG believed (and Plaintiffs here also
believe) are the key State Street FX custodians" (Pls.' Letter at 3), Plaintiffs have *not once*
identified which custodians they believe are "key," let alone provide any grounds for such an
identification.  Nor have Plaintiffs ever requested a discussion with State Street regarding which
of these custodians would be relevant and appropriate for the *Hill* action.  The reason for this is
clear: the data for those custodians had already been collected, reviewed, processed, and—where
responsive to Plaintiffs' requests and relevant to claims regarding State Street's FX practices for
custody clients—produced.

WILMERHALE

The Honorable Judith G. Dein
November 7, 2012
Page 8


## II.    State Street Has Fully Complied with the Court's Order Regarding Regulatory and Law Enforcement Communications

Plaintiffs also again question the production of State Street's communications with regulators that were produced in the California AG Action.  Yet, the Court has already addressed and resolved the issue, and State Street has complied fully with the Court's ordered resolution.

The Court's June 27 Order stated as follows:

> The State Street Defendants shall supplement their document
> production, by July 31, 2012, by producing any communications
> with regulatory and law enforcement officials that were produced
> in the California AG Action . . . .

But, the Court went on specifically to limit the communications to be produced to only those that were:

> *responsive to the plaintiffs' requests for other specific categories*
> *of documents* in this case.

Finally, as to those non-responsive communications with regulatory and enforcement agencies, the Court instructed that:

> [a]ny documents that are withheld as non-responsive shall be
> identified on a log which shall be produced to the plaintiffs.

June 27 Order at 4 (emphasis added).  As ordered, State Street reviewed the regulatory and enforcement communications in question, produced those that were responsive to Plaintiffs' "requests for other specific categories of documents," and provided a log of those communications not produced.

Now three months after the production of this log, Plaintiffs take the nonsensical position that because their written document requests (Nos. 75 and 78), to which State Street objected,[4] sought production of all regulatory and enforcement communications, the Court's Order effectively called for the production of *all* such communication produced in the California AG Action[5]—making both the Court's specific limitation to responsiveness and its requirement for a

---

[4] State Street's objections included, for instance, an objection to "Plaintiffs' request for wholesale production of documents made available in other litigations and investigations."  State Street Defs.' Resp. and Obj. to Pls.' Requests for Production of Documents at 116.

[5] Notably, in their original May 30, 2012 motion to compel the regulatory communications produced in the California AG Action, Plaintiffs did not once mention their written document requests or State Street's objections to those requests.  *See* ECF No. 157 at 7.

WILMERHALE

The Honorable Judith G. Dein
November 7, 2012
Page 9

log utterly superfluous.  Logically, the Court's express restriction to "***other*** *specific categories of documents*" meant categories "other" than the blanket requests for the communications themselves.

Equally important, Plaintiffs have not shown why *all* communications logged by State Street are relevant to this litigation.  Plaintiffs contend that materials relating to discovery sought by other regulators are relevant because "the scope of discovery in those investigations and actions further demonstrates State Street's corporate-wide fraud."  Pls.' Letter at 6.  Relevance is, however, determined by the specific claims asserted by a party (*see* Fed. R. Civ. P. 26(b)(1)), not by the scope of what some third party may be examining in a different proceeding.  Accordingly, relevance cannot be assumed simply because State Street communicated with regulatory or enforcement agencies in matters touching on FX but not necessarily limited to the same claim asserted by Plaintiffs here.  *See, e.g.*, *Pensacola Firefighters' Relief Pension Fund Bd. of Trustees v. Merrill Lynch Pierce Fenner & Smith, Inc.*, 265 F.R.D. 589, 597 (N.D. Fla. 2010) (rejecting a request for the "production of all of the documents produced to the SEC" as this "could potentially allow plaintiff to bypass" the discovery limitations placed by the Federal Rules of Civil Procedure); *Mallinckrodt Chem. Works v. Goldman, Sachs & Co.*, 58 F.R.D. 348, 352 (S.D.N.Y. 1973) (acknowledging that production of documents to a regulatory body does not make such documents discoverable in other civil proceedings).

In considering the parties' original arguments on this subject, the Court likewise recognized that all of these regulatory communication are not automatically relevant:

> THE COURT:  But are you excluding from the other documents that they've, for example I would imagine that in your responses to some of these regulatory inquiries ***there are admissions concerning methods by which you calculated something. I mean you made a statement***.

June 26, 2012 Tr. at 89:2-6 (emphasis added).  Contrary to what Plaintiffs now claim, and again reflecting that it was not finding that *all* regulatory communications are relevant, the Court went on to explain further the limits on the production State Street was to undertake:

> THE COURT:  The documents, the communications with the regulators. To the extent that it deals with issues that are not related to this litigation it wouldn't be responsive to anything. But I assume in these masses of papers that somebody has asked for a document reflecting State Streets interpretation of—
>
> MR. PRENDERGAST:  X, Y and Z.
>
> THE COURT:  Whatever.

WILMERHALE

The Honorable Judith G. Dein
November 7, 2012
Page 10

> MR. PRENDERGAST:  Fair enough.
>
> THE COURT:  And that that may very well be included in the communication with a regulator.

June 26, 2012 Tr. at 92:19-25, 93:1-4.  Admissions and comparable substantive statements are precisely what State Street reviewed the regulatory communications to identify and produce. The rest was deemed "non-responsive" and logged.  The Court's Order, and Fed. R. Civ. P. 26(b)(1), do not require more.

## III.    State Street's Search Terms for FX Issues Are Robust, Comprehensive, and Abundantly Sufficient for the Collection of Responsive Documents

State Street agrees that the parties have made significant progress in negotiating the search terms that State Street will apply for FX-related electronically stored information.  The State Street Defendants have agreed to over *150 search terms* in connection with a baseline of broad FX terms.  The negotiated terms are robust, comprehensive, and are more than sufficient to identify those potentially relevant and responsive documents that require further review.

There remains one search term to which the parties do not agree as a standalone search— unconnected to the subject of foreign exchange trading or pricing in any way:  *(dumb or smart or stupid) /5 client!*.   In bringing this search string to the Court's attention, Plaintiffs quote a lengthy passage from their complaint, yet neglect to mention an important aspect of the negotiation process:  State Street agreed that the term should be a part of the FX ESI Protocol. Indeed, in its initial proposal for FX search terms eight months ago, State Street affirmatively offered to run a version of these terms in connection with various FX-related terms.  Ex. A (Feb. 29, 2012 Email from James Prendergast).

After Plaintiffs rejected this version of the search string, State Street offered a more expansive search in connection with FX-related terms:  *(dumb or stupid or smart) /10 (client! or money)*. Ex. C (Oct. 3, 2012 Letter from Timothy Perla).  Plaintiffs again rejected this version of the search string.  Pls.' Ex. 7 (Oct. 12, 2012 Letter from Robert Ditzion).  Nevertheless, State Street reaffirmed that it remained willing to search for these terms if run in connection with and in proximity to FX-related terms.  Pls.' Ex. 8 (Oct. 19, 2012 Letter from Timothy Perla).  Plaintiffs, however, continue to insist that the term be searched regardless of context or relation to FX.

It is abundantly clear from Plaintiffs' Amended Complaint that State Street has offered a search string that is properly tied the allegations made.  Plaintiffs allege that State Street employees referred to clients as "dumb" based on whether they confirmed the exchange rate that State Street used in executing foreign exchange trades.  *Hill* Am. Compl. ¶ 53; *Richard* Am. Compl. ¶ 79. Plaintiffs do not allege that clients were characterized this way either more broadly or in relation

WilmerHale

The Honorable Judith G. Dein
November 7, 2012
Page 11

to practices separate from the foreign exchange business.  Nor do Plaintiffs suggest how practices other than FX are relevant to their claims.  Plaintiffs' insistence on applying this particular search term in a standalone form—after State Street reasonably has already agreed to run a version of this search, and after State Street has agreed to run over 150 other terms in connection with broad FX anchoring terms—signifies nothing more than an attempt to expand this litigation into areas ungrounded in the allegations of their Complaints.

IV.     **State Street Will Continue to Produce Documents from the California AG Action Productions Consistent with the Court's Order**

In accordance with the Court's June 27 Order, State Street will continue to produce documents from ongoing productions in the California AG Action.  State Street has never said otherwise.

With respect to California AG productions going forward, however, Plaintiffs have provided a moving target as to the protocol to be applied.  For prior productions of documents from the California AG Action, State Street applied a set of expansive search terms in order to determine the materials to be produced to the *Hill* and *Richard* Plaintiffs.  Plaintiffs took issue with the terms that State Street used to gather documents from the California AG Production, and proffered fourteen supplemental terms in their May 30, 2012 motion to compel.  ECF No. 157 at 3 & n.2.

In response to that motion, the Court ordered State Street either (a) to review the withheld documents for responsiveness, or (b) to conduct a new search of those documents based on Plaintiffs' "*proposed* search terms."  June 27 Order at 3.  Plaintiffs apparently read this Order not only as accepting the search terms proposed in their brief, but as also granting them a blank check on which to write as many additional terms in the future as they would like.  And indeed, on July 5, 2012, Plaintiffs proposed *fifty-eight* so-called "additional proposed" terms to be run against the California AG production.  Ex. D (July 5, 2012 Email from Robert Ditzion).  These terms generally mirrored the expansive FX search terms that Plaintiffs submitted to Defendants on July 11, 2012 and which the parties have yet to finalize.  Given the parties' apparent disagreement over the meaning of the "proposed search terms" that the Court ordered State Street to apply, and given the ongoing disputes surrounding the very universe of FX search terms on which Plaintiffs' 58-term list was based, it was clearly premature to run any such terms against the California AG production pending the resolution of those issues.

Nevertheless, in order to moot a dispute that has already been addressed by the Court on multiple occasions, State Street will agree to apply Plaintiffs' expansive list of 58 additional terms.  Consistent with the Court's June 27 Order, State Street will conduct a search of those documents using Plaintiffs' 58 proposed terms, excluding from production only the following categories:

WilmerHale

The Honorable Judith G. Dein
November 7, 2012
Page 12

    (1) RFPs and custodial contracts that are not typical of or identical to the FX pricing provisions in State Street's contracts with the California pension funds;

    (2) communications with regulatory and law enforcement officials that are not responsive to Plaintiffs' requests for other specific categories of documents in this case; and

    (3) documents that were identified through manual review as solely "performance-related," per the parties' agreement (*see* Pls.' Letter Request to Compel (ECF No. 157) at 3).

For those documents that do not hit on Plaintiffs' 58 requested additional search terms, State Street either will withhold and log such documents pursuant to the June 27 Order, or alternatively will produce them in full.

\*\*\*\*\*\*

For the foregoing reasons, the State Street Defendants respectfully request that the Court deny Plaintiffs' motion to compel.

Very truly yours,

/s/  James. W. Prendergast
James W. Prendergast

Encl.
cc: Counsel of record (via ECF)