**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| HILL v. STATE STREET CORPORATION ) <br> ) <br> ) <br> )     Master Docket No. 1:09-cv-12146 <br> THIS DOCUMENT RELATES TO ) <br> ALL ACTIONS ) <br> ) <br> DOCKET NO. 09-12146-GAO ) <br> ) | |

**AFFIDAVIT OF JOHN J. BUTTS**

I, John J. Butts, hereby state under oath:

1. I am a member in good standing of the bar of the Commonwealth of Massachusetts and this Court, and am a Partner at the firm of Wilmer Cutler Pickering Hale and Dorr LLP. I am one of the counsel representing the above captioned Defendants.

2. I submit this Affidavit in connection with the Proposed Reply Memorandum in Support of Defendants' Motion for Protective Order, filed herewith.

3. Attached hereto are true and accurate copies of the following documents, which are referenced in Defendants' Proposed Reply Memorandum in Support of Motion for Protective Order:

4. Exhibit A is a letter from James Prendergast to Plaintiffs' counsel Robert Ditzion dated February 22, 2013.

5. Exhibit B is an email and attachment that I sent to Plaintiffs' counsel John Browne dated April 1, 2013.

6. Exhibit C is an email I received from John Browne in response to the correspondence referenced immediately above as Exhibit B, dated April 1, 2013.

ActiveUS 107655253v.1

*/s/ John J. Butts*
John J. Butts

Dated:  April 8, 2013

## **CERTIFICATE OF SERVICE**

      I, John J. Butts, hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) dated April 8, 2013.

                                                      */s/ John J. Butts*
                                                      John J. Butts

# EXHIBIT A

**WILMERHALE**

James W. Prendergast

+1 617 526 6181 (t)
+1 617 526 5000 (f)
james.prendergast@wilmerhale.com

February 22, 2013

**By E-mail**

Robert Ditzion, Esq.
Shapiro Haber & Urmy LLP
53 State Street
Boston, MA  02109

Re:  *Hill v. State Street Corporation, et al.*, Master Docket No. 09-12146 (GAO)

Dear Rob:

I write on behalf of the State Street Defendants in response to Michelle Blauner's letter dated February 7, 2013 and your letter of Wednesday (the "February 7 Letter" and "February 21 Letter," respectively) regarding FX search terms, revenue reports, contract materials, relevance and responsiveness criteria used in the State Street Defendants' review and production of FX-related documents, and John Atchue.

**I.     FX Search Terms**

We do not agree with your assertion that the plaintiffs' most recent FX search term proposal, which yields 1.9 million unique, reviewable documents, is "eminently reasonable" or that it represents a substantial compromise.  The assertion is untethered to any assessment as required by Fed. R. Civ. P. 26(b)(2)(C)(iii) as to whether:

> the burden or expense of the proposed discovery outweighs its likely benefit, considering the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the action, and the importance of the discovery in resolving the issues.

The plaintiffs' currently proposed FX search terms yield nearly double the number of unique documents identified for review by the search terms that the State Street Defendants proposed on February 5, 2013.  The burden and expense of this volume is significant.  For example, based on our experience in large matters such as this, each additional batch of 50,000 documents costs defendants between $100,000 and $180,000 to review and produce, depending on the document type.  Your February 21 letter does not provide any basis to conclude that the additional documents plaintiffs seek are likely to be relevant, or that the benefit of discovering relevant information in these documents outweighs the associated burden and expense.

**WILMERHALE**

Robert Ditzion, Esq.
February 22, 2013
Page 2

While deduplication of materials produced for the agreed-upon custodians in the CA AG action will reduce the total unique documents for review, that reduction will not be as significant as your February 21 Letter suggests. The total number of ESI documents produced in the CA AG action for these custodians was 9,460. This is the maximum by which such production would reduce the unique documents for review in this action.

Not only is the plaintiffs' proposal unduly burdensome and expensive, but it will also unduly delay the progress of this case. For instance, the State Street Defendants needed more than fifteen months, using a very large team of review attorneys, to review more than 2.4 million documents (more than 95 million pages) in order to arrive at the more than 225,000 documents that were produced to the California Attorney General. Without a reduction in volume, there is no reason to believe that we will be able to complete a review of the documents identified by plaintiffs' proposed search terms any faster in this case. Accordingly, we continue to believe that it is imperative for the parties to continue exploring refinements to the search terms that reduce the total documents for review without significantly diminishing the process's capacity for identifying relevant documents needed by plaintiffs.

To this end, we have now had an opportunity to analyze the hit report for Plaintiffs' February 7, 2013 FX search term proposal, which Mike Bayer circulated last Thursday evening. Based on our analysis, we have prepared the attached spreadsheet, the first tab of which (entitled "Poss. FX Terms for Discussion") contains several refinements that we think would help manage the review burden associated with terms that produced very large numbers of document hits, while preserving the likelihood that plaintiffs will still receive the relevant documents they need for this case. (The refinements appear as either yellow text in the headings or red text additions in the terms.)[1] We have not yet received a new hit report for these refinements, and we may need to make some additional or different proposals once we receive those results, but we wanted to get this document to you so that we can continue our discussion.

Here is a brief summary of our proposed refinements:

1. Many of the terms that yielded the largest number of document hits are comprised of a base term and a single limiter term. In fact, 11 of the 25 terms that produced the most hits are of this type. We have attempted to focus these terms a bit more by tightening up the proximity connectors in the Limiter 2(a), 3, 4, 5(a), and 9(a) groups.

2. Discussions involving the terms in the Limiter 9(b) group, which all concern FX-related systems, should only be relevant insofar as they relate to pricing. Thus, we believe that

---

[1] This proposal also includes the terms "intra-day" or "intraday" or "intra day" as requested in your February 21 letter.

WILMERHALE

Robert Ditzion, Esq.
February 22, 2013
Page 3

    those strings should appear within at least 40 words of a term that relates to pricing (i.e., the Core 1(b) Terms).

3. The hit report suggests that the terms "transact!" and "trad!", particularly when included in core terms, are bringing in extremely large numbers of documents. For example:

    a. "FX w/25 trad*" yields more than 620,000 hits,
    b. ("foreign" w/3 "exchange*") W/25 "trad*" yields more than 140,000 hits,
    c. "FX w/25 transact!" yields nearly 100,000 hits, and
    d. ("foreign" w/3 "exchange*") W/25 "trad*" yields nearly 50,000 hits.

    Discussions that include these terms are only relevant to the extent they concern the pricing of FX trades or transactions. We have therefore removed "transact!" and "trad!" from the Core 1(b) terms used in the Limiter 1, 2(b), 5(b), 9(b) and 9(c) groups. However, to ensure that relevant discussions about these concepts are not missed, we have created a new Limiter 9(c) group, which uses "transact!" and "trad!" in combination with the pricing terms in the Core 1(b) group.

4. We continue to believe that discussions about FX revenues and profits are only relevant to the extent they specifically break out or refer to indirect FX transactions. Thus, we have moved the terms "revenue!" and "profit!" to a new Limiter 9(d) group, and have proposed running them in conjunction with terms that focus on indirect FX transactions. While we understand the point that you previously expressed that communications regarding "indirect" FX may not always include clear references to "indirect," we think that the use of an "indirect" reference is much more likely to appear when relevant revenues or profits are discussed.

5. Similarly, discussions about Requests for Proposals, Requests for Qualifications, and Investment Manager guides are only relevant to the extent they involve the pricing of FX transactions. We have therefore moved terms associated with these concepts out of the Limiter 2(a) group into a new Limiter 2(b) group, and have proposed running them in conjunction with the Core 1(b) pricing terms.

6. The only discussions of transparency that should be relevant are those relating to the transparency of State Street's FX pricing practices. Thus, we have added the Core 1(b) terms after the term "transparen!" in the Limiter 3 group.

7. The relevance of the term "outsource!" in the Limiter 9(a) and Core 2 groups is not clear to us. We would like to discuss this with you so that we can better understand what

**WILMERHALE**

Robert Ditzion, Esq.
February 22, 2013
Page 4

       Plaintiffs want to capture with this term that would not be captured by other terms in our proposal.

Finally, this will confirm that the State Street defendants will run the broader October 2012 FX search terms on the custodians identified in Section D of Ms. Blauner's February 8th e-mail.

We think it would be beneficial to discuss these concepts in greater detail before either side makes further revisions to the terms. As I will be away from the office until February 28, 2013, please let Mike Bayer know if there is a time next week when a working group for your team would be available for a call.

## II.     Scope of Hand Review

As discussed, we believe that the scope of State Street's review for FX-related documents has adequately been set forth in the State Street Defendants' Objections and Responses to Plaintiffs' First Request for Production of Documents, served on March 21, 2012. But as requested, and in the interests of avoiding any unnecessary dispute regarding the scope of our responsiveness and relevance review, I can confirm the general principles of responsiveness and relevance that govern our review and production of documents that have been collected pursuant to the agreed upon ESI protocol for FX-related discovery (including custodians, date ranges, and search terms) ("FX ESI Protocol").

The principles described in the February 7 Letter are generally consistent with the responsiveness and relevance criteria that the State Street Defendants apply to the review of FX-related documents. The State Street Defendants will produce non-privileged documents describing or concerning prices, pricing policy, or revenues for indirect FX trades and FX trades generally (*i.e.*, those not specifically categorized as direct or indirect), to the extent that such documents have been captured by the agreed upon FX ESI Protocol. With one exception, documents in the categories listed at pages 5–6 of the February 7 Letter that are captured by the FX ESI protocol and that relate to indirect FX will not be withheld on responsiveness or relevance grounds.

With regard to the requested confirmation that the State Street Defendants will produce "[d]ocuments concerning this case or other cases or investigations covering State Street's FX practices," February 7 Letter at 6, we do not agree that a document is responsive to Plaintiffs' First Request for Production of Documents or relevant to Plaintiffs' claims solely by virtue of referring to this action or other actions or investigations concerning State Street's FX practices. This is a point that I stressed at the February 11, 2013 hearing, and one with which Judge Dein indicated that she agreed. We will not, however, withhold a non-privileged document from production that refers to such actions or investigations where the document is otherwise responsive and relevant pursuant to the above criteria.

WilmerHale

Robert Ditzion, Esq.
February 22, 2013
Page 5

### III.     Indirect FX Revenue Reports

We expect to have to you by the end of next week the Indirect FX Revenue Reports. Although I do not have a final count on the number of clients whose names will be redacted, I understand that that it may be around 10. Once the reports are produced, we would be happy to discuss how we might reasonably address those redactions.

### IV.     Contract Materials

We expect to produce the RFPs produced in the California AG action by March 1, 2013. However, many of the contract materials that we have collected for the 117 agreed-upon clients are still in the process of being processed and reviewed for privilege. We expect to produce many of those documents by March 8, 2013, and we have prioritized the processing and review of the remainder in order to complete this production as quickly as possible.

As we have explained, that the process for collecting contract materials for clients that are not yet in our possession is burdensome and time consuming. We are in the process of contacting the relevant client relationship teams to gather this information, but this process will take time to complete. For example, key members of several of State Street's older custodial client teams are no longer employed by State Street, and the process for collecting documents for such clients is therefore cumbersome.

### V.     John Atchue

When we spoke, plaintiffs explained that Mr. Atchue's relevance was based on the fact that Orla Beirne reported to Mr. Atchue. However, Ms. Beirne has informed us that she reported to Mr. Atchue only from March 2005 to May 2007, when it was announced that she would assume the role of "State Street Global Markets Foreign Exchange Head of Custody FX Services." Based on this timing, and the fact that Mr. Atchue did no indirect FX trading during the discovery period, we propose that the relevant period to be searched for his documentation be 2005 through 2007.

****

We look forward to continuing our discussions on a mutually acceptable set of search terms once you have had an opportunity to consider our proposed revised terms. In the meantime, if you have any questions, please feel free to call Mike Bayer, or me when I return to the office next Thursday.

WILMERHALE

Robert Ditzion, Esq.
February 22, 2013
Page 6


Yours truly,

*/s/ James W. Prendergast*


James W. Prendergast

# EXHIBIT B

| | |
|---|---|
| From: | Butts, John |
| Sent: | Monday, April 01, 2013 2:07 PM |
| To: | johnb@blbglaw.com |
| Subject: | Bank Secrecy |
| Attachments: | Bank Secrecy Stipulation_(107577755)_(1).DOCX |

John,

It was good to speak with you this morning.

Here is the draft stipulation I promised.  Please let me know if it works for your side, or if you have any comments.

I have meetings from 5-6:30, but am otherwise available if another discussion would help.

Thanks,

John

**John J. Butts | WilmerHale**
60 State Street
Boston, MA 02109 USA
+1 617 526 6515 (t)
+1 617 526 5000 (f)
john.butts@wilmerhale.com

**Please consider the environment before printing this email.**

This email message and any attachments are being sent by Wilmer Cutler Pickering Hale and Dorr LLP, are confidential, and may be privileged. If you are not the intended recipient, please notify us immediately—by replying to this message or by sending an email to postmaster@wilmerhale.com—and destroy all copies of this message and any attachments. Thank you.

For more information about WilmerHale, please visit us at http://www.wilmerhale.com.

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| HILL v. STATE STREET CORPORATION ) | |
| ) | MASTER DOCKET |
| THIS DOCUMENT RELATED TO ) | No. 09-12146-GAO |
| ALL CLASS ACTIONS ) | |
| ) | |
| DOCKET NO. 09-12146-GAO ) | |
| ) | |

**[PROPOSED] ORDER REGARDING STATE STREET'S
WITHHOLDING OF DOCUMENTS AND INFORMATION
ON THE BASIS OF BANK SECRECY LAWS**

WHEREAS, following the Court's order of November 7, 2012 (Dkt No. 232) expanding the scope of foreign exchange-related discovery, the parties agreed that State Street would produce certain reports of its estimated foreign-exchange revenue ("Revenue Reports") and also contracts and RFP responses relating to a sample of 117 of custody foreign exchange customers (the "Contract Sample").

WHEREAS, State Street discovered that certain information in the Revenue Reports and in the Contract Sample relates to customers of State Street Bank Luxembourg S.A. ("State Street Luxembourg") and State Street believes that it is prohibited from producing that information by Luxembourg's bank secrecy laws;

WHEREAS, State Street has produced (a) the documents in the Contract Sample it has collected to date with the exception of those relating to State Street Luxembourg's customers, and (b) Revenue Reports that only redact information State Street believes is subject to Luxembourg's secrecy laws.

WHEREAS, State Street moved for a protective order concerning the documents and information it withheld or redacted on the basis of Luxembourg's bank secrecy laws;

WHEREAS, the parties have conferred and agree that the following [Proposed] Order, if acceptable to the Court, will resolve the issues set forth in State Street's motion for a protective order.

NOW, THEREFORE, THE COURT ORDERS as follows:

1. State Street need not produce (a) documents in the Contract Sample that concern customers of State Street Luxembourg, or (b) the information State Street redacted from the Revenue Reports. No other non-privileged material may be withheld from either the current Contract Sample or the Revenue Reports pursuant to an asserted third party confidentiality restriction, *e.g.,* bank secrecy laws, contractual obligations or business sensitivities.

2. As a replacement for State Street Luxembourg's customers in the Contract Sample, Plaintiffs may select twelve additional customers. State Street will accept Plaintiffs' selections unless those selections are also customers of State Street Luxembourg or State Street believes in good faith that it is otherwise legally barred from producing those customers' contract materials by operation of law or contract.

3. By April __ **[One week from agreement]**, State Street shall produce substitute Revenue Reports that insert for the names of redacted clients a unique client-identifier that preserves customer anonymity (for example, "Customer A" or "Customer B").

4. If other forms of discovery beyond the Revenue Reports and Contract Sample (*e.g.*, electronically stored information under the parties' search term protocol) capture non-privileged information that State Street believes in good faith it cannot produce pursuant to Luxembourg's or another country's bank secrecy laws and the documents contain other responsive information that can be produced, State Street will produce the documents in a redacted form. Redactions shall be marked in a way that identifies bank secrecy as the reason for

the redaction. If a document contains no other responsive information that can be produced, State Street may withhold the document from production. State Street shall also provide a log of any withheld documents that identifies following information to the extent it can be ascertained from the face of the document or from metadata and can be disclosed under applicable secrecy laws: (a) the date of the document; (b) the author of the document; (c) the recipient(s) of the document, including any individual or entity that was copied or blind-copied; (d) a general description of the document and any withheld attachments; and (e) the basis for withholding the document. Plaintiffs reserve their right to move to compel the production of documents or information that is withheld or redacted pursuant to this paragraph. State Street reserves its right to move for a protective order with regard to issues other than bank secrecy laws.

**SO ORDERED:**

_____
The Honorable Judith G. Dein
United States Magistrate Judge

# EXHIBIT C

| | |
|---|---|
| **From:** | johnb@blbglaw.com |
| **Sent:** | Monday, April 01, 2013 4:23 PM |
| **To:** | Butts, John |
| **Subject:** | RE: Bank Secrecy |

Thank you John. I've passed this along to our co-counsel and we are going to discuss later today and I'll get back to you no later than tomorrow morning.

**From:** Butts, John [mailto:John.Butts@wilmerhale.com]
**Sent:** Monday, April 01, 2013 2:07 PM
**To:** John Browne
**Subject:** Bank Secrecy

John,

It was good to speak with you this morning.

Here is the draft stipulation I promised. Please let me know if it works for your side, or if you have any comments.

I have meetings from 5-6:30, but am otherwise available if another discussion would help.

Thanks,

John

**John J. Butts | WilmerHale**
60 State Street
Boston, MA 02109 USA
+1 617 526 6515 (t)
+1 617 526 5000 (f)
john.butts@wilmerhale.com

**Please consider the environment before printing this email.**

This email message and any attachments are being sent by Wilmer Cutler Pickering Hale and Dorr LLP, are confidential, and may be privileged. If you are not the intended recipient, please notify us immediately—by replying to this message or by sending an email to postmaster@wilmerhale.com—and destroy all copies of this message and any attachments. Thank you.

For more information about WilmerHale, please visit us at http://www.wilmerhale.com.