**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MASSACHUSETTS**

| | | |
|---|---|---|
| HILL v. STATE STREET CORPORATION | ) | |
| | ) | |
| | ) | Master Docket No.1:09-cv-12146-GAO |
| THIS DOCUMENT RELATES TO THE SECURITIES ACTION | ) | |
| | ) | |
| | ) | |
| DOCKET NO. 09-cv-12146-GAO | ) | |

# MEMORANDUM OF LAW IN SUPPORT OF LEAD PLAINTIFFS' MOTION FOR (I) PRELIMINARY APPROVAL OF SETTLEMENT, (II) CERTIFICATION OF THE SETTLEMENT CLASS FOR PURPOSES OF SETTLEMENT, AND (III) APPROVAL OF NOTICE TO THE SETTLEMENT CLASS


**BERNSTEIN LITOWITZ BERGER & GROSSMANN LLP**
John C. Browne
Lauren A. Ormsbee
Jeremy P. Robinson
Evan M. Berkow

1285 Avenue of the Americas
New York, New York 10019

**MOTLEY RICE LLC**
William H. Narwold
James M. Hughes
Badge Humphries
William S. Norton

28 Bridgeside Blvd.
Mt. Pleasant, South Carolina 29464

*Counsel for Lead Plaintiffs and Co-Lead Counsel For The Proposed Class*


Dated: July 8, 2014

**TABLE OF CONTENTS**


TABLE OF AUTHORITIES ..... iii

I. INTRODUCTION ..... 1

II. History OF THE LITIGATION ..... 5

III. THE SETTLEMENT WARRANTS PRELIMINARY APPROVAL ..... 9

A. The Settlement Is The Result Of Arm's-Length Negotiations By Well-Informed And Experienced Counsel ..... 11

B. The Stage Of The Proceedings Supports Preliminary Approval ..... 11

C. The Number And Nature Of Objections ..... 12

D. The Substantial Benefits For The Settlement Class, Weighed Against Litigation Risks, Strongly Supports Preliminary Approval ..... 13

IV. THE SETTLEMENT CLASS SHOULD BE CERTIFIED FOR SETTLEMENT PURPOSES ..... 15

A. The Settlement Class Satisfies The Requirements Of Rule 23(a) ..... 16

1. The Settlement Class Members Are Too Numerous To Be Joined ..... 16

2. There Are Common Questions Of Law And Fact ..... 17

3. Lead Plaintiffs' Claims Are Typical Of The Settlement Class ..... 18

4. Lead Plaintiffs Will Fairly And Adequately Protect The Interests Of The Settlement Class ..... 19

B. The Settlement Class Satisfies The Requirements Of Rule 23(b)(3) ..... 20

1. Common Legal And Factual Questions Predominate ..... 20

2. A Class Action Is Superior To Other Methods Of Adjudication ..... 21

V. NOTICE TO THE SETTLEMENT CLASS SHOULD BE APPROVED ..... 21

VI. PROPOSED SCHEDULE ..... 23

VII. CONCLUSION ..... 24

## TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Amchem Prods., Inc. v. Windsor*, 521 U.S. 591 (1997) ..... 16, 20

*In re Boston Scientific Corp. Sec. Litig.*, 604 F. Supp. 2d 275 (D. Mass. 2009) ..... 17, 18, 19, 20

*Bussie v. Allmerica Fin. Corp.*, 50 F. Supp. 2d 59 (D. Mass. 1999) ..... 11

*In re Chipcom Corp. Sec. Litig.*, No. 95-11114, 1996 WL 1057531 (D. Mass. Apr. 29, 1996) ..... 22

*In re Credit Suisse-AOL Sec. Litig.*, 253 F.R.D. 17 (D. Mass. 2008) ..... 18, 19

*Duhaime v. John Hancock Mut. Life Ins. Co.*, 177 F.R.D. 54 (D. Mass. 1997) ..... 12, 17, 22

*In re Evergreen Ultra Short Opportunities Fund Sec. Litig.*, 275 F.R.D. 382 (D. Mass. 2011) ..... 18, 20, 21

*In re FLAG Telecom Holdings Ltd. Sec. Litig.*, No. 02-CV-3400, 2010 WL 4537550 (S.D.N.Y. Nov. 8, 2010) ..... 11

*Glass Dimensions, Inc. v. State Street Bank & Trust Co.*, 285 F.R.D. 169 (D. Mass. 2012) ..... 19

*Grace v. Perception Tech. Corp.*, 128 F.R.D. 165, 167 (D. Mass. 1989) ..... 18

*Hochstadt v. Boston Scientific Corp.*, 708 F. Supp. 2d 95 (D. Mass. 2010) ..... 10

*Hotel Holiday Inn de Isla Verde v. N.L.R.B.*, 723 F.2d 169 (1st Cir. 1983) ..... 9

*John Hancock Life Ins. Co. v. Goldman, Sachs & Co.*, No. 01-10729, 2004 WL 438790 (D. Mass. Mar. 9, 2004) ..... 21

*Kirby v. Cullinet Software, Inc.*, 116 F.R.D. 303 (D. Mass. 1987) ..... 17

*In re Lupron Mktg. & Sales Practices Litig.*, 228 F.R.D. 75 (D. Mass. 2005) ..... 9, 10, 16

*In re Marsh & McLennan Cos. Sec. Litig.*, No. 04 Civ. 8144 (CM), 2009 WL 5178546 (S.D.N.Y. Dec. 23, 2009) ..... 16

*In re PaineWebber Ltd. P'ships Litig.*,
171 F.R.D. 104 (S.D.N.Y. 1997) ....................20

*In re Polaroid ERISA Litig.*,
240 F.R.D. 65 (S.D.N.Y. 2006) ....................19

*In re Puerto Rican Cabotage Antitrust Litig.*, 269 F.R.D. 125 (D.P.R. 2010) ....................10

*In re Relafen Antitrust Litig.*, 231 F.R.D. 52 (D. Mass. 2005) ....................10, 16

*Rolland v. Cellucci*, 191 F.R.D. 3 (D. Mass. 2000) ....................11

*Scott v. First Am. Title Ins. Co.*, No.
2008 WL 4820498 (D.N.H. Nov. 5, 2008) ....................10

*In re Sonus Networks, Inc. Sec. Litig*., 247 F.R.D. 244 (D. Mass. 2007) ....................17

*Swack v. Credit Suisse First Boston*, 230 F.R.D. 250 (D. Mass. 2005)....................17, 18, 21

*In re Tyco Int'l, Ltd. Multidistrict Litig.*, 535 F. Supp. 2d 249 (D.N.H. 2007) ....................10

*U.S. v. Comunidades Unidas Contra La Contaminacion*,
204 F.3d 275 (1st Cir. 2000)....................9

*Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.*,
396 F.3d 96 (2d Cir. 2005)....................11, 22

*Waste Mgmt. Holdings, Inc. v. Mowbray*, 208 F.3d 288 (1st Cir. 2000)....................21

*Weinberger v. Kendrick*,
698 F.2d 61 (2d Cir. 1982)....................16

**STATUTES**

15 U.S.C. § 77z-1(a)(7)....................22

15 U.S.C. § 78u-4(a)(7) ....................22

**OTHER AUTHORITIES**

Fed. R. Civ. P. 23 .................... *passim*

Lead Plaintiffs, on behalf of themselves and the Settlement Class (defined below), have reached a proposed settlement of the above-captioned securities class action lawsuit (the "Action") for a total of $60 million in cash (the "Settlement").[1] Lead Plaintiffs respectfully move the Court for an order preliminarily approving the Settlement, certifying the Settlement Class for purposes of the Settlement, appointing Lead Plaintiffs as class representatives and Co-Lead Counsel as class counsel for purposes of the Settlement, approving the form and manner of providing notice of the Settlement to the Settlement Class, and setting a hearing at which the Court will consider final approval of the Settlement, approval of the proposed Plan of Allocation, and Co-Lead Counsel's motion for an award of attorneys' fees and reimbursement of Litigation Expenses.

## I. INTRODUCTION

The parties have reached an agreement to settle this Action in exchange for a $60 million cash payment to be made for the benefit of the Settlement Class.[2] If the Settlement is approved by the Court, it will result in a substantial payment to class members and resolve the Action in its entirety. Pursuant to Rule 23 of the Federal Rules of Civil Procedure, Lead Plaintiffs now seek the

---

[1] By Order dated May 25, 2010, the Court appointed Public Employees' Retirement System of Mississippi ("MPERS") and Union Asset Management Holding AG ("Union") to serve as Co-Lead Plaintiffs (together, "Lead Plaintiffs"); Bernstein Litowitz Berger & Grossmann LLP ("BLBG") and Motley Rice LLC ("Motley Rice") to serve as Co-Lead Counsel; and Berman DeValerio to serve as Liaison Counsel in the federal securities fraud class actions consolidated under *Hill v. State Street Corporation et al.* *See* ECF No. 37, at 5.

Unless otherwise defined herein, capitalized terms shall have the meanings ascribed to them in the Stipulation and Agreement of Settlement dated July 8, 2014 (the "Stipulation").

[2] The Stipulation was entered into between (a) Lead Plaintiffs, on behalf of themselves, the other named plaintiffs Miami Beach Employees Retirement Plan and Marilyn Demory, and the Settlement Class, and (b) defendants (i) State Street Corporation ("State Street"); (ii) Ronald E. Logue, Edward J. Resch, Pamela D. Gormley, Kennett F. Burnes, Peter Coym, Nader F. Darehshori, Amelia C. Fawcett, David P. Gruber, Linda A. Hill, Charles R. LaMantia, Maureen J. Miskovic, Richard P. Sergel, Ronald L. Skates, Gregory L. Summe, and Robert E. Weissman (the "Individual Defendants"); (iii) Goldman, Sachs & Co., Morgan Stanley & Co. LLC (formerly known as Morgan Stanley & Co. Incorporated), Credit Suisse Securities (USA) LLC, and UBS Securities LLC (the "Underwriter Defendants"); and (iv) Ernst & Young LLP ("Ernst & Young") (collectively, "Defendants").

Court's preliminary approval of the Settlement so that Notice can be disseminated to members of the Settlement Class and a Settlement Hearing scheduled.

The substantial Settlement is the direct result of the efforts undertaken by Plaintiffs and Plaintiffs' Counsel to vigorously prosecute the claims of Settlement Class Members throughout this litigation. Over the course of nearly four years of hotly contested litigation, Plaintiffs, through counsel, have successfully opposed Defendants' motions to dismiss, obtained and reviewed more than 24 million pages of documents, filed a motion for class certification, took or defended ten depositions, briefed more than 22 motions to compel, and participated in approximately 19 hearings before the Court. Significantly, the Settlement, which is the product of protracted arm's-length negotiations, was reached only after substantial fact discovery was taken, giving Lead Plaintiffs a thorough understanding of the claims and defenses.

The very significant benefit the proposed Settlement will provide to the Settlement Class is particularly noteworthy when considered against the risks that the Settlement Class might recover less (or nothing) if the Action were litigated through dispositive motions, trial, and any appeals that would likely follow, a process that could last many months, or even years. Indeed, as discussed in more detail below, Lead Plaintiffs faced material risks to establishing both liability and damages in this Action. As detailed below, this case has two theories of liability. The Complaint alleges that State Street falsely told investors that it was earning hundreds of millions of dollars from legitimate foreign exchange ("FX") trading operations conducted on behalf of its custodial clients. The Complaint alleges, however, that State Street was artificially inflating its FX revenues by improperly overcharging its clients for FX services. The Complaint also alleges that State Street falsely stated that it was investing only in "high quality" assets in the Company's investment portfolio and in off-balance sheet entities called "Conduits."

While Lead Plaintiffs believe that both aspects of the case have substantial merit, they each involve complicated issues and Plaintiffs and the Settlement Class faced significant risk in establishing liability. For example, State Street argued that it was not overcharging its FX customers for FX services and that its customers were aware of the charges they were incurring when conducting FX transactions through State Street. It also argued that, even if some customers were overcharged, the alleged FX fraud impacted only a small portion of State Street's revenues (State Street has approximately *$3 billion* in revenue per year) and was immaterial as a matter of law. At summary judgment or trial, State Street would have contended that only a very small percentage of its custodial contracts even arguably prohibited it from charging a "mark-up" on FX transactions, and therefore there was nothing "illicit" or "improper" about the vast majority of the FX revenues at issue in the Action.

Defendants also would have advanced significant arguments that Plaintiffs would be unable to establish falsity or scienter relating to the alleged Conduit and investment portfolio fraud. On this point, State Street had argued throughout the case that the Company's use of the term "high quality" to describe its assets was accurate and correct. According to State Street, the assets in its investment portfolio and Conduits were all highly rated (in many cases, they had Triple A ratings or were backed by the United States Government), and had their values closely vetted by auditors, outside consultants, and by State Street's own experienced credit officers. Indeed, State Street would have contended that very few of thousands of specific assets in the Conduits or investment portfolios ever suffered an event of default, thus demonstrating that those assets were, in fact, "high quality."

Even if Plaintiffs were able to establish liability, they faced significant risks in establishing damages in this Action. Under the securities laws, plaintiffs must plead and prove "loss

causation" – *i.e.*, a causal nexus between the decline in price of a security and the alleged false and misleading statements made by defendants. Here, Plaintiffs alleged that State Street's alleged FX fraud was revealed on October 20, 2009, when the California Attorney General announced his lawsuit against State Street, and that announcement caused the price of the Company's stock to decline significantly over the next few days. Defendants, however, have argued strenuously that the decline in the price of State Street common stock was caused by a negative earnings report that was released that same day, rather than any alleged false and misleading statements regarding the alleged FX fraud. Similarly, with respect to Plaintiffs' allegations regarding State Street's alleged Conduit and investment portfolio fraud, Defendants contended that State Street released a negative earnings announcement on the same day, and that the earnings release, rather than any disclosure of the alleged fraud, caused all or most of the decline in State Street's stock on that date.

While Lead Plaintiffs believe that they have meritorious responses to each of Defendants' contentions, the proposed Settlement, if approved, will enable the Settlement Class to recover a very significant sum without incurring the risk that Defendants would prevail at summary judgment, trial, or in subsequent appeals. At the hearing to consider final approval of the Settlement, the Court will have before it more extensive motion papers submitted in support of the Settlement, and will be asked to make a determination as to whether the Settlement is fair, reasonable, and adequate under all of the circumstances of the Action. At this time, Lead Plaintiffs request only that the Court grant preliminary approval of the Settlement so that notice of the Settlement may be disseminated to the Settlement Class and the Settlement Hearing may be scheduled.

Lead Plaintiffs respectfully request that this Court enter the proposed Preliminary Approval Order, which has been agreed upon by the Parties and a copy of which is attached as

Exhibit 2 to the accompanying Motion. The Preliminary Approval Order will, among other things: (i) preliminarily approve the Settlement on the terms set forth in the Stipulation; (ii) certify the Settlement Class, appoint Lead Plaintiffs as class representatives and Co-Lead Counsel as class counsel, for purposes of the Settlement only;[3] (iii) approve the form and manner of giving notice to the Settlement Class; and (iv) set a date for the Settlement Hearing at which the Court will consider final approval of the Settlement, approval of the Plan of Allocation for distribution of the Net Settlement Fund and Co-Lead Counsel's application for attorneys' fees and expenses.

## II. HISTORY OF THE LITIGATION

This securities class action asserts claims on behalf of investors who purchased State Street common stock during the Settlement Class Period, including those who purchased pursuant to State Street's June 3, 2008 secondary offering. On May 7, 2010, the Court appointed MPERS and Union as Lead Plaintiffs, approved their selection of BLBG and Motley Rice as Co-Lead Counsel, and consolidated the securities class actions seeking recovery on behalf of investors in State Street common stock under the caption *Hill v. State Street Corporation et al.*, No. 1:09-cv-12146-NG (as defined above, the "Action").

Plaintiffs subsequently conducted an intensive investigation into the claims and on July 29, 2010, filed a 158-page Consolidated Amended Class Action Complaint (the "Complaint"). The Complaint alleges that State Street told investors that it was earning hundreds of millions of dollars from legitimate FX trading operations conducted on behalf of its custodial clients. Plaintiffs alleged, however, that State Street's FX revenues were artificially inflated by a wide-spread scheme to defraud its custodial clients. Specifically, it was alleged that State Street was adding an undisclosed and unauthorized "mark-up" to each FX transaction it conducted during the

[3] For purposes of the Settlement, the Parties have stipulated to certification of the Action as a class action.

Settlement Class Period. Plaintiffs alleged that these mark-ups, which were never disclosed to State Street's clients, were improper, and added potentially hundreds of millions of dollars in illicit revenue. Plaintiffs further alleged that investors learned the truth about State Street's FX practices on October 20, 2009, when the California Attorney General announced the filing of a complaint on behalf of two of California's largest public pension funds. In the wake of that announcement, the price of State Street's common stock declined significantly.

The Complaint also alleges that Defendants concealed State Street's exposure to billions of dollars of allegedly toxic mortgage-backed securities and other assets State Street held in off-balance sheet entities called "Conduits" and in its own investment portfolio. The Complaint alleged that in its public filings in October and November 2008, State Street assured investors that the assets in its portfolios and Conduits were "high quality" and performing well despite deteriorating conditions in the financial markets. The Complaint alleges that these statements were false. On January 2009, less than two months after making the assurances set forth above, State Street announced that unrealized losses in these investments had increased to nearly $10 billion which allegedly caused the price of State Street's stock to drop precipitously.

Based on these allegations, the Complaint asserts claims against Defendants for violations of Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), and Section 11, 12(a)(2) and 15 of the Securities Act of 1933 (the "Securities Act").[4] On September 24, 2010, State Street, the Underwriter Defendants and Defendant Ernst & Young moved to

[4] Plaintiffs asserted Section 10(b) claims against Defendant State Street and Defendants Ronald E. Logue (Chairman and CEO) and Edward J. Resch (CFO and Exec. V.P.) (together, the "Officer Defendants"), and Section 20(a) claims against the Officer Defendants. Plaintiffs asserted Section 11 claims against State Street, the Officer Defendants, and other Individual Defendants, the Underwriter Defendants and Defendant Ernst & Young. Plaintiffs also asserted Section 12(a)(2) claims against Defendant State Street and the Underwriter Defendants, and Section 15 claims against certain of the Individual Defendants.

dismiss the Complaint. Defendants argued, among other things, that: (a) State Street's statements that the assets in its portfolios and Conduits were "high quality" were statements of genuinely held opinion with a reasonable, disclosed factual basis; (b) Plaintiffs had no basis to assert either an FX fraud or that the challenged FX business practices had a material impact on State Street's revenues; (c) Plaintiffs' Securities Act claims were time-barred; and (d) none of Defendants' other alleged misstatements, including the Company's valuations of its Conduit and investment portfolio assets, were inaccurate at the time they were made. On November 5, 2010, Plaintiffs filed their opposition papers and, on December 8, 2010, Defendants filed their reply papers. Oral argument on the motions to dismiss lasted two days – February 17 and 18, 2011. On August 3, 2011, the Court issued a Memorandum and Order that denied Defendants' motions to dismiss.

Following the Court's opinion on Defendants' motions to dismiss, the case was assigned to Magistrate Judge Dein for pre-trial purposes and discovery was conducted in coordination with two related ERISA cases, *Richard v. State Street Corp. et al.*, No. 10-cv-10184 (D. Mass.) and *Kenney v. State Street Corp. et al.*, No. 09-10750-DJC (D. Mass.). Over the course of the next two-and-one-half years, the Parties engaged in extremely intense and hard-fought fact discovery that required a substantial commitment of resources from both the parties and the Court. As part of this effort, Co-Lead Counsel issued extensive discovery requests to Defendants, ultimately obtaining and reviewing millions of pages of documents that had been produced to regulators, as well as millions of pages of documents that had not been previously produced to any other party. As part of this effort, Co-Lead Counsel engaged in multiple negotiations over the scope and adequacy of Defendants' discovery responses, and filed numerous motions to compel the production of documents. Co-Lead Counsel also issued several interrogatories to Defendants and

engaged in extensive motion practice relating to interrogatory responses. In total, through these efforts, Plaintiffs obtained and reviewed and analyzed more than 24 million pages of documents.

Lead Plaintiffs also issued multiple deposition notices to Defendants. Starting on September 10, 2013, Plaintiffs took the depositions of seven of Defendants' witnesses, including senior officers of State Street. For instance, on November 22, 2013, Plaintiffs took the deposition of State Street's Executive Vice President and head of State Street's Structured Products Group. From September 2013 through January 2014, Plaintiffs also took the depositions of, among others: (i) State Street's Senior Vice President, Valuation & Analytics; (ii) State Street's Managing Director in Global Treasury and head of the Structured Products Group's Conduit Surveillance & Regulatory Departments; and (iii) State Street's Senior Managing Director of Structured Products and head of U.S. Conduits.

Throughout this time, the Parties were simultaneously engaging in extensive discovery relating to class certification. Defendants issued document requests, interrogatories, deposition notices, and requests for admission on Lead Plaintiffs and the other Plaintiffs. The Plaintiffs engaged in multiple meet-and-confers with Defendants over the scope of Defendants' requests to Plaintiffs, responded to motions to compel, and, ultimately, produced hundreds of thousands of pages of documents in response to Defendants' requests. On October 28, 2013, Lead Plaintiffs filed a motion seeking class certification. Defendants subsequently took depositions of three Plaintiffs' representatives.

Fact and class certification discovery in the Action were hotly-contested by all Parties. Indeed, Defendants and Plaintiffs collectively filed approximately 22 separate motions to compel on various issues. Each of these motions required extensive meet-and-confers between the Parties and then required extensive briefing before the Court. In order to resolve these issues, the Court

devoted a substantial amount of resources, holding regular status conferences, and conducting approximately 19 hearings on matters related to discovery and related motion practice.

Although the Parties had periodically broached the subject of settlement discussions on several occasions throughout the litigation, serious settlement talks did not begin until the fall of 2013. The Parties engaged in numerous discussions and exchanged extensive information regarding damages and liability, including analyses prepared by the Parties' respective damages experts. At the time an agreement in principle to settle was reached, the majority of fact discovery was completed. Document discovery was essentially complete and multiple depositions had been taken. Accordingly, Lead Plaintiffs were well informed regarding the claims and defenses in the Action.

As explained further below, based on Lead Plaintiffs' oversight of the prosecution of the Action and with the advice of Co-Lead Counsel, Lead Plaintiffs have agreed to settle the claims raised in the Action after considering (a) the substantial financial benefit that the Settlement Class will receive under the proposed Settlement, (b) the significant risks of continued litigation and trial, and (c) the desirability of permitting the Settlement to be consummated as provided by the terms of the Stipulation.

## III. THE SETTLEMENT WARRANTS PRELIMINARY APPROVAL

As a matter of public policy, settlement is a highly favored means of resolving disputes. *See U.S. v. Comunidades Unidas Contra La Contaminacion*, 204 F.3d 275, 280 (1st Cir. 2000); *Hotel Holiday Inn de Isla Verde v. N.L.R.B.*, 723 F.2d 169, 173 n.1 (1st Cir. 1983) (settlement agreements "will be upheld whenever possible because they are a means of amicably resolving doubts and preventing lawsuits'") (internal quotations omitted). This policy is especially applicable to complex class action litigation. *See, e.g., In re Lupron Mktg. & Sales Practices*

*Litig.*, 228 F.R.D. 75, 88 (D. Mass. 2005) ("the law favors class action settlements."); *In re Tyco Int'l, Ltd. Multidistrict Litig.*, 535 F. Supp. 2d 249, 259 (D.N.H. 2007) ("public policy generally favors settlement – particularly in [large] class actions"); *Hochstadt v. Boston Scientific Corp.*, 708 F. Supp. 2d 95, 107 (D. Mass. 2010) (recognizing that "policy encourages settlements") (quoting *Nat'l Ass'n of Chain Drug Stores v. New England Carpenters Health Benefits Fund*, 582 F.3d 30, 44 (1st Cir. 2009)).

Under Rule 23(e) of the Federal Rules of Civil Procedure, judicial review of a proposed class action settlement consists of a two-step process: preliminary approval and a subsequent settlement fairness hearing. *See In re Relafen Antitrust Litig.*, 231 F.R.D. 52, 57 (D. Mass. 2005) ("First, the judge reviews the proposal preliminarily to determine whether it is sufficient to warrant public notice and a hearing. If so, the final decision on approval is made after the hearing.") (quoting MANUAL FOR COMPLEX LITIGATION, FOURTH ("MCL") § 13.14 at 171). Given this two-step process, at this stage of the proceedings the Court is not required to undertake an in-depth consideration of the relevant factors for final approval. Instead, the Court "must make a preliminary determination on the fairness, reasonableness, and adequacy of the settlement terms and must direct the preparation of notice of the certification, proposed settlement, and date of the final fairness hearing." MCL § 21.632.

For purposes of preliminary approval, the court must determine whether the proposed settlement "appears to meet" the fair, reasonable and adequate standard that will be used at final approval and, therefore, falls "within the range of possible approval." *Scott v. First Am. Title Ins. Co.*, 2008 WL 4820498, at *3 (D.N.H. Nov. 5, 2008); *see also In re Lupron Marketing & Sales Practices Litig.*, 345 F. Supp. 2d 135, 137 (D. Mass. 2004); *In re Puerto Rican Cabotage Antitrust Litig.*, 269 F.R.D. 125, 140 (D.P.R. 2010). Lead Plaintiffs request that the Court take the first step

in the settlement approval process and grant preliminary approval of the Settlement. As detailed below, the proposed Settlement clearly satisfies the standard for preliminary approval.

### A. The Settlement Is The Result Of Arm's-Length Negotiations By Well-Informed And Experienced Counsel

Courts presume that a proposed settlement is fair and reasonable when it is the result of arm's-length negotiations between well-informed counsel. *See Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96, 116 (2d Cir. 2005) (strong "presumption of fairness" where settlement is product of arm's-length negotiations conducted by experienced, capable counsel after meaningful discovery); *In re FLAG Telecom Holdings Ltd. Sec. Litig.*, No. 02-3400, 2010 WL 4537550, at *14 (S.D.N.Y. Nov. 8, 2010) (same).

Here, the Settlement was achieved only after protracted arm's-length negotiations. Moreover, given that the Parties litigated the Action for over four years and have engaged in extensive discovery, the Parties and their counsel were well-informed about the strengths and weaknesses of the claims and defenses in the Action.

Further, the judgment of the Parties' Counsel – who are highly experienced in securities class action litigation – that the Settlement is a fair and reasonable resolution of the Action should be given considerable weight. *See, e.g.*, *Rolland v. Cellucci*, 191 F.R.D. 3, 10 (D. Mass. 2000) ("When the parties' attorneys are experienced and knowledgeable about the facts and claims, their representations to the court that the settlement provides class relief which is fair, reasonable and adequate should be given significant weight."); *Bussie v. Allmerica Fin. Corp.*, 50 F. Supp. 2d 59, 77 (D. Mass. 1999).

### B. The Stage Of The Proceedings Supports Preliminary Approval

As will be set forth in further detail prior to the Settlement Hearing, Lead Plaintiffs' decision to enter into the Settlement was based on their thorough understanding of the strengths

and weaknesses of their claims against Defendants following more than four years of intense litigation effort, which included: (i) conducting a thorough investigation into the Settlement Class's claims; (ii) drafting a detailed amended consolidated complaint; (iii) successfully opposing the Defendants' motions to dismiss; and (iv) engaging in extremely intense and hard-fought fact discovery for over two years. There have been over 22 motions to compel brought by the various Parties and approximately 19 separate hearings before the Court regarding discovery in this Action. The date for substantial completion of document discovery was August 15, 2013, and the Parties have been conducting fact depositions since September 10, 2013. Plaintiffs have already taken seven depositions of defense witnesses, and the Parties have agreed to the depositions of at least twenty-one additional named defense witnesses. In addition, the Parties have conducted extensive class certification discovery and Lead Plaintiffs filed their motion for class certification on October 28, 2013.

Accordingly, the extensive litigation conducted by Plaintiffs' Counsel provided the Parties with a strong basis to assess the strengths and weaknesses of their respective cases. *See Duhaime v. John Hancock Mut. Life Ins. Co.,* 177 F.R.D. 54, 67 (D. Mass. 1997) (O'Toole, D.J.) ("'[T]he stage of the proceedings at which settlement is reached is important because it indicates how fully the district court and counsel are able to evaluate the merits of plaintiffs' claims.'") (quoting *Armstrong v. Bd. of Sch. Directors of City of Milwaukee,* 616 F.2d 305, 325 (7th Cir. 1980)).

**C. The Number And Nature Of Objections**

At the current stage of the litigation, prior to class notice, no members of the Settlement Class have indicated any objections to the proposed Settlement.

### D. The Substantial Benefits For The Settlement Class, Weighed Against Litigation Risks, Strongly Supports Preliminary Approval

The $60 million cash recovery achieved by the proposed Settlement provides a very substantial benefit to the Settlement Class. This is particularly true when compared to the risk that no recovery or a lesser recovery might be achieved after summary judgment, trial and likely appeals, which could take many additional months or years.

The claims alleged on behalf of the Settlement Class involve many complex legal and factual issues. If the Action were to proceed through dispositive motions and trial, Plaintiffs would have to overcome numerous defenses asserted by Defendants as to both liability and damages. Among other things, the Parties disagree on whether the alleged FX fraud was material as a matter of law. Defendants contend that State Street's custodial contracts generally did not prohibit State Street from charging a "mark-up" on FX transactions. Thus, according to Defendants, there was nothing illicit or improper about the vast majority of the FX revenues State Street generated during the Settlement Class Period. Defendants argue that even if Plaintiffs were successful in showing that a handful of State Street's custodial contracts prohibited it from charging a "mark-up" on FX services, the amount of "illicit" revenue generated under those contracts would not be material over the three-year class period as compared to State Street's total revenue.

Further, with respect to the alleged Conduit and investment portfolio fraud, the Parties disagree on whether State Street's use of the term "high quality" to describe the Conduit and investment portfolio assets was false and misleading. Plaintiffs argue that State Street's use of this term was intended to convey to investors that the assets would not cause State Street to suffer significant negative financial consequences. State Street, on the other hand, claims it repeatedly warned investors that deteriorating market conditions could cause higher losses. Defendants

contend that these assets were all highly rated (in many cases, they had Triple A ratings or were backed by the United States Government), had their values closely vetted by auditors, outside consultants, and by State Street's own experienced credit officers. Moreover, Defendants contend that the use of the phrase "high quality" was consistent with the large volume of information that State Street supplied about the assets, including concerning the high "credit quality" associated with the assets – *e.g.*, that there was minimum risk these assets would default on interest or principal payments. On that point, Defendants assert that State Street received contracted-for interest and principal payments as to all but an immaterial amount of the ten thousand assets in the Conduits and investment portfolio.

Finally, Plaintiffs faced additional risks in proving damages. Under the securities laws, plaintiffs must plead and prove a causal nexus between the decline in price of a security and the alleged false and misleading statements made by defendants. With respect to the alleged FX fraud, Plaintiffs alleged that the alleged fraud was revealed on October 20, 2009, when the California Attorney General announced its lawsuit against State Street, and that announcement caused the price of the Company's stock to decline significantly over the next few days. Defendants, however, emphasize that State Street also issued a negative earnings report on October 20, and they argue that the entirety of the stock price decline was due to the negative information in State Street's earnings report rather than any alleged false and misleading statements regarding the alleged FX fraud.

With respect to the alleged Conduit and investment portfolio fraud, Plaintiffs alleged that this fraud was revealed on January 20, 2009, when State Street announced that unrealized losses in its Conduits and investment portfolio had increased to nearly $10 billion, and that announcement caused the Company's stock price to decline. In response, Defendants again contended that State

Street released a negative earnings announcement on the same day, and that more than 30 percent of the stock price decline that day was caused by the negative information in the earnings release, as opposed to the disclosure of increased losses in the investment portfolio.

In sum, the Parties disagreed on numerous complex issues of law and fact, and the Settlement enables the Settlement Class to recover a very substantial sum without incurring the risk that Defendants would prevail on these issues at summary judgment, trial, or in subsequent appeals.

## IV. THE SETTLEMENT CLASS SHOULD BE CERTIFIED FOR SETTLEMENT PURPOSES

In granting preliminary settlement approval, the Court should also certify the Settlement Class for purposes of the Settlement under Rules 23(a) and (b)(3) of the Federal Rules of Civil Procedure. The proposed Settlement Class, which has been stipulated to by the Parties, consists of:

> [A]ll persons and entities who or which purchased or otherwise acquired publicly traded common stock of State Street during the period from October 17, 2006 through October 21, 2009, inclusive (the "Settlement Class Period"), including all persons and entities who or which purchased or otherwise acquired State Street common stock pursuant and/or traceable to a registered public offering conducted on or about June 3, 2008, and who were damaged thereby. Excluded from the Settlement Class are: (a) Defendants; (b) members of the Immediate Families of the Individual Defendants; (c) the subsidiaries and affiliates of State Street (provided, that no ERISA plan for the benefit of any employees of State Street shall be excluded), the Underwriter Defendants, and Ernst & Young; (d) any person or entity who is a partner, chief executive officer, executive vice president, chief financial officer, principal accounting officer (or if there is no such accounting officer, the controller), director, member, or controlling person of State Street, any Underwriter Defendant, or Ernst & Young; (e) any entity in which any Defendant has a controlling interest; and (f) the legal representatives, heirs, successors and assigns of any such excluded party; provided, however, that any Investment Vehicle shall not be excluded from the Settlement Class. Also excluded from the Settlement Class are any persons or entities who or which exclude themselves by submitting a request for exclusion that is accepted by the Court.

Stipulation ¶1(ss).

It is appropriate to certify a class action for settlement purposes. *See, e.g., Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 620 (1997); *Weinberger v. Kendrick*, 698 F.2d 61, 73 (2d Cir. 1982); *In re Marsh & McLennan Companies Sec. Litig.*, No. 04- 8144, 2009 WL 5178546, at *8 (S.D.N.Y. Dec. 23, 2009). Indeed, "the certification of a settlement class can provide significant benefits to class members while enabling defendants to achieve an expedited and final resolution of multiple suits." *In re Lupron*, 345 F. Supp. 2d at 137. While a settlement class, like other certified classes, must satisfy the elements of Rules 23(a) and (b), the manageability concerns of Rule 23(b)(3) are not at issue in certification of a settlement class. *See Amchem Prods.*, 521 U.S. at 593; *In re Relafen Antitrust Litig.*, 231 F.R.D. at 68.

**A. The Settlement Class Satisfies The Requirements Of Rule 23(a)**

Certification is appropriate under Rule 23(a) if: "(1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a).

**1. The Settlement Class Members Are Too Numerous To Be Joined**

Class certification under Rule 23(a)(1) is appropriate where a class contains so many members that joinder of all would be "impracticable." Fed. R. Civ. P. 23(a). This factor can be shown by the approximate number of potential class members. "[C]ourts may draw reasonable inferences from the facts presented to find the requisite numerosity" and routinely find the numerosity requirement satisfied based on the number of shares that were outstanding and the

average trading volume during the class period. *Swack v. Credit Suisse First Boston*, 230 F.R.D. 250, 258 (D. Mass. 2005) (internal quotations and citations omitted).

Here, the Settlement Class easily satisfies the numerosity requirement. During the Settlement Class Period, there were between 329 million and 491.1 million shares of State Street common stock outstanding (less insider holdings), whose beneficial holders were dispersed throughout the country. Moreover, in its Forms 10-K for the fiscal years 2006-2009, State Street reported 4,586, 4,432, 4,241, and 4,079 record holders of its common stock as of December 31, 2006, December 31, 2007, December 31, 2008, and January 31, 2010, respectively. Accordingly, numerosity is readily satisfied here. *See, e.g.*, *Kirby v. Cullinet Software, Inc.*, 116 F.R.D. 303, 306 (D. Mass. 1987); *In re Sonus Networks, Inc. Sec. Litig*., 247 F.R.D. 244, 248 (D. Mass. 2007).

**2. There Are Common Questions Of Law And Fact**

Rule 23(a)(2) requires the existence of at least one question of law or fact common to the class. *See In re Boston Scientific Corp. Sec. Litig.*, 604 F. Supp. 2d 275, 281 (D. Mass. 2009) ("It is relatively easy for a plaintiff to show commonality because '[a] *single* common legal or factual issue can suffice' to satisfy the requirement") (quoting *Payne v. Goodyear Tire & Rubber Co.*, 216 F.R.D. 21, 25 (D. Mass. 2003)) (emphasis in original). The Rule 23(a)(2) commonality test has been described as a "low hurdle," and easily satisfied. *See Duhaime*, 177 F.R.D. at 63.

This Action raises numerous common issues of law and fact. Lead Plaintiffs' claims concern common alleged material misstatements and/or omissions about State Street's FX trading operations and the quality and performance of assets in its Conduits and investment portfolio. Thus, for Lead Plaintiffs' Exchange Act claims, common questions of law and fact include "whether defendants made material misleading statements or omissions, whether defendants acted with the requisite scienter, and whether the proposed class is entitled to a presumption of reliance

under the fraud-on-the-market theory." *In re Boston Scientific,* 604 F. Supp. 2d at 281. As for Lead Plaintiffs' Securities Act claims, common questions of law and fact include whether Defendants made material misleading statements or omissions and whether Defendants will be entitled to a "due diligence" defense or "negative causation" defense. Courts in this district have found that similar questions of law and fact easily meet the commonality requirements. *See, e.g.*, *id.*; *In re Evergreen Ultra Short Opportunities Fund Sec. Litig.*, 275 F.R.D. 382, 388 (D. Mass. 2011); *In re Credit Suisse-AOL Sec. Litig.*, 253 F.R.D. 17, 22 (D. Mass. 2008); *Swack*, 230 F.R.D. at 260; *Grace v. Perception Tech. Corp.*, 128 F.R.D. 165, 167 (D. Mass. 1989).[5]

**3. Lead Plaintiffs' Claims Are Typical Of The Settlement Class**

Rule 23(a)(3) requires that the claims of the class representatives be "typical" of the claims of the class. Fed. R. Civ. P. 23(a)(3). "The plaintiff can meet this requirement by showing that its injuries arise from the same events or course of conduct as do the injuries of the class, and that its claims are based on the same legal theory as those of the class." *In re Boston Scientific*, 604 F. Supp. 2d at 282 (citing *In re Credit Suisse-AOL*, 253 F.R.D. at 23). "Typical" does not mean "identical." *See Swack*, 230 F.R.D. at 260 ("As with the commonality requirement, the typicality requirement does not mandate that the claims of the class representative be identical to those of the absent class members"). Instead, typicality is primarily a "question of whether the putative class can fairly and adequately pursue the interests of the absent class members without being

[5] In addition, Lead Plaintiffs' claims under section 20(a) of the Exchange Act and Section 15 of the Securities Act rest on the common legal and factual questions of whether there has been an underlying violation of Sections 10(b) and 11, respectively, and whether certain Defendants exercised "control" over the violators.

sidetracked by her own particular concerns." *Id* at 264. In that regard, "[t]he requirements of typicality and adequacy tend to merge." *In re Credit Suisse-AOL*, 253 F.R.D. at 22.[6]

Here, the claims of Lead Plaintiffs and absent Settlement Class Members are based on the same alleged misleading misrepresentations and omissions. Thus, Lead Plaintiffs' claims arise from the same course of events as the claims of all Settlement Class Members. Lead Plaintiffs' claims and the claims of absent Settlement Class Members are based on the same legal theories and would be proven by the same evidence.

#### 4. Lead Plaintiffs Will Fairly And Adequately Protect The Interests Of The Settlement Class

Rule 23(a)(4) is satisfied if "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). To satisfy the Rule 23(a)(4) adequacy prerequisite, "[t]he moving party must show first that the interests of the representative party will not conflict with the interests of the class members, and second, that counsel chosen by the representative party is qualified, experienced and able to vigorously conduct the proposed litigation." *In re Boston Scientific*, 604 F. Supp. 2d at 282 (internal citation omitted).

There is no antagonism or conflict of interest between Lead Plaintiffs and the proposed Settlement Class. Lead Plaintiffs and the other members of the Settlement Class share the common objective of maximizing their recovery from Defendants. *See In re Polaroid ERISA Litig.*, 240 F.R.D. 65, 77 (S.D.N.Y. 2006) ("Where plaintiffs and class members share the common goal of maximizing recovery, there is no conflict of interest between the class representatives and other class members."). Lead Plaintiffs have further demonstrated their

[6] *See also Glass Dimensions, Inc. v. State Street Bank & Trust Co.*, 285 F.R.D. 169, 178 (D. Mass. 2012) ("Typicality is designed to align the interests of the class and the class representatives so that the latter will work to benefit the entire class through the pursuit of their own goals.") (internal quotations omitted).

adequacy by vigorously pursuing the claims in this Action. In addition, Co-Lead Counsel have extensive experience and expertise in complex securities litigation and class action proceedings throughout the United States. Therefore, Rule 23(a)(4) is satisfied.

**B. The Settlement Class Satisfies The Requirements Of Rule 23(b)(3)**

Rule 23(b)(3) authorizes class certification if the Court finds that "questions of law or fact common to class members predominate over any questions affecting only individual members" and "a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3).

**1. Common Legal And Factual Questions Predominate**

As the Supreme Court has noted, predominance is a test "readily met" in cases alleging violations of the securities laws. *Amchem*, 521 U.S. at 625; *see also In re Boston Scientific*, 604 F. Supp. 2d at 283 ("Most [Section 10(b)] elements are generally amenable to common proof."); *In re Evergreen*, 275 F.R.D. at 392-93 (granting class certification and quoting *Amchem Prods.*, 521 U.S. at 625 to note that "the United States Supreme Court has readily acknowledged that 'Predominance is a test readily met in certain cases alleging … securities fraud.'"). Indeed, as the above analysis of Lead Plaintiffs' allegations under Rule 23(a)(2)'s commonality standard demonstrates (*supra*, § IV(A)(2)), there is an overwhelming number of questions of law and fact common to Lead Plaintiffs and the proposed Settlement Class.

Here, the same alleged course of conduct by Defendants forms the basis of all Settlement Class Members' claims. First, with respect to Lead Plaintiffs' Exchange Act claims, the question of whether Defendants made materially misleading statements or omissions is a quintessentially common question. Second, with respect to Lead Plaintiffs' Securities Act claims, common issues unquestionably predominate in this Action. *See In re PaineWebber Ltd. P'ships Litig.*, 171 F.R.D.

104, 123 (S.D.N.Y. 1997) (in case involving Section 11 claims, common questions of law and fact "overwhelmingly predominate").

### 2. A Class Action Is Superior To Other Methods Of Adjudication

This consolidated class action is clearly "superior to other available methods for fairly and efficiently adjudicating" the claims of the large number of purchasers or acquirers of State Street publicly traded common stock during the Settlement Class Period. *See* Fed. R. Civ. P. 23(b)(3). Indeed, courts have concluded that the class action device in securities cases is usually the superior method by which to redress injuries to a large number of individual plaintiffs in light of the large and geographically dispersed nature of shareholder classes, the inefficiency of multiple lawsuits and the size of individual recoveries in comparison to the costs of litigations. *See, e.g.*, *Waste Mgmt. Holdings, Inc. v. Mowbray*, 208 F.3d 288, 296 (1st Cir. 2000) (securities fraud cases are "particularly well-suited for class treatment"); *In re Evergreen*, 275 F.R.D. at 393 ("other judges of this Court have stressed that class actions are particularly appropriate for securities litigation because it may be the only practicable means of enforcing investor's rights.") (citations omitted); *Swack*, 230 F.R.D. at 257-58 (recognizing preference for class certification in securities fraud cases); *John Hancock Life Ins. Co. v. Goldman, Sachs & Co.*, No. 01-10729, 2004 WL 438790, at *2 (D. Mass. Mar. 9, 2004) ("There is little question that suits on behalf of shareholders alleging violations of federal securities laws are prime candidates for class action treatment and that Rule 23 of the Federal Rules of Civil Procedure has been liberally construed to effectuate that end.") (internal quotations omitted).

## V. NOTICE TO THE SETTLEMENT CLASS SHOULD BE APPROVED

As outlined in the Preliminary Approval Order, Co-Lead Counsel will notify Settlement Class Members of the pendency of the Action and the proposed Settlement by causing the Notice

and Claim Form to be mailed to all Settlement Class Members who can be identified with reasonable effort. The Notice will advise Settlement Class Members of (i) the pendency of the Action as a class action; (ii) the essential terms of the Settlement; (iii) the proposed Plan of Allocation; and (iv) information regarding Co-Lead Counsel's motion for attorneys' fees and reimbursement of Litigation Expenses. The Notice will also provide specifics on the date, time and place of the Settlement Hearing and set forth the procedures, as well as deadlines, for opting out of the Settlement Class, for objecting to the Settlement, the proposed Plan of Allocation and/or the motion for attorneys' fees and reimbursement of Litigation Expenses, and for submitting a Claim Form. The proposed Preliminary Approval Order also requires Co-Lead Counsel to cause the Summary Notice to be published once in the national edition of *The Wall Street Journal* and to be transmitted once over the *PR Newswire*. Co-Lead Counsel will also cause a copy of the Notice and Claim Form to be available on the settlement website established by the Claims Administrator.

The form and manner of providing notice to the Settlement Class satisfy the requirements of due process, Rule 23, and the Private Securities Litigation Reform Act of 1995 ("PSLRA"), 15 U.S.C. §§ 77z-1(a)(7) and 78u-4(a)(7). The Notice and Summary Notice "fairly apprise the prospective members of the class of the terms of the proposed settlement[s] and of the options that are open to them in connection with the proceedings." *Wal-Mart Stores*, 396 F.3d at 114; *see also Duhaime v. John Hancock Mut. Life Ins. Co.*, No. 96-10706, 1997 WL 888989, at *5 (D. Mass. June 13, 1997) (O'Toole, D.J.) (Notice and Summary Notice "constitutes due, adequate, and sufficient notice to all persons entitled to be provided with notice"); *In re Chipcom Corp. Sec. Litig.*, No. 95-11114, 1996 WL 1057531, at *1 (D. Mass. Apr. 29, 1996) (holding that Notice and Summary Notice provided "due and adequate notice . . . to all Persons entitled to notice" and

"further satisfied the requirements of Rule 23 of the Federal Rules of Civil Procedure and the requirement of due process").

## VI. PROPOSED SCHEDULE

In connection with preliminary approval of the Settlement, the Court must set a final approval hearing date, dates for mailing and publication of the Notice and Summary Notice, and deadlines for submitting claims or for objecting to the Settlement.[7] The Parties respectfully propose the following schedule for the Court's consideration, as agreed to by the Parties and set forth in the proposed Preliminary Approval Order:

| Event | Time for Compliance |
|---|---|
| Deadline for mailing the Notice and Claim Form to the Settlement Class ("Notice Date") | 20 business days after entry of the Preliminary Approval Order |
| Deadline for publishing Summary Notice | 10 business days after the Notice Date |
| Filing of papers in support of final approval of the Settlement, the Plan of Allocation, and Co-Lead Counsel's fee and expense request | 35 calendar days before the Settlement Hearing |
| Receipt deadline for objections and requests for exclusion from the Settlement Class | 21 calendar days before the Settlement Hearing |
| Filing of reply papers in support of final approval of the Settlement, the Plan of Allocation, and Co-Lead Counsel's fee and expense request | 7 calendar days before the Settlement Hearing |
| Settlement Fairness Hearing | The week of October 20, 2014, or at the Court's earliest convenience thereafter |
| Deadline for submitting Claim Forms | 120 calendar days after the Notice Date |

[7] The blanks for certain deadlines currently contained in the agreed-upon form of Notice will be filled in once the Court sets those dates and prior to mailing to Settlement Class Members.

## VII. CONCLUSION

For all the foregoing reasons, Lead Plaintiffs respectfully request that the Court grant preliminary approval of the proposed Settlement; certify the Settlement Class and appoint Lead Plaintiffs as class representatives and Co-Lead Counsel as class counsel, for purposes of the Settlement; approve the form and manner of providing notice of the Settlement to the Settlement Class; and enter the accompanying proposed Preliminary Approval Order.

Dated: July 8, 2014

Respectfully submitted,

**Public Employees' Retirement System of Mississippi and Union Asset Management Holding AG,**

By their attorneys,


/s/ *John C. Browne*
**BERNSTEIN LITOWITZ BERGER & GROSSMANN LLP**
John C. Browne (Admitted *Pro Hac Vice*)
Jeremy P. Robinson (Admitted *Pro Hac Vice*)
Lauren A. Ormsbee (Admitted *Pro Hac Vice*)
Evan M. Berkow (Admitted *Pro Hac Vice*)
1285 Avenue of the Americas, 38th Floor
New York, New York 10019
Telephone: (212) 554-1400
Facsimile: (212) 501-0300
johnb@blbglaw.com
jeremy@blbglaw.com
lauren@blbglaw.com,

*Co-Lead Counsel for Lead Plaintiffs and the Proposed Class in the Securities Action*

-and-

**MOTLEY RICE LLC**
William H. Narwold (Admitted *Pro Hac Vice*)
James M. Hughes (Admitted *Pro Hac Vice*)
Rebecca M. Katz (Admitted *Pro Hac Vice*)

**BERMAN DEVALERIO**
Bryan A. Wood (BBO#648414)
One Liberty Square
Boston, Massachusetts 02109
Telephone: (617) 542-8300
Facsimile: (617) 542-1194
Email: bwood@bermandevalerio.com

*Liaison Counsel for Plaintiffs*

Badge Humphries (Admitted *Pro Hac Vice*)
William S. Norton (Admitted *Pro Hac Vice*)
Christopher F. Moriarty (Admitted *Pro Hac Vice*)
28 Bridgeside Boulevard
Mt. Pleasant, South Carolina 29464
Telephone: (843) 216-9000
Facsimile: (843) 216-9450
bnarwold@motleyrice.com
jhughes@motleyrice.com
bhumphries@motleyrice.com
rkatz@motleyrice.com
bnorton@motleyrice.com
cmoriarty@motleyrice.com

*Co-Lead Counsel for Lead Plaintiffs and the Proposed Class in the Securities Action*

# 790839

**CERTIFICATE OF SERVICE**

I hereby certify that the above Memorandum of Law in Support of Lead Plaintiffs' Motion for (I) Preliminary Approval of Settlement, (II) Certification of the Settlement Class for Purposes of Settlement, and (III) Approval of Notice to the Settlement Class filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing on July 8, 2014.

*/s/ John C. Browne*
John C. Browne