IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| HILL v. STATE STREET CORPORATION ) | |
| ) | |
| ) | Master Docket No.1:09-cv-12146-GAO |
| THIS DOCUMENT RELATES TO THE ) | |
| SECURITIES ACTION ) | |
| ) | |
| DOCKET NO. 09-cv-12146-GAO ) | |

## REPORT AND RECOMMENDATION ON (A) LEAD PLAINTIFFS' MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT AND PLAN OF ALLOCATION AND (B) CO-LEAD COUNSEL'S MOTION FOR AN AWARD OF ATTORNEYS' FEES AND REIMBURSEMENT OF LITIGATION EXPENSES

November 26, 2014

DEIN, U.S.M.J.

## I. INTRODUCTION[1]

This consolidated securities class action asserts claims on behalf of all persons and entities who purchased publicly traded common stock of State Street Corporation ("State Street") during the period from October 17, 2006 through October 21, 2009, inclusive (the "Settlement Class Period"), including those who purchased pursuant or traceable to State Street's June 3, 2008 secondary offering, and who were damaged thereby. Lead Plaintiffs' Consolidated Amended Class Action Complaint filed on July 29, 2010 (Docket No. 51) (the "Complaint") asserts claims for violations of federal securities laws against defendants (i) State Street; (ii) Ronald E. Logue, Edward J. Resch, Pamela D. Gormley, Kennett F. Burnes, Peter Coym, Nader F. Darehshori, Amelia C. Fawcett, David P. Gruber, Linda A. Hill, Charles R. LaMantia, Maureen J. Miskovic, Richard P. Sergel, Ronald L. Skates, Gregory L. Summe, and Robert E.

---

[1] Unless otherwise indicated, all capitalized terms used in this Report and Recommendation shall have the meanings ascribed to them in the Stipulation and Agreement of Settlement (Docket No. 478-1).

Weissman (the "Individual Defendants"); (iii) Goldman, Sachs & Co., Morgan Stanley & Co. LLC (formerly known as Morgan Stanley & Co. Incorporated), Credit Suisse Securities (USA) LLC, and UBS Securities LLC (the "Underwriter Defendants"); and (iv) Ernst & Young LLP ("Ernst & Young") (collectively, "Defendants").

On July 8, 2014, Lead Plaintiffs and Defendants entered into a Stipulation of Agreement of Settlement (Docket No. 478-1) (the "Stipulation"), which provides for dismissal of the Action and the release of claims against all Defendants in return for a settlement payment of $60,000,000 (the "Settlement"). Lead Plaintiffs moved for preliminary approval of the Settlement. On July 20, 2014, the District Judge entered an order referring this motion and all other matters relating to the Settlement to this court. On July 21, 2014, this court entered the Order Preliminarily Approving Proposed Settlement and Providing for Notice (Docket No. 488) (the "Preliminary Approval Order"), which preliminarily approved the Settlement, certified the Settlement Class, approved the method of disseminating notice to the Settlement Class, and scheduled a Settlement Hearing for consideration of final approval of the Settlement and related matters.

The matter is presently before this court on Lead Plaintiffs' Motion for Final Approval of Class Action Settlement and Plan of Allocation (Docket No. 492) and Co-Lead Counsel's Motion for an Award of Attorneys' Fees and Reimbursement of Litigation Expenses (Docket Nos. 494). This court has reviewed and considered the Stipulation and all papers filed in connection with the motions, including two objections submitted, and a hearing was held on the motions on November 20, 2014. For all the reasons detailed herein, this court recommends to the District Judge to whom this case is assigned that both motions be ALLOWED, that the Parties' proposed Final Judgment Approving Class Action Settlement and of Dismissal with

Prejudice (attached as Exhibit A) ("Judgment") be entered, and that appropriate orders, in the forms attached as Exhibits B and C, approving the Plan of Allocation and the award of fees and expenses be entered.

## II. STATEMENT OF FACTS

This case commenced with the filing of two securities class action complaints, beginning on December 18, 2009. On May 7, 2010, the Court appointed the Public Employees' Retirement System of Mississippi ("MPERS") and Union Asset Management Holding AG ("Union") as Lead Plaintiffs, approved their selection of Co-Lead Counsel, and consolidated the securities class actions under the caption *Hill v. State Street Corporation et al.*, No. 1:09-cv-12146-NG.

### The Claims

Lead Plaintiffs subsequently conducted an investigation into the claims and, on July 29, 2010, filed the Complaint. The Complaint asserts claims against State Street, Ronald E. Logue and Edward J. Resch under Section 10(b) of the Securities Exchange Act of 1934 (the "Exchange Act") and Rule 10b-5 promulgated thereunder and against Logue and Resch under Section 20(a) of the Exchange Act, alleging that these defendants made, or controlled others who made, materially false and misleading statements and failed to disclose material facts about (i) State Street's foreign exchange business, (ii) the quality of State Street's internal controls, and (iii) the quality of assets held in State Street's investment portfolio and in off-balance-sheet entities known as conduits. The Complaint alleges that these allegedly false and misleading statements and material omissions caused the price of State Street common stock to be artificially inflated and that the class was damaged when the truth that was allegedly concealed was finally revealed. The Complaint also asserts claims against all Defendants under Section 11 of the Securities Act of 1933 (the "Securities Act"); against State Street and the Underwriter Defendants under

Section 12(a)(2) of the Securities Act; and against certain of the Individual Defendants under Section 15 of the Securities Act, alleging that the defendants named in the Securities Act claims were statutorily liable for the allegedly materially untrue statements and misleading omissions in the registration statement and offering documents for the June 2008 public offering of State Street common stock.

On September 24, 2010, Defendants moved to dismiss the Complaint. On August 3, 2011, after extensive briefing and two days of oral argument, the court (by Gertner, J.) issued a Memorandum and Order and denied Defendants' motions to dismiss. (Docket No. 108). The case was reassigned to Judge O'Toole on September 23, 2011.

On September 30, 2011, Defendants filed and served their answers to the Complaint. Defendants denied all liability and interposed a variety of defenses to the claims set forth in the Complaint.

Following the Court's decision on Defendants' motions to dismiss, the case was assigned to this Magistrate Judge for pre-trial purposes and discovery was conducted in coordination with two related ERISA cases, *Richard v. State Street Corp. et al.*, No. 10-cv-10184-GAO and *Kenney v. State Street Corp. et al.*, No. 09-10750-DJC.

### Discovery

Over the course of the next two-and-one-half years, the parties engaged in extensive fact discovery. Document discovery in this Action included multiple document requests and interrogatories and resulted in the production of more than 25 million pages of documents. Beginning in September 2013, Lead Plaintiffs took the depositions of seven fact witnesses, including senior officers of State Street. The parties also engaged in extensive discovery relating to class certification, which included Plaintiffs' production of hundreds of thousands of pages of

documents to Defendants and the depositions of three Plaintiffs' representatives. Discovery was vigorously contested by all parties and included more than 20 discovery motions, and more than 15 hearings before this court.

## The Settlement

On October 28, 2013, Lead Plaintiffs filed their motion for class certification. Defendants had not filed their responses to the motion and the Court had not taken any action on the motion at the time that the agreement in principle to settle the Action was reached.

On March 12, 2014, following arms'-length settlement negotiations, Lead Plaintiffs and State Street reached an agreement in principle to settle the Action for a cash payment of $60,000,000 to be made on behalf of State Street for the benefit of the Settlement Class. On July 8, 2014, Lead Plaintiffs and Defendants entered into the Stipulation and Lead Plaintiffs moved for preliminary approval of the Settlement. On July 21, 2014, this court entered the Preliminary Approval Order, which preliminarily approved the Settlement, certified the Settlement Class, approved the method of disseminating notice to the Settlement Class, and scheduled a Settlement Hearing for consideration of final approval of the Settlement and related matters.

## Notice of the Proposed Settlement

The pleadings filed with the court establish that notice of proposed Settlement was made in accordance with the Preliminary Approval Order of the court. *See generally* "Declaration of Stephanie A. Thurin Regarding (A) Mailing of the Notice and Proof of Claim Form; (B) Publication of the Summary Notice; and (C) Report on Requests for Exclusion Received to Date" filed on September 22, 2014 (Docket No. 496-1), the "Supplemental Declaration of Stephanie A. Thurin Regarding (A) Mailing of the Notice and Proof of Claim Form and (B) Report for Requests for Exclusion Received" filed on October 20, 2014 (Docket No. 499-1) and

the "Second Supplemental Declaration of Stephanie A. Thurin" filed on November 12, 2014 (Docket No. 504). As detailed in these Declarations, the Claims Administrator appointed for the Action, Epiq Systems, Inc. ("Epiq"), began mailing copies of the Notice and Claim Form (the "Notice Packet") to potential Settlement Class Members and their nominees on August 18, 2014 by mailing the Notice Packet to 7,410 potential Settlement Class Members, representing all record holders of State Street common stock during the Settlement Class Period as identified by State Street, and to 1,818 of the largest and most common brokers, banks and other nominee owners. In accordance with the requirements of the Preliminary Approval Order, Epiq thereafter responded to numerous requests received from nominee owners and either mailed the nominees additional copies of the Notice Packet to forward to their clients or mailed the Notice Packets to names and addresses provided by the nominees. As of October 6, 2014, Epiq had mailed 628,436 copies of the Notice Packet to potential Settlement Class Members and nominees and, as of October 15, 2014, a total of 765,933 copies of the Notice Packet had been mailed. In addition, copies of the Notice, Claim Form and other documents related to the Settlement were made available on a website established for the Settlement on August 18, 2014, and a Summary Notice concerning the Settlement was published in *The Wall Street Journal* and transmitted over the PR Newswire on August 27, 2014. Both the website and the notice published in *The Wall Street Journal* and over the PR Newswire informed potential Settlement Class Members where they could locate information about the Settlement and download Notices and Claim Forms. Co-Lead Counsel BLBG also published notice of the Settlement on its website. Epiq continued to mail Notice Packets as requests were received. As of November 4, 2014, Epiq had mailed a total of 777,823 Notice Packets to potential Settlement Class Members and nominees.

Epiq also served a notice in a form compliant with the Class Action Fairness Act timely and in a manner that satisfied the requirements of that Act. (*See* Docket No. 497).

On September 4, 2014, this court entered an order approving an assented-to motion to reschedule the final Settlement Hearing to November 20, 2014. The Settlement Hearing went forward as scheduled. No one appeared in opposition to the Settlement.

Additional facts will be provided below as appropriate.

### III.   ANALYSIS: APPROVAL OF THE SETTLEMENT

### A.   Standard of Review

Under Rule 23(e) of the Federal Rules of Civil Procedure a class action settlement must be presented to the Court for approval. The Settlement should be approved if the Court finds it "fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2); *see Voss v. Rolland*, 592 F.3d 242, 251 (1st Cir. 2010); *City P'Ship Co. v. Atlantic Acquisition Ltd. P'Ship*, 100 F.3d 1041, 1043 (1st Cir. 1996). "In the First Circuit, this requires a wide-ranging review of the overall reasonableness of the settlement that relies on neither a fixed checklist of factors nor any specific litmus test." *In re Tyco Int'l Ltd. Multidistrict Litig.*, 535 F. Supp. 2d 249, 259 (D.N.H. 2007); *see also New England Carpenters Health Benefits Fund v. First Databank, Inc.*, 602 F. Supp. 2d 277, 280 (D. Mass. 2009) ("The First Circuit has not established a fixed test for evaluating the fairness of a settlement."). Courts in this Circuit have considered the following "*Grinnell*" factors in conducting this analysis:

> (1) the complexity, expense, and likely duration of the litigation; (2) the reaction of the class to the settlement; (3) the stage of the proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the class action through the trial; (7) the ability of defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; and (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation.

*First Databank*, 602 F. Supp. 2d at 280-81 (quoting *City of Detroit v. Grinnell Corp.*, 495 F.2d 448, 463 (2d Cir. 1974), *overruled on other grounds by Missouri v. Jenkins*, 491 U.S. 274, 109 S. Ct. 2463, 105 L. Ed. 2d 229 (1989)); *see also In re Relafen Antitrust Litig.*, 231 F.R.D. 52, 72 (D. Mass. 2005); *In re Lupron Mktg. & Sales Prac. Litig.*, 228 F.R.D. 75, 93-94 (D. Mass. 2005); *In re StockerYale, Inc. Sec. Litig.*, No. 1:05cv00177-SM, 2007 WL 4589772, at *3 (D.N.H. Dec. 18, 2007).

The determination of whether a settlement is fair, reasonable and adequate rests in the court's sound discretion, *see City P'Ship*, 100 F.3d at 1043-44, and should be evaluated within the context of the public policy favoring settlement. *See Puerto Rico Dairy Farmers Ass'n v. Pagan*, 748 F.3d 13, 20 (1st Cir. 2014) (noting the "strong public policy in favor of settlements"); *Tyco*, 535 F. Supp. 2d at 259 ("public policy generally favors settlement"). Courts generally consider both "the negotiating process by which the settlement was reached and the substantive fairness of the terms of the settlement compared to the result likely to be reached at trial." *Relafen*, 231 F.R.D. at 72. Consideration of all the relevant factors compels the conclusion that the Settlement be approved.

## B.    The Settlement Negotiation Process

Where the parties have negotiated a settlement at arms'-length and have conducted sufficient discovery, the settlement is entitled to a presumption of reasonableness. *See In re Pharm. Indus. Average Wholesale Price Litig.*, 588 F.3d 24, 32-33 (1st Cir. 2009); *City P'Ship*, 100 F.3d at 1043; *Relafen*, 231 F.R.D. at 71-72; *Lupron*, 228 F.R.D. at 93. Here, the Settlement was achieved after more than four years of litigation, which included extensive factual discovery, and after arms'-length settlement negotiations between experienced counsel. By the time the agreement to settle was reached, Co-Lead Counsel had briefed and argued multiple motions,

reviewed over 25 million pages of documents, and had taken depositions of seven State Street employees. The intensive multi-year litigation efforts in this case leave this court with no doubt that Lead Plaintiffs, who are sophisticated institutional investors, and Co-Lead Counsel, who are experienced in securities class action litigation, were well informed about the strengths and weaknesses of the case at the time the Settlement was achieved. Plaintiffs and counsel have endorsed the proposed Settlement. Under such circumstances, the presumption of reasonableness is applicable and supports a finding approving the settlement. *See Rolland v. Cellucci*, 191 F.R.D. 3, 10 (D. Mass. 2000) ("When the parties' attorneys are experienced and knowledgeable about the facts and claims, their representations to the court that the settlement provides class relief which is fair, reasonable and adequate should be given significant weight."); *Bussie*, 50 F. Supp. 2d at 77 ("The Court's fairness determination also reflects the weight it has placed on the judgment of the parties' respective counsel, who are experienced attorneys and have represented to the Court that they believe the settlement provides to the Class relief that is fair, reasonable and adequate.").

### C.  Consideration of Specific Relevant Factors

Consideration of the relevant *Grinnell* factors set forth above, also supports the approval of the Settlement as fair, reasonable and adequate.

#### 1.  Complexity, Expense and Likely Duration of Litigation

The complexity of this case and the expense and delay that would result if this case were litigated through further motion practice, trial and appeals strongly support approval of the Settlement. This was a complex securities class action that involved two separate theories of liability, each of which raised its own complicated factual issues, including, for example, the potential variations in the FX pricing provisions in the contracts of State Street's various

custodial clients, and the difficulties of valuing and assessing the quality of a large number of complex mortgage-backed securities. In the absence of the Settlement, continued litigation of the Action would have required additional factual discovery, including numerous additional depositions; expert discovery on issues such as asset valuation and loss causation; further motion practice; and a trial. Defendants would have continued to vigorously contest numerous issues in the Action such as materiality, falsity, *scienter*, and loss causation. All of the foregoing would pose substantial expense for the Settlement Class and would delay the class's ability to recover. Accordingly, this factor supports approval of the Settlement.

### 2.    The Reaction of the Settlement Class

As noted above, in accordance with the Preliminary Approval Order, the Claims Administrator had mailed more than 765,900 copies of the Notice Packet to potential Settlement Class Members and nominees by October 13, 2014, more than five weeks before the Settlement Hearing, and had published the Summary Notice of the Settlement in *The Wall Street Journal* and over the PR Newswire. In response to this notice program, only two objections to the Settlement and/or allocation method were received. As detailed below, in this court's view neither raised significant substantive issues and this court recommends that they both be denied. In addition, only ten requests for exclusion from the Settlement Class were received and the requests for exclusion that provided information on purchases of State Street common stock represent only 896 shares purchased during the Settlement Class Period – a tiny percentage of the shares that are eligible to participate in the Settlement. Moreover, no objections or requests for exclusion were submitted by any institutional investors, who owned the large majority of State Street common stock during the Settlement Class Period.

The very positive reaction of the Settlement Class supports the approval of Settlement. Not only were a *de minimis* number of objections received, but none challenged the amount of the Settlement. The "favorable reaction of class to settlement, albeit not dispositive, constitutes strong evidence of fairness of proposed settlement and supports judicial approval[.]" *Bussie*, 50 F. Supp. 2d at 77 (citation omitted). *See also In re Puerto Rican Cabotage Antitrust Litig.*, 815 F. Supp. 2d 448, 473 (D.P.R. 2011) (the small number of objections received, none of which challenged the adequacy of the settlement amount, "certainly weighs in favor of approval" of the settlement). The fact that no institutional investors have objected or requested exclusion also supports approval of the Settlement. *See Tyco*, 535 F. Supp. 2d at 261 (finding that "[t]he reaction of the class to the settlement has been almost entirely positive[,]" where "[n]one of the institutional investors have objected to the size of the settlement"); *In re AOL Time Warner, Inc.*, MDL No. 1500, 2006 WL 903236, at *10 (S.D.N.Y. Apr. 6, 2006) (lack of objections from institutional investors supported approval of settlement).

### 3. Stage of Proceedings and the Amount of Discovery Completed

The Settlement was reached after more than four years of litigation that included a detailed investigation by Co-Lead Counsel, briefing on Defendants' motions to dismiss, and extensive fact discovery. Accordingly, Lead Plaintiffs and Co-Lead Counsel had a sufficient understanding of the strengths and weaknesses of the case when negotiating and evaluating the adequacy of the proposed Settlement. *See, e.g., StockerYale*, 2007 WL 4589772, at *3 (this factor supported settlement approval where "counsel had the benefit of information obtained through document discovery and its extensive own investigation"); *Bussie*, 50 F. Supp. 2d at 65, 77 (the "parties' enormous discovery effort," which included review of 3 million pages of documents and 11 depositions, "enabled Lead Counsel to assess the merits of the Class's

litigation position and . . . is probative of the Settlement's fairness").  Accordingly, this factor also supports approval of the Settlement.

<h3 style="text-align:center;">4.    The Risks of Establishing Liability and Damages</h3>

The proposed $60 million Settlement must be considered in light of the risks of establishing liability and damages in the Action.  Lead Plaintiffs' papers in support of the Settlement have set forth many of the significant risks that they believe they would have faced in order to succeed on their claims at trial.  *See*, *e.g.*, "Memorandum of Law in Support of Lead Plaintiffs' Motion for Final Approval of Class Action Settlement and Plan of Allocation" (Docket No. 493) at 3-6.  For example, Lead Plaintiffs' believed that significant risks existed in this case with respect to proof of material falsity and *scienter*.  Thus, according to the Lead Plaintiffs, "Defendants would have argued that State Street was not overcharging its customers for FX services, that its customers were aware of and approved the charges they were incurring when conducting FX transactions through State Street and that, in any event, the FX revenues at issue were immaterial."  *Id.* at 4.   Lead Plaintiffs' analysis further concluded that they "also faced exceptionally daunting risks in establishing loss causation for the FX claims – that is, that the declines in the price of State Street's common stock were proximately caused by the alleged false and misleading statements concerning FX made by Defendants" as opposed to "a negative earnings announcement" released by State Street at the same time the stock price dropped. *Id.* at 4-5.  The Defendants' arguments, if accepted, could have eliminated all or virtually all of Plaintiffs' damages related to their FX claims.  Similarly, "Defendants would have advanced significant arguments that Plaintiffs could not establish falsity or *scienter* relating to the alleged conduit and investment portfolio fraud" including arguments to the effect that the assets in its investment portfolio and conduits were, in fact, "high quality" and were very highly rated.  *Id.* at

5. According to the Plaintiffs, "Defendants also would have advanced a powerful loss causation defense to the conduit/portfolio claims" which, if accepted, could have substantially reduced or eliminated damages recoverable for the class. *Id.* In short, the Plaintiffs concluded that there was a serious risk that the Defendants would prevail at either at "summary judgment, trial, or in subsequent appeals on any of their many defenses." *Id.* at 5-6. Thus, the risks of establishing liability and damages, and the risk of the Plaintiffs successfully defeating motions for summary judgment favor the approval of the Settlement. *See, e.g.*, *StockerYale*, 2007 WL 4589772, at *3 (fact that "various defenses could result in no liability and zero recovery for the class" favors approval of the settlement); *In re OCA, Inc. Sec. & Derivative Litig.*, No. 05-2165, 2009 WL 512081, at *13 (E.D. La. Mar. 2, 2009) (the substantial risks that plaintiffs faced in establishing loss causation and proving *scienter* favored approval of the settlement).

### 5. The Ability of State Street to Withstand a Greater Judgment

This factor is neutral with respect to approval of the Settlement. Lead Plaintiffs do not contend that State Street could not withstand a judgment greater than the $60 million Settlement. However, "a defendant is not required to empty its coffers before a settlement can be found adequate[,]" *In re Sturm, Ruger & Co. Sec. Litig.*, No. 3:09cv1293 (VLB), 2012 WL 3589610, at *7 (D. Conn. Aug. 20, 2012), and this factor, standing alone, is not sufficient to preclude a finding that a settlement is fair, reasonable and adequate where other factors weigh in favor of approving the settlement. *See, e.g.*, *D'Amato v. Deutsche Bank*, 236 F.3d 78, 86 (2d Cir. 2001). Accordingly, this factor is neutral here. *See, e.g., Relafen*, 231 F.R.D. at 73; *Lupron*, 228 F.R.D. at 97.

### 6.    Range of Possible Recovery and Attendant Risks of Litigation

Under these factors, the court considers the reasonableness of the settlement in light of the possible recovery in the litigation and risks of the litigation.  In analyzing these factors, the issue for the court is not whether the settlement represents the best possible recovery, but how the settlement relates to the strengths and weaknesses of the case.  The court "consider[s] and weigh[s] the nature of the claim, the possible defenses, the situation of the parties, and the exercise of business judgment in determining whether the proposed settlement is reasonable[.]" *Grinnell*, 495 F.2d at 462.

This court concludes that, in light of the risks of continued litigation, including the risks that there would be no recovery at all, the proposed Settlement for $60 million falls within the range of reasonableness and should be approved.  As discussed above, if a jury or the Court had credited even some of Defendants' arguments with respect to loss causation or liability, the Settlement Class might have recovered nothing.  In light of these risks, I conclude that the amount of the Settlement is fair, reasonable and adequate.

### 7.    Conclusion

In light of the factors discussed above, this court recommends that the Settlement be approved.  The Action has been actively litigated for more than four years and fact discovery was both extensive and highly contested through substantial motion practice before the court. The Settlement is the product of serious, informed, non-collusive negotiations that occurred after this extensive discovery.  Co-Lead Counsel are experienced and had sufficient information about the strengths and weaknesses of the claims in the Action and they have strongly recommended the Settlement.  I conclude that the Settlement is a fair and reasonable result for the class in light of the risks and expenses of future litigation and the potential outcomes of the Action.

Accordingly, I recommend that the District Judge approve the Settlement as fair, reasonable and adequate to the Settlement Class and enter the proposed Judgment.

## IV.  ANALYSIS: PLAN OF ALLOCATION

A plan for allocating settlement proceeds, like the settlement itself, should be approved if it is fair, reasonable and adequate.  *See Tyco*, 535 F. Supp. 2d at 262 ("Like the settlement itself, the plan of allocation must be fair, reasonable, and adequate."); *Hochstadt v. Boston Scientific Corp.*, 708 F. Supp. 2d 95, 109 (D. Mass. 2010) (same).  A plan of allocation is fair and reasonable as long as it has a "reasonable, rational basis." *In re IMAX Sec. Litig.*, 283 F.R.D. 178, 192 (S.D.N.Y. 2012).  For the reasons detailed herein, this court recommends that the District Judge find that the allocation plan is fair and reasonable.

A reasonable plan of allocation "need not necessarily treat all class members equally." *Schwartz v. TXU Corp.*, No. 3:02-CV-2243-K, 2005 WL 3148350, at *23 (N.D. Tex. Nov. 8, 2005), but may allocate funds based on the extent of class members' injuries and "consider the relative strength and values of different categories of claims."  *IMAX*, 283 F.R.D. at 192.  *See also In re Cabletron Sys., Inc. Sec. Litig.*, 239 F.R.D. 30, 35 (D.N.H. 2006) (approving a plan of allocation that took into consideration "the strengths and weaknesses of the claims of the various types of class members"); *In re MicroStrategy, Inc. Sec. Litig.*, 148 F. Supp. 2d 654, 669 (E.D. Va. 2001) (approving plan that "sensibly makes interclass distinctions based upon, *inter alia*, the relative strengths and weaknesses of class members' individual claims").  In determining whether a plan of allocation is fair and reasonable, courts give great weight to the opinion of experienced counsel.  *See, e.g., In re Giant Interactive Grp., Inc. Sec. Litig.*, 279 F.R.D. 151, 163 (S.D.N.Y. 2011) ("[i]n determining whether a plan of allocation is fair, courts look primarily to the opinion of counsel.").

Here, the Plan of Allocation proposed by Lead Plaintiffs was developed by Co-Lead Counsel in consultation with Lead Plaintiffs' damages expert. Under the Plan of Allocation, a "Recognized Loss Amount" will be calculated for each purchase or acquisition of State Street publicly traded common stock during the Settlement Class Period that is listed in the Claim Form and for which adequate documentation is provided. The calculation of Recognized Loss Amounts under the Plan is generally based on the difference between the amount of estimated alleged artificial inflation in the State Street common stock on the date the stock was purchased and the amount of estimated alleged artificial inflation on the date of sale, as calculated by Lead Plaintiffs' damages expert. In addition, Recognized Loss Amounts calculated for shares of State Street common stock purchased in or traceable to the June 2008 secondary offering are increased by 15% under the plan in recognition of the greater strength of the Securities Act claims possessed by purchasers of common stock in or traceable to the offering. The sum of a Claimant's Recognized Loss Amounts is the Claimant's "Recognized Claim" and the Net Settlement Fund will be allocated to Authorized Claimants on a *pro rata* basis based on the relative size of their Recognized Claims. However, Authorized Claimants whose *pro rata* share of the Net Settlement Fund calculates to less than $10.00 will not be included in the calculation and no distribution will be made to those claimants.

**Objection to Plan of Allocation**

One objection to the proposed Plan of Allocation has been received. Jerauld A. Erickson, an individual who purchased 31 shares of State Street common stock during the Settlement Class period, has objected to the provision of the Plan of Allocation that provides for the $10 minimum payment threshold, arguing that this provision is "discriminatory to small shareholders."

(Docket No. 499-2).  For the reasons detailed herein, this court recommends that this objection be overruled.

Minimum distribution thresholds are commonly included in plans of allocation in securities class actions and other comparable class actions because they benefit the class as a whole by reducing the claims administration costs associated with monitoring, printing and mailing checks for relatively small amounts.  Moreover, a $10.00 minimum is common.  *See Sullivan v. DB Invs., Inc.*, 667 F.3d 273, 328-29 (3d Cir. 2011) (affirming district court's decision to approve a $10 minimum over objections, noting that "'*de minimis* thresholds for payable claims are beneficial to the class as a whole since they save the settlement fund from being depleted by the administrative costs associated with claims unlikely to exceed those costs and courts have frequently approved such thresholds, often at $10'"); *City of Livonia Emp. Ret. Sys. v. Wyeth*, No. 07 Civ. 10329 (RJS), 2013 WL 4399015, at *3 (S.D.N.Y August 7, 2013) (approving $10 minimum distribution threshold as "entirely reasonable"); *In re Global Crossing Sec. & ERISA Litig.*, 225 F.R.D. 436, 463 (S.D.N.Y. 2004) (approving $10 *de minimis* provision and stating that "[c]lass counsel are entitled to use their discretion to conclude that, at some point, the need to avoid excessive expense to the class as a whole outweighs the minimal loss to the claimants who are not receiving their *de minimis* amounts of relief"); *see generally* 2 JOSEPH M. MCLAUGHLIN, MCLAUGHLIN ON CLASS ACTIONS § 6:23 (10th ed. Westlaw 2013) ("Courts have recognized that minimum payment thresholds for payable claims benefit the class as a whole because they protect the settlement fund from being depleted by the administrative costs associated with claims unlikely to exceed those costs. Courts should approve such thresholds, with $10 being a fair and commonly used figure.").  Establishing a minimum of $10.00 is

particularly appropriate here, where a large majority of the shares were owned in significant amounts by institutional investors.

I conclude that the proposed Plan of Allocation provides a fair and rational method of allocating the proceeds of the Net Settlement Fund among Settlement Class Members based on the losses they suffered on transactions in State Street common stock attributable to the conduct alleged in the Complaint and the relative strengths of their claims, and that the $10 minimum payment threshold included in the plan is reasonable. Accordingly, I recommend that the District Judge to whom this case is assigned overrule the objection and approve the Plan of Allocation as fair and reasonable.

## V.  ANALYSIS: CERTIFICATION OF CLASS

### A.  Approval of Settlement Class and Counsel

The Settlement Class consists of all persons and entities who or which purchased or otherwise acquired publicly traded common stock of State Street during the period from October 17, 2006 through October 21, 2009, inclusive (the "Settlement Class Period"), including all persons and entities who purchased or otherwise acquired State Street common stock pursuant and/or traceable to a registered public offering conducted on or about June 3, 2008, and who were damaged thereby. Excluded from the Settlement Class are: (a) Defendants; (b) members of the Immediate Families of the Individual Defendants; (c) the subsidiaries and affiliates of State Street (provided, that no ERISA plan for the benefit of any employees of State Street shall be excluded), the Underwriter Defendants, and Ernst & Young; (d) any person or entity who is a partner, chief executive officer, executive vice president, chief financial officer, principal accounting officer (or if there is no such accounting officer, the controller), director, member, or controlling person of State Street, any Underwriter Defendant, or Ernst & Young; (e) any entity

in which any Defendant has a controlling interest; and (f) the legal representatives, heirs, successors and assigns of any such excluded party; provided, however, that any Investment Vehicle shall not be excluded from the Settlement Class. Also excluded from the Settlement Class are any persons or entities who or which exclude themselves by submitting a request for exclusion that is accepted by the Court.

This court affirms its determinations in the Preliminary Approval Order and recommends that the District Judge finally certify, for the purposes of the Settlement only, the Action as a class action pursuant to Rules 23(a) and (b)(3) of the Federal Rules of Civil Procedure. Solely for purposes of the proposed Settlement of this Action, this court finds that each element required for certification of the Settlement Class pursuant to Rule 23 of the Federal Rules of Civil Procedure has been met: (a) the members of the Settlement Class are so numerous that their joinder in the Action would be impracticable; (b) there are questions of law and fact common to the Settlement Class which predominate over any individual questions; (c) the claims of Lead Plaintiffs in the Action are typical of the claims of the Settlement Class; (d) Lead Plaintiffs and Co-Lead Counsel have and will fairly and adequately represent and protect the interests of the Settlement Class; and (e) a class action is superior to other available methods for the fair and efficient adjudication of the Action.

This court also finds that Lead Plaintiffs and Co-Lead Counsel have fairly and adequately represented the Settlement Class both in terms of litigating the Action and for purposes of entering into and implementing the Settlement and have satisfied the requirements of Federal Rules of Civil Procedure 23(a)(4) and 23(g), respectively. Accordingly, this court affirms its determinations in the Preliminary Approval Order and recommends that Lead Plaintiffs be

certified as class representatives for the Settlement Class and Co-Lead Counsel be appointed as class counsel for the Settlement Class.

## Objection

Charles F. Franz and Nita W. Franz have objected to the adequacy of Co-Lead Counsel (Docket No. 501, at 14-16) and have objected to the court's Preliminary Approval Order, contending that it violated Rule 23(c)(1)(B) because it did not set forth the class claims, issues and defenses. (*Id*. at 24). Counsel for Mr. and Mrs. Franz requested and was granted the opportunity to appear at the Fairness Hearing by telephone. However, shortly before the hearing Mr. and Mrs. Franz filed a "Notice" with the court, stating that their counsel would not be available for the hearing and notifying the court that they would rely on their previously filed written objections. (Docket No. 508). Therefore, this court considered the merits of their objections at the Fairness Hearing.

For the reasons detailed more fully above, this court finds that Co-Lead Counsel adequately represented the Settlement Class. Moreover, as discussed below, the notice provided to the Settlement Class satisfied the requirements of Rule 23 and due process and, thus, does not provide a basis for finding Co-Lead Counsel inadequate. I further conclude that the Preliminary Approval Order certifying the Settlement Class satisfied Rule 23(c)(1)(B) because all claims, issues and defenses are to be decided on a class-wide basis by the Settlement, and, thus, there is no need to specify which claims and issues would be handled on a class basis and which would require individual proof. *See Sullivan*, 667 F.3d at 315. Moreover, the claims asserted and released by the Settlement Class were set out fully in the Stipulation and in the Notice, which was attached as an exhibit to the Preliminary Approval Order. Consequently, this court recommends that the objection filed by Mr. and Mrs. Franz be overruled.

**B.    Sufficiency of Notice to the Settlement Class**

Federal Rule of Civil Procedure 23(c)(2)(B) provides that notice of the pendency of a class action certified under Rule 23(b)(3) must be "the best notice that is practicable under the circumstances." Fed. R. Civ. P. 23(c)(2)(B). In addition, Rule 23(e)(1) provides that, in the event of a class settlement, "[t]he court must direct notice in a reasonable manner to all class members who would be bound by the proposal." Fed. R. Civ. P. 23(e)(1). To satisfy due process, the notice must be "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *In re Prudential Sec. Inc. Ltd. P'Ships Litig.*, 164 F.R.D. 362, 368 (S.D.N.Y. 1996) (citing *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 314, 70 S. Ct. 652, 657, 94 L. Ed. 865 (1950)). These standards do not require that actual notice be received by all class members. *See Fidel v. Farley*, 534 F.3d 508, 514 (6th Cir. 2008); *DeJulius v. New England Health Care Emps. Pension Fund*, 429 F.3d 935, 944 (10th Cir. 2005); *Silber v. Mabon*, 18 F.3d 1449, 1453-54 (9th Cir. 1994). However, the method of providing notice must be "reasonably calculated to reach interested parties." *Fidel*, 534 F.3d at 514; *see also Reppert v. Marvin Lumber & Cedar Co.*, 359 F.3d 53, 56 (1st Cir. 2004) ("Individual notice of class proceedings is not meant to guarantee that every member entitled to individual notice receives such notice, but . . . the notice ordered [must be] reasonably calculated to reach the absent class members.") (internal quotation marks omitted).

With respect to the content of the notice, Rule 23(c)(2)(B) sets forth a number of items that must be included in the notice, including "the nature of the action" and "the definition of the class certified," among others, and the PSLRA, 15 U.S.C. §§ 77z-1(a)(7), 78u-4(a)(7), sets forth certain additional items that must be included in a settlement notice under the PSLRA, including

a statement of the recovery (in the aggregate and on an average per-share basis), a statement of the attorneys' fees and costs that will be sought, and a statement of the parties' reasons for the settlement. In general, the settlement notice must "fairly apprise the prospective members of the class of the terms of the proposed settlement and of the options that are open to them," *Greenspun v. Bogan*, 492 F.2d 375, 382 (1st Cir. 1974).

I conclude that the notice to Settlement Class Members was disseminated in accordance with the Preliminary Approval Order. I further conclude that the method and timing of the dissemination of notice to Settlement Class Members satisfied all the requirements of Rule 23 and due process.

As detailed in the Declarations of Stephanie Thurin cited above, in accordance with the Preliminary Approval Order, the Claims Administrator began disseminating the Notice by first-class mail to potential Settlement Class Members on August 18, 2014 by mailing the Notice Packet to all record holders of State Street common stock during the Settlement Class Period as identified by State Street, as well as to over 1,800 brokers and other nominee owners to begin the process of providing notice to shareholders who held their stock in "street name." Thereafter, Epiq responded to numerous requests from nominee owners and either mailed the nominees additional copies of the Notice Packet to forward to their clients or mailed the Notice Packets to names and addresses provided by the nominees. In addition, copies of the Notice, Claim Form and other documents related to the Settlement were made available on a website established for the Settlement on August 18, 2014, and a Summary Notice concerning the Settlement was published in *The Wall Street Journal* and transmitted over the PR Newswire on August 27, 2014. Moreover, Co-Lead Counsel BLBG also published notice of the Settlement on its website. As of October 6, 2014, Epiq had mailed 628,436 copies of the Notice Packet to potential Settlement

Class Members and nominees (representing 81% of the total Notice Packets mailed) and, as of October 15, 2014, Epiq had mailed a total of 765,933 copies of the Notice Packet (or 98.5% of the total ultimately mailed).

Although some potential Settlement Class Members received their Notice at or after the objection deadline set forth in the Notice, I conclude that the method adopted here for providing notice was reasonable. The notice program adopted in the court's Preliminary Approval Order was consistent with the types of notice programs that are commonly used in large securities class actions like this one. Indeed, numerous courts have found that notice comparable to that provided here satisfies the requirements of Rule 23 and due process even where a portion of the class may have received notice after the objection deadline. S*ee, e.g.*, *Fidel,* 534 F.3d at 514-15 (approving similar notice program as satisfying all requirements of Rule 23 and due process even though delays in forwarding by brokers caused 20% of the class to receive notice after the objection deadline); *DeJulius*, 429 F.3d at 945-47 (finding notice program sufficient where some beneficial owners received notice two weeks after the objection deadline and on the same day as the final fairness hearing); *Silber*, 18 F.3d at 1452-54 (finding notice adequate where, due to a broker's late response, notices to 14% of potential class members were mailed after the objection deadline); *Torrisi v. Tucson Elec. Power Co.*, 8 F.3d 1370, 1374–75 (9th Cir. 1993) (notice was sufficient even though as many as one third of the shareholders may have received their notice after the objection deadline); *In re Marsh & McLennan Cos. Sec. Litig.*, No. 04 Civ. 8144 (CM), 2009 WL 5178546, at *12-13, 23-24 (S.D.N.Y. Dec. 23, 2009) (rejecting objection based on late notice where certain class members received late notice due to delays in forwarding by brokers). In addition, because 98.5% of all notice recipients here received the Notice more than five weeks before the settlement hearing, I conclude that the notice to the Settlement Class as a whole was

sufficient to "flush out whatever objections might reasonably be raised to the settlement." *Fidel*, 534 F.3d at 514. This is particularly true of Mr. and Mrs. Franz. Since they apparently held their stock in a street name, they allegedly did not receive their notice until October 6, 2014. As an initial matter, the risk of delay in receipt of legal notices is a "risk a shareholder takes in registering his or her securities in street name." *Marsh*, 2009 WL 5178546, at *24. Moreover, although the Franzes did not receive their Notice until October 6, 2014, they still obtained counsel who had time to prepare a lengthy objection for the court's consideration 16 days before the scheduled hearing. (Docket No. 501). The timing of the Notice was clearly sufficient.

I also conclude that the content of the Notice disseminated to the Settlement Class satisfied all the requirements of Rule 23, the PSLRA, and due process. The Notice included, among other things, a description of the nature of the litigation and the essential terms of the Settlement; the definition of the Settlement Class; a description of the parties' reasons for the entering into the Settlement; a description of the Plan of Allocation and the attorneys' fees and costs that would be sought; a description of Settlement Class Members' right to opt-out of the Settlement Class or object to the Settlement, the Plan of Allocation or the requested attorneys' fees or expenses; and notice of the binding effect of a judgment on Settlement Class Members. The Notice contains all the elements required to be included in a notice of pendency of a class action and notice of a settlement under Rule 23 and the PSLRA and I conclude that the Notice as a whole was sufficient to "fairly apprise the prospective members of the class of the terms of the proposed settlement and of the options that are open to them." *Greenspun*, 492 F.2d at 382.

Accordingly, this court recommends that the objections submitted by Charles F. Franz and Nita W. Franz to the adequacy of notice to the Settlement Class, with respect to both the timing and the content of the notice (Docket No. 501 at 1-4, 7-14, 17-19, 23-24), be overruled

and recommends that the District Judge enter a Judgment including a finding that the notice to the Settlement Class met the standards of Rule 23, the PSLRA and due process.

I also conclude that notice of the Settlement was timely mailed to those required to receive such notice under the Class Action Fairness Act, 28 U.S.C. § 1715 ("CAFA"), and that the form of notice and method of providing that notice complied with all requirements of CAFA. *See* Docket No. 497.

## VI.  ANALYSIS: REQUEST FOR ATTORNEYS' FEES AND EXPENSES

### A.  General Principles

Under the "common fund doctrine," an attorney who succeeds in creating a fund for the benefit of a class is "entitled to a reasonable attorney's fee from the fund as a whole." *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980); *see In re Thirteen Appeals Arising Out of the San Juan Dupont Plaza Hotel Fire Litig.*, 56 F.3d 295, 305 (1st Cir. 1995).  Two methods of calculating such attorneys' fees are the lodestar method and the percentage-of-the-fund method. *Thirteen Appeals*, 56 F.3d at 304-07.  The First Circuit has approved of the use of the percentage method in common fund cases, noting that it "offers significant structural advantages . . . including ease of administration, efficiency, and a close approximation of the marketplace." *Id.* at 307-08; *see also Duhaime v. John Hancock Mut. Life Ins. Co.*, 989 F. Supp. 375, 377 (D. Mass. 1997).  This court recommends that the percentage-of-fund method be used as the primary method for awarding fees in this Action.

This court recognizes that the lodestar method can be used to cross-check the reasonableness of the proposed percentage fee award.  *See, e.g.*, *Puerto Rican Cabotage*, 815 F. Supp. 2d at 464-65; *First Databank*, 2009 WL 2408560, at *1; *Tyco,* 535 F. Supp. 2d at 270. Here, counsel contend that 71,559.70 hours of attorney and other professionals' time was

expended, with a lodestar value of $30,187,765. However, the court was not provided with the detailed time and accounting records necessary to conduct a lodestar analysis. Moreover, this court is unable to ascertain whether the work of the various law firms involved in the cases that were consolidated for discovery purposes was duplicative, especially in connection with the review of the millions of documents that were produced. Therefore, this court does not find that the lodestar analysis is particularly helpful or appropriate in the instant case.

Courts within this Circuit have assessed the reasonableness of proposed fees by considering the following factors:

> (1) the size of the fund and the number of persons benefitted; (2) the skill, experience, and efficiency of the attorneys involved; (3) the complexity and duration of the litigation; (4) the risks of the litigation; (5) the amount of time devoted to the case by counsel; (6) awards in similar cases; and (7) public policy considerations, if any.

*Puerto Rican Cabotage,* 815 F. Supp. 2d at 458; *Lupron*, 2005 WL 2006833, at *3; *Relafen*, 231 F.R.D. at 79. In the instant case, consideration of these factors support approval of the fees requested of 17% of the Gross Settlement Fund.

### B. Consideration of the Relevant Factors

Co-Lead Counsel have moved for attorneys' fees in the amount of 17% of the Settlement Fund (that is, 17% of the Settlement Amount, or $10,200,000, plus interest on that amount at the same rate as earned by the Settlement Fund). Consideration of the relevant factors demonstrates the reasonableness of the requested fee.

### 1. The Size of the Fund and the Number of Persons Benefited

The Settlement has created a fund of $60,000,000 in cash that has been funded into escrow pursuant to the terms of the Stipulation and numerous Settlement Class Members who submit acceptable Claim Forms will benefit from the Settlement. The size of the Settlement here

supports the reasonableness of the requested fee.  Moreover, the use of the percentage method directly incorporates the value of the recovery obtained into the calculation of the fee.  *See Duhaime*, 989 F. Supp. at 377 (an advantage of the percentage method is that it "focuses on result, rather than process, which better approximates the workings of the marketplace" and provides that "the greater the value secured for the class, the greater the fee earned by class counsel") (internal quotation marks omitted).

### 2. The Skill, Experience, and Efficiency of the Attorneys Involved

Plaintiffs' Counsel have conducted the litigation and achieved the Settlement with skill and diligent advocacy.  Moreover, as reflected in the firm resumes submitted by Co-Lead Counsel, Co-Lead Counsel are highly experienced in securities class action litigation and this court believes that their experience and expertise contributed to the achievement of the Settlement.

### 3. The Complexity and Duration of the Litigation

The Action involves two separate sets of factual allegations and numerous complex factual and legal issues.  The Action was actively prosecuted for more than four years, including through extensive and vigorous litigation directly observed by this court.  The discovery process included significant motion practice relating to a variety of complex issues including Luxembourg secrecy laws, electronic search parameters, industry practices and other difficult issues.

### 4. The Risk of Non-Payment

From the outset, this case involved substantial risks of non-recovery.  Plaintiffs' Counsel litigated the Action on a fully contingent basis and were exposed to the risk that they might obtain no compensation for their efforts on behalf of the class.  The court considers this

contingency risk in awarding attorneys' fees. *See Lupron*, 2005 WL 2006833, at *4 ("Many cases recognize that the risk [of non-payment] assumed by an attorney is perhaps the foremost factor in determining an appropriate fee award."); *In re Marsh ERISA Litig.*, 265 F.R.D. 128, 148 (S.D.N.Y. 2010) ("There was significant risk of non-payment in this case, and Plaintiffs' Counsel should be rewarded for having borne and successfully overcome that risk.").

In class actions with significant contingency risks, fees representing multiples above the lodestar may be awarded to reflect contingency risks and other relevant factors. *See In re Neurontin Mktg. & Sales Practices Litig.,* No. 04-10981-PBS, slip op. at 9 (D. Mass. Nov. 10, 2014), ECF No. 4303 (awarding fee representing a 3.32 multiplier); *First Databank*, 2009 WL 2408560, at *2 (awarding fee representing an 8.3 multiplier). This court recognizes that here counsel are seeking only approximately one-third of the value of the total lodestar they devoted to the case – a "negative" multiplier of 0.34. However, as noted above, this court does not consider this lodestar comparison to be appropriate in this case as this court is not in a position to evaluate the appropriateness of the expenditure of more than 70,000 hours of attorney and other professionals' time with a lodestar value allegedly in excess of $30 million.

This court does recognize, however, that the fact that counsel are seeking fees below the amount of class counsel's lodestar does support the reasonableness of the requested fee. *See In re FLAG Telecom Holdings, Ltd. Sec. Litig.*, No. 02-CV-3400 (CM)(PED), 2010 WL 4537550, at *26 (S.D.N.Y. Nov. 8, 2010) ("Lead Counsel's request for a percentage fee representing a significant discount from their lodestar provides additional support for the reasonableness of the fee request."); *In re Initial Pub. Offering Sec. Litig.*, 671 F. Supp. 2d 467, 515 (S.D.N.Y. 2009) (noting that there was "no real danger of overcompensation" given that the requested fee represented a discount to counsel's lodestar); *In re Veeco Instruments Inc. Sec. Litig.*, No. 05

MDL 01695(CM), 2007 WL 4115808, at *10 (S.D.N.Y. Nov. 7, 2007) ("Not only is Plaintiffs' Counsel not receiving a premium on their lodestar to compensate them for the contingent risk factor, their fee request amounts to a deep discount from their lodestar. Thus, the lodestar 'cross-check' unquestionably supports" the fee award).

### 5. The Time and Effort Devoted by Plaintiffs' Counsel

The time and effort expended by Plaintiffs' Counsel in prosecuting this Action and achieving the Settlement also establish that the requested fee is reasonable. Plaintiffs' Counsel litigated this Action for four years, which included an extensive investigation, drafting and filing of a detailed consolidated complaint and consolidated amended complaint, opposing Defendants' motions to dismiss, and engaging in extensive discovery, including the review of more than 25 million pages of documents, taking or defending 10 depositions, briefing more than 20 discovery motions, and participating in numerous court hearings. Such efforts over such an extended period of time support the award of $10,200,000 (plus interest).

### 6. Awards in Similar Cases

A review of awards in similar cases also supports the reasonableness of the requested fee. The requested 17% fee is well within the typical range of percentage fees awarded in comparable cases in the First Circuit and elsewhere. *See In re Neurontin Mktg. & Sales Practices Litig.*, Civ. Action No. 04-10981-PBS, 2014 WL 5810625, at *3 (D. Mass. Nov. 10, 2014) ("[a]n empirical study of federal class action fee awards in 2006 and 2007 found that nearly two-thirds of class action fee awards based on the percentage method were between 25% and 35% of the common fund. *See* Brian T. Fitzpatrick, *An Empirical Study of Class Action Settlements and Their Fee Awards*, 7 J. Empirical L. Stud. 811, 833–34 (2010). In the First Circuit, the mean was 27% and the median was 25%. *Id.* at 836.").

### 7. Public Policy Considerations

The Supreme Court has emphasized that private securities actions such as this provide "a most effective weapon in the enforcement of the securities laws and are a necessary supplement to [SEC] action." *Bateman Eichler, Hill Richards, Inc. v. Berner*, 472 U.S. 299, 310 (1985) (internal quotation marks omitted). Accordingly, public policy favors granting reasonable attorneys' fees to Plaintiffs' Counsel that will adequately compensate them for their efforts and the risks they undertook. *See Puerto Rican Cabotage*, 815 F. Supp. 2d at 463; *Tyco*, 535 F. Supp. 2d at 270; *FLAG Telecom*, 2010 WL 4537550, at *29 (if the "important public policy [of enforcing the securities laws] is to be carried out, the courts should award fees which will adequately compensate Lead Counsel for the value of their efforts, taking into account the enormous risks they undertook").

### 8. The Endorsement of Lead Plaintiffs and the Reaction of the Settlement Class

The fee sought by Co-Lead Counsel has been reviewed and approved as fair and reasonable by Lead Plaintiffs, who are institutional investors that were actively involved in the prosecution and resolution of the Action. In addition, copies of the Notice were mailed to over 777,000 potential Settlement Class Members and nominees stating that counsel would apply for attorneys' fees in an amount not to exceed 17% of the Settlement Fund and only one objection to the requested attorneys' fees or reimbursement of litigation expenses has been received, and no objections have been received from any institutional investors. The endorsement of the Lead Plaintiffs and the favorable reaction of the class both support approval of the requested fees.

Objectors Charles F. Franz and Nita W. Franz have objected to the reasonableness of the attorneys' fees requested and to the timing of notice provided to the Settlement Class of the request for attorneys' fees. I recommend that this sole objection to the attorneys' fees be

overruled. First, I find that timing of the notice of the motion for attorneys' fees complied with Rule 23 and due process for all of the reasons detailed above. Second, I conclude that the objection to the reasonableness of the fee requested is without merit. The total hours that Plaintiffs' Counsel report to have worked are easily sufficient to support the requested 17% fee. The Franzes argument that "drafting an amended complaint should require minutes, not hours[,]" indicates a lack of familiarity with the work necessary to investigate and draft an amended class action securities complaint that can survive a motion to dismiss. (*See* Docket No. 501 at 21). The case involved a great deal of effort and was litigated by experienced and highly qualified counsel. The Franzes' objection, which provides no specifics other than to object to the total amount, is not persuasive.

Finally, I conclude that the provision of the Stipulation which provides that Defendants "agree not to take a position" on Co-Lead Counsel's application for attorneys' fees (Docket No. 478-1, Stipulation ¶15) is not a "clear sailing" agreement as that term is used in cases such as *Weinberger v. Great N. Nekoosa Corp.*, 925 F.2d 518 (1st Cir. 1991), and, contrary to the Franzes' objection, does not provide a reason for rejection of the requested fee. (*See* Docket No. 501 at 21-23). "Clear sailing" agreements are those in which "the party paying the fee agrees not to contest the amount to be awarded by the fee-setting court so long as the award falls beneath a negotiated ceiling." *Weinberger*, 925 F.2d at 520 n.1. Here, there is no negotiated ceiling. Defendants have not agreed to any set level of fees and are not paying fees directly to class counsel. Instead, all attorneys' fees will be paid from the common fund settlement that was achieved for the Settlement Class. Thus, there is no potential conflict of interest, as was the concern of courts like *Weinberger*, *see id.* at 524-25, because there was no risk here that class

counsel could have traded off the class's interests in exchange for defendants' agreement to permit a higher level of fees.

In summary, this court concludes that the requested 17% fee is reasonable in light of the amount of the Settlement, the extensive time and effort expended by Plaintiffs' Counsel, the risks of non-payment, and in comparison to fee awards in other cases. This court recommends that the District Judge approve an award of fees in the amount of 17% of the Settlement Fund to Plaintiffs' Counsel and overrule the objection to the fees.

## C. <u>Reimbursement of Litigation Expenses Incurred by Plaintiffs' Counsel</u>

Co-Lead Counsel's motion includes a request for reimbursement of $995,297.89 in litigation expenses incurred by Plaintiffs' Counsel in the prosecution and settlement of the Action.[2] Lawyers who recover a common fund for a class are entitled to reimbursement of litigation expenses that were reasonably and necessarily incurred in connection with the litigation. *See In re Fidelity/Micron Sec. Litig.*, 167 F.3d 735, 737 (1st Cir. 1999); *Latorraca v. Centennial Techs. Inc.*, 834 F. Supp. 2d 25, 28 (D. Mass. 2011).

Plaintiffs' Counsel's declarations set forth a summary of the litigation expenses that they incurred in the Action by category. (*See* Docket Nos. 496 at 65-68, 499). The expenses included in counsel's application include the costs of retaining several experts, creating and maintaining an electronic database for review of documents, and conducting online legal and factual research, as well as for court fees, court reporters, out-of-town travel, and copying costs. These are the types of expenses that are necessarily incurred in litigation of this type and routinely charged to clients billed by the hour and the amounts incurred appear reasonable in light of the length and

---

[2] This amount includes the $956,547.89 in litigation expenses requested in Co-Lead Counsel's opening motion papers and the $38,750.00 additional expense requested in Co-Lead Counsel's reply papers.

scope of this litigation. This court recommends that Plaintiffs' Counsel's expenses be reimbursed in their entirety.

### D.     **Reimbursement of Plaintiffs under the PSLRA**

In connection with the Co-Lead Counsel's request for reimbursement of litigation expenses, Plaintiffs seek a total of $40,436.08 in awards under the PSLRA to reimburse them for costs and expenses incurred by them relating to their representation of the Settlement Class.

The PSLRA provides that an "award of reasonable costs and expenses (including lost wages) directly relating to the representation of the class" may be made to "any representative party serving on behalf of a class." 15 U.S.C. §§ 77z-1(a)(4), 78u-4(a)(4).

As set forth in declarations provided by representatives of Lead Plaintiffs MPERS and Union and Plaintiff Miami Beach Employees Retirement Plan ("Miami Beach"), each of these Plaintiffs actively took part in the litigation by, among other things, (i) participating in discussions with Co-Lead Counsel concerning significant developments in the litigation; (ii) reviewing significant pleadings and briefs; (iii) participating in the production of discovery, including gathering and reviewing documents in response to discovery requests; (iv) preparing and sitting for depositions; and (v) overseeing settlement negotiations. (*See* Docket No. 496 at Exs. 2-4). These efforts are the types of activities that Courts have found to support reimbursement to class representatives under the PSLRA. *See, e.g.*, *Evergreen Ultra*, 2012 WL 6184269, at *2; *Marsh*, 2009 WL 5178546, at *21. The time spent by the employees of Plaintiffs in supervising and participating in the prosecution of the Action was time that these employees could not engage in their normal duties for Plaintiffs and, thus, represented a cost to these institutions. *See In re Gilat Satellite Networks, Ltd.*, No. CV-02-1510 (CPS)(SMG), 2007 WL 2743675, at *19 (E.D.N.Y. Sept. 18, 2007).

The Notice disseminated to Settlement Class Members specifically stated that the Litigation Expenses requested by Co-Lead Counsel might "include an application for reimbursement of the reasonable costs and expenses incurred by Plaintiffs directly related to their representation of the Settlement Class," and there were no objections to this request.

This court recommends that PSLRA awards in the amount of $21,288.75 to MPERS; $15,394.00 to Union; and $3,753.33 to Miami Beach be allowed as reimbursement for these Plaintiffs' reasonable costs and expenses incurred in representing the Settlement Class.

## VII.  CONCLUSION[3]

For the reasons set forth above, this Court recommends to the District Judge to whom this case is assigned that:

1.  the Settlement be approved as fair, reasonable and adequate and the proposed Judgment, attached hereto as Exhibit A, be entered approving the Settlement;

2.  the Plan of Allocation be approved as fair and reasonable, in the form attached hereto as Exhibit B, and the single objection to the Plan of Allocation (Docket No. 499-2) be overruled;

---

[3]  The parties are hereby advised that under the provisions of Fed. R. Civ. P. 72 any party who objects to these proposed findings and recommendations must file a written objection thereto with the Clerk of this Court within 14 days of the party's receipt of this Report and Recommendation.  The written objections must specifically identify the portion of the proposed findings, recommendations or report to which objection is made and the basis for such objections.  The parties are further advised that the United States Court of Appeals for this Circuit has repeatedly indicated that failure to comply with this Rule shall preclude further appellate review.  See Keating v. Sec'y of Health & Human Servs., 848 F.2d 271, 275 (1st Cir. 1988); United States v. Valencia-Copete, 792 F.2d 4, 6 (1st Cir. 1986); Park Motor Mart, Inc. v. Ford Motor Co., 616 F.2d 603, 604-05 (1st Cir. 1980); United States v. Vega, 678 F.2d 376, 378-79 (1st Cir. 1982); Scott v. Schweiker, 702 F.2d 13, 14 (1st Cir. 1983); see also Thomas v. Arn, 474 U.S. 140, 153-54, 106 S. Ct. 466, 474, 88 L. Ed. 2d 435 (1985).  Accord Phinney v. Wentworth Douglas Hosp., 199 F.3d 1, 3-4 (1st Cir. 1999); Henley Drilling Co. v. McGee, 36 F.3d 143, 150-51 (1st Cir. 1994); Santiago v. Canon U.S.A., Inc., 138 F.3d 1, 4 (1st Cir. 1998).

3. the certification of the Settlement Class, the certification of Lead Plaintiffs as class representatives and the appointment of Co-Lead Counsel as class counsel, for purposes of the Settlement only, be reaffirmed;

4. notice served pursuant to the Class Action Fairness Act be found timely and in compliance with all the requirements of that Act;

5. the notice provided to potential Settlement Class Members of the Settlement, the Plan of Allocation and motion for attorneys' fees and expenses be found to have satisfied all the requirements of Rule 23, the PSLRA and due process;

6. Plaintiffs' Counsel be awarded attorneys' fees in the amount of 17% of the Settlement Fund and reimbursement of $995,297.89 in litigation expenses, in the form attached hereto as Exhibit C;

7. Lead Plaintiffs MPERS and Union and Plaintiff Miami Beach be awarded PSLRA awards in the amount of $21,288.75, $15,394.00, and $3,753.33, respectively as detailed in Exhibit C hereto; and

8. the objection of Charles F. Franz and Nita W. Franz (Docket No. 501) be overruled in all respects.


                                 / s / Judith Gail Dein
                                 Judith Gail Dein
                                 U.S. Magistrate Judge