## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| HILL v. STATE STREET CORPORATION ) | |
| ) | |
| ) | Master Docket No.1:09-cv-12146-GAO |
| THIS DOCUMENT RELATES TO THE ) | |
| SECURITIES ACTION ) | |
| ) | |
| DOCKET NO. 09-cv-12146-GAO ) | |

## ORDER APPROVING DISTRIBUTION PLAN

Lead Plaintiffs moved this Court for an order approving a distribution plan for the Net Settlement Fund in the above-captioned class action (the "Action"), and the Court having considered all the materials and arguments submitted in support of the motion, including the Declaration of Stephanie A. Thurin in Support of Lead Plaintiffs' Motion for Approval of Distribution Plan (the "Thurin Declaration"), and the Memorandum in Support of Lead Plaintiffs' Motion for Approval of Distribution Plan, submitted therewith;

**NOW, THEREFORE, IT IS HEREBY ORDERED THAT:**

1.      This Order incorporates by reference the definitions in the Stipulation and Agreement of Settlement dated July 8, 2014 (ECF No. 478-1) (the "Stipulation") and the Thurin Declaration, and all terms used herein shall have the same meanings as set forth in the Stipulation or in the Thurin Declaration.

2.      This Court has jurisdiction over the subject matter of the Action and over all parties to the Action, including all Settlement Class Members.

3.      Lead Plaintiffs' plan for distribution of the Net Settlement Fund to Authorized Claimants is **APPROVED**. Accordingly,

(a)     The administrative recommendations of the Court-approved Claims Administrator, Epiq Class Action & Claims Solutions, Inc. ("Epiq"), to accept the Timely Eligible Claims set forth in Exhibit B-1 to the Thurin Declaration and the Late But Otherwise Eligible Claims set forth in Exhibit B-2 to the Thurin Declaration, are adopted;

(b)     The Claims Administrator's administrative recommendations to reject wholly ineligible Claims, as set forth in Exhibit B-3 to the Thurin Declaration are adopted;

(c)     Epiq is directed to distribute 100% of the Net Settlement Fund, after deducting the payments previously allowed and the payments approved herein, and after payment of any estimated taxes, the costs of preparing appropriate tax returns, and any escrow fees, to the Authorized Claimants who would receive at least $10 based on their Recognized Claim in comparison to the Recognized Claims of all Authorized Claimants, as further detailed in paragraph 38 of the Thurin Declaration (the "Distribution");

(d)     In order to encourage Authorized Claimants to promptly deposit their payments, all Distribution checks shall bear the following notation:  "DEPOSIT PROMPTLY, VOID AND SUBJECT TO RE-DISTRIBUTION IF NOT NEGOTIATED BY [DATE 90 DAYS AFTER ISSUE DATE]."  Co-Lead Counsel and Epiq are authorized to take appropriate action to locate and/or contact any Authorized Claimant who has not cashed his, her, or its check within said time as detailed in paragraph 38(b) footnote 4 of the Thurin Declaration;

(e)     Authorized Claimants who do not negotiate their Distribution checks within the time allotted or on the conditions set forth in paragraph 38(b) footnote 4 of the Thurin Declaration shall irrevocably forfeit all recovery from the Settlement, and the funds allocated to all such stale-dated checks shall be available to be redistributed to other Authorized

Claimants, if Co-Lead Counsel in consultation with Epiq, determine that it is cost-effective to conduct a second distribution. Similarly, Authorized Claimants who do not negotiate their second or subsequent distributions (should such distributions occur) within the time allotted or on the conditions set forth in paragraph 38(b) footnote 4 of the Thurin Declaration shall irrevocably forfeit any further recovery from the Net Settlement Fund;

(f)     Consistent with the Court-approved Plan of Allocation, after Epiq has made reasonable and diligent efforts to have Authorized Claimants negotiate their Distribution checks (as set forth in paragraph 38(b) footnote 4 of the Thurin Declaration), but no earlier than nine (9) months after the Distribution, Epiq shall, if Co-Lead Counsel in consultation with Epiq, determine that it is cost-effective to do so, conduct a second distribution of the Net Settlement Fund (the "Second Distribution"), pursuant to which any amounts remaining in the Net Settlement Fund after the Distribution, after deducting Epiq's fees and expenses incurred in connection with administering the Settlement for which it has not yet been paid (including the estimated costs of such Second Distribution), and after the payment of any estimated taxes, the costs of preparing appropriate tax returns, and any escrow fees, shall be distributed to all Authorized Claimants in the Distribution who cashed their first distribution payment and who are entitled to at least $10.00 from such redistribution based on their *pro rata* share of the remaining funds. Additional re-distributions, after deduction of costs and expenses as described above and subject to the same conditions, may occur thereafter in nine-month intervals until Co-Lead Counsel, in consultation with Epiq, determine that further re-distribution is not cost-effective;

(g)     At such time as Co-Lead Counsel, in consultation with Epiq, determine that further re-distribution of the funds remaining in the Net Settlement Fund is not cost-

3

effective, if sufficient funds remain to warrant the processing of Claims received after September 1, 2016, such Claims shall be processed and any such Claims that are otherwise valid as well as any earlier received Claims for which an adjustment was received after September 1, 2016 shall be paid in accordance with subparagraph (h) below. If any funds shall remain in the Net Settlement Fund after payment of any such late or late adjusted Claims, the remaining balance of the Net Settlement Fund, after payment of any unpaid fees or expenses incurred in connection with administering the Net Settlement Fund and after the payment of any estimated taxes, the costs of preparing appropriate tax returns, and any escrow fees, shall be contributed to non-sectarian, not-for-profit 501(c)(3) organization(s), to be recommended by Co-Lead Counsel and approved by the Court;

(h)     No new Proofs of Claim may be accepted after September 1, 2016, and no further adjustments to Proofs of Claim received on or before September 1, 2016 that would result in an increased Recognized Claim amount may be made for any reason after September 1, 2016, subject to the following exception. If Proofs of Claim are received or modified after September 1, 2016 that would have been eligible for payment or additional payment under the Plan of Allocation if timely received then, at the time that Co-Lead Counsel, in consultation with Epiq, determine that a re-distribution is not cost effective as provided in subparagraph (g) above, then, after payment of any unpaid fees or expenses incurred in connection with administering the Net Settlement Fund and after the payment of any estimated taxes, the costs of preparing appropriate tax returns, and any escrow fees, such Claimants, at the discretion of Co-Lead Counsel, may be paid their distribution amounts or additional distribution amounts on a *pro rata* basis that would bring them into parity with

other Authorized Claimants who have cashed all their prior distribution checks to the extent possible;

      (i)      All persons involved in the review, verification, calculation, tabulation, or any other aspect of the processing of the Proofs of Claim submitted herein, or otherwise involved in the administration or taxation of the Settlement Fund or the Net Settlement Fund, are hereby released and discharged from any and all claims arising out of such involvement, and all Settlement Class Members, whether or not they receive payment from the Net Settlement Fund, are hereby barred from making any further claims against the Net Settlement Fund, Lead Plaintiffs, Co-Lead Counsel, the Claims Administrator, the Escrow Agent or any other agent retained by Lead Plaintiffs or Co-Lead Counsel in connection with the administration or taxation of the Settlement Fund or the Net Settlement Fund beyond the amounts allocated to Authorized Claimants;

      (j)      All of Epiq's fees and expenses incurred in connection with the administration of the Settlement and estimated to be incurred in connection with the Distribution of the Net Settlement Fund as reflected in Exhibit C to the Thurin Declaration are approved, and Co-Lead Counsel are directed to pay the outstanding balance of $1,575,994.04 out of the Settlement Fund to Epiq; and

      (k)      Unless otherwise ordered by the Court, one year after the Second Distribution if that occurs or, if there is no Second Distribution, two years after the Distribution, Epiq shall destroy the paper copies of the Proofs of Claim and all supporting documentation and, one year after all funds have been distributed, Epiq shall destroy electronic copies of the same.

4.      This Court retains jurisdiction to consider any further applications concerning the

administration of the Settlement, and such other and further relief as this Court deems appropriate.

SO ORDERED:

Dated: _____December 27_____, 2016

_____
The Honorable George A. O'Toole, Jr.
United States District Judge

6